Jerry Czajkowski, Ph.D., in Pro Se
6370 Streamview Dr
San Diego, CA 92115
619-287-2944

FILED

2007 DEC 19  PM 3: 06

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JERRY CZAJKOWSKI, Ph.D., an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>REED ELSEVIER, INC., a Massachusetts<br>Corporation,<br><br>       Defendant | Case No.:<br><br>**'07 CV 2383 JM LSP**<br><br>**BREACH OF CONTRACT**<br>FEDERAL QUESTION RAISED<br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

1.      The complainant JERRY CZAJKOWSKI, complains against Defendant REED ELSEVIER, INC. (a.k.a., Harcourt Brace Jovanovich Inc., Harcourt General Inc.), as follows:

### DIVERSITY JURISDICTION AND VENUE,

### FEDERAL QUESTION

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and § 1331, in that complete diversity of citizenship exists between the parties, and a federal question is raised and asserted by the Plaintiff (U.S. Constitution Article I, § 10, and Amendment XIV, § 1). The amount in controversy exceeds the sum and value of $75,000, exclusive of interest and costs.

3.      Venue for this action in this judicial district is proper pursuant to 28 U.S.C. § 1391, in that the majority of Defendant's wrongful acts giving rise to Plaintiff's claims have occurred in the County of San Diego, State of California, where Defendant is doing business and was required, but failed, to make redemption payments to the Plaintiff in this judicial district.

## THE PARTIES

4.    Plaintiff has, and at all times mentioned herein, been an individual residing in San Diego County, and a citizen of the State of California.

5.    Defendant REED ELSEVIER, INC. has, and at all times mentioned herein, been a citizen of Massachusetts doing business in the San Diego County, California, with the primary place of business in New York, New York.

## FEDERAL QUESTION

### U.S. Constitution Article I, § 10, Amendment XIV, § 1

### Constitutionally Protected *Vested Property Rights* and the *Redemption Rights*

6.    Plaintiff asserts that he possesses *vested property rights* stemming from acquisition of, and the *redemption rights* of the HBJ 12% Preferred Stock, and that these *rights* are protected by the United States Constitution Article I, § 10,

> "No State shall ... pass any ... Law impairing the Obligation of Contracts",

and the Amendment XIV, § 1,

> "... nor shall any State deprive any person of ... property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

For example :

> 7.    "The right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent." (Weckler v. Valley City 93 F.Supp.451.Affirmed, 188 F.2d 367)

> 8.    "the Supreme Court further stated,... 'It seems clear that the redemption right of plaintiff as a preferred stockholder is something more and different in character than an ordinary incidental right of a stockholder, such as voting for the election of a director of the company, and that his right is contractual in nature. This contract right was presumably a condition precedent to plaintiff's determination to purchase preferred stock in the defendant company. The redemption provision was a definite undertaking on the part of the defendant corporation to redeem at a given time and on given terms the stock

*plaintiff agreed to purchase. Assuming, as we fairly may, that in the absence of the redemption provision plaintiff would not have purchased his stock, or that defendant's undertaking to redeem was an inducing cause in consequence of which plaintiff did purchase, the provision for redemption was something more than a mere incident to corporate relationship, it was a definite contractual undertaking, the proposal for which antedated and consummation of which coincided with the purchase of the stock by plaintiff, who prior to that time was not identified with the corporation."' (p.452 <u>Weckler v. Valley City</u>, id.)*

9.     *"Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract and as divesting stockholder of vested interest in corporation without due process of law,...Const. art. 8, § 1; Const. U.S. Amend. 14; Const. U.S. art. 1, § 10".( <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708)*

10.     *"Power reserved in state to amend corporation's charter is not unlimited, and its exercise is subject to restrictions imposed by other provisions of State and Federal Constitutions, such as requirement of due process, and vested property rights and obligations of contract must not be destroyed or impaired (Const. art.8, § 1; General Corporation Law, § 5; Const. U.S. Amend.14; Const. U.S. art.1, § 10.)"(<u>Breslav v. NY & Queens Electric Light & Power Co., id.</u>)*

11.     *"Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest which may not be divested without stockholder's assent, and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares." (<u>Breslav v. NY & Queens Electric Light & Power, id.</u>)*

12.     *"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed by changing noncallable stock into callable stock by vote of two-thirds of stockholders."(<u>Breslav v. NY & Queens Electric Light & Power Co., id.</u>)*

### NEW YORK LAW

13.     The issues presented to this Court are governed by New York law since Harcourt Brace Jovanovich (HBJ) was a New York Corporation. See *Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130 (1933*); Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.1985) (stating that *"[c]laims involving the 'internal affairs' of corporations ... are subject to the laws of the state of incorporation"*).

14.     Noncompliance of HBJ with the New York Business Corporation Law (**NY BCL**) during its 1991 merger with General Cinema Corporation (GCC), has led to a major deviation from the

statutory handling of the attempted 1991 redemption of one of its debt securities, the 12% Preferred Stock, to a detriment of its dissenting shareholders and their *vested property rights* protected by the United States Constitution Article I § 10 and Amendment XIV, § 1. This attempted 1991 redemption was not done in compliance with the NY BCL § 623(j), § 514(a)(b), nor § 906(b)(2)(3).

15.    The NY BCL § 623(j) "***Procedure to enforce shareholder's right to receive payment for shares***" states:

> "*No payment shall be made to a dissenting shareholder under this section at a time when the corporation is insolvent or when such payment would make it insolvent. In such event, the dissenting shareholder shall, at his option: ... (2) Retain his status as a claimant against the corporation ... and if it is not liquidated, retain his right to be paid for his shares, which right the corporation shall be obliged to satisfy when the restrictions of this paragraph do not apply.*"

16.    The NY BCL § 514(a)(b) "***Agreements for purchase by a corporation of its own shares***", states:

> "*(a) An agreement for the purchase by a corporation of its own shares shall be enforceable by the shareholder and the corporation to the extent such purchase is permitted at the time of purchase by section 513 (Purchase or redemption by a corporation of its own shares). (b) The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, if at the time for performance the corporation can purchase all or part of such shares under section 513.*"

17.    The NY BCL § 906(b)(2)(3) "***Effect of merger or consolidation***", states:

> "*(b) When such merger or consolidation has been effected: (2) All the property, real and personal, including subscriptions to shares, causes of action and every other asset of each of the constituent entities, shall vest in such surviving or consolidated corporation without further act or deed. (3) The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent entities. No liability or obligation due or to become due, claim or demand for any cause existing against any such constituent entity, or any shareholder, member, officer or director thereof, shall be released or impaired by such merger or consolidation. No action or proceeding, whether civil or criminal, then pending by or against any such constituent entity, or any shareholder, member, officer or director thereof, shall abate or be discontinued by such merger or consolidation, but may be enforced, prosecuted, settled or compromised as if such merger or consolidation had not occurred, or such surviving or consolidated corporation may be substituted in such action or special proceeding in place of any constituent entity.*"

18.     The NY BCL § 623(e) *"Procedure to enforce shareholder's right to receive payment for shares"*, states:

> *(e) Upon consummation of the corporate action, the shareholder shall cease to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under this section. A notice of election may be withdrawn by the shareholder at any time prior to his acceptance in writing of an offer made by the corporation, as provided in paragraph (g),...In order to be effective, withdrawal of a notice of election must be accompanied by the return to the corporation of any advance payment made to the shareholder as provided in (g)."*

## GENERAL ALLEGATIONS

### 12% Preferred Issued in 1987

19.     In 1987 the HBJ was faced with a hostile takeover by the British Printing and Communication Corporation, which was offering $44 per share common to HBJ shareholders. To avoid this hostile takeover, in May 1987, HBJ's Board of Directors adopted a recapitalization plan ("1987 Recapitalization"), consisting of payment of special dividends worth $53.50/share to majority shareholders consisting of $40 in cash and issuance of free 12% Preferred notes valued *"at any time"* at $13.50/share, to those shareholders. (Arthur Andersen "Notes", p. F-13 of the 1991 Merger Prospectus).

20.     The 1987 Recapitalization was given to common shareholders and convertible debentures holders, and financed by loans and sales of stock. ("Notes", p.F-13), The 12% Preferred closed on the New York Stock Exchange at $10.88 per share on its first day of issuance and reached $12.25 per share in 1989.

21.     In May 1987, HBJ repurchased some of its common stock and convertible debentures, and in 1988 converted (via redemption) all the preferred stocks it sold to institutional investors into bonds and debentures, in the process, excluding from redemption the 12% Preferred ("Notes", p.F-13).

### "Agreements for Purchase by a Corporation of Its Own Shares" per NY BCL § 514(a)(b)

22.     The detailed description of the HBJ's 12% Preferred agreement for purchase of its own shares (per NY BCL § 514(a)(b)), listed in the 1991 HBJ-GCC Merger Prospectus, promised

that:

> *"HBJ may, at its option, redeem shares of HBJ Preferred Stock in whole at any time, or from time to time in part, at a redemption price equal to the $13.50 per share liquidation preference plus accrued and unpaid dividends, if any, to the date fixed for redemption. <u>HBJ is required to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption."</u>* (Merger Prospectus, p.133, see also Exh.3, p.1)

23.    In 1998, HBJ's Expert Witness, Dr. Paul Pfleiderer opined that this agreement (the redemption clause) of the 12% Preferred was not triggered by the 1991 merger because HBJ had not invoked its option to redeem, and because the 12% Preferred must be outstanding in 2003, which in 1991 was still 12 years away.

> *"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have any effect: a). HBJ must invoke its option to redeem the preferred shares, or b). HBJ preferred shares must be outstanding in the year 2003. Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered to the holders of the preferred stock of HBJ was a fair price".* (Dr.P.Pfleiderer, HBJ's Expert Witness, 4/03/98, Exh.3, p.2)

24.    Since Plaintiff's 12% Preferred is still outstanding, it should have triggered now the mandatory 2003-2007 redemption clause.

### 1991 HBJ Merger with the General Cinema Corporation

25.    In 1991, as a result of HBJ's self-induced and highly leveraged financial position, HBJ entered into a merger agreement with General Cinema Corporation (GCC) ("Notes", p.F-14). It merged with GCC forming Harcourt General Inc. in violation of full disclosure requirements.

26.    During this merger HBJ did not inform its shareholders that under the NY BCL § 906 (b)(3), the new corporation must inherit all its debts and liabilities and that the 12% Preferred is a debt and a liability. HBJ only referred its stockholders to read about their rights in the Appendix D to the Merger Prospectus, on 12/09/91 writing: *For further information regarding your rights as a dissenting shareholder, and the procedures to be followed to perfect those rights, please refer to the Joint Proxy Statement/Prospectus dated October 25, 1991."*

27.     In this reference (App. D), HBJ just listed § 623 and § 910 of the NY BCL. These Sections describe only two rights available to the dissenting shareholders, namely those of (1) appraisal, and (2) cash or share exchange, omitting the third option, wherein a given debt security or liability possesses *vested property rights*, i.e., contractual mandatory redemption date and value. This future debt or liability according to the NY BCL § 906 (b)(3), § 514(a)(b), and the United States Constitution Article I § 10, and the Amendment XIV, § 1, cannot be extinguished by the merger or an appraisal, for it has to be taken over by the parent corporation.

28.     Thus to the dissenters the <u>undisclosed</u> NY BCL § 906 (b)(3), and § 514(a)(b), were the third option, as it exempts any debt or a liability, such as the 12% Preferred from an appraisal ("*Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed ...*" <u>*Breslav v. New York & Queens Electric Light & Power Co, id.*</u>), and it requires redemption when due:

> "*The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. No liability or obligation due or to become due, claim or demand for any cause existing against any such corporation, or any member, officer or director thereof, shall be released or impaired by such merger or consolidation.* " (NY BCL § 906 (b)(3)) and,

> "*(a) An agreement for the purchase by a corporation of its own shares shall be enforceable by the shareholder and the corporation ...The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, if at the time for performance the corporation can purchase all or part of such shares under section 513.* " (NY BCL § 514(a)(b)).

29.     On 10/25/91 HBJ intentionally did not disclose to any of the dissenters their third option, i.e., to wait until the year 2003 for the mandatory redemption prescribed by the NY BCL § 906(b)(3), § 514(a)(b) and § 623(j). HBJ only extended an offer to purchase the dissenters' Loan Certificates as Stock Certificates per NY BCL § 623(e), which is *exclusive* only to non-debt and non-liability securities.

30.     On 11/01/91 the Plaintiffs informed by HBJ only about NY BCL § 623 and § 910, dissented from the merger.

31.     Thus to the Plaintiffs, the HBJ also made an 80% cash advance of the full $3,507.27

merger consideration (69¢/share), requesting surrender of the Certificate in exchange for the remaining 20% payment, and informing that by accepting $2,810.90 the Plaintiffs will not be giving up any dissenters' rights.

32.     Although, this move was in compliance with the NY BCL § 623 (g), i.e., *"Every advance payment ... will include advice to such holder that acceptance of such advance payment by a dissenting holder will not constitute a waiver of such holder's dissenter's rights..."*, it was not in compliance with the relevant NY BCL § 906(b)(3), § 514(a)(b) nor § 623(j).

33.     The Plaintiffs rejected HBJ's $3,507.27 offer, and made a $65,809.60 Counteroffer, which was excluding unpaid dividends in arrears from 12/30/89 thru 11/25/91, simply demanding the promised *liquidation preference* of the 12% Preferred, for *"at any time"* at the option of the company or *"in the event of any liquidation, dissolution or winding-up of HBJ, HBJ Preferred Stock has a liquidation preference of $13.50 (per share), plus any accrued and unpaid dividends to the liquidation date"*. HBJ ignored this reasonable $65,809.60 Counteroffer.

34.     In February 1992 Plaintiffs sued HBJ in the Southern District of California's Federal Court for breach of the *"liquidation preference"* promise (Case No. CV92-431-JSR, John S. Rhoades, District Judge, Presiding).

35.     In effect, contrary to the requirements of the NY BCL § 623(e) and § 623(g):

> *(e). "In order to be effective, withdrawal of a notice of election to dissent must be accompanied by the return to the corporation of any advance payment made to the shareholder... (g). If..., the corporation making the offer and any shareholder agree upon the price to be paid for his shares, payment therefor shall be made ..., upon the surrender of the certificates for any such shares represented by certificates."*

Plaintiffs never returned to the corporation the advance payment, never agreed to the redemption price of the Certificate, and never surrendered it, so the surviving Plaintiff per NY BCL § 623(j) retains his status as a claimant against the corporation, and the HBJ's 2003-2007 debt obligation according to the NY BCL§ 906 (b)(3) and § 514 (a)(b), is actual and outstanding until fully satisfied.

**12% Preferred Characterized as a Liability**

36.      HBJ's 12% Preferred was a liability possessing *"vested property rights"* protected by the United States Constitution Article I § 10 and Amendment XIV, § 1, and other State statutes, stemming from its mandatory redemption in 20% increments over the 5 years commencing on June 30, 2003 at $13.50/share plus accumulated 12%/yr dividends.

37.      The following excerpts from the 1990 Form 10-K (pp.28, 29, Exh.6), and the audit done by Arthur Andersen and Company (published in the 1991 Merger Prospectus), identify and clarify the characterization of the 12% Preferred as being truly a debt and a liability to HBJ:

38.      The 12% Preferred is a debt with mandatory redemption provision, possessing a redemption face value of $13.50 per share, with a mandatory maturity date, redeemable in full, beginning June 30, 2003 in 20% level increments over 5 years ("Notes" p.F-21, and 1989 Moody's Industrial Manual, p.1288)

39.      When declared, quarterly dividends were authorized to be issued in shares of additional 12% Preferred (Pay-In-Kind until 6/30/93), to be reinvested at a fixed 12% per year of the $13.50/share liquidation preference or $1.62/share/year. Such that, if the market value of the 12% Preferred in a given year was $1.62, the yearly dividend should have amounted exactly to just one share ("Notes" p.F-21). Last partial dividend distribution was made by HBJ on 12/31/90. In early 1991 HBJ Board of Directors, due to a low market value of the 12% Preferred stopped issuing Pay-In-Kind dividends ("Notes" p.F-38), which though unpaid, *"unpaid dividends accumulate"* ("Notes", p.F-21 and Form 10-K, pp.28, 29, Exh.6).

40.      For the purpose of Pay-In-Kind dividends (PIK, paid in additional shares of the 12% Preferred) and calculation of dividends in arrears, before these dividends were declared, *"the 12% Preferred has been recorded at its market value when issued. The difference between the recorded amount and the redemption price of such securities is being accreted to the date of redemption using the effective interest method"* ("Notes" p.F-21, F-36, and Form 10-K, p.28, Exh.6), such that the quarterly dividend of $0.405/share (3% of $13.50) could be properly converted to the x number of newly issued shares at the market value. For example, if the market value of the 12% Preferred at the end of a quarter was $0.405/share, HBJ should have issued just one share of 12% Preferred as the quarterly Pay-in-Kind dividend.

41.    Since 1987 the unpaid dividends on the 12% Preferred were authorized to accumulate (in arrears), on 06/30/91 amounting to an Aggregate Liquidation Preference of $869,684,000.

*"The financial statements included herein reflect pay-in-kind dividends in arrears of 3,698,032 shares of 12% Preferred Stock as of June 30, 1991, as well as the accretion described above. The $13.50 per share liquidation preference of such 3,698,032 shares is included in the $869,684,000 aggregate liquidation preference presented on the consolidated condensed balance sheet." ..."* ("Notes" p.F-36).

**"Redeemable 12% Preferred Stock**: *The terms of the 12% Preferred Stock provide for quarterly dividends as and when declared by the Board of Directors at the rate of 12% of their liquidation preference per year, which dividends through the dividend period ending 6/30/93 may be paid in additional shares of 12% Preferred. In early 1991, the Board of Directors voted to omit the pay-in-kind dividend for the quarter ending 3/31/91 ... Although the HBJ has no legal obligation to pay dividends on the 12% Preferred, unpaid dividends accumulate..."* ("Notes" p.F-21, Form 10-K, pp.28, 29, Exh.6)

42.    12% Preferred is classified outside the shareholders' equity, i.e., it is a debt and a liability.

**"Shareholders' Equity**: *The only outstanding shares of HBJ capital stock are its common stock and its 12% Preferred Stock. The 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity."* ("Notes" p.F-22, Form 10-K, p. 29, Exh.6)

43.    Redeemable 12% Preferred is listed as a Liability on financial statements (Notes, p.F-5).

44.    In 1998, HBJ's Financial Expert Witness, P.Pfleiderer, Ph.D., also concluded that the 12% Preferred is a liability due in 2003. (Exh.3)

*"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have any effect: a). HBJ must invoke its option to redeem the preferred shares, or b). HBJ preferred shares must be outstanding in the year 2003. Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered to the holders of the preferred stock of HBJ was a fair price". (Dr.P.Pfleiderer, HBJ's Expert Witness, 4/03/98, Exh.3, p.2)*

45.    Thus, it is clear that the issuance of the 12% Preferred, initially used to thwart the hostile takeover by the British Printing and Communication Corporation, were actually loans, key instruments in the long term debt financing, the effect of which was to put the holders of the 12% Preferred in the position of lenders.

### 12% Preferred a Debt Security

46.    To help finance HBJ's 1987 Recapitalization, Plaintiffs loaned money to HBJ at 12% per year via their purchase of the 12% Preferred. Plaintiffs paid for the **Debt Security**, in its full statutory meaning -

> "[a]n obligation of an issuer, or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer that is all of the following:
>
>    (a) It is represented by a security certificate in bearer or registered form, or the transfer of it may be registered upon books maintained for that purpose by or on behalf of the issuer.
>
>    (b)    It is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations.
>
>    (c)    It is either of the following:
>       a. It is, or is of a type, dealt in or traded on securities exchanges or securities markets.
>       b. It is a medium for investment and by its terms expressly provides that it is a security governed by this division". CA Commercial Code §8102(15).

47.    The Plaintiff purchased a debt security, which was identified as 12% Preferred, because the Board of Directors would declare dividends at the annual rate of 12% of the liquidation preference and redemption value of $13.50 per share which "*HBJ is required to redeem ...*" (Merger Prospectus of 10/25/91 at p.133, Form 10-K, pp.28, 29, Exh.6).

48.    Dividends will accrue in arrears, even if not paid, just as interest compounds on a loan (Merger Prospectus of 10/25/91 at p.133, p.F-21, p.F-36 and Form 10-K, pp.28, 29, Exh.6).

49.    The 06/30/2003 and subsequent installment redemptions through 06/30/2007, are mandatory payments, just as a note would be callable by the holder. "*The 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity*". (Andersen & Company Notes to Consolidated Financial Statements, p. F-22 of the 10/25/91 Merger Prospectus and Form 10-K, pp.28, 29, Exh.6).

50.    1989 Moody's Industrial Manual publication on p.1288 also described the 12% Preferred as a debt security, informing:

*DIVIDEND RIGHTS* – *Cumulative dividends are payable quarterly on these shares from the issuance date, July 27, 1987, at the rate of 12% of their liquidation preference per year. Through June 30, 1993, dividends will be paid in additional shares of 12% Preferred Stock. Paid in stock equivalent to $0.405.*

*CALLABLE* – *Company is required to redeem, in full in level increments over 5 years commencing June 30, 2003.*

51.    Had the Plaintiffs not purchased a debt security, clearly it would have no Aggregate Liquidation Preference of $869,684,000 on 06/30/91, its dividends would not be calculated in arrears, there would not be cumulative interest rate of 12%, there would not be stated redemption payment period, and there would be no stated amount of redemption. Plaintiffs' purchase was that of a debt security. Plaintiffs' investment is secured by the Aggregate Liquidation Preference of the contractual agreement. If the 12% Preferred was not a debt security and its value was set to the final merger offer of $0.69/share, then the calculated damages on 6/30/07 (since the last day of trading 11/25/91 on the New York Stock Exchange), would have reached an absurd astronomical proportions of $3.76 billion billion ($3.76 \times 10^{18}$), confirming the fact that the 12% Preferred has always been a debt security, and that ever since its issuance in 1987, to prevent this absurdity, its market value had to be kept by HBJ close to its final redemption price of $13.50/share.

52.    Indeed, the debt security is a contractual obligation which cannot be impaired without the breach thereof. Plaintiffs' right to redemption at the time and in the amount stated by HBJ is a Contract. For HBJ to refuse to honor its contractual obligation is an impairment of Plaintiff's contract rights and a deprivation of *vested property rights* protected by the United States Constitution Article I § 10 and Amendment XIV, § 1.

**Ownership of the 12% Preferred**

53.    The Plaintiff Jerry Czajkowski and his mother Lonia Czajkowski, purchased net 4,710 shares of 12% Preferred from HBJ between 10/16/89 and 11/28/90, upon which reinvested PIK dividends in arrears, on 11/25/91, resulted in the total ownership of 83,165.50 shares (see Table 1, infra). HBJ's 11/21/91 Certificate almost does not show any shares in arrears, as it became known to the Plaintiff upon preparation of Table 1. This Certificate shows only 5,083 shares - 4,710, or just 373 shares out of 78,455.5 (83,165.50 - 4,710) shares in arrears, on 11/25/91.

Plaintiff purchased these 4,710 shares as a Debt and a Liability of HBJ, based on the promise of the mandatory 6/30/03 - 6/30/07 redemption plus accumulated 12% dividends, as it was described and published in the 1989 Moody's Industrial Manual, p.1288 (Exh.2). The following Table 1 shows all the reinvested dividends at the market price (in arrears on 11/25/91), as of the Last Day of Trading (LDT) on the New York Stock Exchange, and subsequently the quarterly 3% interest ($0.405/share) earned on the reinvested dividends at the redemption price of $13.50/share, until the mandatory redemption date of 6/30/03 thru 6/30/07.

**Table 1**. Reinvested HBJ Pay-In-Kind (PIK) Dividends in Arrears on the 12% Preferred

| DATE | SHARES BOUGHT 4710 | SHARE +PIK DIV SUM | QUARTERLY DIVIDEND AT $0.405/SHARE | REINVESTED PIK DIVIDEND SHARES IN ARREARS | STOCK MARKET OR REDEMPTION PRICE PER SHARE | REDEMPTION VALUE AT $13.5/SHARE |
|---|---|---|---|---|---|---|
| 10/16/89 | 1000 | 1,000.00 | | | 8 ¾ | $13,500.00 |
| 12/26/89 | 200 | 1,200.00 | | | 4 | $16,200.00 |
| 12/29/89 | | 1,305.08 | $486.00 | 105.08 | 4 5/8 | $17,618.59 |
| 01/17/90 | 200 | 1,505.08 | | | 3 ½ | $20,318.59 |
| 03/30/90 | | 1,726.74 | $609.56 | 221.66 | 2 ¾ | $23,310.97 |
| 04/18/90 | 500 | 2,226.74 | | | 2 5/8 | $30,060.97 |
| 05/07/90 | 240 | 2,466.74 | . | | 2 ¾ | $33,300.97 |
| 05/17/90 | 70 | 2,536.74 | | . | 2 5/8 | $34,245.97 |
| 06/30/90 | | 2,993.35 | $1,027.38 | 456.61 | 2 ¼ | $40,410.24 |
| 09/30/90 | | 4,609.76 | $1,212.31 | 1,616.41 | ¾ | $62,231.78 |
| 10/11/90 | 500 | 5,109.76 | | | ¾ | $68,981.78 |
| 10/26/90 | 1000 | 6,109.76 | | | ½ | $82,481.78 |
| 11/28/90 | 1000 | 7,109.76 | | | ½ | $95,981.78 |
| 12/31/90 | | 14,788.30 | $2,879.45 | 7,678.54 | 3/8 | $199,642.09 |
| 03/29/91 | | 23,499.96 | $5,989.26 | 8,711.65 | 11/16 | $317,249.44 |
| 06/28/91 | | 36,189.94 | $9,517.48 | 12,689.98 | ¾ | $488,564.13 |
| 09/30/91 | | 59,641.01 | $14,656.92 | 23,451.08 | 5/8 | $805,153.69 |
| 11/25/91 | LDT | 83,165.50 | $14,702.81 | 23,524.49 | 5/8 | $1,122,734.31 |
| 12/31/91 | | 84,141.79 | $13,179.92 | 976.29 | 13.50 | $1,135,914.23 |
| 03/31/92 | | 86,666.05 | $34,077.43 | 2,524.25 | 13.50 | $1,169,991.66 |
| 06/30/92 | | 89,266.03 | $35,099.75 | 2,599.98 | 13.50 | $1,205,091.41 |
| 09/30/92 | | 91,944.01 | $36,152.74 | 2,677.98 | 13.50 | $1,241,244.15 |
| 12/31/92 | | 94,702.33 | $37,237.32 | 2,758.32 | 13.50 | $1,278,481.48 |
| 03/31/93 | | 97,543.40 | $38,354.44 | 2,841.07 | 13.50 | $1,316,835.92 |
| 06/30/93 | | 100,469.70 | $39,505.08 | 2,926.30 | 13.50 | $1,356,341.00 |
| 09/30/93 | | 103,483.79 | $40,690.23 | 3,014.09 | ˙13.50 | $1,397,031.23 |
| 12/31/93 | | 106,588.31 | $41,910.94 | 3,104.51 | 13.50 | $1,438,942.16 |
| 03/31/94 | | 109,785.96 | $43,168.26 | 3,197.65 | 13.50 | $1,482,110.43 |
| 06/30/94 | | 113,079.54 | $44,463.31 | 3,293.58 | 13.50 | $1,526,573.74 |
| 09/30/94 | | 116,471.92 | $45,797.21 | 3,392.39 | 13.50 | $1,572,370.95 |
| 12/31/94 | | 119,966.08 | $47,171.13 | 3,494.16 | 13.50 | $1,619,542.08 |

| | | | | |
|---|---|---|---|---|
| 03/31/95 | 123,565.06 | $48,586.26 | 3,598.98 | 13.50 | $1,668,128.35 |
| 06/30/95 | 127,272.01 | $50,043.85 | 3,706.95 | 13.50 | $1,718,172.20 |
| 09/30/95 | 131,090.17 | $51,545.17 | 3,818.16 | 13.50 | $1,769,717.36 |
| 12/31/95 | 135,022.88 | $53,091.52 | 3,932.71 | 13.50 | $1,822,808.88 |
| 03/31/96 | 139,073.57 | $54,684.27 | 4,050.69 | 13.50 | $1,877,493.15 |
| 06/30/96 | 143,245.77 | $56,324.79 | 4,172.21 | 13.50 | $1,933,817.94 |
| 09/30/96 | 147,543.15 | $58,014.54 | 4,297.37 | 13.50 | $1,991,832.48 |
| 12/31/96 | 151,969.44 | $59,754.97 | 4,426.29 | 13.50 | $2,051,587.46 |
| 03/31/97 | 156,528.52 | $61,547.62 | 4,559.08 | 13.50 | $2,113,135.08 |
| 06/30/97 | 161,224.38 | $63,394.05 | 4,695.86 | 13.50 | $2,176,529.13 |
| 09/30/97 | 166,061.11 | $65,295.87 | 4,836.73 | 13.50 | $2,241,825.01 |
| 12/31/97 | 171,042.94 | $67,254.75 | 4,981.83 | 13.50 | $2,309,079.76 |
| 03/31/98 | 176,174.23 | $69,272.39 | 5,131.29 | 13.50 | $2,378,352.15 |
| 06/30/98 | 181,459.46 | $71,350.56 | 5,285.23 | 13.50 | $2,449,702.71 |
| 09/30/98 | 186,903.24 | $73,491.08 | 5,443.78 | 13.50 | $2,523,193.79 |
| 12/31/98 | 192,510.34 | $75,695.81 | 5,607.10 | 13.50 | $2,598,889.61 |
| 03/31/99 | 198,285.65 | $77,966.69 | 5,775.31 | 13.50 | $2,676,856.30 |
| 06/30/99 | 204,234.22 | $80,305.69 | 5,948.57 | 13.50 | $2,757,161.99 |
| 09/30/99 | 210,361.25 | $82,714.86 | 6,127.03 | 13.50 | $2,839,876.85 |
| 12/31/99 | 216,672.09 | $85,196.31 | 6,310.84 | 13.50 | $2,925,073.15 |
| 03/31/00 | 223,172.25 | $87,752.19 | 6,500.16 | 13.50 | $3,012,825.35 |
| 06/30/00 | 229,867.42 | $90,384.76 | 6,695.17 | 13.50 | $3,103,210.11 |
| 09/30/00 | 236,763.44 | $93,096.30 | 6,896.02 | 13.50 | $3,196,306.41 |
| 12/31/00 | 243,866.34 | $95,889.19 | 7,102.90 | 13.50 | $3,292,195.60 |
| 03/31/01 | 251,182.33 | $98,765.87 | 7,315.99 | 13.50 | $3,390,961.47 |
| 06/30/01 | 258,717.80 | $101,728.84 | 7,535.47 | 13.50 | $3,492,690.31 |
| 09/30/01 | 266,479.33 | $104,780;71 | 7,761.53 | 13.50 | $3,597,471.02 |
| 12/31/01 | 274,473.72 | $107,924.13 | 7,994.38 | 13.50 | $3,705,395.15 |
| 03/31/02 | 282,707.93 | $111,161.85 | 8,234.21 | 13.50 | $3,816,557.01 |
| 06/30/02 | 291,189.16 | $114,496.71 | 8,481.24 | 13.50 | $3,931,053.72 |
| 09/30/02 | 299,924.84 | $117,931.61 | 8,735.67 | 13.50 | $4,048,985.33 |
| 12/31/02 | 308,922.58 | $121,469.56 | 8,997.75 | 13.50 | $4,170,454.89 |
| 03/31/03 | 318,190.26 | $125,113.65 | 9,267.68 | 13.50 | $4,295,568.54 |
| 06/30/03 | 327,735.97 | $128,867.06 | 9,545.71 | 13.50 | $4,424,435.59 |
| 09/30/03 | 337,568.05 | $132,733.07 | 9,832.08 | 13.50 | $4,557,168.66 |
| 12/31/03 | 347,695.09 | $136,715.06 | 10,127.04 | 13.50 | $4,693,883.72 |
| 03/31/04 | 358,125.94 | $140,816.51 | 10,430.85 | 13.50 | $4,834,700.23 |
| 06/30/04 | 368,869.72 | $145,041.01 | 10,743.78 | 13.50 | $4,979,741.24 |
| 09/30/04 | 379,935.81 | $149,392.24 | 11,066.09 | 13.50 | $5,129,133.48 |
| 12/31/04 | 391,333.89 | $153,874.00 | 11,398.07 | 13.50 | $5,283,007.48 |
| 03/31/05 | 403,073.90 | $158,490.22 | 11,740.02 | 13.50 | $5,441,497.70 |
| 06/30/05 | 415,166.12 | $163,244.93 | 12,092.22 | -13.50 | $5,604,742.64 |
| 09/30/05 | 427,621.10 | $168,142.28 | 12,454.98 | 13.50 | $5,772,884.91 |
| 12/31/05 | 440,449.74 | $173,186.55 | 12,828.63 | 13.50 | $5,946,071.46 |
| 03/31/06 | 453,663.23 | $178,382.14 | 13,213.49 | 13.50 | $6,124,453.61 |
| 06/30/06 | 467,273.13 | $183,733.61 | 13,609.90 | 13.50 | $6,308,187.21 |
| 09/30/06 | 481,291.32 | $189,245.62 | 14,018.19 | 13.50 | $6,497,432.83 |

| 12/31/06 | 495,730.06 | $194,922.98 | 14,438.74 | 13.50 | $6,692,355.81 |
| 03/31/07 | 510,601.96 | $200,770.67 | 14,871.90 | 13.50 | $6,893,126.49 |
| **06/30/07** | **525,920.02** | 206,793.79 | 15,318.06 | 13.50 | **$7,099,920.28** |

54.     The Plaintiff after death of his mother Lonia Czajkowski (August 4th 2005), became the beneficial owner of all the outstanding shares of the 12% Preferred in arrears (525,920.02 shares on 06/30/07), and according to the 1992-2001 Harcourt General's dividend tax records (Forms-1099-DIV), he is also an owner of 200 shares of Harcourt General's common stock plus never received (though reported to the IRS) dividends of $1,330.

55.     On 11/01/91 Plaintiff and Lonia Czajkowski, submitted a Notice of Election to Dissent to HBJ's merger with GCC, demanding payment for their shares.

56.     Thereafter, HBJ issued a Dissenter's Stock Certificate to Plaintiff, showing only the purchased 4,710 shares (5,083 shares according to the HBJ records, Exh.1) of 12% Preferred as of 11/21/91, in the process excluding all the shares in arrears on 11/25/91 (in all 83,165.50 shares, worth $1,122,734.31). The original Certificate dated 11/21/91 is in Plaintiff's possession, a copy thereof is attached as Exh.1.

57.     On 12/09/91, HBJ issued a payment to Plaintiff of $2,810.90 as a partial statutory (per NY BCL § 623(g)), 80% offer to pay for 5083 shares at $0.69/share. As the Plaintiff has now discovered, this offer should have been for all the outstanding (in arrears) 83,165.50 shares at $0.69/share or $57,384.19. The transmittal by HBJ was accompanied by the advice that acceptance of the payment did not waive any dissenters' rights and directed Plaintiff to refer to the 10/25/91 Joint Proxy Prospectus ("Merger Prospectus").

58.     On 12/20/91 the Plaintiff and his mother rejected the offer, bringing to HBJ's attention that the Merger Prospectus stated, that the 12% Preferred required payment in full of $13.50/share *upon liquidation, dissolution or winding up of HBJ*. In reliance on the provisos of the Merger Prospectus, the Plaintiff made a counteroffer to HBJ for the balance at the face value of $13.50 per 5083 shares in the amount of $65,809.60 (less the $2,810.90 prepayment and without including the hidden by HBJ 83,165.50 dividend shares in arrears). This $65,809.60 Counteroffer was slightly more than $57,384.19 that HBJ should have offered on 12/09/91 for 83,165.50 shares at $0.69/share.

**Federal Litigation (1992-1999)**

59.    HBJ did not respond to Plaintiffs' reasonable 12/20/91 counteroffer to settle for $13.50 per share for 5083 shares. What followed was a lengthy and protracted litigation in the Southern District of California's Federal Court. That litigation was resolved as an action for *appraisal* of the 12% Preferred (Exhs.4 and 5).

60.    Based on the Plaintiffs' *"liquidation preference"* cause of action, in 1994 the 9th Circuit Court of Appeals concluded that there was no *liquidation* of HBJ, and so the *"exclusive remedy"* of the 12% Preferred Stock in 1991 per NY BCL § 623 was an *appraisal*, and issued a remand giving Plaintiffs the leave to amend their 1992 Complaint with an *appraisal* (Exh.4).

> *"The Czajkowskis make substantial allegations that the merger price of $0.75 per share may not have been the "fair value" to which Czajkowskis were entitled under the NY BCL § 623 ... Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law. ... We remand to allow the Czajkowskis leave to amend their complaint to seek appraisal under the New York Statute. VACATED and REMANDED."(p.3, Exh.4)*

61.    In 1998 an appraisal proceeding in the District Court was halted by granting Defendants' Motion for Summary Judgment based on the Expert Witness discovery, that at the time of the 1991 merger, HBJ's $0.69 offer was a fair market value of the 12% Preferred (the actual market price of the 12% Preferred on LDT 11/25/91, was 5/8 or $0.625/share, and unknown to the Plaintiff at that time, Plaintiff owned 83,165.50 shares in arrears and not 5083, see Table 1).

62.    However, the 1998 final order granting Defendants Motion for Summary Judgment, did not order the Plaintiffs to surrender and sell the Loan Certificate for 69¢/share. It only affirmed HBJ's 1992 contention, that at the time of the 1991 merger, the 69¢/share was a *"fair price"*, and if Plaintiffs should agree to sell (since there was no liquidation of HBJ), HBJ did not have to offer them more than 69¢/share.

63.    Because in 1991 the proposed redemption of the 12% Preferred at $0.69/share was not mandatory, Plaintiffs' *vested property rights* were not destroyed by the merger, and Plaintiffs could not invoke the Constitutional protections as exemplified in <u>*Weckler v. Valley City, id.*</u> and <u>*Breslav v. New York & Queens Electric Light & Power Co, id.*</u>, where it is concluded that the

-16-

*"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed..."*

64.    The same protective of *vested property rights* conclusion was reached by the HBJ's Expert Witness, Dr.P.Pfleiderer, who wrote in support of the Motion for Summary Judgment (Exh.3):

> *"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have any effect: a). HBJ must invoke its option to redeem the preferred shares, or b). HBJ preferred shares must be outstanding in the year 2003. Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered to the holders of the preferred stock of HBJ was a fair price". (Dr.P.Pfleiderer, HBJ's Expert Witness, 4/03/98, Exh.3, p.2)*

65.    Plaintiff's claim is based today on the failure of the HBJ to comply with the NY BCL § 514(a)(b) and pay the face value of the 12% Preferred as a liability in 2003-2007 which had not accrued at any time during the federal litigation and therefore cannot preclude an action for breach of the redemption contract today.

### *"Exclusive Remedy"* of Appraisal per NY BCL § 906(b)(3) and § 514(a)(b) is Not *"Exclusive"*, and Does Not Destroy Redemption Rights or *Vested Property Rights*

66.    *"Exclusive Remedy"* of appraisal per NY BCL § 623(e) can not and does not nullify any contractual obligations such as *vested property rights* protected by the NY BCL § 906 (b)(3), § 514(a)(b) and the United States Constitution Article I § 10 and Amendment XIV, § 1.

67.    In 1950 the meaning and applicability of the term *"exclusive remedy"* has been explained by Judge Starr of the United States District Court W.D. Michigan S.D., as follows:

> *"Objection by any such shareholder to any action of the corporation provided in this section and his rights thereafter under this section shall be his **exclusive remedy** ."*
>
> *The above-quoted §§ 44 and 57 of the General Corporation Act should be considered and construed in connection with §§ 59 and 192 of the act. When so considered, it would appear that in using the term "exclusive remedy" in § 44 the legislature simply meant that a minority stockholder who "voted against" a proposed good-faith sale of corporate assets could no longer, as he could in the past, prevent or block the sale against the wishes of a majority of stockholders, and that if he voted against the sale, he could only demand that the corporation purchase his stock and pay to him the fair cash value*

*thereof. Such an interpretation of § 44 would appear to be in harmony with the purpose of this and similar statues which where enacted to permit a majority of stockholders to authorize a good-faith sale, lease, or exchange of corporate assets and a fundamental change in the corporate structure without victimizing the minority stockholders, and yet at the same time prevent a minority stockholder from establishing a nuisance value for his shares. **An interpretation of § § 44 and 57 to permit the change or destruction of redemption rights or other vested property rights would certainly be in conflict with § 59 of the act, which provides that "The liability of any corporation * * * shall not in any way be lessened or impaired by the sale of any assets thereof," and in conflict with § 192 of the act, which provides that "This act shall not impair or affect any * * * right accruing, accrued, or acquired, or liability * * * incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if this act had not been passed." It should be noted that § 192 preserves not only accrued rights, but also the remedies for preserving such rights, for it specifically states that they may be asserted, enforced, and prosecuted as if the act had not been passed." (p.455, Weckler v. Valley City 93 F.Supp.451.Affirmed, 188 F.2d 367)*

### "Exclusive Remedy" of Appraisal Does Not Apply to Preferred Stocks which Possess *Vested Property Rights*

68.    Furthermore:

> *"The right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent." (<u>Weckler v. Valley City</u> 93 F.Supp.451.Affirmed, 188 F.2d 367)*

69.    *Moreover, "the Supreme Court further stated,... 'It seems clear that the redemption right of plaintiff as a preferred stockholder is something more and different in character than an ordinary incidental right of a stockholder, such as voting for the election of a director of the company, and that his right is contractual in nature. This contract right was presumably a condition precedent to plaintiff's determination to purchase preferred stock in the defendant company. The redemption provision was a definite undertaking on the part of the defendant corporation to redeem at a given time and on given terms the stock plaintiff agreed to purchase. Assuming, as we fairly may, that in the absence of the redemption provision plaintiff would not have purchased his stock, or that defendant's undertaking to redeem was an inducing cause in consequence of which plaintiff did purchase, the provision for redemption was something more than a mere incident to corporate relationship, it was a definite contractual undertaking, the proposal for which antedated and consummation of which coincided with the purchase of the stock by plaintiff, who prior to that time was not identified with the corporation.'" (p.452 <u>Weckler v. Valley City</u>, id.)*

70.    The New York case law of <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, *291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708, confirms the same:*

71.    *"Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract and as divesting stockholder of vested interest in corporation without due process of law,...Const. art. 8, § 1; Const. U.S. Amend. 14; Const. U.S. art. 1, § 10".*

72.    *"Power reserved in state to amend corporation's charter is not unlimited, and its exercise is subject to restrictions imposed by other provisions of State and Federal Constitutions, such as requirement of due process, and vested property rights and obligations of contract must not be destroyed or impaired (Const. art.8, § 1; General Corporation Law, § 5; Const. U.S. Amend.14; Const. U.S. art.1, § 10.")*

73.    *"Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest which may not be divested without stockholder's assent, and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares."*

74.    *"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed by changing noncallable stock into callable stock by vote of two-thirds of stockholders."*

### No "Res Judicata"

75.    Plaintiffs' 1992 *liquidation preference* cause of action is not the same as the present Breach of Contract of the mandatory year 2003-2007 redemption provision, for in 1991 there could not had been a breach of something that has not occurred yet, set to happen 12-16 years into the future, and the *"Exclusive Remedy"* of appraisal per NY BCL § 906(b)(3) and § 514(a)(b) is not *"Exclusive"* nor mandatory as shown above, for it cannot destroy *redemption rights* or *vested property rights* (<u>Weckler v. Valley City, Breslav v. New York & Queens Electric Light & Power Co.</u> and the <u>United States Constitution Article I § 10 and Amendment XIV, § 1, supra</u>).

76.    In short, the 9th Circuit and the U.S. District Court cases in 1994 and in 1999 were decided on the basis of an *appraisal remedy* for stock, and could not have been decided on the basis of breach of the redemption contract which would not accrue until 2003-2007.

### Corporate Liability per NY BCL § 906(b)(2)(3)

77.    The NY BCL § 906 (b)(3) states that:

> *"The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. **No liability or obligation due or to become due**, claim or demand for any cause existing against any such corporation, or any member, officer or director thereof, **shall be released or impaired by such merger or consolidation.**"*

78.    According to HBJ, the 12% Preferred was a liability becoming due on June 30, 2003 thru June 30, 2007 (Form 10-K, pp.28, 29, Exh.6), and per NY BCL *"no liability or obligation due or to become due, ... shall be released or impaired by such merger or consolidation",* neither in 1991 by the merger of HBJ and GCC, nor in 2001 by the merger of Harcourt General and Reed Elsevier.

79.    In *Fox v. MGM Grand*, the appellate court affirmed dismissal on the basis that the debenture holder had not suffered damage at the time of filing suit, i.e., the loan had not ripened to maturity for payment. *Fox v. MGM Grand Hotels, Inc. (1982) 137 Cal.App.3d 524, 525,* rehearing denied.

80.    A surviving corporation in a merger succeeds to all the rights and property of the disappearing corporation and is subject to all its debts and liabilities just the same as if those debts were originally incurred by the surviving corporation. *Maudlin v. Pacific Decision Sciences Corporation* (2006) 137 Cal.App. 4th 1001, 1016.

81.    Here, the 1991 merger provided that HBJ will continue as the Surviving Corporation, hence, the liability for its debts would continue under the newly formed Harcourt General, Inc.

82.    The 1991 Merger Prospectus provided that upon winding up of the HBJ, the 12% Preferred would have a liquidation preference plus accrued and unpaid dividends, mandating payment in full in 2003-2007 (Merger Prospectus, p.134 and Form 10-K, pp.28, 29, Exh.6).

83.    The 2001 merger with the Reed Elsevier provided that the Harcourt General will become a subsidiary of Reed Elsevier which will assume Harcourt's debts.

84.    In summary, then, Plaintiff's remedy as a note holder is for breach of contract, only when he has incurred damages as a result of a breach of that agreement.

85.     Here, the mandatory redemption of the 12% Preferred was to begin at maturity on 06/30/2003 thru 06/30/2007. There has been no redemption payment made to the Plaintiff either by HBJ, Harcourt General, Inc., nor Reed Elsevier, Inc.

**Anticipatory Repudiation**

86.     There is no reference in any of the merger prospectus documents, including the restated merger of 8/24/91, and amended merger of 10/18/91, or in Andersen and Company Notes to financial statements of 6/30/91, that HBJ has made a stated repudiation of its contractual obligation to pay cumulative dividends and redeem the 12% Preferred in 2003-2007.

87.     Even assuming that there was such a repudiation in 1991, HBJ's repudiation of its contractual obligations would be anticipatory to the 6/30/2003 - 6/30/2007 redemption. Because the anticipatory breach has just occurred on 06/30/03 thru 06/30/07, the injured party may wait until the time for performance to file his suit. *Brewer v. Simpson* (1960) 53 Cal.2d 567, 593.

88.     Therefore, the Plaintiff has a valid breach of contract claim against HBJ, whose debts and liabilities were assumed by the Harcourt General in the merger of 1991, and which debts and liabilities were subsequently assumed by Reed Elsevier in the merger of 2001. HBJ and its successors have been given the opportunity to amicably redeem the 12% Preferred in 1991, 1996, 2004, 2005 and 2007. The limitations period, then, does not accrue until the time when there is an actual breach, which is now, and not in 1991.

**HBJ's 1996 Confidential Settlement Offer of $15,000**

89.     On 05/03/96 HBJ made a confidential settlement offer in the amount of $15,000, which Plaintiffs correctly declined as inadequate because in retrospect: (1) on 03/31/96 Plaintiffs owned 139,073 shares of the 12% Preferred, in arrears worth $1,877,493, (2) HBJ's "*liquidation preference*" valuation "*at any time*" was $13.50/share, (3) HBJ's mandatory 2003-2007 redemption was to be at $13.50/share plus 12%/year accumulated dividends, and (4) because of investment returns in the major U.S. Corporations. For example $20,000 invested on 10/09/89 in the Intel Corporation would have yielded on 12/23/96, $315,000 and on 8/01/00, $1,445,000.

# DAMAGES

90.    On 16 July 2007 Defendant informed that, *"Reed Elsevier is pleased to announce today that it has entered into a definitive agreement to sell its Harcourt US Schools Education business to Houghton Mifflin Riverdeep Group for a consideration of $4.0 billion, with $3.7 billion payable in cash and $0.3 billion payable in common stock of Houghton Mifflin Riverdeep Group."*, and on 28 November 2007 that, *"The aggregate net proceeds of the sale of the entire Harcourt Education division of approximately $4.0 billion will be returned to shareholders by way of special dividend in the equalisation ratio followed by a corresponding consolidation of the share capitals of Reed Elsevier PLC and Reed Elsevier NV."*

91.    Therefore, the Defendant who are in the process of selling parts of the former HBJ for $4.0 billion, definitely are financially able to redeem their own 525,920 HBJ 12% Preferred shares (in arrears), according to the NY BCL § 514(a)(b), for the Plaintiff who possesses *vested property rights* protected by the United States Constitution, Article I, § 10 and Amendment XIV, § 1, per NY BCL §§ 623(j) and 514(b) has retained the status of a claimant, and per NY BCL § 906(b)(2)(3) the Defendant have inherited Harcourt General's and the HBJ's debts and liabilities.

92.    Using a dividend calculation method which was described in paragraphs 39 and 40 and used to generate Table 1, supra, and assuming that the value of the 12% Preferred since 11/25/91 thru 6/30/07 has been at $13.50/share (the redemption value, and not at $0.69/share as was set by the HBJ-GCC merger on 11/25/91, Exh.3), then as of 6/30/07, the Plaintiff's contract damages are estimated to have accrued, with compounded quarterly 12%/yr dividends, to $7,099,920.28, less the 12/09/91 advance of $14,996.70 ($2,810.90 after 17.567 years at 10%/yr), leaving the amount owed of **$7,084,923.58**.

93.    If the 12% Preferred was not a debt security and its value was set to the final merger offer of $0.69/share, then the calculated damages on 6/30/07, since the last day of trading 11/25/91 on the New York Stock Exchange, would have reached an absurd astronomical proportions of $3.76 billion billion ($3.76x10^{18}$), confirming the fact that the 12% Preferred has always been a debt security and a liability, and that ever since its issuance in 1987, to prevent this absurdity its market value had to be kept by HBJ close to the final redemption price of $13.50/share.

## FIRST CAUSE OF ACTION

## BREACH OF REDEMPTION CONTRACT

94.    Plaintiff incorporates by reference and realleges paragraphs 1 through 93 as though fully set forth herein.

95.    In-between 10/16/89-11/25/91, Plaintiff entered into a contract with HBJ, whereas Plaintiff agreed to purchase 4710 shares of HBJ 12% Preferred, which on 11/25/91 grew in arrears to 83,165.50 shares, and HBJ agreed to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of 12% Preferred then outstanding and on June 30, 2007, all remaining shares of outstanding 12% Preferred, in each case at the redemption price of $13.50 per share, plus accrued and unpaid 12% dividends, to the date of redemption.

96.    Plaintiff is informed and believes and based on such information and belief alleges that Defendant per NY BCL § 906(b)(2)(3), acquired the liability of this contract through their acquisition of Harcourt General Inc., who had acquired HBJ.

97.    Plaintiff per NY BCL §§ 623(j) and 514(b), fulfilled his obligation under the contract in that he purchased 4710 shares of 12% Preferred, and still maintains ownership of these shares today, and in all on 06/30/07 he owned 525,920 shares in arrears.

98.    On June 30, 2003, Plaintiff owned 327,735.97 shares of 12% Preferred, and was entitled to 20% of the $4,424,435.59 under the terms of the contract. Defendant breached the contract when they did not pay Plaintiff $884,887.12 on June 30, 2003.

99.    On June 30, 2004, Plaintiff owned 368,869.72 shares of 12% Preferred, and was entitled to 20% of the $4,979,741.24. Defendant breached the contract when they it did not pay Plaintiff $995,948.25 on June 30, 2004.

100.    On June 30, 2005, Plaintiff owned 415,166.12 shares of 12% Preferred, and was entitled to 20% of the $5,604,742.64. Defendant breached the contract when they did not pay Plaintiff $1,120,948.53 on June 30, 2005.

101.    On June 30, 2006, Plaintiff owned 467,273.13 shares of 12% Preferred, and was entitled

to 20% of the $6,308,187.21. Defendant breached the contract when they did not pay Plaintiff $1,261,637.44 on June 30, 2006.

102.    On June 30, 2007, Plaintiff owned 525,920.02 shares of 12% Preferred, and was entitled to a full 100% payment of $7,099,920.28. On June 30, 2007 the Defendant breached the contract when they did not pay Plaintiff $7,099,920.28.

103.    As a result of Defendant's breaches, on June 30, 2007 the Plaintiff has suffered damages in the amount $7,099,920.28, minus the 12/09/91 advance of $14,996.70 ($2,810.90 after 17.567 years at 10%/yr), or $7,084,923.58.

**JURY DEMAND**

104.    Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff who possesses *vested property rights* protected by the United States Constitution, Article I, § 10 and the Amendment XIV, § 1, requests relief in accordance with the NY BCL § 514(a)(b), § 906(b)(2)(3) and § 623(j), as follows:

a.    For compensatory damages in the amount $7,084,923.58;

b.    For prejudgment interest since 6/30/2007 at highest lawful rate;

c.    For costs of suit, and

d.    For such other and further relief as the court may deem just and proper.

Dated this 16th day of December, 2007

*J. Czajkowski*

Jerry Czajkowski, Ph.D., in Pro Se

**EXHIBITS**

**TABLE OF CONTENTS**

1.  HARCOURT BRACE JOVANOVICH, CERTIFICATE OF STOCK.................26

2.  MOODY'S INDUSTRIAL MANUAL, 1989, p.1288...................................27

3.  DECLARATION OF P.PFLEIDERER PH.D. 4/03/98 ................................28

4.  CZAJKOWSKI et al v. HBJ et al, 6/08/94, 28 F.3d 105 (1994)................................31

5.  CZAJKOWSKI et al v. HBJ et al, 4/15/99, 176 F.3d 482 (1999)..............................35

6.  FORM 10-K, 1990 HBJ ANNUAL REPORT, pp.28,29..........................................37

each Nov. 14 as follows: 1994, 104.875; 1995, 103.250; 1996, .101.625 and thereafter at 100 plus accrued interest.

SECURITY — Not secured. Ranks pari passu in right of payment with all existing and future unsubordinated indebtedness of Co. Co. or any restricted subsidiary will not incur any secured debt unless contemporaneously therewith effective provision is made to secure the senior notes equally and ratably with such secured debt for so long as such secured debt is secured by a lien.

SALE AND LEASEBACK — Co. or any restricted subsidiary will not enter into any arrangement with any person providing for the leasing by Co. or any subsidiary of any real or tangible personal property, which property has been or is to be sold or transferred by Co. or such subsidiary to such person in contemplation of such leasing, unless (i) Co. or such subsidiary would be entitled to incur debt in an amount equal to the attributable debt, and (ii)(A) Co. or such subsidiary would be entitled to create a lien on such property securing debt in an amount equal to the attributable debt with respect to such arrangement without equally and ratably securing the senior notes or (B) the net proceeds of such sale are at least equal to the fair value of such property and Co. or such subsidiary applies or causes to be applied an amount in cash equal to the net proceeds of such sale

INDENTURE MODIFICATION — Indenture may be modified, except as provided, with consent of not less than a majority of notes outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of notes outstg., may declare principal due and payable (30 day's grace for payment of interest).

PURPOSE — Proceeds will be used to repay an equal principal amount of the term loan under the bank agreement.

OFFERED — ($200,000,000) at 100 plus accrued interest (proceeds to Co., 97.25) on Nov. 17, 1988 thru The First Boston Corp. and associates.

### 2. Harcourt Brace Jovanovich, Inc. senior subordinated debenture 13⅜s, due 1999:

**Rating — B2**

AUTH — $500,000,000; outstg., December 31, 1988, $500,000,000.

DATED — Sept. 1, 1987. DUE — Sept. 15, 1999.

INTEREST — M&S 15 to holders registered M&S 1.

TRUSTEE — Security Pacific National Trust Co., NY.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1993, 103.93; 1994, 101.97 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 1997-1998, sufficient to redeem $165,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 66% of debs. prior to maturity.

SECURITY — OTHER PROVISIONS — Same as subord. pay-in-kind debs. 14⅛s, 2002.

OFFERED — ($500,000,000) at 100 plus accrued interest (proceeds to Co., 96.500) on Sept. 18, 1987 thru The First Boston Corp. and associates.

### 3. Harcourt Brace Jovanovich, Inc. subordinated Pay-In-Kind debs. 14⅛s, due 2002:

**Rating — B3**

OUTSTG. — $250,000,000; outstg., December 31, 1988, $299,602,418

DATED — Sept. 1, 1987. DUE — Sept. 15, 2002.

INTEREST — M&S 15 to holders registered M&S 1.

Interest accruing prior to Sept. 15, 1992 will be paid in additional subordinated pay-in-kind debentures.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1991, 102.50; 1992, 101.25 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 2000-2001, sufficient to redeem $127,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 50% of debs. prior to maturity.

SECURITY — Not secured. Subordinated in right of payment to all senior indebtedness.

INDENTURE MODIFICATION — Indenture may be modified, except as provided, with consent of a majority of debs. outstg.

---

RIGHTS ON DEFAULT — Trustee, or 25% of debs. outstg., may declare principal due and payable (30 days' grace for payment of interest).

PURPOSE — Proceeds will be used for mandatory redemption of notes held by FBSC pursuant to the subordinated note purchase agreement and, to the extent of any net proceeds in excess thereof, will initially be used to reduce outstanding revolving credit borrowings under the bank agreement.

OFFERED — ($250,000,000) at 100 plus accrued interest (proceeds to Co., 96.500) on Sept. 18, 1987 thru The First Boston Corp. and associates.

### 4. Harcourt Brace Jovanovich, Inc. subordinated discount debenture 14⅛s, due 2002:

**Rating — B3**

AUTH — $507,490,000; outstg., December 31, 1988, $299,799,323.

DATED — Sept. 1, 1987. DUE — Sept. 15, 2002.

INTEREST — M&S 15 to holders registered M&S 1.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1993, 102.90; 1994, 102.50 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 2000-2001, sufficient to redeem $127,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 50% of debs. prior to maturity.

SECURITY — OTHER PROVISIONS — Same as subord. pay-in-kind debs. 14⅛s, due 2002.

OFFERED — ($507,490,000) at 49.262 plus accrued interest (proceeds to Co., 47.538) on Sept. 18, 1987 thru The First Boston Corp. and associates.

### 5. Harcourt Brace Jovanovich, Inc. subordinated debentures 14s, due 2004

**Rating — B3**

AUTH. — $200,000,000; outstg., December 31, 1988, $200,000,000.

DATED — Nov. 15, 1988. DUE — Nov. 15, 2004.

INTEREST — M&N 15 to holders registered M&N 1.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any multiple thereof. Transferable and exchangeable.

CALLABLE — As a whole or in part at any time on or after Nov. 15, 1993, at the option of Co., on at least 30 but not more than 60 days' notice to each Nov. 14 as follows: 1994, 105.34; 1995, 103.56; 1996, 101.78 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Subject to a mandatory sinking fund payment of $100,000,000 on Nov. 15, 2003 calculated to retire 50% of the debs. prior to maturity.

SECURITY — Not secured. Subordinated to all senior indebtedness of Co.

INDENTURE MODIFICATION — Indenture may be modified, except as provided, with consent of not less than a majority of debs. outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of debs. outstg., may declare principal due and payable (30 days' grace for payment of interest).

PURPOSE — Proceeds will be used to repay an equal principal amount of the term loan under the bank agreement.

OFFERED — ($200,000,000) at 100 plus accrued interest (proceeds to Co., 96.50) on Nov. 17, 1988 thru First Boston Corp. and associates.

### 6. Harcourt Brace Jovanovich, Inc. convertible subordinated notes 9¾s%, due 1999

AUTH. — $53,640,000; outstg. Dec. 31, 1988, $53,640,000.

DATED — Oct. 5, 1988. DUE — Dec. 31, 1999.

INTEREST — J&D 31.

CALLABLE — As a whole, but not in part, subject to certain conditions, at the option of the Co. at anytime on or after July 1, 1991, on at least 10 but not more than 60 days' notice as follows:

| | | | |
|---|---|---|---|
| 1991 .......... 180.85 | 1992 .......... 225.28 | 1993 .......... 283.15 |
| 1994 .......... 109.75 | 1995 .......... 107.80 | 1996 .......... 105.85 |
| 1997 .......... 103.90 | 1998 .......... 101.95 | |

and thereafter at 100 plus accrued interest.

CONVERTIBLE — Into common at any time at a price of $11.75 per share, subject to adjustment.

SINKING FUND — None required.

SECURITY — Unsecured.

### 7. Other Long Term Debt:

Outstanding Dec. 31, 1988, $1,036,376,701 comprising:

---

(1) $1,015,823,500, borrowings under or supported by a credit agreement with an average interest rate during 1988 of 10.24%.

(2) $9,834,188 5.5%-9% capitalized lease obligations, payments due periodically to January 2000.

(3) $10,719,013 other long-term debt, with interest rates ranging from 8¼% to 13.5%.

Among other matters, the Company's senior debt agreements specify quarterly requirements relating to working capital, cash flow to long-term debt, fixed charge coverage and minimum total capitalization as well as limitations on capital expenditures, lease obligations, and restricted payments. Co. obligations under the senior debt agreements are secured by substantially all the assets of HBJ and its subsidiaries. Total dividends on Co. 12% preferred stock for the year ending December 31, 1988 were paid through issuance of 5,339,830 shares of additional 12% preferred stock and cash payments of approximately $104,000 in lieu of fractional shares.

## CAPITAL STOCK

### 1. Harcourt Brace Jovanovich, Inc. 12% preferred, par $1.

AUTH — 85,000,000 shares; outstg., Dec. 31, 1988, 47,949,115 shares; par $1.

DIVIDEND RIGHTS — Cumulative dividends are payable quarterly on these shares from the issuance date, July 27, 1987, at the rate of 12% of their liquidation preference per year. Through June 30, 1993, dividends will be paid in additional shares of 12% Preferred Stock.

DIVIDENDS PAID [1]

1987-88.............. ⅐

[1]Paid in stock equiv. to $0.405.

CALLABLE — Co. is required to redeem, in full in level increments over 5 years commencing June 30, 2003.

TRANSFER AGENT & REGISTRAR — Sun Bank, N.A.

LISTED — On NYSE (Symbol:HBJ Pr).

ISSUED — In July 1987 as a special dividend to common stockholders.

### 2. Harcourt Brace Jovanovich, Inc. common; par $1:

AUTHORIZED — 200,000,000 shares; outstanding, Dec. 31, 1988, 72,725,690 shares; reserved for options, 3,000,000 shares; reserved for issuance upon conversion of Convertible Subordinated Notes, 4,565,106 shares; par $1.

$1 par shs. split 2-for-1, May 7, 1981; and 3-for-1 June 23, 1986.

DIVIDENDS [1]

| | | | |
|---|---|---|---|
| 1960 ........ $0.12½ | 1961-63 ........ $0.50 | 1964 ............. $0.70 |
| 1965 ......... 0.80 | 1966 .......... 0.95 | 1967-73 .......... 1.00 |
| 1974 ......... 1.09 | 1975 .......... 1.20 | 1976 ............. 1.32 |
| 1977-79 ...... 1.44 | [1]1980 ........ 1.56 | 1981 ............. 0.40 |

On $1 par shs. after 2-for-1 split:

| | | |
|---|---|---|
| 1981 ............. 0.75 | 1982-85 .......... 1.00 | 1986 .............. 0.55 |

On $1 par shs. after 3-for-1 stock split:

| | | |
|---|---|---|
| 1986 ............. 0.38 | 1987 .......... ⅐0.10 | 1988 ........... Nil |

[1]Also paid 1 sh. of 12% pfd. stk. for each com. sh. held.

VOTING RIGHTS — Has one vote per share.

OFFERED — (493,425 shares) at $23.50 a share on Aug. 17, 1960 by White, Weld & Co., Inc., New York, and associates. Offering did not represent company financing.

(101,398 shares) at $38.50 a share on May 19, 1961 by White Weld & Co., Inc., New York and associates. Offering did not represent company financing.

(4,290,000 shs.) at $33 per sh. on June 25, 1986. Of the total, 3,290,000 shs. were offered in the U.S.A. thru First Boston Corp. and associates, and 1,000,000 shs. sold internationally by Credit Suisse First Boston Ltd. and associates. Proceeds of 2,907,186 shs. for Co. account to finance acquisitions and reduce short-term debt.

(10,000,000 shs.) at $9.50 per sh. on Nov. 4, 1988. Of the total, 7,000,000 shs. were offered in the U.S.A. and Canada thru First Boston Corp., and 3,000,000 shs. were offered internationally thru Credit Suisse First Boston Ltd. and associates.

PROCEEDS — were used to reduce long-term debt.

TRANSFER AGENT, REGISTRAR & DIVIDEND DISBURSING AGENT — Sun Bank, N.A., Orlando, Florida.

LISTED — On NYSE (Symbol: HBJ); unlisted trading on Boston Stock Exchange.

Preferred Retired: All shares of exchangeable escalating rate preferred were retired in Oct. - Nov. 1988.

Exhibit 2

1  LATHAM & WATKINS
     Kenneth M. Fitzgerald, State Bar #142505
2    Jared G. Flinn, State Bar #190743
   701 B Street, Suite 2100
3  San Diego, California  92101-8197
   Telephone: (619) 236-1234
4  Facsimile: (619) 696-7419

5  Attorneys for Defendants

6

7

8

9                    UNITED STATES DISTRICT COURT

10               SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| JERRY CZAJKOWSKI, LONIA CZAJKOWSKI et al., | CASE NO. 92-431 B  (AJB) |
| Plaintiffs, | DECLARATION OF PAUL PFLEIDERER, PH.D. IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION |
| v. | |
| PETER JOVANOVICH and HARCOURT BRACE JOVANOVICH, INC., | Date:      April 20, 1998 Time:      10:30 a.m. Courtroom: 2 |
| Defendants. | Hon. Rudi M. Brewster |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS
ATTORNEYS AT LAW
SAN DIEGO

SD_DOCS\83003.1

1    I, Paul Pfleiderer, Ph.D. declare as follows:

2       1.     I am currently the William F. Sharpe Professor of Financial Economics at

3    the Stanford University School of Business.  I have been retained by defendants in this action to

4    render an opinion regarding the fair value of plaintiffs' preferred shares in Harcourt Brace

5    Jovanovich, Inc. ("HBJ"), as of the date of HBJ's merger with General Cinema Corporation

6    ("GCC").

7       2.     In connection with this matter, I reviewed and analyzed the financial

8    condition of HBJ between 1987 and the date of the HBJ/GCC merger.  I also reviewed and

9    analyzed the HBJ/GCC merger transaction and its effects on HBJ, and on the rights of HBJ's

10    stockholders to receive payment for their shares.

11       3.     A true and correct copy of the report I generated for this matter is attached

12    hereto as Exhibit A.  My report includes: a) my opinion that the price offered to the holders of

13    the preferred stock of HBJ, $0.69125 per share, was a fair price; and b) all of the documentation I

14    reviewed in formulating my opinion.

15       4.     Specifically, I based my opinion in part on the entire Harcourt Brace

16    Jovanovich, Inc., General Cinema Corporation Joint Proxy Statement/Prospectus dated October

17    25, 1991 ("Proxy Statement").  My review of the Proxy Statement included pages 132 and 133

18    thereto, which were <u>inadvertently omitted f</u>rom the exhibits to my Declaration in Support of

19    Defendants' Motion For Summary Judgment due to a copying error.

20       5.     These pages of the Proxy Statement had no bearing on my opinion that the

21    price offered to the holders of the preferred stock of HBJ, $.069125 per share, was a fair price.

22    These pages state that,

23            HBJ may, at its option, redeem shares of HBJ Preferred Stock in
        whole at any time, or from time to time in part, at a redemption

24            price equal to the $13.50 per share liquidation preference plus
        accrued and unpaid dividends, if any, to the date fixed for

25            redemption.  HBJ is required to redeem, on June 30, 2003 and on
        each June 30 thereafter through June 30, 2006, 20% of all shares of

26            HBJ Preferred Stock then outstanding and on June 30, 2007 all
        remaining shares of outstanding HBJ Preferred Stock, in each case

27            at the redemption price of $13.50 per share, plus accrued and
        unpaid dividends, if any, to the date of redemption, except to the

28

LATHAM & WATKINS
ATTORNEYS AT LAW
SAN DIEGO    SD_DOCS\83003.1

1

1          extent HBJ is prevented from doing so under the provisions of the
2          Bank Agreement, the Indentures, or certain other instruments.

3   Proxy Statement at 133.

4          6.     I considered this clause, along with the remainder of the Proxy Statement,

5   in formulating my opinion in this matter.  However, this clause does not change my opinion

6   regarding the value of the HBJ preferred stock because the clause was never triggered.

7   Specifically, for this clause to have any effect: a) HBJ must invoke its option to redeem the

8   preferred shares; or b) HBJ preferred shares must be outstanding in the year 2003.  Because

9   neither of these events took place, this clause has no bearing on my opinion that the price offered

10  to the holders of the preferred stock of HBJ was a fair price.

11         I declare under penalty of perjury under the laws of the United States that the

12  foregoing is true and correct.

13         Executed on the 3 day of April, 1998 at Palo Alto, California.

14

15                                          PAUL PFLEIDERER, PH.D.

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

28 F.3d 105 (Table)                                                                   Page 1

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))

**c**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
Jerry **CZAJKOWSKI**; Lonia Czajkowski,
Plaintiffs-Appellants,
v.
Peter JOVANOVICH; Harcourt Brace,
Jovanovich, Inc., Defendants-Appellees.
No. 92-55787.

Argued and Submitted May 3, 1994.
Decided June 8, 1994.

Appeal from the United States District Court for the Southern District of California, No. CV92-431-JSR (HRM); John S. Rhoades, District Judge, Presiding.

S.D.Cal.

VACATED AND REMANDED.

Before: BROWNING and FLETCHER, Circuit Judges, and FITZGERALD, [FN*] Senior District Judge.

MEMORANDUM [FN**]
**1 Jerry and Lonia Czajkowski appeal pro se the district court's order dismissing their action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we vacate and remand.

I.
We review de novo the district court's dismissal of the Czajkowski's action. *See Blake v. Dierdorff,* 856 F.2d 1365, 1368 (9th Cir.1988). We accept all material allegations in the complaint as true and resolve all doubts in favor of the plaintiff. *See id.* "Dismissal is appropriate only if the plaintiff 'can prove no set of facts in support of his claim which would entitle him to relief.' " *Klarfeld v. United States,* 944 F.2d 583, 585 (9th Cir.1991) (per curiam) (quoting *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S. 1054 (1987)). When a complaint is dismissed for failure to state a claim, the court should grant the plaintiff leave to amend " 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' " *Id.* (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986)).

A.
There is no dispute that the issues presented to the district court are governed by New York law since Harcourt was a New York corporation. *See Rogers v. Guaranty Trust Co.,* 288 U.S. 123, 130 (1933); *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1527 (9th Cir.1985) (stating that "[c]laims involving the 'internal affairs' of corporations ... are subject to the laws of the state of incorporation").

Under New York law, "[s]hareholders who do not assent to [a] merger have the right to receive payment for the 'fair value' of their shares.... The remedy available to those who have perfected their status as dissenting shareholders ... is to enforce this right through an appraisal proceeding." [FN1] *Cawley v. SCM Corp.,* 530 N.E.2d 1264, 1266 (N.Y.1988); *see* N.Y.Bus.Corp.Law § 623 (McKinney 1986); *Burke v. Jacoby,* 981 F.2d 1372, 1380 (2d Cir.1992), *cert. denied,* 113 S.Ct. 2338 (1993). Furthermore, under section 623(e), a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 4**

**31**

28 F.3d 105 (Table)                                                    Page 2

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

dissenting shareholder "cease[s] to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under ... section [623]." N.Y.Bus.Corp.Law § 623(e).

Section 623 also provides:
> The enforcement by a shareholder of his right to receive payment for his shares in the manner provided [in section 623] shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled ... except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him.

*Id.* § 623(k). As interpreted by New York courts, section 623(k) makes an appraisal proceeding a dissenting shareholder's exclusive remedy except in a narrow class of cases. *See Burke,* 981 F.2d at 1380; *Cawley,* 530 N.E.2d at 1267.

**\*\*2** The exception to the general rule requires the plaintiff to bring an "appropriate action" for equitable relief for unlawful or fraudulent corporate action. *Cawley,* 530 N.E.2d at 1267. Equitable relief must be the primary relief sought. *Walter J. Schloss Assocs. v. Arkwin Indus.,* 460 N.E.2d 1090, 1091 (N.Y.1984) (adopting dissenting opinion of Mangano, J., at Appellate Division as Court of Appeals opinion). "Money damages are only available, if at all, as ancillary or incidental to such equitable relief." *Id.*

Here, it is undisputed that the Czajkowskis were dissenting shareholders in the Harcourt Brace Jovanovich, Inc. ("HBJ") merger with General Cinema Corporation ("GCC"). Accordingly, the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding. *See,* N.Y.Bus.Corp.Law § 623(k). The Czajkowskis' attempt to avoid this result in two ways.

First, the Czajkowskis contend that the merger was in fact a liquidation of HBJ and, therefore, that they

were entitled to payment of a $13.50 per share liquidation preference. This contention lacks merit.

New York courts have not decided whether a "merger" is the equivalent of a "liquidation" requiring payment of the liquidation preference to preferred shareholders. However, in *Rauch v. RCA Corp.,* 861 F.2d 29 (2nd Cir.1988), the Second Circuit decided the issue under Delaware law. In *Rauch* the plaintiff, who owned preferred shares of RCA, was offered $40 a share pursuant to a merger agreement in which RCA was to be merged with a subsidiary of General Electric. She claimed that the merger constituted a "liquidation or dissolution or winding up of RCA" and that she was therefore entitled to $100 per share--the amount specified as the redemption or liquidation preference value of her preferred shares. The court rejected this argument. Quoting an earlier case, the court held it was

> settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares.

*Id.* at 32 (quoting *Rothschild Int'l Corp. v. Liggett Group,* 474 A.2d 133, 136-37 (Del.1984)). In both *Rauch* and *Rothschild,* the courts held that owners of preferred stock were not entitled to the liquidation or redemption preference specified in their stock agreements (which was in both cases $100), because the merger of the corporations in which they owned stock did not constitute the liquidation of the corporations. *E.g., Rothschild,* 474 A.2d at 136 ("there was no 'liquidation' of Liggett within the well-defined meaning of that term ... [because] the reverse cash-out merger of Liggett did not accomplish a 'liquidation' of Liggett's assets."). The *Rauch* court noted that plaintiff could have sought an appraisal proceeding (Delaware Business Code has a provision similar to N.Y.Bus.Corp.Law § 623), but did not. *Rauch,* 861 F.2d at 32.

**\*\*3** Since the decisions in *Rauch* and *Rothschild*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 4**

**32**

28 F.3d 105 (Table)

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

appear to turn upon interpretation of the contract term "liquidation" as included in the preferred share agreements, rather than on any specific or unique provision in Delaware law, there is little reason to suspect that New York courts would follow a different course.

Second, the Czajkowskis contend that their action falls within the "appropriate action" exception because they sought equitable relief for fraud. This contention also lacks merit.

To fall within the "appropriate action" exception, "[t]here must be a request for equitable relief which, in fact, must be the primary relief sought." *Walter J. Schloss Assocs.*, 460 N.E.2d at 1091. Even if equitable claims and claims for damages are brought in the alternative and are equally weighted, the claim is outside the "appropriate action" exception. *Staskus v. The Rawlplug Co., Inc.*, 1993 WL 212736 (S.D.N.Y. June 11, 1993) (holding appraisal is exclusive remedy where plaintiff sought both appraisal and rescission of merger, and expressed no preference for one or the other). Nor is the plaintiff permitted to merely request damages in another form. *Burke*, 981 F.2d at 1380. Here, the Czajkowskis' action is in essence a claim that they were not paid enough for their shares, it is a claim for damages, and therefore is foreclosed by *Schloss* unless it is recast as a claim for appraisal.

**B.**

The district court held that it lacked jurisdiction to hear an action seeking appraisal under the New York statute that required the suit be brought in the New York courts. We conclude, however, that the New York legislature may not divest the district court of diversity jurisdiction. The district court can appraise the shares applying the New York law. In a case repeatedly cited by appellants, the Eighth Circuit held that the venue provision of a New Jersey appraisal statute did not divest a federal court of diversity jurisdiction over an action for appraisal under New Jersey law. *Mullen v. Academy Life Ins. Co.*, 705 F.2d 971, 975 (8th Cir.1983). A federal district court reached the same conclusion with regard to the New York

appraisal statute at issue. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F.Supp. 380, 388 (S.D.N.Y.1981), *aff'd*, 675 F.2d 456 (2d Cir.1982). These cases apply a longstanding Supreme Court rule:

> Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

*Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1871); *accord Duchek v. Jacobi*, 646 F.2d 415 (9th Cir.1981) (rejecting argument that federal court lacked jurisdiction to enforce its judgment where controlling state statute required action to proceed in particular state court).

**\*\*4** The Czajkowskis make substantial allegations that the merger price of $0.75 per share may not have been the "fair value" to which the Czajkowskis were entitled under N.Y.Bus.Corp.Law § 623. While the Czajkowskis owned the stock, it allegedly traded for as much as $12.25 per share. Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law. *See Walter J. Schloss Assocs. v. Arkwin Indus., Inc.*, 455 N.Y.S.2d 844, 852 (N.Y.App.Div.1982) (Mangano, J., dissenting), *rev'd for reasons stated in dissenting opinion*, 460 N.E.2d 1090 (N.Y.1984).

We remand to allow the Czajkowskis leave to amend their complaint to seek appraisal under the New York Statute.

VACATED and REMANDED.

> FN\* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

> FN\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3. The parties are familiar with the facts and we will not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 4**

33

28 F.3d 105 (Table)                                              Page 4

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

repeat them.

FN1. Appraisal is the exclusive remedy for common and preferred voting shares. N.Y.Bus.Corp.Law § 623(k); *In re Harwitz,* 80 N.Y.S.2d 570 (N.Y.Sup.Ct.1948). Because the Czajkowskis' preferred shares were voting shares, their remedy is appraisal.

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.)), Unpublished Disposition

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 4**

34

Westlaw.

176 F.3d 482 (Table)                                                     Page 1

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 176 F.3d 482, 1999 WL 282472 (9th Cir.(Cal.)))**

NOTICE: THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA9 Rule 36-3 for
rules regarding the citation of unpublished
opinions.)

United States Court of Appeals, Ninth Circuit.
Jerry CZAJKOWSKI; Lonia Czajkowski,
Plaintiffs-Appellants,
v.
Peter JOVANOVICH; Harcourt Brace Jovanovich,
Inc., Defendants-Appellees.
No. 98-55904.
D.C. No. CV-92-00431-RMB.

Submitted April 12, 1999 [FN2].

FN2. The panel unanimously finds this
case suitable for decision without oral
argument. *See* Fed. R.App. P. 34(a)(2).
Accordingly, we deny appellants' request
for oral argument.

Decided April 15, 1999.

Appeal from the United States District Court for
the Southern District of California Rudi M.
Brewster, District Judge, Presiding.

Before BRUNETTI, LEAVY, and THOMAS,
Circuit Judges.

MEMORANDUM [FN1]

FN1. This disposition is not appropriate
for publication and may not be cited to or
by the courts of this circuit except as may
be provided by 9th Cir. R. 36-3.

**1 Jerry Czajkowski and Lonia Czajkowski
("plaintiffs"), former preferred shareholders of
Harcourt Brace Jovanovich, Inc. ("HBJ"), appeal
pro se the district court's grant of summary
judgment for defendants in plaintiffs' diversity
action alleging that HBJ breached a liquidation
preference clause by failing to redeem plaintiffs'
shares of HBJ preferred stock at the purported
guaranteed redemption price of $13.50 per share
when HBJ merged with General Cinema
Corporation in 1991. Plaintiffs also appeal the
district court's April 24, 1998 order denying their
motion for reconsideration. We dismiss in part, and
affirm in part.

We lack jurisdiction to review the district court's
February 9, 1998 order granting summary judgment
to defendants because plaintiffs did not file their
notice of appeal until May 4, 1998, nearly three
months after judgment was entered on February 10,
1998. *See* Fed. R.App. P. 4(a)(1)(A); *Atchison,
Topeka & Santa Fe Ry. Co. v. California State Bd.
of Equalization,* 102 F.3d 425, 427 (9th Cir.1996).
Although plaintiffs sought reconsideration of the
district court's summary judgment order, they did
not file the motion until March 12, 1998, well
beyond the ten-day period that would have tolled
the time to file their notice of appeal from the
summary judgment order. *See* Fed. R.App. P.
4(a)(1)(A). Accordingly, we dismiss this portion of
plaintiffs' appeal for lack of appellate jurisdiction.
*See California State Bd. of Equalization,* 102 F.3d
at 427.

We do, however, have jurisdiction to review the
district court's denial of plaintiffs' motion for
reconsideration. We conclude that the district court
did not abuse its discretion because plaintiffs
essentially only sought to relitigate issues that were
previously rejected by this court in *Czajkowski v.
Jovanovich,* No. 92-55787, 1992 WL 247089, at
*1-4 (9th Cir. June 8, 1994), and plaintiffs have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 5**

176 F.3d 482 (Table)

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 176 F.3d 482, 1999 WL 282472 (9th Cir.(Cal.)))**

failed to demonstrate a sufficient basis for relief under either Fed.R.Civ.P. 59(e) or 60(b). *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441-42 (9th Cir.1991).

We reject plaintiffs' remaining contentions as being without merit.

We deny Appellees' request for judicial notice.

Appellees are entitled to recover their costs on appeal.

DISMISSED in part, and AFFIRMED in part.

•Jerry CZAJKOWSKI, Lonia Czajkowski, et al., Plaintiffs/Appellants, v. PETER JOVANOVICH, INC. and Harcourt Brace Jovanovich, Inc., Defendants/Appellees., 1998 WL 34106949 (Appellate Brief) (C.A.9 October 9, 1998), Defendants/Appellees Harcourt Brace Jovanovich, Inc. and Peter Jovanovich's Answering Brief

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.)), Unpublished Disposition

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 5**

36

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D. C.  20549

# Form 10-K

### ANNUAL REPORT
Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

[✓] Annual Report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

**For the fiscal year ended December 31, 1990**

OR

[ ] Transition Report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

For the transition period from _____ to _____

Commission file number 1-4464

# Harcourt Brace Jovanovich, Inc.

(Exact name of registrant as specified in its charter)

**New York**
(State or other jurisdiction of
incorporation or organization)

**13-1935377**
(I.R.S. Employer Identification No.)

**Orlando, Florida  32887**
(Address of principal executive offices) (Zip Code)

**407-345-2000**
(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock Par value, $1.00 per share | New York Stock Exchange, Inc. |
| 12% Preferred Stock Par value, $1.00 per share | New York Stock Exchange, Inc. |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding twelve months (or for such shorter period that the Registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days.   Yes __✓__   No ____

The aggregate market value of the voting stock held by nonaffiliates of the Registrant, computed by reference to the closing price ($0.9175) on the New York Stock Exchange, Inc. on March 25, 1991, was $63,482,536. For purposes of this computation, there have been excluded (a) voting stock (i) held by Directors and Officers of the Registrant and (ii) allocated or accrued to the accounts of the Registrant's Officers in the Registrant's Retirement Plan or Retirement Excess Benefit Plan and (b) voting stock held by the Retirement Plan Trust which has not been allocated to participants' accounts. Such exclusion is not intended, nor shall it be deemed, to be an admission that such Directors and Officers or the Retirement Plan Trust are affiliates of the Registrant.

Indicate the number of shares outstanding of each of the Registrant's classes of Common Stock, as of March 25, 1991: 72,904,652 shares of Common Stock.

### DOCUMENTS INCORPORATED BY REFERENCE

Certain information contained in HBJ's 1990 Annual Report to Shareholders is incorporated by reference in Part I, Item 1, and Part II, Items 5 through 2. Certain information contained in HBJ's Proxy Statement for its 1991 Annual and Special Meeting of Shareholders to be filed with the Securities and Exchange Commission is incorporated by reference in Part III, Items 10, 11, 12, and 13.

holders of such notes would be entitled to receive 4.6 million shares of Comm. Stock. Under limited circumstances, HBJ may redeem these notes for cash commencing January 1, 1991 at specified redemption premiums plus accrued interest. Under certain conditions, the holders of the Convertible Subordinated Notes may require HBJ to repurchase such notes at 100% of their principal amount plus accrued interest. No such conditions exist at present.

The underwriting commissions and other fees and expenses incurred in connection with the issuance of both the Recapitalization Debentures and the Refinancing Securities are being amortized over the life of the respective issues using the effective interest method.

Both the Recapitalization Debentures and the Refinancing Securities are governed by indentures which contain financial and operating covenants relating to the manner in which HBJ's business may be operated and which are less restrictive than those in the Credit Agreement.

Installments payable on long-term debt in the next five years are: 1991—$1,177,000; 1992—$2,519,000; 1993—$910,000; 1994—$925,000; and 1995—$940,000. In addition, effective December 1, 1992, the revolving credit facility under the Credit Agreement will terminate and any amount then outstanding thereunder would be due in full. At December 31, 1990, the amount outstanding under this facility was $59,000,000.

Subsequent to the 1987 Recapitalization, HBJ entered into certain interest rate protection agreements with several financial institutions, the majority of which instruments have been terminated or have expired. Certain costs relating to these instruments, in addition to certain costs relating to the Credit Agreement, were included in amounts charged to income in the 1989 third quarter, reflecting the required retirement of the term loan facility with proceeds from the sale of Parks and Land (see "Management's Discussion").

6. Redeemable Preferred Stock:

HBJ's Preferred Stock consists of 85,000,000 authorized shares of 12% Preferred Stock, which have a liquidation preference of $13.50 per share. At December 31, 1990 and 1989, there were 60,723,024 and 53,960,841 shares outstanding, respectively. All of the outstanding shares of 12% Preferred Stock were issued as part of the Special Dividend, as quarterly pay-in-kind dividends paid thereafter on outstanding shares of 12% Preferred Stock, or in conjunction with certain of the Company's employee benefit plans. The 12% Preferred Stock has been recorded at its market value when issued. The difference between the recorded amount and the redemption price of such securities is being accreted to the date of redemption using the effective interest method. The terms of the 12% Preferred Stock provide for quarterly dividends as and when declared by the Board of Directors at the rate of 12% of their liquidation preference per year, which dividends through the dividend period ending June 30, 1993 may be paid in additional shares of 12% Preferred Stock. In early 1991, the Board of Directors voted to omit the pay-in-kind dividend for the quarter ending March 31, 1991 because the Company was unable to determine that there was sufficient surplus to permit payment of the dividend under New York law. The Company may not have sufficient surplus in the future to permit the continued payment of dividends on the 12% Preferred Stock, irrespective of whether such dividends are to be paid in cash or, as permitted through the second quarter of 1993, additional shares of 12% Preferred Stock. Even if such surplus were to be available, in light of the Company's projected

28

Exhibit 6

38

**379**

cash requirements and based upon the Company's current financial condition, the Company's management believes that it is unlikely that cash dividends could be paid on the 12% Preferred Stock (see "Management's Discussion"). Although the Company has no legal obligation to pay dividends on the 12% Preferred Stock, unpaid dividends accumulate. If 12% Preferred Stock dividends are unpaid, the Company cannot pay dividends on Common Stock. There are also restrictions on the payment of dividends in various of the Company's debt instruments. Total dividends on HBJ's 12% Preferred Stock for the years ending December 31, 1990, 1989, and 1988 were paid through the issuance of 6,759,751, 6,009,027, and 5,339,830 shares of additional 12% Preferred Stock, respectively, and cash payments of $170,000, $121,000, and $104,000, respectively, in lieu of fractional shares. The 12% Preferred Stock is redeemable, in whole or in part, at any time at the option of HBJ and is automatically redeemable in full in level increments over five years commencing June 30, 2003.

In connection with the 1987 Recapitalization, 40,000 shares of Exchangeable Preferred Stock, which had a liquidation preference of $2,091 per share, were issued and sold to FBSC. During October and November 1988, HBJ redeemed the Exchangeable Preferred Stock. Prior to the redemption, HBJ paid cash dividends of $13,530,000 in 1988.

At the Annual Meeting of Shareholders of HBJ on May 19, 1989, the Company's Restated Certificate of Incorporation was amended to eliminate the three separate series of the Company's Preferred Stock designated as "Ten Year Convertible Preferred Stock," "Redeemable Exchangeable Escalating Rate Preferred Stock," and "6% Convertible Preferred Stock."

**7. Shareholders' Equity:**

HBJ's Restated Certificate of Incorporation, as amended, authorizes the issuance of 200 million shares of Common Stock and the issuance of 200 million shares of Preferred Stock in one or more series, the terms and preferences of which are to be specified by HBJ's Board of Directors. The only outstanding shares of HBJ's capital stock are its Common Stock and its 12% Preferred Stock. The 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity. At December 31, 1990, 3,000,000 shares of Common Stock were reserved for issuance under HBJ's 1988 Stock Option Plan and 4,565,106 shares were reserved for conversion of the Convertible Subordinated Notes.

In April 1988, HBJ sold 343,873 newly issued shares of Common Stock to the ESOP Program of the Retirement Plan for $3,052,000. Also in April 1988, HBJ contributed 109,589 shares of Common Stock to the Retirement Plan Trust.

In September 1988, the shareholders approved a new stock option plan, under which options to purchase a maximum of 3,000,000 shares of Common Stock may be granted at not less than market price at date of grant. Under this plan, options ordinarily may not be exercised until 40 months after the date of grant. At December 31, 1990, options for 975,000 shares of Common Stock were outstanding at prices of $9.625 and $12.125 per share. No options were exercisable at December 31, 1990.

In November 1988, HBJ sold 10,526,500 shares of its Common Stock in a public offering for net proceeds of $95,200,000.

The Credit Agreement contains certain covenants which generally prohibit the payment of cash dividends during its term. In addition, certain covenants in the ESOP Debt guarantee generally prohibit the payment of cash dividends during the term of the agreement. Further, the terms of certain indentures of other securities may restrict the payment of such dividends as long as such securities remain outstanding.

29

**Exhibit 6**     **380**

· 39

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
JERRY CZAJKOWSKI, Ph.D., in PRO SE

**DEFENDANTS** FILED
REED ELSEVIER INC

2007 DEC 19 PM 3: 09

**(b)** County of Residence of First Listed Plaintiff    SAN DIEGO COUNTY
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    SAN DIEGO COUNTY
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CA
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.
DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
JERRY CZAJKOWSKI, PRO SE
6370 STREAMVIEW DR, SAN DIEGO, CA 92115

Attorneys (If Known)

**'07 CV 2383 JM LSP**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 | Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing: 28 USC §1331, &1332, &1391

Brief description of cause: BREACH OF REDEMPTION CONTRACT

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
7,804,923.58

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE  12/19/07

SIGNATURE OF ATTORNEY OF RECORD  *J. Czajkowski*

FOR OFFICE USE ONLY

RECEIPT # 145728    AMOUNT $350   12/19/07 BH    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 145728    – BH**

**December 19, 2007
15:09:20**

**Civ Fil Non-Pris**
USAO #.: 07CV2383 CIVIL FILING
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 CC

**Total–>   $350.00**

FROM: CIVIL FILING
      CZAJKOWSKI V. REED ELSEVIER
      AMEX AUTH# 523732