1   LATHAM & WATKINS LLP
        Kenneth Fitzgerald (Bar No. 142505)
2        Hassan Elrakabawy (Bar No. 248146)
    600 West Broadway, Suite 1800
3   San Diego, California 92101-3375
    Telephone: +1.619.236.1234
4   Facsimile: +1.619.696.7419

5   Attorneys for Defendant
    Reed Elsevier Inc.

6

7

8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11
    JERRY CZAJKOWSKI, Ph.D., an          CASE NO. 07 CV 2383 JM (LSP)
12  individual,
                                         DEFENDANT'S REQUEST FOR
13              Plaintiff,               JUDICIAL NOTICE IN SUPPORT OF
                                         MOTION TO DISMISS
14         v.
                                         DATE:  February 8, 2008
15  REED ELSEVIER INC., a                TIME:   1:30 p.m.
    Massachusetts Corporation,           COURTROOM: 16
16
                Defendant.               Honorable Jeffrey T. Miller
17

18

19                              I.

20                       **INTRODUCTION**

21         Pursuant to Federal Rule of Evidence 201, Defendant Reed Elsevier

22  Inc. respectfully requests that this Court take judicial notice of the following

23  pleadings, orders and records from the following action, previously filed in this

24  Court and the Ninth Circuit Court of Appeals: Jerry Czajkowski, Lonia

25  Czajkowski v. Peter Jovanovich, et al., Case No. 92-CV-0431(B)(AJB), attached

26  hereto as Exhibits A through H and Exhibit K.  In addition, defendant respectfully

27  requests the Court to take judicial notice of the complaint and order dismissing that

28  complaint in an action filed by plaintiff herein in the United States District Court

1    for the Northern District of Illinois: <u>Jerry Czajkowski v. Reed Elsevier Inc.</u>, Case

2    No. 07 C 6971, attached hereto as Exhibits I and J.  The complete index of

3    pleadings and orders from other litigations filed by plaintiff herein is as follows:.

4         A.    Order Granting Defendants' Motion for Summary Judgment, entered

5               February 9, 1998.

6         B.    Civil Complaint for Breach of Contract and Fraud.

7         C.    Amended Civil Complaint for Breach of Contract and Fraud, and an

8               Answer to Defendants Motion to Dismiss.

9         D.    Unpublished Opinion: <u>Jerry Czajkowski; Lonia Czajkowski,</u>

10              <u>Plaintiffs-Appellants, v. Peter Jovanovich; et al.</u>, 1994 Westlaw

11              247089 (9th Cir. 1994).

12        E.    Fifth Amended Complaint for Breach of Contract, Breach of Fiduciary

13              Duty and Fraud.

14        F.    Plaintiff's Notice of Motion and Motion for Summary Judgment.

15        G.    Order Denying Plaintiff's Application for Reconsideration, entered

16              February 5, 1998.

17        H.    Ninth Circuit Memorandum Opinion, filed April 15, 1999.

18        I.    Complaint, U.S. District Court, N.D. Ill., Case No. 07 C 6971, filed

19              December 12, 2007.

20        J.    Memorandum Opinion and Order dated December 13, 2007.

21        K.    Plaintiffs' Reply to the Opposition to the Motion for Summary

22              Judgment.

23   In addition, defendant requests the Court to take judicial notice of the following

24   official record of the New York Secretary of State's Office:

25        L.    New York Secretary of State Record of Corporate Status: Harcourt

26              Brace Jovanovich, Inc.

27

28

# II.

## DISCUSSION

The Court may take judicial notice of pleadings and orders in plaintiff's prior lawsuits in considering this motion. See, e.g., Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (internal quotations omitted) (finding that a court may consider pleadings filed and opinions rendered in a prior, related action "without converting a motion to dismiss into a motion for summary judgment[.]"); Headwaters Inc. v. Forest Conservation Council, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of filings on a docket); Mullis v. United States Bankr. Court for the Dist. of Nevada, 828 F.2d 1385, 1388 (9th Cir. 1987) ("[F]acts subject to judicial notice may be considered on a motion to dismiss.").

Judicial notice of these pleadings, orders, and other documents is proper pursuant to Rule 201(b) of the Federal Rules of Evidence, which permits courts to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Federal Rules direct courts to take judicial notice of such matters "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

Each of the pleadings or orders filed in this Court, the Ninth Circuit, or the Northern District of Illinois (Exhs. A-K) are part of the public record and appropriate for judicial notice. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). Similarly, Exhibit L, a certified copy of the New York Secretary of State's official corporate records for Harcourt Brace Jovanovich, Inc., is judicially noticeable.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\615088.1

3

CASE NO. 07CV2383 JM(LSP)
REQUEST FOR JUDICIAL NOTICE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### <u>CONCLUSION</u>

For the foregoing reasons, defendant respectfully requests that the Court take judicial notice of the documents attached hereto, in consideration of defendant's Motion To Dismiss.


DATED: January 3, 2008                LATHAM & WATKINS LLP


                                      By:    s/Kenneth M. Fitzgerald
                                             Kenneth M. Fitzgerald
                                             Attorneys for Defendant
                                             Reed Elsevier Inc.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\615088.1

4

CASE NO. 07CV2383 JM(LSP)
REQUEST FOR JUDICIAL NOTICE



FILED

FEB 9 1998

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _Caguinel_                DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CZAJKOWSKI,<br>LONIA CZAJKOWSKI,<br>                              **Plaintiffs,**<br>       vs.<br>PETER JOVANOVICH,<br>HARCOURT BRACE JOVANOVICH,<br>                              **Defendants.** | CASE NO. 92-CIV-0431-B(AJB)<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

On December 22, 1997, Defendants filed a Motion for Summary Judgment. On January 20, 1998, Plaintiffs filed their opposition. On January 26, 1998, Defendants filed their reply. Upon due consideration of the moving and responding papers, and for the reasons discussed below, the Court hereby GRANTS Defendants' Motion for Summary Judgment.

## I. Background

Plaintiffs are former preferred shareholders of Harcourt Brace Jovanovich, Inc. (HBJ), a New York corporation. In January 1991, HBJ entered into a merger agreement with General Cinema Corporation. On November 1, 1992, Plaintiffs filed a written objection to the merger. On December 9, 1991, HBJ bought Plaintiffs' 5,083 shares of preferred stock at $.69 per share.

On February 25, 1992, Plaintiffs filed a pro se lawsuit in the Superior Court of the

95

92-0431

1  State of California, claiming that the defendants owe them $68,620.50 plus unpaid dividends
2  and interest, the difference between the price at which HBJ purchased their shares ($.69) and
3  the $13.50 per share price to which Plaintiffs claim they were entitled based on a proxy
4  statement they received from HBJ. Defendants removed the action from state court to the
5  United States District Court for the Southern District of California on March 25, 1992 under
6  28 U.S.C. §§ 1441. Shortly thereafter, Defendants moved to dismiss pursuant to Fed. R. Civ.
7  P. 9(b), 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure, which motion the Court
8  granted without leave to amend.

9      Plaintiffs appealed the dismissal to the United States Court of Appeals for the Ninth
10  Circuit. The Ninth Circuit reversed and remanded, granting Plaintiffs leave to amend their
11  complaint. The Ninth Circuit held that New York law governed the case, and under New
12  York law, Plaintiffs' exclusive remedy was an appraisal proceeding under N.Y. Bus. Corp.
13  Law § 623(h). Czajkowski, et al. v. Jovanovich, et al., No. 92-55787, Mem. Op. at 2-3 (9th
14  Cir. June 8, 1994). In the District Court and on appeal, Plaintiffs had argued that they were
15  eligible for an "appraisal-equitable relief" proceeding pursuant to N.Y. Bus. Corp. Law §
16  623(k). However, the Ninth Circuit had held that since Plaintiffs demanded money damages,
17  they had no equitable claims that would entitle them to relief under § 623(k). The Ninth
18  Circuit determined that, "[Plaintiffs'] action is in essence a claim that they were not paid
19  enough for their shares, it is a claim for damages, and therefore is foreclosed... unless it is
20  recast as a claim for appraisal." Czajkowski at 5.

21      Pursuant to the Ninth Circuit's ruling, this Court granted Plaintiffs leave to file a Fifth
22  Amended Complaint. In that complaint, Plaintiffs requested that this Court appraise
23  Plaintiffs' shares in accordance with N.Y. Bus. Corp. Law § 623(h)(4). Rather than engage
24  in this appraisal proceeding, Plaintiffs moved for summary judgment on their Fifth Amended
25  Complaint, demanding payment of $13.50 per share as "equitable relief." This Court denied
26  this motion on November 4, 1997. Defendants have now moved for summary judgment,
27  alleging that by failing to produce any expert witnesses or take any discovery, Plaintiffs have
28  not presented an issue of material fact regarding the $.69 price paid to Plaintiffs.

92-0431

## II. Discussion

Under the 9th Circuit's 1994 ruling, Plaintiffs were given the opportunity to request an appraisal proceeding under New York Business and Corporation Law §623(h)4. The Court of Appeals specifically stated that the appraisal proceeding was Plaintiffs' exclusive remedy. §623(h)4 requires that this Court determine the "fair value" of the shares in an appraisal proceeding by considering: 1) the nature of the transaction...; 2) the concepts and methods then customary in the relevant securities and financial markets of determining fair value ...; and 3) all other relevant factors. The determination of fair value shall be done without referral to a referee, jury, or appraiser. The court may permit pretrial disclosure at its discretion.

Plaintiffs amended their complaint to include a prayer for appraisal by the Court. Rather than present evidence in that proceeding, they moved for summary judgment on their Fifth Amended Complaint, continuing to insist that $13.50 was the only possible price per share. As discussed above, this motion was denied. Now *Defendants* have moved for summary judgment on the appraisal proceeding, alleging that Plaintiffs have not presented any evidence to demonstrate that the appraisal price of $.69 per share was too low. Defendants have filed a Declaration by an expert witness that the $.69 price was a fair value. This Declaration states that HBJ preferred stock was trading in a range of $.375 to $.5625 per share in the month prior to the General Cinema offer. Exhibits attached to the Declaration demonstrate that the HBJ stock had been on a long-term downward spiral. Defendants' Declaration alleges that absent the General Cinema offer, bankruptcy proceedings were likely for the highly-leveraged HBJ. The Declaration states that, in bankruptcy, HBJ preferred stockholders would have received less than $.69 per share and possibly nothing. Plaintiffs have filed an Opposition brief in which they allege that other HBJ shares were bought out in the General Cinema offer for much higher amounts, and based on these other payments their stock's fair value is actually $41.39 per share, more than triple the prior claim for $13.50 and sixty times more than $.69 per share. Plaintiffs have filed no Declarations.

- 3 -

## A. Summary Judgment Standard of Law

On a motion for summary judgment, the moving party must establish that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Federal Rule of Civil Procedure 56(c).  See also British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).  To show that summary judgment is not appropriate, the nonmoving party must set forth specific facts demonstrating a genuine issue of material fact.  Such evidence need not be in a form admissible at trial to avoid summary judgment.  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  The moving party is entitled to judgment as a matter of law if the nonmovant fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. Celotex, at 325.

Once the moving party meets the requirement of Rule 56 by showing that either no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Id.  "The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.  This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had an full opportunity to conduct discovery." Id. at 257.

## B. The Merits

Plaintiffs propose that they recognized that the stock was worth not $.69 per share (the buyout price), nor less than $.60 (the stock's market price immediately preceding the buyout), but rather $13.50 per share, or even $41.39 per share.

- 4 -

92-0431

1    The Plaintiffs have not presented any evidence to support their valuations of $13.50 or

2    $41.39. They have not demonstrated with independent declarations under penalty of perjury

3    that there was any "scheme to defraud Plaintiffs." Plaintiffs have made allegations of a

4    "two-step merger" which paid an unspecified group of "principal shareholders" $40 in cash

5    and additional stock. Plaintiffs have not presented any documents or independent opinions

6    relating to these allegations. Plaintiffs have offered no evidence, other than their personal

7    opinions and unsubstantiated allegations as to what the share price should have been. They

8    continue to rely primarily on the proxy statement clause to support their claim for $13.50 per

9    share.

10    Plaintiffs are correct that they are not *required* to engage in pretrial discovery under

11    §623(h)4; however, pretrial discovery exists for the very purpose of gathering evidence, of

12    which the Plaintiffs have none. Misunderstanding the nature of "discovery," Plaintiffs assert

13    that their "discovery" is limited to motions filed with the court and investigation into case

14    law and statutes. They have not presented the court with *any* evidence that they were given

15    an unfair price. The only evidence before the court is an expert opinion from Defendants'

16    witness that the price was fair. Given that the opportunity to take discovery or designate

17    expert witnesses has passed, it does not appear that Plaintiffs will produce anything other

18    than their own opinions that the price was unfair. Therefore, Plaintiffs have not met their

19    burden of presenting affirmative evidence to defeat Defendants' properly supported motion

20    for summary judgment. Plaintiffs have not produced any evidence that tends to show an

21    issue of material fact.

22                                  **III. Conclusion**

23    For the reasons discussed above, Defendants' Motion for Summary Judgment on

24    Plaintiffs' Fifth Amended Complaint is hereby GRANTED.

25        IT IS SO ORDERED.

26    DATED:_____FEB 0 9 1998_____

27    cc:    All Parties
28           Magistrate Judge

                                    UNITED STATES DISTRICT JUDGE

                                    - 5 -

                                                                    92-0431

# B



1  
2  Jerry Czajkowski
Lonia Czajkowski
3  7944 La Jolla Shores Dr.
San Diego, CA 92037
4  (619) 459-2077
IN PROPRIA PERSONA
5

6         SUPERIOR COURT OF THE STATE OF CALIFORNIA
             FOR THE COUNTY OF SAN DIEGO
7

8  JERRY CZAJKOWSKI,                    )
   LONIA CZAJKOWSKI,                    )                        **304**
9                                       )        CASE NO:
               Plaintiffs              )                      **648907**
10                                      )
       v.                              )
11                                      )
   PETER JOVANOVICH,                    )        CIVIL COMPLAINT FOR
12 HARCOURT BRACE JOVANOVICH, INC.      )        BREACH OF CONTRACT
   DOES 1 TO 50, A CORPORATION          )        AND FRAUD
13                                      )
               Defendants              )
14 _____ )

15

16                  JURISDICTION AND VENUE

17     Harcourt Brace Jovanovich Inc. (HBJ) is a New York corporation

18 with headquarters in California, Florida, Texas, Pennsylvania and

19 New York. It is also transacting business in the San Diego County.

20 Plaintiffs allege  that the Defendants owe them a total sum of

21 $73,357.80, and since Dec.9th,1991, $733.57 per month in interest.

22

23                    STATEMENT OF FACTS

24     Peter Jovanovich is the President and Chief Executive Officer

25 of the HBJ, now a subsidiary of the General Cinema Corporation

26 (GCC) of Chestnut Hill, Massachusetts.

27     Accordingly with the New York Business Corporation Law, Sec.

                              1
28

623, Plaintiffs opposed the merger between GCC and HBJ, to wit:

> " A shareholder intending to enforce his right under a section of this chapter to receive payment for his shares if the proposed corporate action referred to therein is taken shall file with the corporation... written objection to the action. The objection shall include a notice of his election to dissent..."

and in accordance with Sec.910 of said N.Y. Bus. Corp. Law the Plaintiffs are entitled to demand from the Defendants a full value for their 5,083 shares of the HBJ Preferred stock. Section 910 states:

> " A shareholder of the domestic corporation shall, subject to and by complying with section 623... have the right to receive payment of the fair value of his shares and the other rights and benefits provided by such section..."

<u>NATURE OF THE CASE</u>

Beginning October 1989 the Plaintiffs purchased HBJ Preferred securities with explicit HBJ's assurances of their good return (12% per year dividend paid in additional shares), special preference in relation to other HBJ's securities, and their overall safety guaranteed by the HBJ's "Certificate of Incorporation" ("CONTRACT").

The Plaintiffs own 5,083 shares of the HBJ Preferred stock, which according to the CONTRACT has a liquidation preference of $13.50 per share, a total value of $68,620.50 plus unpaid dividends since Jan.1st,1991.

On Dec.9th,1991, by registered mail, HBJ advanced to the Plaintiffs $2,810.90 for their 5,083 shares, and since then HBJ refuses to pay the remaining $65,809.60 plus unpaid dividends as the CONTRACT provides. The CONTRACT states that the holders of the

HBJ's Preferred stock are entitled to receive:

" per-share dividends at the annual rate of 12% computed on the $13.50 liquidation prefernce per share of the HBJ Preferred Stock."

Furthermore, the Plaintiffs have purchased the HBJ Preferred Stock based on the HBJ's contractual promise of its preference and safety in case of the HBJ liquidation, dissolution or winding-up. The same CONTRACT also says:

" In the event of any liquidation, dissolution or winding-up of HBJ, HBJ Preferred Stock has a liquidation preference of $13.50 (per share), plus any accrued and unpaid dividends to the liquidation date. No distribution can be made to the holders of HBJ Common Stock upon any liquidation until the holders of Preferred Stock of HBJ have received their liquidation preference in full."

In complete violation of the CONTRACT and other stockholders rights, on Jan.14th, 1991, HBJ went into "Original Merger Agreement" with the GCC, and offered equally without any preference, to its common and preferred stockholders $1.30 per share. On Aug.24th, 1991, in result of a "Revised Merger Agreement", HBJ offered mere 75 cents per share, again without giving any preference or special consideration to the preferred stockholders.

In its "Joint Proxy Statement" of Oct.25th, 1991 (p.51), HBJ bluntly declares:

" The HBJ Board considered that the Revised (Merger) Proposal and the transaction contemplated thereby did not entitle the holders of HBJ Preferred Stock to payment of $13.50 per share liquidation preference, which amount is payable according to the terms of the HBJ Preferred Stock in the event of liquidation, dissolution, or winding up of the affairs of HBJ.

INFORMATION ON FINANCIAL OPERATIONS OF THE DEFENDANTS

3

The assesed value of the HBJ Preferred Stock of 75 cents can be subject to scrutiny in light of the following facts:

I.    As recently as 1987, HBJ sold to the public 4.8 million shares of Common Stock at $10.25 per share (gross $49.3 million); 40,000 shares of Exchangeable Preferred Stock at $2,100.00 per share (gross $84 million); 10 million shares of Common Stock at $9.88 per share (gross $99 million); and $1.257 billion of other HBJ securities.

II.   In 1988 HBJ sold to the public 10.5 million shares of Common Stock at $9.50 per share (gross $100 million), and other securities for $400 million.

III.  On Nov.30th,1991, HBJ completed sale of its theme parks (e.g., "Sea World"), and related land holdings for $1.1 billion.

      Combined (I through III), it makes a grand total of $3.089 billion.

IV.   40.5 million shares of HBJ Preferred Stock were issued on July 27th, 1987, with an aggregate liquidation preference of $546.7 million. On June 30th, 1991, there were 60.7 million shares of the HBJ Preferred Stock outstanding with an aggregate liquidation preference of $869.7 million.

V.    HBJ has total assets of $3.336 billion (as of June 30th, 1990), and an annual revenues of $1.412 billion (year ended Dec. 30th, 1990).

      SUMMARY: In effect of the "Revised Merger Agreement" with the GCC, HBJ has devalued its Preferred Stock 94.4%, thus saving itself $824.1 million at the expense of its Preferred Investors.

## REQUEST FOR JUDGEMENT

Because the Plaintiffs as dissenting stockholders accordingly with the N.Y. Business Corporation Law, Sections 623 and 911, supra, were opposed to the "Merger Agreements", and to the fraudulent "75 cent" offer, they are requesting the Honorable Court that the Defendants be ordered to comply with the terms of the CONTRACT, and pay Plaintiffs in full the liquidation price of

4

the HBJ Preferred Stock of $13.50 per share, and unpaid dividends. This amounts to $68,620.50 minus an HBJ advance of $2,810.90, or $65,809.60, plus unpaid dividends since Jan.1st, 1991 until Dec.9th 1991, at 12% per year equal to $7,548.25, which makes a Grand Total of $73,357.80. In addition, since Dec.9th, 1991 until the end of this litigation, 12% interest on the outstanding Grand Total of $73,357.80, or $733.57 per month, and be awarded costs of this suit.

Date: _Feb/25/1992_____

_Jerry Czajkowski_
_____
Plaintiff, Jerry Czajkowski

_Lonia Czajkowski_
_____
Plaintiff, Lonia Czajkowski

5



1  Jerry Czajkowski
2  Lonia Czajkowski
   7944 La Jolla Shores Dr.
3  San Diego, CA 92037
   (619) 459-2077
4  IN PROPRIA PERSONA

5                    UNITED STATES DISTRICT COURT
6               SOUTHERN DISTRICT OF CALIFORNIA

7                                    CASE NO. 92-431 R (M)

8  JERRY CZAJKOWSKI,              )  AMENDED
   LONIA CZAJKOWSKI,              )  AMENDMENT TO THE
9                                 )  CIVIL COMPLAINT FOR
              Plaintiffs          )  BREACH OF CONTRACT
10                                )  AND FRAUD, AND AN ANSWER
       v.                         )  TO DEFENDANTS MOTION TO
11                                )  DISMISS.
   PETER JOVANOVICH,              )
12 HARCOURT BRACE JOVANOVICH, INC. )  [New York BC Law & 623(k)]
   DOES 1 THROUGH 50, A CORPORATION )
13                                )  Date: June 15, 1992
              Defendants          )  Time: 10:30 AM
14 _____)  Courtroom: The Honorable
                                     John S. Rhoades

15

16      Plaintiffs' whole Complaint for Breach of Contract and Fraud filed

17 in the Superior Court of the State of California on Feb. 25, 1992, was

18 based on a presumption that the merger of HBJ into GCC was legally

19 equivalent to and the same as "liquidation, dissolution or winding up"

20 of HBJ.

21      In addition to Sections 623 (a) and 910 (a) of the New York

22 Business Corporation Law (NY BC Law), Plaintiffs bring forward their

23 Complaint for Breach of Contract and Fraud, based also on subdivision

24 (k) of Section 623 of said law, which states:

25      "The enforcement by a shareholder of his right to receive payment
        for his shares in the manner provided herein shall exclude the
26      enforcement by such shareholder of any other right to which he
        might otherwise be entitled by virtue of share ownership, ...,

27
28                                     1

<u>except that this section shall not exclude the right of such</u>
<u>shareholder to bring or maintain an appropriate action to obtain</u>
<u>relief on the ground that such corporate action will be or is</u>
<u>unlawful or fraudulent as to him."</u>

In the case of <u>Alpert v. 28 Williams Street Corp.</u> 63 N.Y. 2d, 557

(1984) the Court of Appeals has stated (Headnotes p.560 and p.567):

"Generally, the remedy of a shareholder dissenting from a merger
and the offered "cash-out" price is to obtain the fair value of his
or her stock through an appraisal proceeding; <u>however, when the</u>
<u>merger is unlawful or fraudulent as to that shareholder, an action</u>
<u>for equitable relief is authorized (Business Corporation Law, Sect.</u>
<u>623, subd [k]).</u> Thus, technical compliance with the Business
Corporation Law's requirements alone will not necessarily exempt a
merger from further judicial review.", and on p.568, "<u>The two</u>
<u>claims are not identical – one seeks to enforce appraisal rights</u>
<u>and the other, equitable relief from the merger.</u>"

Therefore, based on the above Appellate Court decision, the
Defendants' claim that the only action Plaintiffs can take is an
"appraisal proceeding" (Defendants' Memorandum of Points and
Authorities, p.13, 1.5), is false, as is their other claim that
"equitable relief" is the relief which the appraisal proceeding in New
York can only establish (Defendants' Memorandum of Points and
Authorities, p.11, ll.4–11). The NY BC Law Section 623(k) clearly states
that the Court action for equitable relief is authorized if the merger
is unlawful or fraudulent as to that shareholder, (as is the case in
this lawsuit), and that the <u>appraisal proceeding is not an equitable</u>
<u>relief proceeding.</u> The Court may find that the "equitable relief" in
this case is the liquidation/maturity value of the HBJ Pref. Stock of
$13.50, plus unpaid dividends and interest. Based on these arguments
alone, Defendants' Motion to Dismiss and Memorandum of Points and
Authorities, should themselves be dismissed with prejudice.

2

Further, in the case of <u>Alpert v. 28 Williams Street Corp.</u> the Court of Appeals states:

> "The directors and majority stockholders of a corporation are cast in the fiduciary role of guardians of the corporate welfare; they have an obligation to all shareholders to adhere to fiduciary standards of conduct and to exercise their responsibilities in good faith when undertaking any corporate action, including a merger... When a breach of fiduciary duty occurs, that action will be considered unlawful and the aggrieved shareholder may be entitled to equitable relief."

If the Court concludes that the HBJ Pref. Stock was alike HBJ bonds (debentures) where bondholders recovered the principal amount (up to 100%), and the minority preferred stockholders who also paid CASH for their stock were fraudulently prevented from obtaining the same; that the pre July 27, 1987 "NON-CASH" preferred majority stockholders lost nothing but gained as a result of the merger/liquidation, and so all voted for it; that the merger of HBJ into GCC was equivalent to liquidation of HBJ by the nature of liquidation of its stock; that the Defendants fraudulently mislead the Plaintiffs by failing to disclose that "liquidation, dissolution and winding-up" will not or may not be synonymous with the term or action of a merger; that the common stockholders in violation of the CONTRACT were evenly paid with the preferred stockholders; All these summarized causes of action show the breach of contract, of fiduciary duty, and fraud on part of the Defendants.

3

GENERAL CAUSES OF ACTION:

I.    The whole Complaint for Breach of Contract and Fraud filed in the Superior Court of the State of California on Feb. 25, 1992, was based on a presumption that the merger of HBJ into GCC was legally equivalent to and the same as "liquidation, dissolution or winding up" of HBJ.

II.   Beginning October 1989 the Plaintiffs purchased HBJ Preferred securities with explicit HBJ's assurances of their good return (12% per year dividend paid in additional shares), special preference in relation to other HBJ's securities, and their overall safety guaranteed by the HBJ's "Certificate of Incorporation" , the "CONTRACT".

III.  The Plaintiffs own 5,083 shares of the HBJ Preferred Stock, which according to the CONTRACT has a liquidation/maturity preference of $13.50 per share, a total value of $68,620.50 plus unpaid dividends since Jan. 1, 1991 till notification date of Dec. 9, 1991.

IV.   Plaintiffs allege that the Defendants owe them a total sum of $73,357.80, and since Dec.9th,1991, $733.57 per month in 12% interest.

V.    On Nov. 1, 1991 Plaintiffs filed with the Defendants NOTICE OF ELECTION TO DISSENT, in their opposition to the Merger Agreement (attached as Exhibit A).

VI.   On Dec. 9, 1991, by registered mail, HBJ advanced to the Plaintiffs $2,810.90 for their 5,083 shares, and since then HBJ refuses to pay the remaining $65,809.60 plus unpaid dividends as the CONTRACT provides.

4

VII.  On Dec. 20, 1991, Plaintiffs made a COUNTEROFFER to the Defendants, which they refused (attached as EXHIBIT B).

VIII.  On Feb. 25 1992, Plaintiffs filed a lawsuit against the Defendants in the Superior Court of the State of California, for Breach of Contract and Fraud.

IX.  HBJ Pref. Stock has been liquidated, as it no longer trades on the NY Stock Exchange, and cannot be redeemed to anyone but GCC. In effect HBJ as an independent financial entity ceased to exist, i.e., it has been liquidated. Its stock was converted into GCC stock and liquidated.

X.  In 1989 Peter Jovanovich was a President, Chief Executive Officer and one of the Directors of the HBJ, now a subsidiary of the General Cinema Corporation (GCC) of Chestnut Hill, Massachusetts. He approved and negotiated merger agreements with GCC, and breached his fiduciary duty towards the "CASH" minority stockholders of the HBJ Pref. Stock (i.e., those who paid CASH for the Pref. Stock), by not acting in their best interest, but instead in the best interest of bondholders, "NON-CASH" preferred stockholders and management of HBJ who retained their positions under GCC.

XI.  In order to entice investors into buying and holding onto HBJ Pref. Stock, fraudulently on July 27, 1987 when the stock was issued, HBJ did not disclose the fate of the Pref. Stock in the event of a merger or consolidation. It only informed of the liquidation and maturity preference of $13.50 in case of "liquidation, dissolution or winding up". Due to the lack of this public disclosure Plaintiffs purchased HBJ Pref. Stock (5083 shares), as a long term

5

investment, believing that the liquidation or a merger legally have one and the same meaning and consequences, namely, a contractual obligation of HBJ to liquidate Pref. Stock at $13.50 per share, under all circumstances but bankruptcy.

XII. The act of deliberation by the Defendants whether to pay preferred stockholders liquidation/maturity preference of $13.50, shows Defendants' uncertainty as to the interpretation of the CONTRACT, and that to them initially the two concepts of merger and liquidation were synonymous, to wit:

> "The HBJ Board <u>considered</u> that the Revised (Merger) Proposal and the transaction contemplated thereby did not entitle the holders of HBJ Preferred Stock to payment of $13.50 per share liquidation preference, which amount is payable according to the terms of the HBJ Preferred Stock in the event of liquidation, dissolution, or winding up of the affairs of HBJ." (p.51 of HBJ Joint Proxy Statement dated Oct.25, 1991; due to its length not attached hereto)

Therefore this issue of liquidation/merger still should be subject to judicial review and interpretation.

XIII.On April 8, 1992 San Diego Union reported that the Defendant Peter Jovanovich is no longer the President and Chief Executive Officer of HBJ. Peter Jovanovich has resigned from this post just five months after the "merger" with GCC, suggesting once more that even at the top HBJ has been dissolved. Therefore, in this instance, the question, <u>IS MERGER EQUAL TO LIQUIDATION ?</u>, is an issue which the Court should resolve, and whether in this case of GCC and HBJ "merger", the "merger" is nothing more than a hidden act of dissolution and liquidation of HBJ, fraudulently performed at the expense of the "CASH" minority preferred stockholders.

6

XIV. Defendants' recommendation to "appraisal proceedings in New York" (Defendants' Memorandum of Points and Authorities, p.13, l.6), has no merit upon full consideration of the New York Business Corporation Law Section 623(k), which states that when the merger is fraudulent as to the shareholder, an action for equitable relief (and not an appraisal proceeding, i.e., one cannot have both), is authorized, and the shareholder is entitled to a judicial review.

In the case of <u>Alpert v. 28 Williams Street Corp.</u> 63 N.Y. 2d, 557 (1984) the Court of Appeals has stated (p.567):

" ...; <u>however, when the merger is unlawful or fraudulent as to that shareholder, an action for equitable relief is authorized (Business Corporation Law, Sect. 623, subd [k])".</u> and on p.568, <u>"The two claims are not identical - one seeks to enforce appraisal rights and the other, equitable relief from the merger."</u>

Additionally, according to the terms of the CONTRACT, HBJ has appraised its Preferred Stock on July 27, 1987, upon its issuance, to be worth at liquidation (merger assumed) or at its maturity (June 30, 2007), $13.50 per share, whichever comes first. Therefore, it would be futile and against the law (NY BC Law Sect. 623(k)) when the Plaintiffs are seeking "equitable relief from the merger", to spend time and effort appraising HBJ Pref. Stock in New York Court proceedings (especially when it already has been appraised and valued by the Defendants in 1987).

XV. Peter Jovanovich as a former Chief Executive Officer, President, and a Board member of the HBJ, is being named as such in this suit, and not as a private party or an individual. His actions and decisions are those of the HBJ and vice versa, which he represents with other DEFENDANTS DOES 1 THROUGH 50. Plaintiffs are ignorant of

7

the true names and capacities of the Defendants sued herein as DOES 1 THROUGH 50, and therefore sue these Defendants by such ficticious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs claim that actions of HBJ, Peter Jovanovich, and DOES 1 THROUGH 50, are all one and the same, and at this time no attempt is made to make any distinction between them.

XVI. The final ruling of this Court will not only affect the Plaintiffs but also 48 other dissenting HBJ preferred stockholders, who unlike the majority of stockholders, have paid CASH for their shares, and still are holding onto an aggregate of 820,675 shares of HBJ Pref. Stock. As the GCC and HBJ merger liquidated HBJ Pref. Stock from existance, Plaintiffs will never have a chance to recover their original 1989 investment, nor dividends paid in additional shares, nor interest and profits, unless the Court deems that NY Business Corporation Law Section 623 (k) entitles the Plaintiffs to judicial review and an equitable relief of $13.50 per share.

<u>SPECIFIC BREACH OF CONTRACT CAUSES OF ACTION:</u>

I. On July 27, 1987 HBJ declared in its CONTRACT with the preferred stockholders, that in the event of ANY liquidation (merger is assumed to be one of ANY), common stockholders will not be paid until preferred stockholders will receive in full $13.50 per share. On Nov. 25 1991, Defendants broke the CONTRACT and offered equally without any preference $0.75 or less per share. The CONTRACT states:

8

<blockquote>
"No distribution can be made to the holders of HBJ Common
Stock upon ANY liquidation until the holders of Preferred
Stock of HBJ have received their liquidation preference in
full." (p.134 of HBJ Joint Proxy Statement dated Oct.25, 1991,
due to its length it is not attached hereto)
</blockquote>

II.  Defendants lured investors into purchasing their Pref. Stock
(almost at a price close to a full maturity value of $13.50), with
a promise of its safety and good return (12 % per year dividend
paid in additional shares until June 30, 1993). And on Nov. 25,
1991 the Defendants one more time broke the CONTRACT which said:

<blockquote>
"In the event of ANY liquidation, dissolution or winding-up of
HBJ, HBJ Preferred Stock has a liquidation preference of
$13.50 (per share), plus any accrued and unpaid dividends to
the liquidation date". (p.134 of HBJ Joint Proxy Statement
dated Oct.25, 1991, due to its length it is not attached
hereto)
</blockquote>

III. Defendants contracted to pay 12% yearly dividend (interest) of the
maturity value of $13.50 per share of Pref. Stock. Since Jan. 1
1991 none was paid. Here too the CONTRACT was broken, as it said:

<blockquote>
"The HBJ Certificate of Incorporation provides that the
holders of shares of HBJ Pref. Stock are entitled to receive
per-share dividends at the annual rate of 12% computed on the
$13.50 liquidation preference per share of HBJ Pref. Stock.
Such dividends may be paid in cash or, through the second
quarter of 1993, in additional shares of HBJ Pref. Stock (or
fraction thereof) for each $13.50 of such dividends not paid
in cash." (p.19 of HBJ Joint Proxy Statement dated Oct.25,
1991, due to its length it is not attached hereto)
</blockquote>

### SPECIFIC FRAUD CAUSES OF ACTION:

I.   Merger agreement was exclusively fraudulent in respect to the
minority preferred stockholders who purchased HBJ Pref. Stock IN
CASH, instead of receiving it as an end product of a "Special
$40.00 Dividend" of HBJ on July 27, 1987.

9

"Under the HBJ Recapitalization, on July 27, 1987, HBJ paid a special dividend (the "Special Dividend") to its common shareholders, on a per share basis, of $40.00 in cash <u>and one share of HBJ Preferred Stock.</u> The Special Dividend aggregated approximately $1.6 billion in cash and approximately 40.5 million shares of HBJ Preferred Stock having an aggregate liquidation preference of approximately $546.7 million." (p.33 of HBJ Joint Proxy Statement dated Oct.25, 1991, due to its length it is not attached hereto)

In effect of this SPECIAL $40.00 DIVIDEND and one free share of Pref. Stock for each common share, the common stockholder who received Pref. Stock for FREE had nothing to lose and lost nothing but gained in 1991 by voting for the merger; for in 1987 this stockholder was fully repaid ($40.00) with profit, for the price he previously paid for one share of common stock, and as an extra bonus received free shares of Pref. Stock, which at the time he kept or sold at close to the maturity/liquidation value of $13.50 per share. It is only the minority "CASH" preferred stockholder who was defrauded, like the Plaintiffs who purchased HBJ Pref. Stock with hard earned CASH, and lost most of their money due to the liquidation/merger. Therefore, the liquidation/merger is only fraudulent in respect to the Plaintiffs, and not to the pre July 27, 1987 stockholders who lost nothing but gained at the expense of "CASH" preferred minority stockholders. Most likely many of the pre July 27, 1987 "NON-CASH" preferred stockholders were the majority stockholders, possibly even the Defendants.

II. According to the CONTRACT ,

"HBJ is required to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Pref. Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Pref. Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption". (p.133

10

of HBJ Joint Proxy Statement dated Oct.25, 1991, due to its length it is not attached hereto)

In effect of this CONTRACT HBJ Pref. Stock has a final maturity date (June 30, 2007), just like other HBJ debentures (bonds) had their maturity, many of which were purchased by the GCC at 100% of their principal amount (e.g., HBJ Senior Notes), whereas HBJ Pref. Stock was bought out at 5.5% of the liquidation/maturity value. Such an action where bondholders get most of their monies back or all of it, and "CASH" preferred stockholders get almost nothing, in itself can be termed as a fraudulent merger transaction between GCC and HBJ. It also should be noted that in 1989, the time when the Plaintiffs began to purchase HBJ Pref. Stock, it traded on the NY Stock Exchange at a high of $12.25, or 90.7% of the liquidation value of $13.50.

III. The Defendants $0.75 offer for HBJ Pref. Stock is fraudulent in light of the contractual $13.50 liquidation price, or $13.50 per share at maturity value; $3.336 billion total assets of HBJ (as of Jun. 30 1990), annual revenues of $1.412 billion (year ended Dec. 30 1990), $869.7 million liquidation value of the HBJ Pref. Stock, and Defendants own July 27, 1987 Pref. Stock valuation at maturity of $13.50 per share or upon ANY liquidation (merger assumed).

IV. Common stockholders were paid equally with the preferred stockholders, contrary to the CONTRACT, which action is fraudulent as to the Plaintiffs.

V. Merger/liquidation agreement on Nov 25, 1991 was not consumated in the best interest of the "CASH" minority preferred stockholders, nor in accordance with the CONTRACT, where preferred stockholders

11

1    were guaranteed liquidation preference.

2  VI.   If the Court finds that the GCC and HBJ merger is not the same as

3        liquidation, then the Defendants also fraudulently have failed to

4        inform on July 27, 1987 its "CASH" preferred stockholders that in

5        the event of the merger (unlike liquidation), HBJ Pref. Stock will

6        become worthless or nearly so, and that the CONTRACT will be

7        nonbinding; something one only expects in case of a bankruptcy, but

8        even then there would be $3.336 billion in HBJ assets to be

9        distributed to the stockholders. If the disclosure, of the merger

10       not being synonymous with liquidation, was made to the Plaintiffs,

11       they would have never purchased HBJ securities or held onto them

12       till this day.

13 VII.  In effect of the fraudulent merger agreement, HBJ dissolved itself

14       and its financial obligations to the "CASH" minority preferred

15       stockholders. The dissenting "CASH" minority preferred stockholders

16       can never recover from the GCC their original investment or the

17       contractual stock value at liquidation or maturity (Jun 30, 2007)

18       of $13.50, like most of the bondholders did, or the majority "NON-

19       CASH" owners of HBJ Pref. Stock who obtained it for FREE on July

20       27, 1987 and still got paid 75 cents for it in return for voting in

21       favor of the liquidation/merger, unless the COURT rules for the

22       Plaintiffs.

23 VIII. The Defendants offered to the Plaintiffs for their Pref. Stock

24       valued according to the CONTRACT at $68,620.50, only $2810.90,

25       which offer to the Plaintiffs is fraudulent as well.

26

27                                        12

28

IX.  In effect of the "Revised Merger Agreement" with the GCC, HBJ has devalued its Preferred Stock 94.4%, thus saving itself $824.1 million at the expense of ONLY its minority "CASH" Preferred Investors. This act of unjustifiable devaluation and of defrauding of only "CASH" preferred investors, is fraudulent as to the Plaintiffs.

<u>REQUEST FOR JUDGEMENT</u>

Because the Plaintiffs as dissenting stockholders accordingly with the N.Y. Business Corporation Law, Sections 623 (a), 623 (k) and 910 (a), were opposed to the "Merger Agreements", to the fraudulent "75 cent" offer, and are entitled to judicial review and equitable relief under Section 623 (k) of said law, they are requesting the Honorable Court that the Defendants' Motion to Dismiss and Memorandum of Points and Authorities be dismissed, and that the Defendants be ordered to comply with the terms of the CONTRACT, and pay Plaintiffs in full the liquidation/maturity price of the HBJ Preferred Stock of $13.50 per share, and unpaid dividends and interest, as equitable relief.

This amounts to $68,620.50 minus an HBJ advance of $2,810.90, or $65,809.60, plus unpaid dividends since Jan.1st, 1991 until Dec.9th 1991, at 12% per year equal to $7,548.25, which makes a Grand Total of $73,357.80. In addition, since Dec.9th, 1991 until the end of this litigation, 12% interest on the outstanding Grand Total of $73,357.80, or $733.57 per month, and be awarded costs of this suit.

Date: 4/27/92

_Jerry Czajkowski_                    _Lonia Czajkowski_
Plaintiff, Jerry Czajkowski      Plaintiff, Lonia Czajkowski

13



Westlaw.

28 F.3d 105 (Table)

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

**C**
NOTICE: THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA9 Rule 36-3 for
rules regarding the citation of unpublished
opinions.)

United States Court of Appeals, Ninth Circuit.
Jerry **CZAJKOWSKI**; Lonia Czajkowski,
Plaintiffs-Appellants,
v.
Peter JOVANOVICH; Harcourt Brace,
Jovanovich, Inc., Defendants-Appellees.
**No. 92-55787.**

Argued and Submitted May 3, 1994.
Decided June 8, 1994.

Appeal from the United States District Court for
the Southern District of California, No.
CV92-431-JSR (HRM); John S. Rhoades, District
Judge, Presiding.

S.D.Cal.

VACATED AND REMANDED.

Before: BROWNING and FLETCHER, Circuit
Judges, and FITZGERALD, [FN*] Senior District
Judge.

MEMORANDUM [FN**]
**1 Jerry and Lonia Czajkowski appeal pro se the
district court's order dismissing their action
pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state
a claim upon which relief may be granted. We
have jurisdiction pursuant to 28 U.S.C. § 1291 and
we vacate and remand.

I.
We review de novo the district court's dismissal of
the Czajkowski's action. *See Blake v. Dierdorff,*
856 F.2d 1365, 1368 (9th Cir.1988). We accept all
material allegations in the complaint as true and
resolve all doubts in favor of the plaintiff. *See id.*
"Dismissal is appropriate only if the plaintiff 'can
prove no set of facts in support of his claim which
would entitle him to relief.' " *Klarfeld v. United
States,* 944 F.2d 583, 585 (9th Cir.1991) (per
curiam) (quoting *Gibson v. United States,* 781 F.2d
1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S.
1054 (1987)). When a complaint is dismissed for
failure to state a claim, the court should grant the
plaintiff leave to amend " 'unless the court
determines that the allegation of other facts
consistent with the challenged pleading could not
possibly cure the deficiency.' " *Id.* (quoting
*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
806 F.2d 1393, 1401 (9th Cir.1986)).

A.
There is no dispute that the issues presented to the
district court are governed by New York law since
Harcourt was a New York corporation. *See Rogers
v. Guaranty Trust Co.,* 288 U.S. 123, 130 (1933);
*Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1527
(9th Cir.1985) (stating that "[c]laims involving the
'internal affairs' of corporations ... are subject to the
laws of the state of incorporation").

Under New York law, "[s]hareholders who do not
assent to [a] merger have the right to receive
payment for the 'fair value' of their shares.... The
remedy available to those who have perfected their
status as dissenting shareholders ... is to enforce this
right through an appraisal proceeding." [FN1]
*Cawley v. SCM Corp.,* 530 N.E.2d 1264, 1266
(N.Y.1988); *see* N.Y.Bus.Corp.Law § 623
(McKinney 1986); *Burke v. Jacoby,* 981 F.2d
1372, 1380 (2d Cir.1992), *cert. denied,* 113 S.Ct.
2338 (1993). Furthermore, under section 623(e), a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

dissenting shareholder "cease[s] to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under ... section [623]." N.Y.Bus.Corp.Law § 623(e).

Section 623 also provides:
> The enforcement by a shareholder of his right to receive payment for his shares in the manner provided [in section 623] shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled ... except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him.

*Id.* § 623(k). As interpreted by New York courts, section 623(k) makes an appraisal proceeding a dissenting shareholder's exclusive remedy except in a narrow class of cases. *See Burke,* 981 F.2d at 1380; *Cawley,* 530 N.E.2d at 1267.

**2 The exception to the general rule requires the plaintiff to bring an "appropriate action" for equitable relief for unlawful or fraudulent corporate action. *Cawley,* 530 N.E.2d at 1267. Equitable relief must be the primary relief sought. *Walter J. Schloss Assocs. v. Arkwin Indus.,* 460 N.E.2d 1090, 1091 (N.Y.1984) (adopting dissenting opinion of Mangano, J., at Appellate Division as Court of Appeals opinion). "Money damages are only available, if at all, as ancillary or incidental to such equitable relief." *Id.*

Here, it is undisputed that the Czajkowskis were dissenting shareholders in the Harcourt Brace Jovanovich, Inc. ("HBJ") merger with General Cinema Corporation ("GCC"). Accordingly, the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding. *See,* N.Y.Bus.Corp.Law § 623(k). The Czajkowskis' attempt to avoid this result in two ways.

First, the Czajkowskis contend that the merger was in fact a liquidation of HBJ and, therefore, that they

were entitled to payment of a $13.50 per share liquidation preference. This contention lacks merit.

New York courts have not decided whether a "merger" is the equivalent of a "liquidation" requiring payment of the liquidation preference to preferred shareholders. However, in *Rauch v. RCA Corp.,* 861 F.2d 29 (2nd Cir.1988), the Second Circuit decided the issue under Delaware law. In *Rauch* the plaintiff, who owned preferred shares of RCA, was offered $40 a share pursuant to a merger agreement in which RCA was to be merged with a subsidiary of General Electric. She claimed that the merger constituted a "liquidation or dissolution or winding up of RCA" and that she was therefore entitled to $100 per share--the amount specified as the redemption or liquidation preference value of her preferred shares. The court rejected this argument. Quoting an earlier case, the court held it was

> settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares.

*Id.* at 32 (quoting *Rothschild Int'l Corp. v. Liggett Group,* 474 A.2d 133, 136-37 (Del.1984)). In both *Rauch* and *Rothschild,* the courts held that owners of preferred stock were not entitled to the liquidation or redemption preference specified in their stock agreements (which was in both cases $100), because the merger of the corporations in which they owned stock did not constitute the liquidation of the corporations. *E.g., Rothschild,* 474 A.2d at 136 ("there was no 'liquidation' of Liggett within the well-defined meaning of that term ... [because] the reverse cash-out merger of Liggett did not accomplish a 'liquidation' of Liggett's assets."). The *Rauch* court noted that plaintiff could have sought an appraisal proceeding (Delaware Business Code has a provision similar to N.Y.Bus.Corp.Law § 623), but did not. *Rauch,* 861 F.2d at 32.

**3 Since the decisions in *Rauch* and *Rothschild*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)

Page 3

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

appear to turn upon interpretation of the contract term "liquidation" as included in the preferred share agreements, rather than on any specific or unique provision in Delaware law, there is little reason to suspect that New York courts would follow a different course.

Second, the Czajkowskis contend that their action falls within the "appropriate action" exception because they sought equitable relief for fraud. This contention also lacks merit.

To fall within the "appropriate action" exception, "[t]here must be a request for equitable relief which, in fact, must be the primary relief sought." *Walter J. Schloss Assocs.,* 460 N.E.2d at 1091. Even if equitable claims and claims for damages are brought in the alternative and are equally weighted, the claim is outside the "appropriate action" exception. *Staskus v. The Rawlplug Co., Inc.,* 1993 WL 212736 (S.D.N.Y. June 11, 1993) (holding appraisal is exclusive remedy where plaintiff sought both appraisal and rescission of merger, and expressed no preference for one or the other). Nor is the plaintiff permitted to merely request damages in another form. *Burke,* 981 F.2d at 1380. Here, the Czajkowskis' action is in essence a claim that they were not paid enough for their shares, it is a claim for damages, and therefore is foreclosed by *Schloss* unless it is recast as a claim for appraisal.

**B.**

The district court held that it lacked jurisdiction to hear an action seeking appraisal under the New York statute that required the suit be brought in the New York courts. We conclude, however, that the New York legislature may not divest the district court of diversity jurisdiction. The district court can appraise the shares applying the New York law. In a case repeatedly cited by appellants, the Eighth Circuit held that the venue provision of a New Jersey appraisal statute did not divest a federal court of diversity jurisdiction over an action for appraisal under New Jersey law. *Mullen v. Academy Life Ins. Co.,* 705 F.2d 971, 975 (8th Cir.1983). A federal district court reached the same conclusion with regard to the New York

appraisal statute at issue. *TBK Partners, Ltd. v. Western Union Corp.,* 517 F.Supp. 380, 388 (S.D.N.Y.1981), *aff'd,* 675 F.2d 456 (2d Cir.1982). These cases apply a longstanding Supreme Court rule:

> Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

*Railway Co. v. Whitton's Administrator,* 80 U.S. (13 Wall.) 270, 286 (1871); *accord Duchek v. Jacobi,* 646 F.2d 415 (9th Cir.1981) (rejecting argument that federal court lacked jurisdiction to enforce its judgment where controlling state statute required action to proceed in particular state court).

**\*\*4** The Czajkowskis make substantial allegations that the merger price of $0.75 per share may not have been the "fair value" to which the Czajkowskis were entitled under N.Y.Bus.Corp.Law § 623. While the Czajkowskis owned the stock, it allegedly traded for as much as $12.25 per share. Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law. *See Walter J. Schloss Assocs. v. Arkwin Indus., Inc.,* 455 N.Y.S.2d 844, 852 (N.Y.App.Div.1982) (Mangano, J., dissenting), *rev'd for reasons stated in dissenting opinion,* 460 N.E.2d 1090 (N.Y.1984).

We remand to allow the Czajkowskis leave to amend their complaint to seek appraisal under the New York Statute.

VACATED and REMANDED.

> FN\* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

> FN\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3. The parties are familiar with the facts and we will not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)                                                                                          Page 4

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

> repeat them.
>
> FN1. Appraisal is the exclusive remedy for common and preferred voting shares. N.Y.Bus.Corp.Law § 623(k); *In re Harwitz,* 80 N.Y.S.2d 570 (N.Y.Sup.Ct.1948). Because the Czajkowskis' preferred shares were voting shares, their remedy is appraisal.

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.)), Unpublished Disposition

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Jerry Czajkowski, Ph.D.,
Lonia Czajkowski
7944 La Jolla Shores Dr.
San Diego, CA 92037
(619) 459-7531
IN PROPRIA PERSONA

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

CASE NO. 92-0431-R(AJB)

| | |
|---|---|
| JERRY CZAJKOWSKI, Ph.D.,<br>LONIA CZAJKOWSKI,<br><br>Plaintiffs<br><br>v.<br><br>PETER JOVANOVICH,<br>HARCOURT BRACE JOVANOVICH, INC.<br>DOES 1 THROUGH 50, A CORPORATION<br><br>Defendants | FIFTH AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY AND FRAUD, IN COMPLIANCE WITH:<br>F.R.C.P. RULES 8(e)(2), 8(f), 9(b), AND A REQUEST TO "APPRAISE" THE FAIR VALUE OF PLAINTIFFS' VESTED HBJ PREFERRED SHARES PURSUANT TO: THE MANDATE OF THE U.S. 9TH CIRCUIT COURT OF APPEALS (DATED 6/8/94), NEW YORK B.C. LAW &623(4) AND &623(k), NEW YORK CASE LAW OF <u>BRESLAV v. NEW YORK AND QUEENS E.L.& P.</u>, 291 N.Y.S. 932, U.S. CONSTITUTION 14TH AMENDMENT, AND U.S. CONSTITUTION ARTICLE 1 & 10. |

This Fifth Amended Complaint is based on the:

(a).    mandate of the U.S. Court of Appeals requesting the District Court on remand to take into consideration plaintiffs' breach of fiduciary duty and fraud causes of action (MEMORANDUM, p.6).

(b).    **F.R.C.P. Rule 8.(e) Pleading to be concise and direct; consistency**. "(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required. (2)...A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11."

(c).    **F.R.C.P. Rule 8.(f) Construction of pleadings**. All pleadings shall be so construed as to do substantial justice; and **F.R.C.P. Rule 9. Pleading special matters (b) Fraud.**

(d).    **United States Constitution Article 1 & 10** and **Amendment 14th,** as applied in the New York case law of <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 N.Y.S.932, "Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest which may not be divested without stockholder's assent, and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares". <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708.(<u>N.Y.McKinney's Business Corp.Law</u> & 806)

(e).    <u>New York Business Corporation Law</u> Section 623 (k), and Section 623 (4), (5), (6) and (7).

1

**JURISDICTION**

2 Pursuant to 28 U.S.C. & 1332, the District Court has diversity jurisdiction over plaintiffs' Complaint.

3 **BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT AND FRAUD CAUSES OF ACTION**

4 **I.**

5 Beginning October 1989 plaintiffs purchased HBJ preferred securities as a long term retirement

6 investment with explicit HBJ's assurances of their good return (12% dividend), $13.50 redemption price

7 "at any time" or at the maturity (June 30, 2003), and their overall safety as guaranteed by the HBJ

8 CONTRACT.

9 **II.**

10 According to the HBJ CONTRACT and authority of 18B Am.Jur.2d,183, the plaintiffs are entitled to unpaid

11 12% dividends from 1-01-91 to a notification date of 12-09-91. However, since 1-01-91 defendants did

12 not pay any,

13 "The HBJ Certificate of Incorporation provides that the holders of shares of HBJ Preferred Stock
14 are entitled to receive per share dividends at the annual rate of 12% computed on the $13.50
15 liquidation preference per share of HBJ Preferred Stock." (p.19 of HBJ Joint Proxy Statement).

16 **III.**

17 The HBJ CONTRACT guaranteed at any redemption time or at the maturity, $13.50 per share to its vested

18 creditors, and cumulative 12% dividends,

19 **"HBJ may, at its option, redeem shares of HBJ Preferred Stock in whole at any time, or**
20 **from time to time in part, at a redemption price equal to the $13.50 per share liquidation**
21 **preference plus accrued and unpaid dividends, if any, to the date fixed for redemption. HBJ**
22 **is required to redeem, on June 30, 2003,** and on each June 30 thereafter through June 30, 2006,
23 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining
24 shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per
25 share, plus accrued and unpaid dividends, if any, to the date of redemption". (p.133 of HBJ Joint
26 Proxy Statement dated 10-25-91).

27 Plaintiffs own 5,083 shares of the HBJ vested preferred stock (Exhibit A). This amounts to $68,620.50

28 minus an HBJ advance of $2,810.90, or $65,809.60, plus unpaid dividends since 1-01-91 until 12-09-91

2

1    at 12% per year equal to $7,548.25, which adds up to $73,357.80. Plaintiffs allege that as of 12-09-91

2    the defendants owe them $73,357.80 and since 12-09-91, about $1508.64 per month in 12% compounded

3    daily interest. As of this date the grand total is $119,245.78.

### IV.

5    Plaintiffs' right to receive $13.50 per share with accrued dividends on June 30, 2003, or "at any time",

6    was a valuable vested property right, and HBJ-GCC two-step merger did not have the authority of equity

7    or of the U.S. Constitution to take away those vested rights without the plaintiffs' consent.

8    "Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-
9    thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract
10   and as divesting stockholder of vested interest in corporation without due process of law,...Const.
11   art.8, & 1; Const. U.S. Amend.14; Const. U.S. art.1, & 10", and,
12

13   "Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest
14   which may not be divested without stockholder's assent, and not a mere defeasible interest subject
15   to be extinguished by holders of record of two-thirds (now majority) of outstanding shares".
16   Breslav v. New York & Queens Electric Light & Power Co., 291 NYS 932, 249 App.Div.181,
17   affirmed 273 NY 593, 7 NE2d 708.(N.Y.McKinney's Business Corp.Law & 806)

### V.

19   In 1987 the defendants failed to disclose the consequences of a merger upon the contractual vested

20   property rights of the HBJ preferred creditors. This omission is in violation of the Securities Exchange

21   Act of 1934 & 10(b)-5, 15 U.S.C.A. & 78j(b), 17 C.F.R. 240.10b-5, which states:

22   "Rule 10b-5, which gives exclusive effect to Section 10(b), is entitled 'Employment of manipula-
23   tive and deceptive devices', and declares it to be unlawful for any person:
24          (a) to employ any device, scheme, or artifice to defraud,
25          (b) to make any untrue statement of material fact or to omit to state a material fact
26   necessary in order to make the statements made, in light of the circumstances under which
27   they were made, not misleading,
28          (c) or to engage in any act, practice, or course of business which operates or would operate
29   as a fraud or deceit upon any person, in connection with the purchase or sale of any
30   security." (Cited in Green v. Santa Fe Ind. 553 F.2d 1283 (1976) 1301).

31   Due to this unlawful omission plaintiffs purchased HBJ vested stock. If such a disclosure was made,

32   plaintiffs would never have purchased HBJ contractual securities as a long term retirement investment.

3

**VI.**

The merger of HBJ-GCC was a <u>two-step merger</u> (for a more detailed information on two-step mergers, please see "**Compensating shareholders frozen out in two-step mergers**." 78 <u>Columbia L.Rev.</u> 548, 1978), carried out on a time scale of four years, and thus belongs to the category of other type of illegality, which has been employed by the defendants as a "device, scheme, or artifice to defraud" the plaintiffs (<u>Securities Exchange Act of 1934</u> & 10(b)-5). In the first step of the merger (July 1987), HBJ sold bonds, borrowed from banks, and issued preferred vested stock to pay each and everyone of its pre July 1987 stockholders total <u>asset</u> value of HBJ common stock at <u>$53.50 per share</u> ($40 special dividend in cash and $13.50 in preferred stock for each share of common stock). After July 1987 HBJ preferred stock traded on the NYSE for as much as $13. Furthermore, each common stockholder also retained the common stock (i.e., there was no surrender), which traded after July 1987 at about $15. If the majority stockholder chose to liquidate all the securities in July 1987, the HBJ financial package would net about $68, which is even more than the total asset value of <u>$53.50</u>, supra. In the second step of the merger (November 1991), GCC paid off the banks, bondholders and other creditors (who like the plaintiffs possessed vested property rights and financed the "<u>$53.50 per share</u>" total-asset-HBJ-package). Next, HBJ illegally liquidated its vested 12% preferred stock without any consideration for the plaintiffs' vested property rights. If one eliminates from the two-step HBJ-GCC merger picture the middlemen (the banks, bondholders, and other creditors), then the merger turns into an <u>explicit</u> process of elimination of the plaintiffs' vested property rights ("freeze-out"), and use of a two-step merger as a "device, scheme, or artifice to defraud". This is directly in violation of Rule 10b-5 of <u>Securities Exchange Act of 1934</u>, for under the two-step HBJ-GCC merger the plaintiffs did not receive GCC preferred stock with vested interest and of equal value, and what they were offered ($0.69) in comparison to the $41.39 of the majority was unlawful, grossly unfair and inequitable. Hence, the act of issuance of the $40 dividend in the first step of the merger, and the second step of the merger culminating in the act of liquidation of the

1    HBJ 12% preferred stock without any regard for plaintiffs' vested property rights lead to a conclusion

2    that the HBJ-GCC merger was fraudulent and unlawful, entitling the plaintiffs to equitable relief under

3    New York Business Corp.Law & 623 (k),

4      "Generally, the remedy of a shareholder dissenting from a merger and the offered "cash-out" price
5      is to obtain the fair value of his or her stock through an appraisal proceeding; however, when the
6      merger is unlawful or fraudulent as to that shareholder, an action for equitable relief is authorized
7      (Bus. Corp.Law, Sect. 623[k]). Alpert v. 28 Williams Str. Corp. 63 NY 2d, 557
8
9    According to the authority of **American Jurisprudence**, "specific performance is an ancient form of

10   equitable relief", therefore the plaintiffs have the right to seek the contractual $13.50 redemption value of

11   their vested stock as an equitable relief from this unlawful and fraudulent two-step HBJ-GCC merger.

12                                      **VII.**

13   HBJ-GCC merger was fraudulent only in respect to the minority preferred creditors who purchased HBJ

14   vested stock in cash, instead of receiving it as an end product of the "special $40 dividend",

15     "Under the HBJ Recapitalization, on July 27, 1987, HBJ paid a special dividend to its common
16     shareholders, on a per share basis, of $40 in cash and one share of HBJ preferred stock. (p.33 of
17     HBJ Joint Proxy Statement dated October 25, 1991)

18   In effect of this special $40 dividend and one free share of vested preferred stock for each common share,

19   the common stockholder who received preferred stock gratis had nothing to lose and lost nothing but

20   gained in 1991 by voting for the merger; for in 1987 this stockholder was fully repaid with profit ($40

21   dividend), for the price he previously paid for one share of common stock, and as an extra bonus

22   received free shares of vested 12% preferred stock, which at the time he kept or sold at close to the

23   maturity price of $13.50. Therefore, the merger was fraudulent only in respect to the plaintiffs, and not

24   the majority who lost nothing but gained at the expense of vested minority. In summary, the defendants

25   breached their fiduciary duty to the minority by granting themselves in 1987 gratis shares of the 12%

26   preferred stock and the $40 dividend per each common share (which benefit was fully paid for by the

27   HBJ-GCC two-step merger), and in November 1991 by unlawfully divesting the 12% preferred stock.

## VIII.

According to the **HBJ CONTRACT**, vested 12% preferred stock has a maturity date (June 30, 2003), just like other HBJ securities many of which were purchased back by the GCC at 100% of their principal amount (e.g., HBJ Senior Notes and <u>HBJ Exchangeable Preferred Stock</u>). However, HBJ 12% preferred stock was redeemed at 0.48% of its <u>full</u> maturity value of $143.65. Such a merger action where bondholders and other preferred creditors get their monies back, and the plaintiffs who also possessed vested rights are offered almost nothing is fraudulent, too (it should be noted that in 1989, the time when the plaintiffs began to purchase HBJ preferred stock, it traded on the NYSE at a high of $12.25, or 90.7% of its $13.50 redemption price).

### PRAYER FOR RELIEF

#### I.

Defendants committed fraudulent acts (made specific omissions of fact, finalized preferred minority's "freeze-out" from vested property rights utilizing as a "device, scheme" a two-step merger), breached their fiduciary duty towards the plaintiffs, broke the **CONTRACT** with the plaintiffs and deprived them of those vested property rights, all in violation of the <u>Securities Exchange Act of 1934</u> & 10(b)-5, 15 U.S.C.A. & 78j(b), <u>Breslav v. N.Y.& Queens E.L.& P.</u>, 291 NYS 932, and Constitution of the United States, Amend.14, U.S. Const. Art.1, & 10. Based on these authorities, plaintiffs as dissenting creditors of HBJ who opposed the merger, and are entitled under <u>New York Business Corp.Law</u> &623 (k) and (4) to equitable relief and appraisal seek <u>specific performance</u> of the **CONTRACT** and an appraisal in accordance with said **CONTRACT** and authorities.

#### II.

Plaintiffs request the U.S. District Court to "fix the fair value" of their 12% HBJ vested shares by taking into consideration:

    **A.**   "… various allegations of fraud and breach of fiduciary duty which can be considered in

1    conducting an appraisal under N.Y. law." (mandate of the U.S. Appeals' Court, MEMORANDUM, p.6).

2       **B.**    The New York case law of <u>Breslav v. New York & Queens Electric Light and Power Co.</u>,

3    291 N.Y.S. 932, which sets, that, "Statutory remedy of appraisal of dissenting stockholder's stock...does

4    not apply where...vested property right is destroyed...".

5       **C.**    The United States Constitution and the New York State Constitution as applied in the New

6    York case law of <u>Breslav v. New York & Queens Electric Light and Power Co.</u>, in particular U.S.

7    Const. Amendment 14; U.S. Const. art.1, & 10, N.Y. Const. Art.8, & 1, which specify that,

8       "Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-
9       thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract
10      and as divesting stockholder of vested interest in corporation without due process of law,...Const.
11      art.8, & 1; Const. U.S. Amend.14; Const. U.S. art.1, & 10", and,

12      "Power reserved in state to amend corporation's charter is not unlimited, and its exercise is
13      subject to restrictions imposed by other provisions of State and Federal Constitutions, such as re-
14      quirement of due process, and vested property rights and obligations of contract must not be
15      destroyed or impaired (Const. art.8, & 1; General Corporation Law, & 5; Const. U.S. Amend.14;
16      Const. U.S. art.1, & 10.") <u>Breslav v. New York & Queens E.L.& P. Co.</u>, 291 NYS 932.

17      **D.**    The  **HBJ CONTRACT**  itself, which guaranteed to the plaintiffs that their "noncallable"

18   vested stock may be "callable" but only at the redemption price equal to its maturity price of $13.50 per

19   share.

20      **E.**    The <u>New York Business Corporation Law</u> Section 623 (4), (5), (6) and (7), dealing with an

21   appraisal procedure:

22   (4)  <u>The court shall determine whether each dissenting shareholder,...is entitled to receive payment for</u>
23        <u>his shares... if the court finds that any dissenting shareholder is so entitled, it shall proceed to fix</u>
24        <u>the value of the shares...</u> **<u>In fixing the fair value of the shares, the court shall consider the</u>**
25        **<u>nature of the transaction giving rise to the shareholder's right to receive payment for shares</u>**
26        (*inset: in this case the plaintiffs are requesting the District Court to consider violation of plaintiffs'*
27        *constitutional vested property rights, breach of fiduciary duty, fraud, and breach of contract*
28        *causes of action*) **<u>and all other relevant factors</u>** (*inset: e.g., mandate of the Court of Appeals, 6-*
29        *8-94, MEMORANDUM, p.6*). <u>The court shall determine the fair value of the shares without a jury</u>
30        <u>and without referral to an appraiser or referee.</u>
31   (5)  <u>The final order in the proceeding shall be entered against the corporation in favor of each</u>
32        <u>dissenting shareholder who is a party to the proceeding and is entitled thereto for the value of his</u>
33        <u>shares so determined.</u>

(6) <u>The final order shall include an allowance for interest at such rate as the court finds to be</u>
<u>equitable, from the date the corporate action was consummated to the date of payment. In</u>
<u>determining the rate of interest, the court shall consider all relevant factors</u> (*inset: HBJ CONTRACT*
*guaranteed 12% cumulative dividend/interest rate*),

(7) (e)...<u>The court may, in its discretion, apportion and assess all or any part of the costs, expenses</u>
<u>and fees incurred by any or all of the dissenting shareholders who are parties to the proceeding</u>
<u>against the corporation if the court finds any of the following: (A) that the fair value of the shares</u>
<u>as determined materially exceeds the amount which the corporation offered to pay;</u>...

## III.

**BECAUSE THE PLAINTIFFS:**

1.      Without due process of law, in violation of their rights guaranteed by the Federal and State Constitutions, had their vested property rights destroyed by the defendants, i.e., their ownership of the noncallable HBJ vested stock was impaired before its maturity date of June 30, 2003.

2.      According to the New York authority of <u>Breslav v. New York & Queens Electric Light</u> <u>and Power Co.</u>, 291 NYS 932, plaintiffs' <u>"due process, and vested property rights and obligations of</u> <u>contract must not be destroyed or impaired"</u>.

3.      According to the HBJ CONTRACT the plaintiffs are entitled "at any (redemption) time" to a redemption price equal to $13.50 per share plus accrued and unpaid dividends, the plaintiffs pray to this Honorable District Court to "fix the fair value" of their 5083 HBJ 12% preferred shares at the redemption price of $13.50 per share in accordance with the <u>New York Business Corporation Law</u> <u>Sect.</u>623 (4), and New York case law of <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932, i.e., at $13.50 per share plus unpaid dividends from 1-01-91 to 12-09-91, which translates into a combined sum of $73,357.80, and since 12-09-91 about $1508.64 per month in 12% compounded daily interest (<u>N.Y. Business Corp.Law</u> &623 (6)). As of this date a grand total is $119,245.78 . Also based on the <u>N.Y. Business Corp.Law</u> &623 (7)(e), plaintiffs request to be awarded costs of this suit.

Dated: _12/26/15_,  *[signatures]*

Jerry Czajkowski, Ph.D. and Lonia Czajkowski, Plaintiffs



**\*\*5083\*\***

12%
PREFERRED STOCK
PAR VALUE
$1.00 PER SHARE

CUSIP 411631 20 3
SEE REVERSE FOR CERTAIN DEFINITIONS

# Harcourt Brace Jovanovich, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

12%
PREFERRED STOCK
PAR VALUE
$1.00 PER SHARE

THIS CERTIFICATE IS
TRANSFERABLE IN THE CITIES OF
NEW YORK, ATLANTA,
OR ORLANDO

PF 00068721

This Certifies that    JERRY CZAIKOWSKI

is the owner of \*\*\*FIVE THOUSAND EIGHTY-THREE\*\*

\*\*\*\*5083\*\*\*\*\*\*\*\*\*
\*\*\*\*5083\*\*\*\*\*\*\*\*\*
\*\*\*\*5083\*\*\*\*\*\*\*\*
\*\*\*\*\*\*5083\*\*\*\*\*\*
\*\*\*\*\*\*5083\*\*\*\*\*

THE HOLDER OF THE SHARES REPRESENTED BY THIS CERTIFICATE HAS
FILED A NOTICE OF ELECTION TO THE DISCOUNT WITH RESPECT TO SUCH
SHARES IN CONNECTION WITH THE PROPOSED MERGER BETWEEN HARCOURT
BRACE JOVANOVICH, INC., AND HARALD ACQUISITION CORP., A WHOLLY
OWNED SUBSIDIARY OF GENERAL CINEMA CORPORATION.

**CERTIFICATE OF STOCK**

FULLY PAID AND NON-ASSESSABLE SHARES OF THE 12% PREFERRED STOCK, PAR VALUE $1.00 PER SHARE

of Harcourt Brace Jovanovich, Inc. (hereinafter called the Corporation) transferable on the books of the Corporation by the holder hereof
in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate and the shares represented hereby are issued and shall be held subject to all of the provisions of the Certificate of Incorporation and the By-laws of the Corporation and any amendments thereto, to all of which the holder by acceptance hereof assents.
This Certificate is not valid unless countersigned and registered by the Transfer Agent and Registrar.

Witness the seal of the Corporation and the signatures of its duly authorized officers.

DATED:    NOV 21, 1991

PRESIDENT.

EXECUTIVE VICE PRESIDENT AND TREASURER

COUNTERSIGNED AND REGISTERED:
SUN BANK, N.A.
(ORLANDO, FLORIDA)
TRANSFER AGENT
AND REGISTRAR.

BY
AUTHORIZED SIGNATURE

**\*\* 68731**

PF 68731

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

CASE NO. 92-0431-R(AJB)

JERRY CZAJKOWSKI, Ph.D.      )
LONIA CZAJKOWSKI,            )      PROOF OF SERVICE
                            )
Appellant/Petitioner         )      Person Served:
                            )      Kenneth M. Fitzgerald
      vs.                    )      Attorney for Defendants
                            )
PETER JOVANOVICH,            )
HARCOURT BRACE JOVANOVICH, INC.  )
DOES 1 THROUGH 50, A CORPORATION )   Date Served: 12/26/95
                            )
Appellee/Respondent          )
_____ )

        I, the undersigned declare under penalty of perjury
that I am over the age of eighteen years and not a party to
this action; That I served the above named person(s) the
following document(s):

"  FIFTH AMENDED COMPLAINT "

in the following manner: (check one)
1). _____   By personally delivering copies to the person
served.
2). _____   By leaving, during usual office hours, copies in
the office of the person served with the person who
apparently was in charge and thereafter mailing (by first-
class mail, postage prepaid) copies to the person served at
the place where the copies where left.
3). ___X___  By placing a copy in a separate envelope, with
postage fully prepaid, for each address named below and
depositing each in the U.S. mail at San Diego, California on
_12/26_, 1995.

Kenneth M. Fitzgerald
LATHAM & WATKINS
701 "B" Street, Suite 2100
San Diego, CA 92101-8197

Executed on _12/26_, 1995, at San Diego, California.

                                    E.Czajkowski

1



```
              FILED

          FEB - 5 1998

   CLERK, U.S. DISTRICT COURT
  SOUTHERN DISTRICT OF CALIFORNIA
                          DEPUTY
```

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CZAJKOWSKI,<br>LONIA CZAJKOWSKI,<br><br>                              Plaintiffs,<br><br>      vs.<br><br>PETER JOVANOVICH,<br>HARCOURT BRACE JOVANOVICH,<br><br>                        Defendants. | CASE NO. 92-CIV-0431-B (AJB)<br><br>**ORDER DENYING<br>PLAINTIFF'S APPLICATION<br>FOR RECONSIDERATION** |

On December 4, 1997, Plaintiffs filed an Application for Reconsideration of the Court's November 4, 1997 order denying Plaintiffs' Motion for Summary Judgment. The Court hereby DENIES Plaintiffs' Application for Reconsideration.

## I. Background

Plaintiffs are former preferred shareholders of Harcourt Brace Jovanovich, Inc. (HBJ), a New York corporation. In January 1991, HBJ entered into a merger agreement with General Cinema Corporation. On November 1, 1992, Plaintiffs filed a written objection to the merger. On December 9, 1991, HBJ bought Plaintiffs' 5,083 shares of preferred stock at $.69 per share.

On February 25, 1992, Plaintiffs filed a pro se lawsuit in the Superior Court of the State of California, claiming that the defendants owe them $68,620.50 plus unpaid dividends and interest, the difference between the price at which HBJ purchased their shares ($.69) and

94

92-0431

1   the $13.50 per share price to which Plaintiffs claim they were entitled based on a proxy

2   statement they received from HBJ.  Defendants removed the action from state court to the

3   United States District Court for the Southern District of California on March 25, 1992 under

4   28 U.S.C. §§ 1441.  Shortly thereafter, Defendants moved to dismiss pursuant to Fed. R. Civ.

5   P. 9(b), 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure, which motion the Court

6   granted without leave to amend.

7           Plaintiffs appealed the dismissal to the United States Court of Appeals for the Ninth

8   Circuit.  The Ninth Circuit reversed and remanded, granting Plaintiffs leave to amend their

9   complaint.  The Ninth Circuit held that New York law governed the case, and under New

10  York law, Plaintiffs' exclusive remedy was an appraisal proceeding under N.Y. Bus. Corp.

11  Law § 623(h).  Czajkowski, et al. v. Jovanovich, et al., No. 92-55787, Mem. Op. at 2-3 (9th

12  Cir. June 8, 1994).  In the District Court and on appeal, Plaintiffs had argued that they were

13  eligible for an "appraisal-equitable relief" proceeding pursuant to N.Y. Bus. Corp. Law §

14  623(k).  However, the Ninth Circuit had held that since Plaintiffs demanded money damages,

15  they had no equitable claims that would entitle them to relief under § 623(k).  The Ninth

16  Circuit determined that, "[Plaintiffs'] action is in essence a claim that they were not paid

17  enough for their shares, it is a claim for damages, and therefore is foreclosed... unless it is

18  recast as a claim for appraisal."  Czajkowski at 5.

19          Pursuant to the Ninth Circuit's ruling, this Court granted Plaintiffs leave to file a Fifth

20  Amended Complaint.  In that complaint, Plaintiffs requested that this Court appraise

21  Plaintiffs' shares in accordance with N.Y. Bus. Corp. Law § 623(h)(4).  Rather than engage

22  in this appraisal proceeding, Plaintiffs moved for summary judgment on their Fifth Amended

23  Complaint, demanding payment of $13.50 per share as "equitable relief."  This Court denied

24  this motion on November 4, 1997.  Plaintiffs have filed an Application for Reconsideration

25  of the November 4, 1997 order denying Plaintiffs' summary judgment motion.

26  ///

27  ///

28  ///

92-0431

## II. Discussion

**A. Plaintiffs' Application for Reconsideration**

### 1. Allegations

Plaintiffs' Application alleges that the Court has obstructed justice in its order denying Plaintiffs' Motion for Summary Judgment on November 4, 1997. Plaintiffs allege that the Court's law clerks are in "solidarity" with Kenneth Fitzgerald, a former law clerk in the Southern District of California. They allege that the original dismissal of their action in 1992 was flawed, and that the appellate court, bound by the rules of review, could not fully consider the Plaintiffs' claims. Therefore, Plaintiffs are asking this Court to reconsider the November 4, 1997 order, thereby rendering the 1994 appellate ruling moot.

### 2. Standard of Law

The Court, construing pleadings brought in pro per liberally, will consider this Application as a Motion to Reconsider under Local Rule 7.1(i). That rule provides:

> 1) Whenever any motion. . . has been refused in whole or in part. . . and a subsequent motion or application or petition is made for the same relief in whole or in part upon the same or any alleged different state of facts, it shall be the continuing duty of each party and attorney seeking such relief to present to the judge [a] . . . certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.

This Court will reconsider interlocutory orders if it is "(1) presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (stating standard of law for reconsideration of a final order under Fed. R. Civ. Pro. 60(b)).

### 3. Analysis

Plaintiffs have not presented any newly discovered evidence, nor have the Plaintiffs alleged an intervening change in controlling law. Therefore, Plaintiffs must demonstrate "clear error" or manifest injustice by this court. Plaintiffs allege as the basis for their Application for Reconsideration that this Court's law clerks are in "solidarity" with

92-0431

1  Defendants' attorney Fitzgerald and that this Court's refusal to set aside its 1992 order

2  amounts to an obstruction of justice. Plaintiffs' hysterical, false allegations of law clerk bias,

3  unsubstantiated by any evidence, are not well-taken. Furthermore, the allegations are

4  irrelevant because the Court is the finder of fact, not its law clerks. These bare accusations

5  do not suffice to show clear error or manifest injustice allowing reversal of the November 4,

6  1997 order.

7      The Plaintiffs have not demonstrated that this Court has committed clear error by

8  following the 1992 dismissal order and the subsequent 1994 appellate ruling permitting

9  amendment on remand. Plaintiffs insist that because the 1994 appellate court ruling

10 remanded with leave to amend, so as to include allegations of fraud and breach of fiduciary

11 duty in Plaintiffs' appraisal proceeding, "logic compels" that the appellate court wanted this

12 Court to consider Plaintiffs' "equitable claims" on remand. This is not in accord with the

13 language or logic of the appellate court ruling. The appellate court ruling clearly states that

14 the Plaintiffs' claims are foreclosed unless they go forward with an appraisal proceeding.

15 Within that appraisal proceeding, allegations of fraud and breach of fiduciary duty may be

16 considered. That does not change the fundamental point that Plaintiffs would receive money

17 damages from the appraisal, not equitable relief. See Czajkowski Mem. Op. at 5.

18      Plaintiffs apparently misunderstand the word "equitable." Plaintiffs insist that a

19 payment of $13.50 per share would be an "equitable relief, a.k.a. specific performance of the

20 contract." Plaintiffs appear to be using the word "equitable" in the public terminology of

21 "fair" rather than in the legal parlance of "not money damages, but personal decrees."

22 Alternatively, they seem to believe that decreeing specific performance of the HBJ proxy

23 statement to redeem at $13.50 per share is an equitable remedy. This Court again reminds

24 Plaintiffs that their demands for money payments are legal, not equitable remedies. Time and

25 again, both this court and the appellate court have concluded that the Plaintiffs seek money

26 ///

27 ///

28 ///

92-0431

1    damages, not equitable relief. This issue is well-established law of the case.

2                              **III. Conclusion**

3         Plaintiffs have not presented new evidence, shown clear error, or cited a change in the

4    controlling law. Plaintiffs' Application for Reconsideration is therefore DENIED.

5

6         IT IS SO ORDERED.

7

8    DATED: _____FEB 0 4 1998_____        _____

9                                                  UNITED STATES DISTRICT JUDGE

10

11   cc:    All Parties
            Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 5 -

                                                              92-0431

G

1   Jerry Czajkowski, Ph.D.,
    Lonia Czajkowski
2   7944 La Jolla Shores Dr.
    San Diego, CA 92037
3   (619) 459-7531
    IN PROPRIA PERSONA
4

5                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA
6

7                                        CASE NO. 92-0431-B (AJB)

8   JERRY CZAJKOWSKI,                )
    LONIA CZAJKOWSKI,                )   NOTICE OF MOTION
9                                     )   AND MOTION FOR SUMMARY
                    Plaintiffs        )   JUDGEMENT, F.R.C.P. Rule 56(a)
10                                    )
                                      )
        v.                            )
11                                    )
                                      )
12  PETER JOVANOVICH,                 )
    HARCOURT BRACE JOVANOVICH, INC.   )   DATE:      OCTOBER 27, 1997
13                                    )   TIME:      10:30 AM
                    Defendants        )   PLACE:     COURTROOM 2
14  _____ )   HON. RUDI M. BREWSTER

15
    TO DEFENDANTS PETER JOVANOVICH, HARCOURT BRACE JOVANOVICH, INC.:
16
            NOTICE IS HEREBY GIVEN that on October 27, 1997, at 10:30 a.m., or as soon thereafter as
17
    counsel may be heard by the above entitled Court, located at 880 Front Street, Suite 4290, San Diego, CA
18
    92101, Plaintiffs will and hereby do move the Court for an order granting **MOTION FOR SUMMARY**
19
    **JUDGEMENT, F.R.C.P. Rule 56(a)**.
20
            This motion is based on this Notice of Motion and Motion, the Memorandum of Points and
21
    Authorities filed herewith, the Lodgment of Foreign Authorities, the pleadings and papers on file herein, and
22
    upon such other matters as may be presented to the Court at the time of the hearing.
23
    Dated: September 29, 1997
24
    Respectfully submitted,
25

26

27          _____
            Jerry Czajkowski and Lonia Czajkowski, Plaintiffs
28

1  Jerry Czajkowski, Ph.D.,
   Lonia Czajkowski
2  7944 La Jolla Shores Dr.
   San Diego, CA 92037
3  (619) 459-7531
   IN PROPRIA PERSONA
4

5              **UNITED STATES DISTRICT COURT**
               **SOUTHERN DISTRICT OF CALIFORNIA**
6

7                                    CASE NO. 92-0431-B (AJB)

   JERRY CZAJKOWSKI,                 )
8  LONIA CZAJKOWSKI,                 )
                                     )   **MEMORANDUM OF POINTS AND**
9                                    )   **AUTHORITIES IN SUPPORT OF**
              Plaintiffs             )   **MOTION FOR SUMMARY**
10                                   )   **JUDGEMENT, F.R.C.P. Rule 56(a)**
                                     )
11     v.                            )
                                     )
12 PETER JOVANOVICH,                 )
   HARCOURT BRACE JOVANOVICH, INC.   )   DATE:       OCTOBER 27, 1997
13                                   )   TIME:       10:30 AM
              Defendants             )   PLACE:      COURTROOM 2
14 _____  )   HON. RUDI M. BREWSTER
                                     )
15                     <u>PREAMBLE</u>

16     In its latest June 26, 1997 Order Granting Defendants Motion to Join Dissenting Shareholders, the
   District Court pointed out Plaintiffs' "**shortcomings**":
17
       *However, Plaintiffs <u>have failed to allege equitable relief</u> that would bring them within the narrow*
18     *exception of § 623(k). Consequently, the Ninth Circuit determined that "the Czajkowskis'*
       *exclusive remedy [is] an appraisal proceeding."* (p.1/23-27, June 26, 1997 Order).
19
       This **statement** is a direct consequence of an erred June 15, 1992 District Court's Order (Exh.A),
20 for in 1992 Plaintiffs **did** "*<u>allege equitable relief</u> that would bring them within the narrow exception of*
   *§ 623(k)"*. **This will prove a close review of the record**.
21

22     <u>**GROUNDS FOR THE MOTION FOR SUMMARY JUDGEMENT**</u>

23 This Motion for Summary Judgement is based on the following grounds:

24 1.      **FEDERAL RULES OF CIVIL PROCEDURE,**
           **Rule 56. Summary Judgment.**
25             *(a) For Claimant. A party seeking to recover upon a claim, ... or to obtain a declaratory*
           *judgment may, at any time after the expiration of 20 days from the commencement of the*
26         *action ... , move with or without supporting affidavits for a summary judgment in the party's*
           *favor upon all or any part thereof.*
27

28
                                     1

2.   **MISCARRIAGE OF JUSTICE:**

    a.   **CALIFORNIA CONSTITUTION ARTTICLE 6, JUDICIAL, § 13.**
*No judgment shall be set aside, ... in any cause, on the ground of..., or for any error as to any matter of pleading, or for any error as to any matter of procedure, **unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a <u>miscarriage of justice</u>**.*

    b.   **FEDERAL RULES OF CIVIL PROCEDURE,**
        **Rule 61. Harmless Error**
*No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, **unless refusal to take such action appears to the court inconsistent with <u>substantial justice</u>**. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.*

3.   **THE CONSTITUTION OF THE UNITED STATES OF AMERICA:**

    a.   <u>**Article I, § 10:**</u>
*No State shall ... pass any ... Law impairing the Obligation of Contracts.*

    b.   <u>**Amendment XIV,**</u>
**§ 1:** *"... **nor shall any State deprive any person of ... property, without due process of law;** nor deny to any person within its jurisdiction the equal protection of the laws."*

4.   **The case law of <u>Weckler v. Valley City</u>, 93 F.Supp.451 and <u>Coombes v. Getz</u>, 285 US 434, 52 S.Ct.435:**

    a.   *"... we think the following statement of the <u>United States Supreme Court</u> is applicable to the instant case: '... The corporate charter may be repealed or amended, and, within limits not now necessary to define, the interrelations of state, corporation, and stockholders may be changed; but **neither vested property rights nor the obligation of contracts of third persons may be destroyed or impaired'**. Coombes v. Getz, 285 US 434, 52 S.Ct.435" (Weckler v. Valley City, 93 F.Supp.451),*

    b.   *"<u>The right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a **vested property right** of a contractual nature</u>, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent." Weckler v. Valley City 93 F.Supp.451.*

5.   **The case law of <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708:**

    a.   *"Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-thirds of outstanding shares, **would violate Federal Constitution as impairing obligation of contract and as divesting stockholder of vested interest in corporation without due process of law**....Const. art. 8, § 1; Const. U.S. Amend. 14; Const. U.S. art. 1, § 10".*

    b.   *"Power reserved in state to amend corporation's charter is not unlimited, and its exercise*

2

*is subject to restrictions imposed by other provisions of State and Federal Constitutions,* **such as requirement of due process, and vested property rights and obligations of contract must not be destroyed or impaired** *(Const. art.8, § 1; General Corporation Law, § 5; Const. U.S. Amend.14; Const. U.S. art.1, § 10.")*

c.      *"Stockholder's interest in corporation as holder of noncallable preferred stock is* **vested interest which may not be divested without stockholder's assent**, *and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares".* Breslav v. New York & Queens Electric Light & Power Co., 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708.(N.Y.McKinney's Business Corp.Law § 806)

d.      *"Statutory remedy of appraisal of dissenting stockholder's stock ...**does not apply where**... vested property right is destroyed by changing noncallable stock into callable stock by vote of two-thirds of stockholders".*

## TABLE OF CONTENTS

Page

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

GROUNDS FOR THE MOTION FOR SUMMARY JUDGEMENT . . . . . . . . . . . . . . . . . . . 1

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      MISCARRIAGE OF JUSTICE,
       DISTRICT COURT'S JUNE 15, 1992 ORDER RESULTED IN THE
       MISCARRIAGE OF JUSTICE: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.      District Court's June 15, 1992 Order Shows That Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.      At the June 15, 1992 Motions Hearing, Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       C.      In the April 27, 1992 Motion to Strike, Plaintiffs Did Notice Equitable Relief of Specific Performance of the Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       D.      In the May 26, 1992 Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       E.      In the April 27, 1992 Amended Complaint, Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     MISCARRIAGE OF JUSTICE,

3

District Court's Erroneous Order of June 15, 1992 Opened the Way to Violation of Plaintiffs' Rights Protected by Article I § 10 (Obligation of Contracts) of the U.S. Constitution and of "Due Process" Guaranteed by Amendment 14 § 1, and to the Miscarriage of Justice. (*"Statutory Remedy of Appraisal of Dissenting Stockholder's Stock ...Does Not Apply Where... Vested Property Right Is Destroyed"*) [1]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.    **MISCARRIAGE OF JUSTICE,**
        District Court Breached its Discretion by Not Allowing Plaintiffs to Amend the Complaint for Breach of Contract and Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**CONCLUSION (PRAYER FOR RELIEF)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

                                                                                          Page(s)

**CASE LAW:**

Breslav v. New York & Queens Electric Light & Power Co.,
291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708 . . . . . . . . . . . . . 2,3,4,10

Coombes v. Getz, 285 US 434, 52 S.Ct.435 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Weckler v. Valley City, 93 F.Supp.451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATUTES AND OTHER AUTHORITIES:**

CALIFORNIA CONSTITUTION ARTICLE 6 JUDICIAL § 13 . . . . . . . . . . . . . . . 2,6,7,8,9,10

FEDERAL RULES OF CIVIL PROCEDURE,
Rule 56. Summary Judgment, *(a) For Claimant.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FEDERAL RULES OF CIVIL PROCEDURE,
Rule 61. Harmless Error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6,7,8,9,10

New York Business Corporation Law § 623 (k) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

New York McKinney's Business Corporation Law § 806 . . . . . . . . . . . . . . . . . . . . . . . . 3

SPECIFIC PERFORMANCE (71 Am.Jur.2d 10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S. Constitution Amendment 14 § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,10

U.S. Constitution Article I § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,10

---

[1]

Breslav v. New York & Queens Electric Light and Power Co.291 NYS 932

4

# ARGUMENTS

## I.

## MISCARRIAGE OF JUSTICE

**DISTRICT COURT'S JUNE 15, 1992 ORDER RESULTED IN THE MISCARRIAGE OF JUSTICE:**

### A.

**District Court's June 15, 1992 Order Shows That Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract.**

In its latest June 26, 1997 Order Granting Defendants Motion to Join Dissenting Shareholders, the District Court pointed out Plaintiffs' "**shortcomings**":

> *However, Plaintiffs have <u>failed to allege equitable relief</u> that would bring them within the narrow exception of § 623(k). Consequently, the Ninth Circuit determined that "the Czajkowskis' exclusive remedy [is] an appraisal proceeding."*
> (p.1/23-27, June 26, 1997 Order).

This **statement** is a direct consequence of an erred June 15, 1992 District Court's Order (Exh.A), for in 1992 Plaintiffs **did** "*<u>allege equitable relief</u> that would bring them within the narrow exception of § 623(k)*". **This will prove a close review of the record**.

In the June 15, 1992 Order, District Court quoted (p.3/22-25) one of the Plaintiffs' pleadings asking for:

> *"They (Plaintiffs) are **pleading for the ... maturity value of the preferred bond-like stock, as equitable relief**, in light of breach of contract, fiduciary duty and fraud, all of which fall under the exclusivity rule of sub[division] (k) of Sec[tion] 623."*
> (p.3/22-25 of June 15, 1992 District Court's Order).

Although Plaintiffs in simple terms were asking for "*equitable relief of the maturity value of the preferred bond-like stock*" according with the terms of the breached **HBJ CONTRACT** [2], in legalese Plaintiffs were asking for equitable relief of **specific performance** of said Contract. Despite of this request of **specific performance** Honorable J.S. Rhodes, U.S. District Judge, on June 15, 1992 stated:

" ... YOU HAVE ASKED FOR **LEGAL RELIEF**. YOU HAVEN'T ASKED FOR **EQUITABLE RELIEF**."

---

[2]

**HBJ CONTRACT**: "HBJ may, at its option, redeem shares of HBJ Preferred Stock in whole at any time, or from time to time in part, at a redemption price equal to the $13.50 per share liquidation preference plus accrued and unpaid dividends, if any, to the date fixed for redemption. HBJ is required to redeem, on **June 30, 2003**, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption". (**pre 11/23/91 merger** HBJ Joint Proxy Statement dated 10-25-91, p.133).

5

1     (RT 4/9-10).

2 justifiably because:

3     *"Plaintiffs cite no authority to explain how this claim for money can be viewed as an equitable claim"* [3] (p.4/12-14 June 15, 1992 Order),

4

5 and on page 5 of the Order District Court concluded:

    *"Walter J. Schloss requires that a plaintiff request equitable relief to state a cause of action."*(p.5/7-8 June 15, 1992 Order),

6

7 **ALL WHEN** the District Court on the previous page 3/22-25 of the Order (supra) showed that Plaintiffs **did**

8 **indeed** *"request equitable relief"*, i.e., **specific performance of the breached Contract**.

9     Therefore, there can be no doubt that Plaintiffs' Complaint **did** *"request equitable relief"* and consequently **did** *"state a cause of action"* per <u>Walter J. Schloss</u> and should not have been dismissed.

10     This District Court's erroneous omission of Plaintiffs' request of equitable relief of **specific**

11 **performance** constitutes <u>miscarriage of justice</u> and under Calif. Constitution Art.6 § 13 and/or FRCP Rule

12 61 calls for June 15, 1992 Order together with Court of Appeals' June 8, 1994 Memorandum (stating that *"the Czajkowskis' exclusive remedy [is] an appraisal proceeding"*) to be set aside, and justifies granting

13 the Motion for Summary Judgement.

14 **B.**

15 **At the June 15, 1992 Motions Hearing, Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract.**

16

17     On June 15, 1992 in the Transcript of the Motions Hearing (Exh.B) before the Honorable J.S. Rhodes, U.S. District Judge, Plaintiffs did ask the Court for the **equitable relief of specific performance**:

18     "THE COURT:         I DON'T WANT TO KNOW ALL THOSE FACTS. I JUST WANT TO KNOW

19                         WHAT YOU WANT. IF YOU GOT WHAT YOU WANTED , WHAT DO YOU WANT ME TO DO, THE COURT?

20

21        3

22     One might think that **SPECIFIC PERFORMANCE** being an *"equitable relief of very ancient origin"* (71 **Am.Jur.**2d 10) would not need any supporting authorities.

23     *"Specific performance of contracts is an equitable remedy of very ancient origin. It has been declared to*

24 *be the most useful of the various equitable remedies, although it is available only to protect contract rights. Specific performance connotes "performance specifically as agreed". The purpose of the remedy is to give the one who seeks*

25 *it the benefit of his contract in specie by compelling the other party to the contract to do that which he has agreed to do - perform the contract - and hence a decree for specific performance is nothing more or less than a means of*

26 <u>*compelling a party to do precisely what he ought to have done without being coerced by a court*</u>*. Equity proceeds upon the assumption that the normal end or termination of every contract is performance in accordance with the*

27 *agreement, and* <u>*equity takes jurisdiction to require the specific performance of the contract in order to do more*</u> <u>*complete justice between the parties than can be had in an action at law.*</u>*"* (71 **Am.Jur.**2d 10)

28

6

MR.CZAJKOWSKI:     ... **I FEEL AN EQUITABLE RELIEF[4] OF THE MERGER WOULD BE A MATURITY VALUE OF THE STOCK.**
THE COURT:         ARE YOU A LAWYER?
MR.CZAJKOWSKI:     NO, I AM A CHEMIST."
                   (p.3/14-19, June 15, 1992 Reporter's Transcript).

Here too, the District Court erred and did not recognize Plaintiffs' prayer for the contractual maturity value of the stock (i.e., **specific performance of the Contract**) as an equitable relief, because, it might be inferred - Plaintiff is not a LAWYER.

This additional District Court's erroneous omission of Plaintiffs' request of equitable relief of **specific performance** constitutes miscarriage of justice and under Calif. Constitution Art.6 § 13 and/or FRCP Rule 61 calls for June 15, 1992 Order together with Court of Appeals' June 8, 1994 Memorandum to be set aside, and justifies granting the Motion for Summary Judgement.

## C.

### In the April 27, 1992 Motion to Strike, Plaintiffs Did Notice Equitable Relief of Specific Performance of the Contract.

In the Plaintiffs' April 27, 1992 Motion to Strike Lodgement of Foreign Authorities in Support of Defendants Motion to Dismiss the Complaint, on the grounds that these authorities are inapplicable to the Plaintiffs' case (**for none of them dealt with the stock having a maturity date and value proscribed by the Contract and with its breach**), Plaintiffs argued:

*"The case is unique because of an a priori HBJ valuation of the bond like preferred stock at its maturity (June 30, 2007)"*, and,
*"... none of the foreign authorities lodged by Defendants bring anything to this case"*.
(p.1/13-16 of the April 27, 1992 Motion To Strike).

However, the District Court in its June 15, 1992 Order without any basis denied Plaintiffs' Motion to Strike (p.5/10-12), and once again made an error contributing to the Plaintiffs' injury. And because of these Court's errors Plaintiffs' case for **Breach of Contract and Fraud** has been turned into an **illegal Appraisal Proceeding** (see Argument II, p.10, infra).

This District Court's error of denying the Motion to Strike inapplicable authorities and Court's omission of Plaintiffs' notice of equitable relief of **specific performance** does constitute **miscarriage of justice** and under Calif. Constitution Art.6 § 13 and/or FRCP Rule 61 calls for June 15, 1992 Order together with Court of Appeals' June 8, 1994 Memorandum to be set aside, and justifies granting the Motion for Summary Judgement.

---

[4]     Reporter's Transcript reads VIEW instead of RELIEF, which is a stenographic error.

7

**D.**

**In the May 26, 1992 Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract.**

In the May 26, 1992 "Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, <u>and Plaintiffs' Request for Judgment on the Pleadings</u>", Plaintiffs argued and prayed to the District Court for the **equitable relief of specific performance of the Contract:**

> "In this case the Plaintiffs do not, and did not seek appraisal proceedings due to the breach of CONTRACT, fiduciary duty and <u>fraud</u> on part of the Defendants, which acts fall under common-law exception to the exclusivity rule codified in subd.(k) of Sect.623 of the New York Business Corporation Law, and permit the Plaintiffs to seek instead an "equitable relief from the merger" [e.g., <u>Alpert v. 28 Williams St. Corp.</u> 63 NY2d, p.560 (1984)]. The Plaintiffs also did not, and do not seek "fair value" of the stock or its appraisal, because in legal terms the pref. stock is not a "stock" per se, but a <u>bond</u> with a fixed maturity date (June 30, 2003-2007), and value of $13.50 (see Amended Complaint p.10, &.II). Therefore, **the Plaintiffs seek "equitable relief from the merger", a contractual, promised, maturity ... value of $13.50 per share**, because of the CONTRACT's promise and maturity... value, the Plaintiffs purchased HBJ Pref. Stock as a long term investment, and because of the merger almost lost it all." (p.6/7-21 of May 26, 1992 "Memorandum of Points and Authorities in Opposition"), and,

> "... the Plaintiffs are entitled to a judicial review of their Amended Complaint for Breach of Contract and Fraud, and **to an equitable relief from the merger in form of the year 2003-2007 maturity valuation of preferred stock ... of $13.50/share.**" (p.10/16-19 of May 26, 1992 "Memorandum of Points and Authorities in Opposition")

In this instance as well, the District Court erred by omitting the prayer of **equitable relief of specific performance of the Contract**, and by dismissing the Complaint.

This District Court's omission/procedural error also constitutes **miscarriage of justice** and under Calif. Constitution Art.6 § 13 and/or FRCP Rule 61 calls for June 15, 1992 Order together with Court of Appeals' June 8, 1994 Memorandum to be set aside, and justifies granting the Motion for Summary Judgement.

**E.**

**In the April 27, 1992 Amended Complaint, Plaintiffs Did Request Equitable Relief of Specific Performance of the Contract.**

In the Amended Complaint of April 27, 1992, Plaintiffs prayed to the District Court for the **equitable relief of specific performance of the Contract:**

> "They (Plaintiffs) are requesting the Hon.Court that ... **Defendants be ordered to comply with the terms of the CONTRACT and pay Plaintiffs in full the ... maturity price of the HBJ Preferred Stock of $13.50 per share, and unpaid dividends, and interest as equitable relief.**" (p.13/14-17, April 27, 1992 Amended Complaint).

But, the District Court once again erred by omitting this prayer of **equitable relief**, and by dismissing

8

1    the Complaint.

2        This District Court's omission/procedural error does constitute **miscarriage of justice** and under

3    Calif. Constitution Art.6 § 13 and/or FRCP Rule 61 calls for June 15, 1992 Order together with Court of
     Appeals' June 8, 1994 Memorandum to be set aside, and justifies granting the Motion for Summary

4    Judgement.

5        Because **THE CLAIM** of **specific performance of the Contract (as an equitable relief)** <u>was</u>

6    <u>omitted by the District Court</u> (the Court concluded that Plaintiffs did not request **equitable relief** but a
     "**legal relief**" [5], RT 4/9-13) and was not adjudicated by the District Court[6], the Court of Appeal could not

7    review **THE CLAIM** of violation by Defendants of Plaintiffs' **vested property rights** (<u>the contractual</u>

8    <u>obligation of June 30, 2003 maturity and redemption of the stock</u>). The Court of Appeal could only vacate
     the June 15, 1992 Order allowing Plaintiffs to seek an appraisal in the District Court of Southern California

9    instead of the New York State Courts, as the June 15, 1992 Order directed[7].

10       Furthermore, in an appraisal proceeding unlike in an equitable relief proceeding (where Plaintiffs

11   have been praying for the **specific performance** of the breached Contract guaranteeing $13.50 per share

12   redemption at any time or at the maturity date), the Plaintiffs **in some way have to show**, and at the
     additional expenditure of time and other resources, that Defendants' 1991 **69 cent** per share valuation did

13   not reflect a "**fair-market-value**". If Plaintiffs fail to show this, <u>in addition</u> to the have been violated

14   constitutionally protected **vested property rights** (see Argument II, p.10, infra), they will lose **95%** of the

15   redemption value of their shares (<u>which they bought based on the HBJ promise of $13.50 per share at</u>
     <u>maturity or redemption *"at any time"*</u>).

16       These additional arguments and facts <u>**evidencing injustice, breach of Contract and fraud**</u>, support

17   Plaintiffs' claim of **miscarriage of justice** resulting from a number of omission and procedural errors of the
     District Court on June 15, 1992, and call for the June 15, 1992 Order together with Court of Appeals' June

18   8, 1994 Memorandum per Calif. Constitution Art.6 § 13 and/or FRCP Rule 61 to be set aside, and justify

19   granting the Motion for Summary Judgement.

20

21

22       [5]

23       "THE COURT: ... YOU HAVE ASKED FOR **LEGAL RELIEF**. YOU HAVEN'T ASKED FOR EQUITABLE
     RELIEF. AND JUST BY PUTTING A TAG ON IT OR NAME ON IT CALLING IT EQUITABLE RELIEF DOESN'T MAKE
     IT EQUITABLE RELIEF. YOU CAN'T MAKE A COW INTO A HORSE BY CALLING A COW A HORSE. AND WHAT

24   YOU HAVE DONE HERE IS REALLY **LEGAL RELIEF**. "(RT 4/9-13).

         [6]
25
         (because *Walter J. Schloss requires that a plaintiff request equitable relief to state a cause of action.*",
26   p.5/7-8 June 15, 1992 Order)

         [7]
27
         (*"Appraisal in New York is Plaintiffs' exclusive remedy ... "* p.5/1-2 June 15, 1992 Order)
28

                                                     **9**

## II.

## MISCARRIAGE OF JUSTICE

**District Court's Erroneous Order of June 15, 1992 Opened the Way to Violation of Plaintiffs' Rights Protected by Article I § 10 (Obligation of Contracts) of the U.S. Constitution and of "Due Process" Guaranteed by Amendment 14 § 1, and to the Miscarriage of Justice. ("*Statutory Remedy of Appraisal of Dissenting Stockholder's Stock ...Does Not Apply Where... Vested Property Right Is Destroyed*")[8] .**

Plaintiffs in the Fifth Amended Complaint (as in all the others) have shown that Defendants have deprived them of **vested property rights** protected by the United States Constitution [p.2, 3(a)&(b)], United States Supreme Court Rulings [p.2, 4(a)], and other authorities as quoted in the **GROUNDS** Sections 1- 5.

On the basis of quoted authorities (see **GROUNDS**, Sections 1- 5, supra) Plaintiffs conclude, that the New York appraisal statute (New York Business Corporation Law § 623) as applied to their case, is **unconstitutional** because of *"impairing the Obligation of Contract(s)"* and destruction of Plaintiffs' **vested property rights** without due process of law. Both of these acts are in a direct violation of the **U.S. Constitution Amendment 14 § 1** and **Article I § 10. And because of this unconstitutionality the continuation of appraisal proceedings by the District Court would necessarily be based on illegality and miscarriage of justice**.

For these reasons too, District Court's June 15, 1992 Order together with Court of Appeals' June 8, 1994 Memorandum per Calif. Constitution Art.6 § 13 and/or FRCP Rule 61 should be set aside and the Motion for Summary Judgement granted.

## III.

## MISCARRIAGE OF JUSTICE

**District Court Breached its Discretion by Not Allowing Plaintiffs to Amend the Complaint for Breach of Contract and Fraud.**

On June 15, 1992 by granting Defendants' Motion to Dismiss the Complaint with prejudice, the District Court also breached its discretion. It has been shown in **Arguments I (A-E)**, that Plaintiffs in their pleadings were asking the Court for **an ancient form of equitable relief of specific performance of a Contract** [see footnote **(3)** on p.6].

If Plaintiffs' pleadings were missing any case law or authority related to this **ancient form of equitable relief**, as the District Court indicated in the June 15, 1992 Order [see Argument I.(A), p.5, supra], the Court should have granted Plaintiffs leave to amend.

By dismissing the Complaint without the leave to amend the District Court breached its discretion and contributed to the complained of **unconstitutionality** and **miscarriage of justice**.

---

[8]

Breslav v. New York & Queens Electric Light and Power Co.291 NYS 932

10

## CONCLUSION
### (PRAYER FOR RELIEF)

As has been shown in Arguments I-III, supra, to continue with the **unconstitutional** appraisal proceeding per New York Business Corporation Law § 623 would add only more <u>injustice</u> to the **miscarriage of justice** which has begun on June 15, 1992 with the District Court's omission errors of Plaintiffs' **request of specific performance of the HBJ Contract as equitable relief**.

Therefore, for all the reasons stated, Plaintiffs move for the **Summary Judgement** with the **prayer of equitable relief of specific performance of the HBJ Contract**, as more precisely has been described on December 26, 1995 in the Fifth Amended Complaint's Prayer for Relief.

DATED: September 29, 1997

Respectfully submitted,

Jerry Czajkowski and Lonia Czajkowski, Plaintiffs

11



FILED _____ LODGED
_____ RECEIVED _____ ENTERED

JUN 1 5 1992

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JERRY CZAJKOWSKI, LONIA CZAJKOWSKI, | ) | CIVIL NO. 92-431-R(M) |
| Plaintiffs, | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| v. | ) | MOTION TO DISMISS AND DENYING |
| | ) | PLAINTIFFS' MOTION TO STRIKE |
| PETER JOVANOVICH and HARCOURT | ) | LODGMENT OF FOREIGN AUTHORITIES |
| BRACE JOVANOVICH, INC., | ) | IN SUPPORT OF DEFENDANTS' |
| | ) | MOTION TO DISMISS |
| Defendants. | ) | |

Background

Plaintiffs are two former preferred shareholders of
Harcourt Brace Jovanovich, Inc. ("HBJ") who purchased their
preferred securities beginning in October 1989.  In January
1991, HBJ, a New York corporation,  entered into a merger
agreement with General Cinema Corporation ("GCC").  On
October 25, 1991, the shareholders of HBJ were furnished
with a Joint Proxy Statement, which set forth the details
of the proposed merger.  Prior to the completion of the HBJ
shareholder vote, on November 1, 1992, the plaintiffs filed

1

a written objection to the merger with HBJ.  On December 9,
1991, HBJ paid the plaintiffs $2,810.90 for their 5,083
shares of preferred stock.

On February 25, 1992, plaintiffs filed a lawsuit in the
Superior Court of the State of California, claiming that
the defendants owe them $68,620.50 plus unpaid dividends
and interest.  Defendants removed this action from state
court under 28 U.S.C. section 1441(a) on March 25, 1992.
Defendants have moved to dismiss plaintiffs' claim based on
Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Discussion

In reviewing a motion to dismiss, a court must accept
all material allegations in the complaint as true and
construe them in the light most favorable to the plaintiff.
NL Industries, Inc. v. Kaplan 792 F.2d 896, 898 (9th Cir.
1986).  For the purpose of this order, the facts of
plaintiffs' amended complaint, filed April 27, 1992, are
accepted as true.

This action is governed by New York law.  The rights,
obligations and liabilities of shareholders are governed by
the laws of the state of incorporation.  Rogers v. Guaranty
Trust Co., 288 U.S. 123 (1933).  Under New York law, an
appraisal proceeding is the common remedy for a shareholder
who dissents from a merger and does not accept the
corporation's determination of the fair value of the

2

shareholder's stock.  The New York Business Corporation Act provides, "Upon consummation of the corporate action, the shareholder shall cease to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under this section."  N.Y. Bus. Corp. Law § 623(e).  The fair value shall be determined in a special proceeding by the court in the judicial district in which the office of the corporation is located.  Id. at (h).  HBJ is a New York corporation, so the determination would take place in that state.

An exception to the appraisal proceeding remedy permits a shareholder to bring an "appropriate action" if the merger is "unlawful or fraudulent as to him."  Id. at (k).

An "appropriate action" is one seeking equitable relief.  Walter J. Schloss Associates v. Arkin Indus., Inc., 61 N.Y.2d 700, 702 (1984).

Plaintiffs admit that they are not asking for the equitable remedy of rescission.

> "In this case the Plaintiff..., based on their interpretation of statutes and the theory of the breach of contract and fraud, can not request rescission of the 'bona fide' merger between HBJ and GCC, as equitable relief ....  Instead they are pleading for the liquidation and/or maturity value of the preferred bond-like stock as equitable relief, in light of breach of contract, fiduciary duty and fraud, all of which fall under the exclusivity rule of sub[division] (k) of Sec[tion] 623."

Plaintiffs' opposition to defendants' motion to dismiss at 8.

Plaintiffs contend that the claims asserted in the first amended complaint may be considered "equitable" in nature. The plaintiffs allege that "[t]he Court may find that the 'equitable relief' in this case is the liquidation/maturity value of the HBJ Pref. Stock of $13.50." Plaintiffs' Amended complaint at 2.

Plaintiffs cannot avoid an appraisal proceeding merely by describing their claims as ones for equitable relief. Plaintiffs have stated the quintessential claim at law, a demand for monetary damages. See Breed v. Barton, 54 N.Y.2d 82, 87 (1981). Plaintiffs cite no authority to explain how this claim for money can be viewed as an equitable claim.

Plaintiffs' claim is precisely the type that the New York Court of Appeals has held was not a request for equitable relief. Walter J. Schloss Associates v. Arkin Indus. Inc., 61 N.Y.2d 700, 702 (1984). In Walter v. Schloss, the plaintiff was a minority stockholder who objected to a merger on the ground that the corporation's offer of fair value for his shares was inadequate. After dropping claims for recision and an accounting, the plaintiff's complaint sought monetary damages only. The court held that "there was a fatal absence of any primary request for equitable relief in the complaint, and that, therefore, the action was barred by the rule of exclusivity set forth in subdivision (k) of section 623." Id. at 702-

4

02.  Appraisal in New York is plaintiffs' exclusive remedy
in this case as well.

Plaintiffs' attempt to distinguish <u>Walter J. Schloss</u> as
a case that required an accounting, as opposed to the case
at bar, which plaintiffs allege needs no accounting,
misunderstands the holding of the case.  <u>Walter J. Schloss</u>
requires that a plaintiff request equitable relief to state
of cause of action.  <u>Id</u>. at 702.

Defendants' motion to dismiss is granted.  Plaintiffs'
motion to strike lodgment of foreign authorities in support
of defendants' motion to dismiss is denied.

IT IS SO ORDERED.

Date:   JUN 1 5 1992

JOHN S. RHOADES
_____
          JOHN S. RHOADES, SR.
          UNITED STATES DISTRICT
          JUDGE

Copies to:

Jerry Czajkowski
Lonia Czajkowski
7944 La Jolla Shores Dr.
San Diego, CA  92037

Robert B. Clark
Luce, Forward, Hamilton & Scripps
600 West Broadway, Suite 2600
San Diego, CA  92101-3391

5



AO 450 (Rev. 5/85)   Judgment in a Civil Case

FILED    LODGED
RECEIVED    ENTER

JUN 1 5 1992

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

United States District Court

SOUTHERN          DISTRICT OF          CALIFORNIA

Jerry Czajkowski and
Lonia Czajkowski

V.

Peter Jovanovich and Harcourt
Brace Jovanovich Inc

## JUDGMENT IN A CIVIL CASE

CASE NUMBER:   92-431 R(M)

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Defendants' motion to dismiss is GRANTED and Plaintiffs' motion to strike lodgment of foreign authorities in support of defendants' motion to dismiss is DENIED..................

..................................................................

6/15/92

Date

Don E Hendrix

Clerk

*Herbert Soriano*

(By) Deputy Clerk

1

```
 1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
 2

 3   JERRY AND LONIA CZAJKOWSKI,     )
                                     )     92-0431-R(M)
 4                  PLAINTIFFS,      )
                                     )
 5               -V-                 )     SAN DIEGO, CALIFORNIA
                                     )     MONDAY, JUNE 15, 1992
 6   PETER JOVANOVICH AND HARCOURT ) 11:40 A.M.
     BRACE JOVANOVICH, INC.,         )
 7                                   )
                    DEFENDANTS.      )
 8                                   )
                                     )
 9   *  *  *  *  *  *  *  *  *  *    )

10                  TRANSCRIPT OF MOTIONS HEARING
              BEFORE THE HONORABLE JOHN S. RHOADES
11                  UNITED STATES DISTRICT JUDGE.

12

13   APPEARANCES:

14

15   FOR THE PLAINTIFFS:       JERRY CZAJKOWSKI
                               APPEARING PRO PER
16                             7944 LA JOLLA SHORES DRIVE
                               LA JOLLA, CA   92037

17   FOR THE DEFENDANTS:       ROBERT B. CLARK, ESQ.
                               LUCE FORWARD HAMILTON AND SCRIPPS
18                             600 WEST BROADWAY   SUITE 2600
                               SAN DIEGO,  CA 92101
19

20

21   COURT REPORTER:          MINDI L. COLCHICO
                               940 FRONT STREET
22                             ROOM NO. 3N10B
                               SAN DIEGO, CA   92189
23                             (619) 232-0544

24

     PROCEEDINGS REPORTED STENOGRAPHICALLY; TRANSCRIPT PRODUCED BY
25   COMPUTER.
```

EXH. R

2

P R O C E E D I N G S

1  
2        DEPUTY CLERK:  NO. 24, CASE NO. 92-0431, JERRY AND

3  LONIA CZAJKOWSKI VERSUS PETER JOVANOVICH AND HARCOURT BRACE

4  JOVANOVICH, INC.

5        DO YOU HAVE A CARD, SIR, A BUSINESS CARD?

6        MR. CZAJKOWSKI:  NO, I DON'T.

7        MR. CLARK:  GOOD MORNING, YOUR HONOR.  ROBERT CLARK

8  FOR THE DEFENDANTS.

9        MR. CZAJKOWSKI:  GOOD MORNING, YOUR HONOR.  MY NAME

10  IS JERRY CZAJKOWSKI, AND THIS IS MY MOTHER, LONIA CZAJKOWSKI.

11  WE ARE REPRESENTING OURSELVES IN THIS CASE.

12        THE COURT:  ALL RIGHT.  I HAVE READ YOUR PAPERS.  I

13  HAVE READ THE CASES THAT ARE INVOLVED IN YOUR PAPERS.  AS I

14  UNDERSTAND YOUR PAPERS, WHAT YOU WANT IS FOR THE -- A

15  DETERMINATION THAT YOU HAVE DESCRIBED AS BEING, IN YOUR CASE,

16  EQUITABLE, A DETERMINATION AS TO WHAT YOU FEEL IS A FAIR

17  VALUE OF THESE BONDS, RIGHT?

18        MR. CZAJKOWSKI:  WELL, IT WAS A DETERMINATION MADE

19  BY THE DEFENDANTS IN 1987.  IT WAS A MAJORITY LIQUIDATION

20  VALUE OF $13.50.

21        THE COURT:  YOU WANT ME TO MAKE A DETERMINATION,

22  UNDER MY EQUITABLE POWERS, AS TO THE VALUE, RIGHT?

23        MR. CZAJKOWSKI:  ACTUALLY, I WOULD LIKE YOU TO DEEM

24  THAT THE VALUATION THAT WAS MADE BY THE DEFENDANTS IN 1987 IS

25  THE FAIR, JUST, EQUITABLE VALUATION.

3

1        THE COURT:  AND THAT IS HOW MUCH?

2        MR. CZAJKOWSKI:  THIRTEEN FIFTY.

3        THE COURT:  YOU WANT ME TO DECLARE IT IS WORTH

4   THIRTEEN FIFTY, RIGHT?

5        MR. CZAJKOWSKI:  YES.  I AM BASING THIS ON THE

6   NATURE OF THE PREFERRED STOCK WHICH WAS LIKE OTHER HBJ BOND

7   DEBENTURES, WHICH SOME OF THEM WERE CASHED IN BY THE -- AM I

8   TOO CLOSE TO THE SPEAKER?

9        THE COURT:  YOU ARE ALL RIGHT.

10       MR. CZAJKOWSKI:  WHICH SOME OF THEM, LIKE SENIOR

11  NOTES, WERE CASHED IN BY THE -- I MEAN -- AT THE TIME OF THE

12  MERGER AT 100 PERCENT OF THE MATURITY.

13       THE COURT:  I DON'T WANT TO KNOW ANY OF THOSE

14  FACTS.  I JUST WANT TO KNOW WHAT YOU WANT.  IF YOU GOT WHAT

15  YOU WANTED, WHAT DO YOU WANT ME TO DO, THE COURT?

16       MR. CZAJKOWSKI:  YES.  I FEEL AN EQUITABLE VIEW OF   *RELIEF*

17  THE MERGER WOULD BE A MATURITY VALUE OF THE STOCK.

18       THE COURT:  ARE YOU A LAWYER?

19       MR. CZAJKOWSKI:  NO.  I AM A CHEMIST.

20       THE COURT:  DO YOU KNOW THE DIFFERENCE BETWEEN

21  EQUITABLE RELIEF AND LEGAL RELIEF?

22       MR. CZAJKOWSKI:  TO THE BEST OF MY UNDERSTANDING,

23  EQUITABLE RELIEF IS ANY RELIEF THAT THE COURT MIGHT DEEM TO

24  BE PROPER IN THIS CASE, WHICH IN CASES WHERE THERE IS NO

25  CLEAR LAW AS TO WHAT THE RELIEF SHOULD BE, THE COURT MIGHT

4

1    DECIDE ITS NATURE.

2         THE COURT:  WELL, I TAUGHT EQUITY IN SCHOOL AND

3    YOUR DEFINITION, UNFORTUNATELY -- AND I DON'T KNOW ANYTHING

4    ABOUT CHEMISTRY SO I COULDN'T DO VERY WELL IN CHEMISTRY --

5    YOUR DEFINITION OF WHAT EQUITABLE RELIEF IS IS NOT WHAT IT IS

6    WHEN I TAUGHT THE COURSE.

7         I HAVE LOOKED AT YOUR CASES.  I HAVE LOOKED AT WHAT

8    YOU ASKED FOR, WHAT LAWYERS AND JUDGES ASK FOR, A PRAYER, AND

9    YOU HAVE ASKED FOR LEGAL RELIEF.  YOU HAVEN'T ASKED FOR

10   EQUITABLE RELIEF.  AND JUST BY PUTTING A TAG ON IT OR NAME ON

11   IT CALLING IT EQUITABLE RELIEF DOESN'T MAKE IT EQUITABLE

12   RELIEF.  YOU CAN'T MAKE A COW INTO A HORSE BY CALLING A COW A

13   HORSE.  AND WHAT YOU HAVE DONE HERE IS REALLY LEGAL RELIEF.

14   AND TRYING TO CALL IT EQUITABLE DOESN'T MAKE IT EQUITABLE.

15   SO I AM GOING TO DISMISS THE -- I AM SIGNING AN ORDER RIGHT

16   NOW GRANTING THE DEFENDANTS' MOTION TO DISMISS AND DENYING

17   PLAINTIFFS' MOTION TO STRIKE THE LODGMENT OF FOREIGN

18   AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS.

19   THERE IS A SIX-PAGE ORDER HERE WHICH SPELLS OUT THE CASES AND

20   THE LAW.  THE ORIGINAL WILL BE FILED WITH THE CLERK AND YOU

21   WILL BE GIVEN COPIES.  IF YOU WISH TO APPEAL MY DECISION, YOU

22   SHOULD LOOK AT THE LAW REGARDING APPEALS AND NOTICE THE TIME

23   FOR APPEALS TO THE NINTH CIRCUIT COURT OF APPEALS.

24         MR. CZAJKOWSKI:  CAN I MAKE A FEW MORE COMMENTS?

25         THE COURT:  YOU CAN SAY ANYTHING YOU WANT TO, BUT

5

1  THAT'S THE ORDER OF THE COURT.

2           MR. CZAJKOWSKI:  YES.  I WAS RESEARCHING THE NEW

3  YORK STATUTES, PARTICULARLY IN THE CASE OF YOSS VERSUS SACKS,

4  Y-O-S-S VERSUS S-A-C-K-S.  THE COURT DID GRANT MONETARY

5  DAMAGES AS EQUITABLE RELIEF TO THE PLAINTIFFS.  AND MAY I

6  MAKE A QUOTATION?

7           THE COURT:  YES, SIR.

8           MR. CZAJKOWSKI:  WHILE IT MAY BE TRUE THAT DAMAGES

9  MAY BE AWARDED IN AN APPROPRIATE ACTION, SEE YOSS VERSUS

10 SACKS, IT FOLLOWS FROM WHAT WE HAVE SAID THAT ANY MONETARY

11 RECOVERY, IF AVAILABLE AT ALL, CAN ONLY BE ANCILLARY TO A

12 GRANT OF SOME FORM OF EQUITABLE RELIEF.

13          THE COURT:  YOU JUST PROVED MY JUDGMENT RIGHT

14 THERE.

15          MR. CZAJKOWSKI:  YES, BUT --

16          THE COURT:  WHAT YOU JUST SAID IS WHAT THE LAW IS.

17          MR. CZAJKOWSKI:  BUT IN THIS CASE THE ONLY

18 EQUITABLE RELIEF THAT I COULD ASK FOR IS RESCISSION OF THE

19 MERGER, AND FOR THE GOOD OF THE WHOLE, I DON'T THINK IT IS IN

20 MY POWER TO MAKE SUCH A REQUEST.  I HAVE INDICATED THAT IN --

21 IN MY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION, ON

22 PAGE 5, IN THE FOOTNOTE.

23          THE COURT:  I HAVE READ YOUR MEMORANDUM, SIR.  I

24 HAVE READ THE CASES THAT YOU CITED, SIR.

25          MR. CZAJKOWSKI:  SO I AM REALLY LEFT IN THE BLIND

6

1  BECAUSE THE NEW YORK STATUTE SAYS THAT IN CASE OF A FRAUD AS

2  TO THE -- AS TO THE PLAINTIFFS, AS TO THE CENTRAL SHAREHOLDER

3  UNDER SUBDIVISION K OF SECTION 623, WE HAVE THE RIGHT TO

4  REQUEST SOME FORM OF EQUITABLE RELIEF.  AND I FEEL IT IS UP

5  TO THE COURT TO DECIDE WHAT THE RELIEF IS.  AND IN -- AS I

6  SEE NOW, THE COURT HAS DECIDED THAT NO RELIEF SHOULD BE

7  GRANTED TO US.

8        THE COURT:  NO.  I HAVE DECIDED TO FOLLOW THE LAW.

9  I DIDN'T WRITE THE NEW YORK STATUTE.  YOU BOUGHT WHATEVER YOU

10 BOUGHT.  YOU BOUGHT IT SUBJECT TO THE NEW YORK LAW.  YOU ARE

11 REQUIRED TO FOLLOW THE NEW YORK LAW.  I AM REQUIRED TO FOLLOW

12 THE NEW YORK LAW, AS THIS CASE IS BROUGHT BEFORE ME.  I CAN'T

13 ACT AS A STATE LEGISLATOR AND CHECK THE LAW.  AND THAT'S MY

14 JUDGMENT.  IF I AM WRONG, THE NINTH CIRCUIT CAN TELL ME SO.

15 YOU CAN APPEAL THE JUDGMENT.  SO YOU CAN GET A COPY RIGHT

16 NOW.

17        MR. CZAJKOWSKI:  CAN I ASK ONE MORE QUESTION?

18        THE COURT:  YES.

19        MR. CZAJKOWSKI:  IN THE COURT'S OPINION, WHAT WOULD

20 BE THE PROPER EQUITABLE RELIEF TO ASK IN THIS CASE?

21        THE COURT:  I AM NOT GOING TO ANSWER THAT QUESTION.

22 I CAN'T ANSWER THAT.  I AM NOT REQUIRED TO ANSWER THAT

23 QUESTION AND I AM NOT GOING TO ANSWER THAT QUESTION.  YOU ARE

24 NOT A LAWYER.  IF YOU WANT TO HIRE A LAWYER, HIRE A LAWYER

25 AND PAY THE LAWYER AND HE WILL ANSWER THE QUESTION.  BUT I AM

7

1  NOT GOING TO.  THAT'S THE JUDGMENT OF THE COURT.

2          CALL THE NEXT CASE, PLEASE.

3          MR. CZAJKOWSKI:  THANK YOU.

4          MR. CLARK:  THANK YOU, YOUR HONOR.

5          THE COURT:  THANK YOU.

6          (MATTER RECESSED AT 11:45 A.M.)

7              *      *      *      *      *

8                  REPORTER'S CERTIFICATE

9      I, MINDI L. COLCHICO, CERTIFY THAT THE FOREGOING IS THE

10  OFFICIAL TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED

11  MATTER; AND THAT IT IS COMPLETE AND ACCURATE, TO THE BEST OF

12  MY KNOWLEDGE AND ABILITY.

13

14

15          _____

16          OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25



Appellate — 4
Chip 013594-4

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**F I L E D**

APR 1 5 1999

CATHY A. CATTERSON
CLERK, U.S. COURT OF APPEALS

---

JERRY CZAJOWSKI; LONIA
CZAJKOWSKI,

        Plaintiffs-Appellants,

  v.

PETER JOVANOVICH; HARCOURT
BRACE JOVANOVICH, INC.,

        Defendants-Appellees.

No. 98-55904

D.C. No. CV-92-00431-RMB

MEMORANDUM[1]

---

Appeal from the United States District Court
for the Southern District of California
Rudi M. Brewster, District Judge, Presiding

Submitted April 12, 1999[2]

Before:    BRUNETTI, LEAVY, and THOMAS, Circuit Judges.

    Jerry Czajkowski and Lonia Czajkowski ("plaintiffs"), former preferred

shareholders of Harcourt Brace Jovanovich, Inc. ("HBJ"), appeal pro se the district

court's grant of summary judgment for defendants in plaintiffs' diversity action

---

[1]    This disposition is not appropriate for publication and may not be cited to or by the courts
of this circuit except as may be provided by 9th Cir. R. 36-3.

[2]    The panel unanimously finds this case suitable for decision without oral argument. *See*
Fed. R. App. P. 34(a)(2).  Accordingly, we deny appellants' request for oral argument.

alleging that HBJ breached a liquidation preference clause by failing to redeem plaintiffs' shares of HBJ preferred stock at the purported guaranteed redemption price of $13.50 per share when HBJ merged with General Cinema Corporation in 1991. Plaintiffs also appeal the district court's April 24, 1998 order denying their motion for reconsideration. We dismiss in part, and affirm in part.

We lack jurisdiction to review the district court's February 9, 1998 order granting summary judgment to defendants because plaintiffs did not file their notice of appeal until May 4, 1998, nearly three months after judgment was entered on February 10, 1998. *See* Fed. R. App. P. 4(a)(1)(A); *Atchison, Topeka & Santa Fe Ry. Co. v. California State Bd. of Equalization*, 102 F.3d 425, 427 (9th Cir. 1996). Although plaintiffs sought reconsideration of the district court's summary judgment order, they did not file the motion until March 12, 1998, well beyond the ten-day period that would have tolled the time to file their notice of appeal from the summary judgment order. *See* Fed. R. App. P. 4(a)(1)(A). Accordingly, we dismiss this portion of plaintiffs' appeal for lack of appellate jurisdiction. *See California State Bd. of Equalization*, 102 F.3d at 427.

We do, however, have jurisdiction to review the district court's denial of plaintiffs' motion for reconsideration. We conclude that the district court did not abuse its discretion because plaintiffs essentially only sought to relitigate issues that were previously rejected by this court in *Czajkowski v. Jovanovich*, No.

-2-

92-55787, 1992 WL 247089, at *1-4 (9th Cir. June 8, 1994), and plaintiffs have

failed to demonstrate a sufficient basis for relief under either Fed. R. Civ. P. 59(e)

or 60(b).  *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441-42 (9th Cir. 1991).

We reject plaintiffs' remaining contentions as being without merit.

**We deny Appellees' request for judicial notice.**

**Appellees are entitled to recover their costs on appeal.**

**DISMISSED in part, and AFFIRMED in part.**





RECEIVED

DEC 12 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISCTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JERRY CZAJKOWSKI, Ph.D., an individual, | ) | Case Number: **07C  6971** |
| Plaintiff, | ) | |
| | ) | **MAGISTRATE JUDGE DENLOW** |
| | ) | |
| v. | ) | **JUDGE SHADUR** |
| | ) | |
| | ) | |
| REED ELSEVIER, INC., a Massachusetts | ) | |
| Corporation, and DOES 1-20, inclusive, | ) | |
| Defendants. | ) | **BREACH OF CONTRACT** |
| | ) | Jury Trial Demanded |

## COMPLAINT FOR DAMAGES

1.      The complainant JERRY CZAJKOWSKI, complains against Defendants REED

ELSEVIER, INC. (a.k.a., ELSEVIER, INC., Harcourt Brace Jovanovich Inc., Harcourt General

Inc.), and DOES 1-20 (collectively "Defendants") as follows:

### DIVERSITY JURISDICTION AND VENUE

2.      Proper venue and jurisdiction for this action, pursuant to 28 U.S.C. § 1332 and 28 U.S.C.

§ 1391, lies with the United States District Court, Northern District of Illinois. The amount in

controversy exceeds the sum and value of $75,000, exclusive of interest and costs.

3.      Because the majority of Defendants' wrongful acts had occurred in the States of New

York, Delaware, Massachusetts, Florida and California, and because of a 7 year litigation against

HBJ in the Federal Courts of California, Plaintiff, believes that he can not get a fair trial in those

States. Therefore, the Plaintiff chose under the Diversity Jurisdiction, as the proper Venue the

United States District Court, Northern District of Illinois, for Defendants maintain a Division in

the State of Illinois, as well.

### THE PARTIES

4.      Plaintiff has, and at all times mentioned herein, been an individual residing in San Diego

County, California.

1

5.    Defendants have, and at all times mentioned herein, been a New York, Delaware and now a Massachusetts corporation doing business in the United States and worldwide.

6.    Plaintiff does not know the true names or legal capacities of the Defendants sued herein as DOES 1-20, inclusive, and therefore sues said Defendants by such fictitious names.

7.    Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as DOES 1-20 is legally responsible in some manner for the matters herein alleged, and is legally responsible in some manner for causing the injuries to Plaintiff as hereinafter alleged.

8.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times herein, Defendants, and each of them, were the employees, representatives, managing agents and/or authorized agents of the other Defendants. In performing the acts alleged herein, Defendants, and each of them, were acting within the course and scope of their employment, representation and/or agency and with the consent and/or authority of the other Defendants. Further, Defendants, and each of them, at all relevant times herein, ratified and affirmed the acts of the remaining Defendants.

**NEW YORK LAW**

9.    The issues presented to this Court are governed by New York law since Harcourt Brace Jovanovich (HBJ) was a New York Corporation. See *Rogers v. Guaranty Trust Co.,* 288 U.S. 123, 130 (1933*); Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1527 (9th Cir.1985) (stating that *"[c]laims involving the 'internal affairs' of corporations ... are subject to the laws of the state of incorporation"*).

10.    Noncompliance of HBJ with the New York Business Corporation Law (**NY BCL**) during its 1991 merger with General Cinema Corporation (GCC), has led to a major deviation from the statutory handling of the attempted 1991 redemption of one of its debt securities, the 12% Preferred Stock, to a detriment of its dissenting shareholders and their *vested property rights* protected by the United States Constitution. This attempted 1991 redemption was not done in compliance with the NY BCL § 623(j), § 514(a)(b), nor § 906(b)(2)(3).

11.    The NY BCL § 623(j) *"**Procedure to enforce shareholder's right to receive payment for shares"*** states:

*"No payment shall be made to a dissenting shareholder under this section at a time when the*

2

*corporation is insolvent or when such payment would make it insolvent. In such event, the dissenting shareholder shall, at his option: ... (2) Retain his status as a claimant against the corporation ... and if it is not liquidated, retain his right to be paid for his shares, which right the corporation shall be obliged to satisfy when the restrictions of this paragraph do not apply."*

12.    The NY BCL § 514(a)(b) *"Agreements for purchase by a corporation of its own shares"*, states:

*"(a) An agreement for the purchase by a corporation of its own shares shall be enforceable by the shareholder and the corporation to the extent such purchase is permitted at the time of purchase by section 513 (Purchase or redemption by a corporation of its own shares). (b) The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, if at the time for performance the corporation can purchase all or part of such shares under section 513."*

13.    The NY BCL § 906(b)(2)(3) *"Effect of merger or consolidation"*, states:

*"(b) When such merger or consolidation has been effected: (2) All the property, real and personal, including subscriptions to shares, causes of action and every other asset of each of the constituent entities, shall vest in such surviving or consolidated corporation without further act or deed. (3) The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent entities. No liability or obligation due or to become due, claim or demand for any cause existing against any such constituent entity, or any shareholder, member, officer or director thereof, shall be released or impaired by such merger or consolidation. No action or proceeding, whether civil or criminal, then pending by or against any such constituent entity, or any shareholder, member, officer or director thereof, shall abate by such merger or consolidation, but may be enforced, prosecuted, settled or compromised as if such merger or consolidation had not occurred, or such surviving or consolidated corporation may be substituted in such action or special proceeding in place of any constituent entity."*

14.    The NY BCL § 623(e) *"Procedure to enforce shareholder's right to receive payment for shares"*, states:

*(e) Upon consummation of the corporate action, the shareholder shall cease to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under this section. A notice of election may be withdrawn by the shareholder at any time prior to his acceptance in writing of an offer made by the corporation, as provided in paragraph (g), ...In order to be effective, withdrawal of a notice of election must be accompanied by the return to the corporation of any advance payment made to the shareholder as provided in (g)."*

## CONSTITUTIONALLY PROTECTED *VESTED PROPERTY RIGHTS* AND THE REDEMPTION RIGHTS

15.    The HBJ 12% Preferred Stock issued in 1987 has possessed *vested property rights* and *redemption rights* protected by the United States Constitution and other statutes:

16.    *"The right of a preferred stockholder to have his stock redeemed on the certain date*

3

*specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent.*" (<u>Weckler v. Valley City</u> 93 F.Supp.451.Affirmed, 188 F.2d 367)

17.     "*the Supreme Court further stated,... 'It seems clear that the redemption right of plaintiff as a preferred stockholder is something more and different in character than an ordinary incidental right of a stockholder, such as voting for the election of a director of the company, and that his right is contractual in nature. This contract right was presumably a condition precedent to plaintiff's determination to purchase preferred stock in the defendant company. The redemption provision was a definite undertaking on the part of the defendant corporation to redeem at a given time and on given terms the stock plaintiff agreed to purchase. Assuming, as we fairly may, that in the absence of the redemption provision plaintiff would not have purchased his stock, or that defendant's undertaking to redeem was an inducing cause in consequence of which plaintiff did purchase, the provision for redemption was something more than a mere incident to corporate relationship, it was a definite contractual undertaking, the proposal for which antedated and consummation of which coincided with the purchase of the stock by plaintiff, who prior to that time was not identified with the corporation.'*" (p.452 <u>Weckler v. Valley City</u>, id.)

18.     "*Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract and as divesting stockholder of vested interest in corporation without due process of law,...Const. art. 8, § 1; Const. U.S. Amend. 14; Const. U.S. art. 1, § 10*".(<u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708)

19.     "*Power reserved in state to amend corporation's charter is not unlimited, and its exercise is subject to restrictions imposed by other provisions of State and Federal Constitutions, such as requirement of due process, and vested property rights and obligations of contract must not be destroyed or impaired (Const. art.8, § 1; General Corporation Law, § 5; Const. U.S. Amend.14; Const. U.S. art.1, § 10).*" (<u>Breslav v. NY & Queens Electric Light & Power Co., id.</u>)

20.     "*Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest which may not be divested without stockholder's assent, and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares.*" (<u>Breslav v. NY & Queens Electric Light & Power Co., id.</u>)

21.     "*Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed by changing noncallable stock into callable stock by vote of two-thirds of stockholders.*" (<u>Breslav v. NY & Queens Electric Light & Power Co., id.</u>)

## GENERAL ALLEGATIONS

### 12% Preferred Issued in 1987

22.     In 1987 the HBJ was faced with a hostile takeover by the British Printing and Communication Corporation, which was offering $44 per share common to HBJ shareholders.

To avoid this hostile takeover, in May 1987, HBJ's Board of Directors adopted a recapitalization plan ("1987 Recapitalization"), consisting of payment of special dividends worth $53.50/share to majority shareholders consisting of $40 in cash and issuance of free 12% Preferred notes valued "at any time" at $13.50/share, to those shareholders. (Arthur Andersen "Notes", p. F-13 of the 1991 Merger Prospectus).

23.    The 1987 Recapitalization was given to common shareholders and convertible debentures holders, and financed by loans and sales of stock. ("Notes", p.F-13), The 12% Preferred closed on the New York Stock Exchange at $10.88 per share on its first day of issuance and reached $12.25 per share in 1989.

24.    In May 1987, HBJ repurchased some of its common stock and convertible debentures, and in 1988 converted (via redemption) all the preferred stocks it sold to institutional investors into bonds and debentures, in the process, excluding from redemption the 12% Preferred ("Notes", p.F-13).

**"Agreements for Purchase by a Corporation of Its Own Shares" per NY BCL § 514(a)(b)**

25.    The detailed description of the HBJ's 12% Preferred agreement for purchase of its own shares (per NY BCL § 514(a)(b)), listed in the 1991 HBJ-GCC Merger Prospectus promised that:

*"HBJ may, at its option, redeem shares of HBJ Preferred Stock in whole at any time, or from time to time in part, at a redemption price equal to the $13.50 per share liquidation preference plus accrued and unpaid dividends, if any, to the date fixed for redemption. HBJ is required to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption."* (Merger Prospectus, p.133).

26.    In 1998, HBJ's Expert Witness, Dr. Paul Pfleiderer opined that this agreement (the redemption clause) of the 12% Preferred was not triggered by the 1991 merger because HBJ had not invoked its option to redeem, and because the 12% Preferred must be outstanding in 2003, which in 1991 was still 12 years away.

*"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have effect:*

        *a). HBJ must invoke its option to redeem the preferred shares, or*

        *b). HBJ preferred shares must be outstanding in the year 2003.*

*Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered was a fair price".* (Dr.P.Pfleiderer, HBJ's Expert Witness, 4/03/98, Exh.3)

27.    Since Plaintiff's 12% Preferred is still outstanding, it should have triggered now the mandatory 2003-2007 redemption clause.

### 1991 HBJ Merger with the General Cinema Corporation

28.    In 1991, as a result of HBJ's self-induced and highly leveraged financial position, HBJ entered into a merger agreement with General Cinema Corporation (GCC) ("Notes", p.F-14). It merged with GCC forming Harcourt General Inc. in violation of full disclosure requirements.

29.    During this merger HBJ did not inform its shareholders that under the NY BCL § 906 (b)(3), the new corporation must inherit all its debts and liabilities and that the 12% Preferred is a debt and a liability. HBJ only referred its stockholders to read about their rights in the Appendix D to the Merger Prospectus, on 12/09/91 writing: *For further information regarding your rights as a dissenting shareholder, and the procedures to be followed to perfect those rights, please refer to the Joint Proxy Statement/Prospectus dated October 25, 91."*

30.    In this reference (App. D), HBJ just listed § 623 and § 910 of the NY BCL. These Sections describe only two rights available to the dissenting shareholders, namely those of (1) appraisal, and (2) cash or share exchange, omitting the third option, wherein a given debt security or liability possesses *vested property rights*, i.e., contractual mandatory redemption date and value. This future debt or liability according to the NY BCL § 906 (b)(3) and § 514(a)(b), cannot be extinguished by the merger or an appraisal, for it has to be taken over by the parent corporation.

31.    Thus to the dissenters the <u>undisclosed</u> NY BCL § 906 (b)(3), and § 514(a)(b), were the third option, as it exempts any debt or a liability, such as the 12% Preferred from an appraisal (*"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed ..." <u>Breslav v. New York & Queens Electric Light & Power Co, id.</u>*), and it requires redemption when due:

*"The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. No liability or obligation due or to become due, claim or demand for any cause existing against any such corporation, or any member, officer or director thereof, shall be released or impaired by such merger or*

*consolidation.* " (NY BCL § 906 (b)(3)) and,

*"(a) An agreement for the purchase by a corporation of its own shares shall be enforceable by the shareholder and the corporation ...The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, if at the time for performance the corporation can purchase all or part of such shares under section 513. "* (NY BCL § 514(a)(b)).

32.     In 1991 the Plaintiffs informed by HBJ only about NY BCL § 623 and § 910, dissented from the merger.

33.     In 1991 HBJ intentionally did not disclose to any of the dissenters their third option, i.e., to wait until the year 2003 for the mandatory redemption prescribed by the NY BCL § 906(b)(3), § 514(a)(b) and § 623(j). HBJ only extended an offer to purchase dissenters' Loan Certificates as Stock Certificates per NY BCL § 623, which is *exclusive* only to non-debt and non-liability securities.

34.     Thus to the Plaintiffs HBJ also made an 80% cash advance of the full $3,507.27 merger consideration (69¢/share), requesting voluntary surrender of the Certificate in exchange for the remaining 20% payment, and informing that by accepting $2,810.90 the Plaintiffs will not be giving up any dissenters' rights.

35.     Although, this move was in compliance with the NY BCL § 623 (g), i.e., *"Every advance payment ... will include advice to such holder that acceptance of such advance payment by a dissenting holder will not constitute a waiver of such holder's dissenter's rights... ",* it was not in compliance with the relevant NY BCL § 906(b)(3), § 514(a)(b) nor § 623(j).

36.     The Plaintiffs rejected HBJ's $3,507.27 offer, and made a $65,809.60 Counteroffer, demanding the promised *liquidation preference* of the 12% Preferred, for *"at any time"* at the option of the company or *"in the event of any liquidation, dissolution or winding-up of HBJ, HBJ Preferred Stock has a liquidation preference of $13.50 (per share), plus any accrued and unpaid dividends to the liquidation date" .* HBJ ignored this $65,809.60 Counteroffer.

37.     In February 1992 Plaintiffs sued HBJ in the Southern District of California's Federal Court for breach of the *"liquidation preference"* promise.

38.     In effect, contrary to the requirements of the NY BCL § 623(e) and § 623(g):

7

*(e) "In order to be effective, withdrawal of a notice of election to dissent must be accompanied by the return to the corporation of any advance payment made to the shareholder... (g) If..., the corporation making the offer and any shareholder agree upon the price to be paid for his shares, payment therefor shall be made ..., upon the surrender of the certificates for any such shares represented by certificates."*

Plaintiffs never returned to the corporation the advance payment, never agreed to the redemption price of the Certificate, and never surrendered it, so the surviving Plaintiff per NY BCL § 623(j) retains his status as a claimant against the corporation, and the HBJ's 2003-2007 debt obligation according to the NY BCL§ 906 (b)(3) and § 514 (a)(b), is actual until it is fully satisfied.

### 12% Preferred Characterized as a Liability

39.    HBJ's 12% Preferred was a liability possessing *"vested property rights"* protected by the United States Constitution and other statutes, stemming from its mandatory redemption in 20% increments over the 5 years commencing on June 30, 2003 at $13.50/share plus accumulated 12%/yr dividends.

40.    The following excerpts from the audit done by Arthur Andersen and Company (published in the 1991 Merger Prospectus), identify and clarify the characterization of the 12% Preferred as being truly a debt and a liability to HBJ:

41.    The 12% Preferred is a debt with mandatory redemption provision, possessing a redemption face value of $13.50 per share, with a mandatory maturity date, redeemable in full, beginning June 30, 2003 in 20% level increments over 5 years ("Notes" p.F-21, and 1989 Moody's Industrial Manual, p.1288)

42.    When declared, quarterly dividends were authorized to be issued in shares of additional 12% Preferred (Pay-In-Kind until 6/30/93), always paid at a fixed 12% per year of the $13.50/share liquidation preference or $1.62/share/year. Such that, if the market value of the 12% Preferred in a given year was $1.62, the yearly dividend would amount exactly to just one share, or a 100% return per year ("Notes" p.F-21). Last dividend distribution was made on 12/31/90. In early 1991 HBJ Board due to a low market value of the 12% Preferred stopped issuing Pay-In-Kind dividends. (p.F-38).

43.    For the purpose of Pay-In-Kind quarterly dividend calculation (paid in additional shares of the 12% Preferred), before these dividends were calculated and issued, the 12% Preferred was recorded at the market value ("Notes" p.F-21), so that the quarterly dividend of $0.405/share

(3% of $13.50) could be properly converted to the x number of newly issued shares at the market value. For example, if the market value of the 12% Preferred at the end of a quarter was $0.405/share, HBJ would issue just one share of 12% Preferred as the quarterly Pay-in-Kind dividend (a 100% return per quarter).

44.    Unpaid and undeclared dividends were authorized to accumulate on the 12% Preferred,

*"**Redeemable 12% Preferred Stock**: The terms of the 12% Preferred Stock provide for quarterly dividends as and when declared by the Board of Directors at the rate of 12% of their liquidation preference per year, which dividends through the dividend period ending 6/30/93 may be paid in additional shares of 12% Preferred. In early 1991, the Board of Directors voted to omit the pay-in-kind dividend for the quarter ending 3/31/91 ... Although the HBJ has no legal obligation to pay dividends on the 12% Preferred, unpaid dividends accumulate..."* ("Notes" p.F-21)

45.    12% Preferred is classified outside the shareholders' equity,

*"**Shareholders' Equity**: The only outstanding shares of HBJ capital stock are its common stock and its 12% Preferred Stock. The 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity."* ("Notes" p.F-22)

46.    Redeemable 12% Preferred is listed as a liability on financial statements ("Notes" p.F-5).

47.    In 1998, HBJ's Financial Expert Witness, P.Pfleiderer, Ph.D., also concluded that the 12% Preferred is a liability due in 2003. (Exh.3)

*"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have effect:*

    *a. HBJ must invoke its option to redeem the preferred shares, or*

    *b. HBJ preferred shares must be outstanding in the year 2003.*

*Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered was a fair price".* (HBJ's Expert Witness, 4/03/98, Exh.3)

48.    Thus, it is clear that the issuance of the 12% Preferred, initially used to thwart the hostile takeover by the British Printing and Communication Corporation, were actually loans, key instruments in the long term debt financing, the effect of which was to put the holders of the 12% Preferred in the position of lenders.

## 12% Preferred a Debt Security

49.    To help finance HBJ's 1987 Recapitalization, Plaintiffs loaned money to HBJ at 12% per year via their purchase of the 12% Preferred. Plaintiffs paid for the **Debt Security**, in its full statutory meaning -

*"[a]n obligation of an issuer, or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer that is all of the following:*

9

(a) *It is represented by a security certificate in bearer or registered form, or the transfer of it may be registered upon books maintained for that purpose by or on behalf of the issuer.*

(b)     *It is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations.*

(c)     *It is either of the following:*

a.   *It is, or is of a type, dealt in or traded on securities exchanges or securities markets.*

b.   *It is a medium for investment and by its terms expressly provides that it is a security governed by this division".* CA Comm.'l Code §8102(15).

50.     The Plaintiff purchased a debt security which was identified as 12% Preferred, because the Board of Directors would declare dividends (pay interest) at the annual rate of 12% of the liquidation preference and redemption value of $13.50 per share which "HBJ is required to redeem ..." (Merger Prospectus of 10/25/91 at p.133).

51.     Dividends will accrue, even if not paid, just as interest compounds on a loan (Merger Prospectus of 10/25/91 at p.133 and F-21).

52.     The 06/30/2003 and subsequent installment redemptions through 06/30/2007, are mandatory payments, just as a note would be callable by the holder. *"The 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity".* (Andersen & Company notes to consolidated financial statements, p. F-22 of the 10/25/91 Merger Prospectus).

53.     1989 Moody's Industrial Manual publication on p.1288 also described the 12% Preferred as a debt security, informing:

**DIVIDEND RIGHTS** – *Cumulative dividends are payable quarterly on these shares from the issuance date, July 27, 1987, at the rate of 12% of their liquidation preference per year. Through June 30, 1993, dividends will be paid in additional shares of 12% Preferred Stock. Paid in stock equivalent to $0.405.*

**CALLABLE** – *Company is required to redeem, in full in level increments over 5 years commencing June 30, 2003.*

54.     Had the Plaintiffs not purchased a debt security, clearly it would have no liquidation preference, there would not be cumulative interest rate of 12% ("dividends"), there would not be stated redemption payment period, and there would be no stated amount of redemption. Plaintiffs' purchase was that of a debt security. Plaintiffs' investment is secured by the liquidation preference of the contractual agreement.

55.     Indeed, the debt security is a contractual obligation which cannot be impaired without the

breach thereof. Plaintiffs' right to redemption at the time and in the amount stated by HBJ is a Contract. For HBJ to refuse to honor its contractual obligation is an impairment of Plaintiff's contract rights and a deprivation of *vested property rights*.

### Ownership of 12% Preferred

56.    The Plaintiff Jerry Czajkowski and his mother Lonia Czajkowski, purchased various shares of 12% Preferred from HBJ between 10/08/89 and 5/10/90, upon which accrued dividends on 12/30/90, resulted in the total ownership of 5,083 shares. They purchased these shares of 12% Preferred as a Debt and a Liability of HBJ, based on the promise of the mandatory 6/30/2003 - 6/30/2007 redemption plus accumulated 12% dividends, as it was described and published in the 1989 Moody's Industrial Manual, p.1288 (Exh.2).

57.    The Plaintiff after death of his mother Lonia Czajkowski (August 4th 2005), became the beneficial owner of 5083 outstanding shares of the 12% Preferred, and according to the 1992-2001 Harcourt General's dividend tax records (Forms-1099-DIV), he is also an owner of 200 shares of Harcourt General's common stock plus unpaid (though reported to the IRS) dividends of $1,330.

58.    On 11/01/91 Plaintiff and Lonia Czajkowski, submitted a Notice of Election to Dissent to HBJ's merger with GCC, demanding payment for their shares.

59.    Thereafter, HBJ issued a Dissenter's Stock Certificate to Plaintiff, showing his ownership of 5,083 shares of 12% Preferred, the original certificate of which is in his possession, a copy thereof is attached as Exh.1.

60.    On 11/21/91, HBJ issued a payment to Plaintiff of $2,810.90 as a partial statutory 80% offer to pay for shares of merger dissenters. The transmittal by HBJ was accompanied by the advice that acceptance of the payment did not waive any dissenters' rights and directed Plaintiff to refer to the 10/25/91 Joint Proxy Prospectus ("Merger Prospectus").

61.    On 12/20/91 the Plaintiff and his mother rejected the offer, bringing to HBJ's attention that the Merger Prospectus stated, that the 12% Preferred required payment in full of $13.50/share upon liquidation, dissolution or winding up of HBJ. In reliance of the provisos of the Merger Prospectus, the Plaintiff and his mother made a counteroffer to HBJ for the balance at the face value of $13.50 per share (less the prepayment), in the amount of $65,809.60.

## Federal Litigation (1992-1999)

62.    HBJ did not respond to Plaintiffs' reasonable 1991 counteroffer to settle for $13.50 per share. What followed was lengthy and protracted litigation in the Southern District of California's Federal Court. That litigation was resolved as an action for *appraisal* of the 12% Preferred (Exhs.4 and 5).

63.    Based on the Plaintiffs' *"liquidation preference"* cause of action, in 1994 the 9th Circuit Court of Appeals concluded that there was no liquidation of HBJ in 1991, and so the *"exclusive remedy"* of the 12% Preferred Stock in 1991 was an *appraisal*, and issued a remand giving the Plaintiffs leave to amend their 1992 Complaint with an *appraisal* (Exh.4).

64.    In 1998 an appraisal proceeding in the District Court was halted by granting Defendants' Motion for Summary Judgment based on the Expert Witness discovery, that at the time of the 1991 merger, HBJ's 69 cent offer was a fair market value of the 12% Preferred.

65.    However, the 1998 final order granting Defendants Motion for Summary Judgment, did not order the Plaintiffs to surrender and sell the Loan Certificate for 69¢/share. It only affirmed HBJ's 1992 contention, that at the time of the 1991 merger, the 69¢/share was a *"fair price"*, and if Plaintiffs should agree to sell (since there was no liquidation of HBJ), HBJ did not have to offer them more than 69¢/share.

66.    Because the redemption of the 12% Preferred at $0.69/share in 1991 was not mandatory, Plaintiffs' *vested property rights* were not destroyed by the merger, and Plaintiffs could not invoke the constitutional protection as in <u>Breslav v. New York & Queens Electric Light & Power Co, id.</u>, where it is stated that the *"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed..."*

67.    The same conclusion was reached by the HBJ's Expert Witness, Dr.P.Pfleiderer, who wrote in support of the Motion for Summary Judgment (Exh.3):

*"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have effect:*

    *a). HBJ must invoke its option to redeem the preferred shares, or*

    *b). HBJ preferred shares must be outstanding in the year 2003.*

*Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered was a fair price".* (Dr.P.Pfleiderer, HBJ's Expert Witness, 4/03/98).

68.     Plaintiff's claim is based today on the failure of the HBJ to comply with the NY BCL §
514(a)(b) and pay the face value of the 12% Preferred as a liability in 2003-2007 which had not
accrued at any time during the federal litigation and therefore cannot preclude an action for
breach of contract today.

### *"Exclusive Remedy"* of Appraisal per NY BCL § 906(b)(3) and § 514(a)(b) is
### Not *"Exclusive"*, and Does Not Destroy Redemption Rights or
### *Vested Property Rights (Weckler v. Valley City, id.)*

69.     *"Exclusive Remedy"* of appraisal per NY BCL § 623(e) can not and does not nullify any
contractual obligations such as *vested property rights* protected by the NY BCL § 906 (b)(3), §
514(a)(b) and the United States Constitution.

70.     In 1950 the meaning and applicability of the term *"exclusive remedy"* has been explained
by Judge Starr of the United States District Court W.D. Michigan S.D., as follows:

*"Objection by any such shareholder to any action of the corporation provided in this section and
his rights thereafter under this section shall be his **exclusive remedy**."*

*The above-quoted §§ 44 and 57 of the General Corporation Act should be considered and
construed in connection with §§ 59 and 192 of the act. When so considered, it would appear that
in using the term "exclusive remedy" in § 44 the legislature simply meant that a minority
stockholder who "voted against" a proposed good-faith sale of corporate assets could no longer,
as he could in the past, prevent or block the sale against the wishes of a majority of stockholders,
and that if he voted against the sale, he could only demand that the corporation purchase his
stock and pay to him the fair cash value thereof. Such an interpretation of § 44 would appear to
be in harmony with the purpose of this and similar statues which where enacted to permit a
majority of stockholders to authorize a good-faith sale, lease, or exchange of corporate assets
and a fundamental change in the corporate structure without victimizing the minority
stockholders, and yet at the same time prevent a minority stockholder from establishing a
nuisance value for his shares. **An interpretation of § § 44 and 57 to permit the change or
destruction of redemption rights or other vested property rights would certainly be in conflict
with § 59 of the act, which provides that "The liability of any corporation * * * shall not in any
way be lessened or impaired by the sale of any assets thereof,"** and in conflict with § 192 of the
act, which provides that **"This act shall not impair or affect any * * * right accruing, accrued,
or acquired, or liability * * * incurred** prior to the time this act takes effect, but the same may be
enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if this act
had not been passed." It should be noted that § 192 preserves not only accrued rights, but also
the remedies for preserving such rights, for it specifically states that they may be asserted,
enforced, and prosecuted as if the act had not been passed."* (p.455, <u>Weckler v. Valley City</u> 93
F.Supp.451.Affirmed, 188 F.2d 367)

## *"Exclusive Remedy"* of Appraisal Does Not Apply to Preferred Stocks
### which Possess *Vested Property Rights*

71.    Furthermore:

*"The right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent."* (Weckler v. Valley City 93 F.Supp.451.Affirmed, 188 F.2d 367)

72.    Moreover, *"the Supreme Court further stated,... 'It seems clear that the redemption right of plaintiff as a preferred stockholder is something more and different in character than an ordinary incidental right of a stockholder, such as voting for the election of a director of the company, and that his right is contractual in nature. This contract right was presumably a condition precedent to plaintiff's determination to purchase preferred stock in the defendant company. The redemption provision was a definite undertaking on the part of the defendant corporation to redeem at a given time and on given terms the stock plaintiff agreed to purchase. Assuming, as we fairly may, that in the absence of the redemption provision plaintiff would not have purchased his stock, or that defendant's undertaking to redeem was an inducing cause in consequence of which plaintiff did purchase, the provision for redemption was something more than a mere incident to corporate relationship, it was a definite contractual undertaking, the proposal for which antedated and consummation of which coincided with the purchase of the stock by plaintiff, who prior to that time was not identified with the corporation.'"* (p.452 Weckler v. Valley City, id.)

73.    The case law of *Breslav v. New York & Queens Electric Light & Power Co., 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708,* confirms the same:

74.    *"Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract and as divesting stockholder of vested interest in corporation without due process of law,...Const. art. 8, § 1; Const. U.S. Amend. 14; Const. U.S. art. 1, § 10".*

75.    *"Power reserved in state to amend corporation's charter is not unlimited, and its exercise is subject to restrictions imposed by other provisions of State and Federal Constitutions, such as requirement of due process, and vested property rights and obligations of contract must not be destroyed or impaired (Const. art.8, § 1; General Corporation Law, § 5; Const. U.S. Amend.14; Const. U.S. art.1, § 10.")*

76.    *"Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest which may not be divested without stockholder's assent, and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares."*

77.    *"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed by changing noncallable stock into callable stock by vote of two-thirds of stockholders."*

### No "Res Judicata"

78.    Plaintiffs' 1992 *"liquidation preference"* cause of action is not the same as the year 2003-

2007 Breach of Contract of the mandatory redemption provision, for in 1992 there could not have been a breach of something that has not occurred yet, set to happen 12-16 years into the future, and the *"Exclusive Remedy"* of appraisal per NY BCL § 906(b)(3) and § 514(a)(b) is not *"Exclusive"* nor mandatory as shown above, for it cannot destroy redemption rights or *vested property rights (Weckler v. Valley City, and Breslav v. New York & Queens Electric Light & Power Co, supra)*.

79.     In short, the 9th Circuit and the U.S. District Court cases in 1994 and in 1999 were decided on the basis of an *appraisal remedy* for stock, and could not have been decided on the basis of breach of a redemption contract which would not accrue until 2003-2007.

## Corporate Liability per NY BCL § 906(b)(2)(3)

80.     The NY BCL § 906 (b)(3) states that:

*"The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. **No liability or obligation due or to become due**, claim or demand for any cause existing against any such corporation, or any member, officer or director thereof, **shall be released or impaired by such merger or consolidation.**"*

81.     According to HBJ, the 12% Preferred was a liability becoming due on June 30, 2003 thru June 30, 2007, and per NY BCL *"no liability or obligation due or to become due, ... shall be released or impaired by such merger or consolidation"*, neither in 1991 by the merger of HBJ and GCC, nor in 2001 by the merger of Harcourt General and Reed Elsevier.

82.     In *Fox v. MGM Grand*, the appellate court affirmed dismissal on the basis that the debenture holder had not suffered damage at the time of filing suit, i.e., the loan had not ripened to maturity for payment. *Fox v. MGM Grand Hotels, Inc. (1982) 137 Cal.App.3d 524, 525,* rehearing denied.

83.     A surviving corporation in a merger succeeds to all the rights and property of the disappearing corporation and is subject to all its debts and liabilities just the same as if those debts were originally incurred by the surviving corporation. *Maudlin v. Pacific Decision Sciences Corporation* (2006) 137 Cal.App. 4th 1001, 1016.

84.     Here, the 1991 merger provided that HBJ will continue as the Surviving Corporation, hence, the liability for its debts would continue under the newly formed Harcourt General, Inc.

85.     The 1991 Merger Prospectus provided that upon winding up of the HBJ, the 12% Preferred would have a liquidation preference plus accrued and unpaid dividends, mandating payment in full in 2003-2007 (Merger Prospectus, p.134).

86.     The 2001 merger with the Reed Elsevier provided that he Harcourt General will become a subsidiary of Reed Elsevier which will assume Harcourt's debts.

87.     In summary, then, Plaintiff's remedy as a note holder is for breach of contract, only when he has incurred damages as a result of a breach of that agreement.

88.     Here, the mandatory redemption of the 12% Preferred was to begin at maturity on 06/30/2003 thru 06/30/2007. There has been no redemption payment made to the Plaintiff either by HBJ, Harcourt General, Inc., nor Reed Elsevier, Inc.

**Anticipatory Repudiation**

89.     There is no reference in any of the merger prospectus documents, including the restated merger of 8/24/91, and amended merger of 10/18/91, or in Andersen and Company Notes to financial statements of 6/30/91, that HBJ has made a stated repudiation of its contractual obligation to pay cumulative dividends and redeem the 12% Preferred in 2003-2007.

90.     Even assuming that there was such a repudiation in 1991, HBJ's repudiation of its contractual obligations would be anticipatory to the 6/30/2003 - 6/30/2007 redemption. Because the anticipatory breach has just occurred on 06/30/03 thru 06/30/07, the injured party may wait until the time for performance to file his suit. *Brewer v. Simpson* (1960) 53 Cal.2d 567, 593.

91.     Therefore, the Plaintiff has a valid breach of contract claim against HBJ, whose debts and liabilities were assumed by the Harcourt General in the merger of 1991, and which debts and liabilities were subsequently assumed by Reed Elsevier in the merger of 2001. HBJ and its successors have been given the opportunity to amicably redeem the 12% Preferred in 1991, 2004, 2005 and 2007. The limitations period, then, does not accrue until the time when there is an actual breach, which is now, and not in 1991.

**HBJ's 1996 Confidential Settlement Offer of $15,000**

92.     In 1996 HBJ made a confidential settlement offer in the amount of $15,000, which Plaintiffs declined as inadequate, because of their original investment of $20,000, the HBJ's *"liquidation preference"* valuation *"at any time"* of $13.50/share, the HBJ's mandatory 2003-

16

2007 redemption at $13.50/share plus 12%/year accumulated dividends, and because of investment returns in major US corporations. For example $20,000 invested on 10/09/89 in the Intel Corp. would have yielded on 12/23/96 $315,000 instead of $15,000, on 8/01/00, $1,445,000, and on 7/09/07, $517,000.

## DAMAGES

93.     On 16 July 2007 Defendants informed that, *"Reed Elsevier is pleased to announce today that it has entered into a definitive agreement to sell its Harcourt US Schools Education business to Houghton Mifflin Riverdeep Group for a consideration of $4.0 billion, with $3.7 billion payable in cash and $0.3 billion payable in common stock of Houghton Mifflin Riverdeep Group.",* and on 28 November 2007 that, *"The aggregate net proceeds of the sale of the entire Harcourt Education division of approximately $4.0 billion will be returned to shareholders by way of special dividend in the equalisation ratio followed by a corresponding consolidation of the share capitals of Reed Elsevier PLC and Reed Elsevier NV."*

94.     Therefore, the Defendants who are in the process of selling parts of the former HBJ for $4.0 billion, definitely are financially able to redeem their own HBJ shares according to the NY BCL § 514(a)(b), for the Plaintiff who possesses *vested property rights,* per NY BCL §§ 623(j) and 514(b) has retained the status of a claimant, and per NY BCL § 906(b)(2)(3) the Defendants have inherited Harcourt General's and the HBJ's debts and liabilities.

95.     Using a dividend calculation formula created by HBJ in 1987, which was described in paragraphs 42 and 43, supra, and assuming that the value of the 12% Preferred since 12/31/90 thru 6/30/07 has been at $13.50/share (the redemption value, and not at $0.69/share as was falsely set by the HBJ-GCC merger on 11/25/91), then as of 6/30/07, the Plaintiff's contract damages are estimated to have accrued, with compounded quarterly 12%/yr dividends, to $482,734.14, less the 1991 advance of $2,810.90, leaving the amount owed of $479,926.24.

96.     If the 12% Preferred's value was set to the last market price of $0.69/share, then the calculated damages on 6/30/07 since the last day of trading 11/25/91 on the New York Stock Exchange, would have reached an absurd astronomical magnitude of $180 million billion ($1.8x10$^{17}$), confirming the fact that the 12% Preferred has always been a debt security and a liability, and that ever since its issuance (1987-2007) to prevent this absurdity it had to be valued by HBJ at all times at $13.50/share.

17

## FIRST CAUSE OF ACTION

## BREACH OF REDEMPTION CONTRACT

97.     Plaintiff incorporates by reference and realleges paragraphs 1 through 96 as though fully set forth herein.

98.     In-between 1989-1990, Plaintiff entered into a contract with HBJ, whereas Plaintiff agreed to purchase 5,083 shares of HBJ 12% Preferred, and HBJ agreed to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of 12% Preferred then outstanding and on June 30, 2007, all remaining shares of outstanding 12% Preferred, in each case at the redemption price of $13.50 per share, plus accrued and unpaid 12% dividends, to the date of redemption.

99.     Plaintiff is informed and believes and based on such information and belief alleges that Defendants acquired the liability of this contract through their acquisition of Harcourt General Inc., who had acquired HBJ (NY BCL § 906(b)(2)(3)).

100.     Plaintiff fulfilled his obligation under the contract in that he purchased 5,083 shares of 12% Preferred, and still maintains ownership of these shares today (NY BCL §§ 623(j) and 514(b)).

101.     On June 30, 2003, Plaintiff owned 22,283.39 shares of 12% Preferred, and was entitled to 20% of the $300.825.82 under the terms of the contract. Defendants breached the contract when they did not pay Plaintiff $60,165.16 on June 30, 2003.

102.     On June 30, 2004, Plaintiff owned 25,080.16 shares of 12% Preferred, and was entitled to 20% of the $338,582.11. Defendants breached the contract when they it did not pay Plaintiff $67,716.42 on June 30, 2004.

103.     On June 30, 2005, Plaintiff owned 28,227.94 shares of 12% Preferred, and was entitled to 20% of the $381,077.15. Defendants breached the contract when they did not pay Plaintiff $76,215.43 on June 30, 2005.

104.     On June 30, 2006, Plaintiff owned 31,770.79 shares of 12% Preferred, and was entitled to 20% of the $428,905.69. Defendants breached the contract when they did not pay Plaintiff $85,781.14 on June 30, 2006.

105.     On June 30, 2007, Plaintiff owned 35,758.31 shares of 12% Preferred, and was entitled to

18

a full 100% payment of $482,737.14. On June 30, 2007 the Defendants breached the contract when they did not pay Plaintiff $482,737.14.

106.    As a result of Defendants' breaches, on June 30, 2007 the Plaintiff has suffered damages in the amount $482,737.14 minus the 1991 advance of $2,810.90, or $479,926.24.

## JURY DEMAND

107.    Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief in accordance with the NY BCL § 514(a)(b), § 906(b)(2)(3) and § 623(j), as follows:

    a.    For compensatory damages in the amount $479,926.24;

    b.    For prejudgment interest since 6/30/2007 at highest lawful rate;

    c.    For costs of suit, and

    d.    For such other and further relief as the court may deem just and proper.

DATED:    December 5, 2007

Respectfully submitted by,

SIGNED:    *J. Czajkowski*

Jerry Czajkowski, Ph.D., in Pro Se
6370 Streamview Dr
San Diego, CA 92115
619-287-2944

**EXHIBIT 1**



**EXHIBIT 2**

each Nov. 14 as follows: 1994, 104.875; 1995, 103.250; 1996, 101.625 and thereafter at 100 plus accrued interest.

SECURITY — Not secured. Ranks pari passu in right of payment with all existing and future unsubordinated indebtedness of Co. Co. or any restricted subsidiary will not incur any secured debt unless contemporaneously therewith effective provision is made to secure the senior notes equally and ratably with such secured debt for so long as such secured debt is secured by a lien.

SALE AND LEASEBACK — Co. or any restricted subsidiary will not enter into any arrangement with any person providing for the leasing by Co. or any subsidiary of any real or tangible personal property, which property has been or is to be sold or transferred by Co. or such subsidiary to such person in contemplation of such leasing, unless (i) Co. or such subsidiary would be entitled to incur debt in an amount equal to the attributable debt with respect to such arrangement without equally and ratably securing the senior notes or (B) the net proceeds of such sale are at least equal to the fair value of such property and Co. or such subsidiary applies or causes to be applied an amount in cash equal to the net proceeds of such sale

INDENTURE    MODIFICATION — Indenture may be modified, except as provided, with consent of not less than a majority of notes outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of notes outstg., may declare principal due and payable (30 day's grace for payment of interest).

PURPOSE — Proceeds will be used to repay an equal principal amount of the term loan under the bank agreement.

OFFERED — ($200,000,000) at 100 plus accrued interest (proceeds to Co., 97.25) on Nov. 17, 1988 thru The First Boston Corp. and associates.

**2. Harcourt Brace Jovanovich, Inc. senior subordinated debenture 13⅜s, due 1999:**

Rating — B2

AUTH.—$500,000,000; outstg., December 31, 1988, $500,000,000.

DATED — Sept. 1, 1987. DUE — Sept. 15, 1999.

INTEREST — M&S 15 to holders registered M&S 1.

TRUSTEE — Security Pacific National Trust Co., NY.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1993, 103.93; 1994, 101.97 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 1997-1998, sufficient to redeem $165,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 66% of the debs. prior to maturity.

SECURITY — OTHER PROVISIONS — Same as subord. pay-in-kind deb. 14⅞s, 2002.

OFFERED — ($500,000,000) at 100 plus accrued interest (proceeds to Co., 96.500) on Sept. 18, 1987 thru The First Boston Corp. and associates.

**3. Harcourt Brace Jovanovich, Inc. subordinated Pay-in-Kind debenture 14⅞s, due 2002:**

Rating — B3

OUTSTG. — $250,000,000; outstg., December 31, 1988, $299,602,418

DATED — Sept. 1, 1987. DUE — Sept. 15, 2002.

INTEREST — M&S 15 to holders registered M&S 1.

Interest accruing prior to Sept. 15, 1992 will be paid in additional subordinated pay-in-kind debentures.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1991, 102.50; 1992, 101.25 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 2000-2001, sufficient to redeem $127,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 50% of debs. prior to maturity.

SECURITY — Not secured. Subordinated in right of payment to all senior indebtedness.

INDENTURE    MODIFICATION — Indenture may be modified, except as provided, with consent of a majority of debs. outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of debs. outstg., may declare principal due and payable (30 days' grace for payment of interest).

PURPOSE — Proceeds will be used for mandatory redemption of notes held by FBSC pursuant to the subordinated note purchase agreement and, to the extent of any net proceeds in excess thereof, will initially be used to reduce outstanding revolving credit borrowings under the bank agreement.

OFFERED — ($250,000,000) at 100 plus accrued interest (proceeds to Co., 96.500) on Sept. 18, 1987 thru The First Boston Corp. and associates.

**4. Harcourt Brace Jovanovich, Inc. subordinated discount debenture 14⅞s, due 2002:**

Rating — B3

AUTH.—$507,490,000; outstg., December 31, 1988, $299,799,323.

DATED — Sept. 1, 1987. DUE — Sept. 15, 2002.

INTEREST — M&S 15 to holders registered M&S 1.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1993, 102.00; 1994, 102.50 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 2000-2001, sufficient to redeem $127,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 50% of debs. prior to maturity.

SECURITY — OTHER PROVISIONS — Same as subord. pay-in-kind deb. 14⅞s, due 2002.

OFFERED — ($507,490,000) at 49.262 plus accrued interest (proceeds to Co., 47.538) on Sept. 18, 1987 thru The First Boston Corp. and associates.

**5. Harcourt Brace Jovanovich, Inc. subordinated debentures 14s, due 2004**

Rating — B3

AUTH.—$200,000,000; outstg., December 31, 1988, $200,000,000.

DATED — Nov. 15, 1988. DUE — Nov. 15, 2004.

INTEREST — M&N 15 to holders registered M&N 1.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any multiple thereof. Transferable and exchangeable.

CALLABLE — As a whole or in part at any time on or after Nov. 15, 1993, at the option of Co., on at least 30 but not more than 60 days' notice to each Nov. 14 as follows: 1994, 105.34; 1995, 103.56; 1996, 101.78 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Subject to a mandatory sinking fund payment of $100,000,000 on Nov. 15, 2003 calculated to retire 50% of the debs. prior to maturity.

SECURITY — Not secured. Subordinated to all senior indebtedness of Co.

INDENTURE    MODIFICATION — Indenture may be modified, except as provided, with consent of not less than a majority of debs. outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of debs. outstg, may declare principal due and payable (30 days' grace for payment of interest).

PURPOSE — Proceeds will be used to repay an equal principal amount of the term loan under the bank agreement.

OFFERED — ($200,000,000) at 100 plus accrued interest (proceeds to Co., 96.50) on Nov. 17, 1988 thru First Boston Corp. and associates.

**6. Harcourt Brace Jovanovich, Inc. convertible subordinated notes 9¼s, due 1999**

AUTH.—$53,640,000; outstg. Dec. 31, 1988, $53,640,000.

DATED — Oct. 5, 1988. DUE — Dec. 31, 1999.

INTEREST — J&D 31.

CALLABLE — As a whole, but not in part, subject to certain conditions, at the option of the Co. at anytime on or after Jan. 1, 1991, on at least 10 but not more than 60 days' notice as follows:

| 1991 | ...180.85 | 1992 | ...225.28 | 1993 | ...283.15 |
| 1994 | ...109.75 | 1995 | ...107.80 | 1996 | ...105.85 |
| 1997 | ...103.90 | 1998 | ...101.95 | | |

and thereafter at 100 plus accrued interest.

CONVERTIBLE — Into common at any time at a price of $11.75 per share, subject to adjustment.

SINKING FUND — None required.

SECURITY — Unsecured.

**7. Other Long Term Debt**

Outstanding Dec. 31, 1988, $1,036,376,701 comprising:

(1) $1,015,823,500, borrowings under or supported by a credit agreement with an average interest rate during 1988 of 10.24%.

(2) $9,834,188 5.5%-9% capitalized lease obligations, payments due periodically to January 2000.

(3) $10,719,013 other long-term debt, with interest rates ranging from 8¼% to 13.5%.

Among other matters, the Company's senior debt agreements specify quarterly requirements relating to working capital, cash flow to long-term debt, fixed charge coverage and minimum total capitalization as well as limitations on capital expenditures, lease obligations, and restricted payments. Co. obligations under the senior debt agreements are secured by substantially all the assets of HBJ and its subsidiaries. Total dividends on Co. 12% preferred stock for the year ending December 31, 1988 were paid through issuance of 5,339,830 shares of additional 12% preferred stock and cash payments of approximately $104,000 in lieu of fractional shares.

**CAPITAL STOCK**

**1. Harcourt Brace Jovanovich, Inc. 12% preferred, par $1.**

AUTH.—85,000,000 shares; outstg., Dec. 31, 1988, 47,949,115 shares; par $1.

DIVIDEND RIGHTS — Cumulative dividends are payable quarterly on these shares from the issuance date, July 27, 1987, at the rate of 12% of their liquidation preference per year. Through June 30, 1993, dividends will be paid in additional shares of 12% Preferred Stock.

DIVIDENDS PAID —

1987-88.............①

①Paid in stock equiv. to $0.405.

CALLABLE — Co. is required to redeem, in full in level increments over 5 years commencing June 30, 2003.

TRANSFER AGENT & REGISTRAR — Sun Bank, N.A.

LISTED — On NYSE (Symbol:HBJ Pr).

ISSUED — In July 1987 as a special dividend to common stockholders.

**2. Harcourt Brace Jovanovich, Inc. common; par $1:**

AUTHORIZED — 200,000,000 shares; outstanding, Dec. 31, 1988, 72,725,690 shares; reserved for options, 3,000,000 shares; reserved for issuance upon conversion of Convertible Subordinated Notes, 4,565,106 shares; par $1.

$1 par shs. split 2-for-1, May 7, 1981; and 3-for-1 June 23, 1986.

DIVIDENDS —

| 1960 | .....$0.12½ | 1961-63 | .....$0.50 | 1964 | .....$0.70 |
| 1965 | .....0.80 | 1966 | .....0.95 | 1967-73 | .....1.00 |
| 1974 | .....1.09 | 1975 | .....1.20 | 1976 | .....1.32 |
| 1977-79 | .....1.44 | ②1980 | .....1.56 | 1981 | .....0.40 |

On $1 par shs. after 2-for-1 split:

| 1981 | .....0.75 | 1982-85 | .....1.00 | 1986 | .....0.55 |

On $1 par shs. after 3-for-1 stock split:

| 1986 | .....0.38 | 1987 | .....③④0.10 | 1988 | .....Nil |

②Also paid 1 sh. of 12% pfd. stk. for each com. sh. held.

VOTING RIGHTS — Has one vote per share.

OFFERED — (493,425 shares) at $23.50 a share on Aug. 17, 1960 by White, Weld & Co., Inc., New York, and associates. Offering did not represent company financing.

(101,398 shares) at $38.50 a share on May 19, 1961 by White Weld & Co., Inc., New York and associates. Offering did not represent company financing.

(4,290,000 shs.) at $33 per sh. on June 25, 1986. Of the total, 3,290,000 shs. were offered in the U.S.A. thru First Boston Corp. and associates and 1,000,000 shs. sold internationally by Credit Suisse First Boston Ltd. and associates. Proceeds of 2,997,186 shs. for Co. account to finance acquisitions and reduce short-term debt.

(10,000,000 shs.) at $9.50 per sh. on Nov. 4, 1988. Of the total, 7,000,000 shs. were offered in the U.S.A. and Canada thru First Boston Corp. and 3,000,000 shs. were offered internationally thru Credit Suisse First Boston Ltd. and associates.

PROCEEDS — were used to reduce long-term debt.

TRANSFER AGENT, REGISTRAR & DIVIDEND DISBURSING AGENT — Sun Bank, N.A., Orlando, Florida.

LISTED — On NYSE (Symbol: HBJ); unlisted trading on Boston Stock Exchange.

**Preferred Retired:** All shares of exchangeable escalating rate preferred were retired in Oct. - Nov. 1988.

**EXHIBIT 3**

4/3/88

1   LATHAM & WATKINS
        Kenneth M. Fitzgerald, State Bar #142505
2       Jared G. Flinn, State Bar #190743
    701 B Street, Suite 2100
3   San Diego, California  92101-8197
    Telephone: (619) 236-1234
4   Facsimile: (619) 696-7419

5   Attorneys for Defendants

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11  JERRY CZAJKOWSKI, LONIA            CASE NO. 92-431 B  (AJB)
    CZAJKOWSKI et al.,
12                                     DECLARATION OF PAUL PFLEIDERER,
                                       PH.D. IN SUPPORT OF DEFENDANTS'
13              Plaintiffs,            OPPOSITION TO PLAINTIFFS' MOTION FOR
                                       RECONSIDERATION
14        v.

15  PETER JOVANOVICH and HARCOURT
    BRACE JOVANOVICH, INC.,            Date:      April 20, 1998
16                                     Time:      10:30 a.m.
                Defendants.            Courtroom: 2
17
                                       Hon. Rudi M. Brewster
18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS   SD_DOCS\83003.1
ATTORNEYS AT LAW
SAN DIEGO

I, Paul Pfleiderer, Ph.D. declare as follows:

1.   I am currently the William F. Sharpe Professor of Financial Economics at the Stanford University School of Business.  I have been retained by defendants in this action to render an opinion regarding the fair value of plaintiffs' preferred shares in Harcourt Brace Jovanovich, Inc. ("HBJ"), as of the date of HBJ's merger with General Cinema Corporation ("GCC").

2.   In connection with this matter, I reviewed and analyzed the financial condition of HBJ between 1987 and the date of the HBJ/GCC merger.  I also reviewed and analyzed the HBJ/GCC merger transaction and its effects on HBJ, and on the rights of HBJ's stockholders to receive payment for their shares.

3.   A true and correct copy of the report I generated for this matter is attached hereto as Exhibit A.  My report includes: a) my opinion that the price offered to the holders of the preferred stock of HBJ, $0.69125 per share, was a fair price; and b) all of the documentation I reviewed in formulating my opinion.

4.   Specifically, I based my opinion in part on the entire Harcourt Brace Jovanovich, Inc., General Cinema Corporation Joint Proxy Statement/Prospectus dated October 25, 1991 ("Proxy Statement").  My review of the Proxy Statement included pages 132 and 133 thereto, which were <u>inadvertently omitted</u> from the exhibits to my Declaration in Support of Defendants' Motion For Summary Judgment due to a copying error.

5.   These pages of the Proxy Statement had no bearing on my opinion that the price offered to the holders of the preferred stock of HBJ, $.069125 per share, was a fair price.  These pages state that,

> HBJ may, at its option, redeem shares of HBJ Preferred Stock in whole at any time, or from time to time in part, at a redemption price equal to the $13.50 per share liquidation preference plus accrued and unpaid dividends, if any, to the date fixed for redemption.  HBJ is required to redeem, on June 30, 2003 and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption, except to the

extent HBJ is prevented from doing so under the provisions of the Bank Agreement, the Indentures, or certain other instruments.

Proxy Statement at 133.

6.    I considered this clause, along with the remainder of the Proxy Statement, in formulating my opinion in this matter. However, this clause does not change my opinion regarding the value of the HBJ preferred stock because the clause was never triggered. Specifically, for this clause to have any effect: a) HBJ must invoke its option to redeem the preferred shares; or b) HBJ preferred shares must be outstanding in the year 2003. Because neither of these events took place, this clause has no bearing on my opinion that the price offered to the holders of the preferred stock of HBJ was a fair price.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 3 day of April, 1998 at Palo Alto, California.

PAUL PFLEIDERER, PH.D.

LATHAM & WATKINS
ATTORNEYS AT LAW
SAN DIEGO

SD_DOCS\83003.1

2

**EXHIBIT 4**

Westlaw.

28 F.3d 105 (Table)                                                                                    Page 1

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

**C**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
Jerry **CZAJKOWSKI**; Lonia Czajkowski,
Plaintiffs-Appellants,
v.
Peter JOVANOVICH; Harcourt Brace,
Jovanovich, Inc., Defendants-Appellees.
No. 92-55787.

Argued and Submitted May 3, 1994.
Decided June 8, 1994.

Appeal from the United States District Court for the Southern District of California, No. CV92-431-JSR (HRM); John S. Rhoades, District Judge, Presiding.

S.D.Cal.

VACATED AND REMANDED.

Before: BROWNING and FLETCHER, Circuit Judges, and FITZGERALD, [FN*] Senior District Judge.

MEMORANDUM [FN**]
**1 Jerry and Lonia Czajkowski appeal pro se the district court's order dismissing their action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we vacate and remand.

I.

We review de novo the district court's dismissal of the Czajkowski's action. *See Blake v. Dierdorff,* 856 F.2d 1365, 1368 (9th Cir.1988). We accept all material allegations in the complaint as true and resolve all doubts in favor of the plaintiff. *See id.* "Dismissal is appropriate only if the plaintiff 'can prove no set of facts in support of his claim which would entitle him to relief.' " *Klarfeld v. United States,* 944 F.2d 583, 585 (9th Cir.1991) (per curiam) (quoting *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S. 1054 (1987)). When a complaint is dismissed for failure to state a claim, the court should grant the plaintiff leave to amend " 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' " *Id.* (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986)).

A.

There is no dispute that the issues presented to the district court are governed by New York law since Harcourt was a New York corporation. *See Rogers v. Guaranty Trust Co.,* 288 U.S. 123, 130 (1933); *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1527 (9th Cir.1985) (stating that "[c]laims involving the 'internal affairs' of corporations ... are subject to the laws of the state of incorporation").

Under New York law, "[s]hareholders who do not assent to [a] merger have the right to receive payment for the 'fair value' of their shares.... The remedy available to those who have perfected their status as dissenting shareholders ... is to enforce this right through an appraisal proceeding." [FN1] *Cawley v. SCM Corp.,* 530 N.E.2d 1264, 1266 (N.Y.1988); *see* N.Y.Bus.Corp.Law § 623 (McKinney 1986); *Burke v. Jacoby,* 981 F.2d 1372, 1380 (2d Cir.1992), *cert. denied,* 113 S.Ct. 2338 (1993). Furthermore, under section 623(e), a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

dissenting shareholder "cease[s] to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under ... section [623]." N.Y.Bus.Corp.Law § 623(e).

Section 623 also provides:
The enforcement by a shareholder of his right to receive payment for his shares in the manner provided [in section 623] shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled ... except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him.
*Id.* § 623(k). As interpreted by New York courts, section 623(k) makes an appraisal proceeding a dissenting shareholder's exclusive remedy except in a narrow class of cases. *See Burke,* 981 F.2d at 1380; *Cawley,* 530 N.E.2d at 1267.

**\*\*2** The exception to the general rule requires the plaintiff to bring an "appropriate action" for equitable relief for unlawful or fraudulent corporate action. *Cawley,* 530 N.E.2d at 1267. Equitable relief must be the primary relief sought. *Walter J. Schloss Assocs. v. Arkwin Indus.,* 460 N.E.2d 1090, 1091 (N.Y.1984) (adopting dissenting opinion of Mangano, J., at Appellate Division as Court of Appeals opinion). "Money damages are only available, if at all, as ancillary or incidental to such equitable relief." *Id.*

Here, it is undisputed that the Czajkowskis were dissenting shareholders in the Harcourt Brace Jovanovich, Inc. ("HBJ") merger with General Cinema Corporation ("GCC"). Accordingly, the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding. *See,* N.Y.Bus.Corp.Law § 623(k). The Czajkowskis' attempt to avoid this result in two ways.

First, the Czajkowskis contend that the merger was in fact a liquidation of HBJ and, therefore, that they

were entitled to payment of a $13.50 per share liquidation preference. This contention lacks merit.

New York courts have not decided whether a "merger" is the equivalent of a "liquidation" requiring payment of the liquidation preference to preferred shareholders. However, in *Rauch v. RCA Corp.,* 861 F.2d 29 (2nd Cir.1988), the Second Circuit decided the issue under Delaware law. In *Rauch* the plaintiff, who owned preferred shares of RCA, was offered $40 a share pursuant to a merger agreement in which RCA was to be merged with a subsidiary of General Electric. She claimed that the merger constituted a "liquidation or dissolution or winding up of RCA" and that she was therefore entitled to $100 per share--the amount specified as the redemption or liquidation preference value of her preferred shares. The court rejected this argument. Quoting an earlier case, the court held it was

settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares.

*Id.* at 32 (quoting *Rothschild Int'l Corp. v. Liggett Group,* 474 A.2d 133, 136-37 (Del.1984)). In both *Rauch* and *Rothschild,* the courts held that owners of preferred stock were not entitled to the liquidation or redemption preference specified in their stock agreements (which was in both cases $100), because the merger of the corporations in which they owned stock did not constitute the liquidation of the corporations. *E.g., Rothschild,* 474 A.2d at 136 ("there was no 'liquidation' of Liggett within the well-defined meaning of that term ... [because] the reverse cash-out merger of Liggett did not accomplish a 'liquidation' of Liggett's assets."). The *Rauch* court noted that plaintiff could have sought an appraisal proceeding (Delaware Business Code has a provision similar to N.Y.Bus.Corp.Law § 623), but did not. *Rauch,* 861 F.2d at 32.

**\*\*3** Since the decisions in *Rauch* and *Rothschild*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)

Page 3

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

appear to turn upon interpretation of the contract term "liquidation" as included in the preferred share agreements, rather than on any specific or unique provision in Delaware law, there is little reason to suspect that New York courts would follow a different course.

Second, the Czajkowskis contend that their action falls within the "appropriate action" exception because they sought equitable relief for fraud. This contention also lacks merit.

To fall within the "appropriate action" exception, "[t]here must be a request for equitable relief which, in fact, must be the primary relief sought." *Walter J. Schloss Assocs.*, 460 N.E.2d at 1091. Even if equitable claims and claims for damages are brought in the alternative and are equally weighted, the claim is outside the "appropriate action" exception. *Staskus v. The Rawlplug Co., Inc.*, 1993 WL 212736 (S.D.N.Y. June 11, 1993) (holding appraisal is exclusive remedy where plaintiff sought both appraisal and rescission of merger, and expressed no preference for one or the other). Nor is the plaintiff permitted to merely request damages in another form. *Burke*, 981 F.2d at 1380. Here, the Czajkowskis' action is in essence a claim that they were not paid enough for their shares, it is a claim for damages, and therefore is foreclosed by *Schloss* unless it is recast as a claim for appraisal.

**B.**

The district court held that it lacked jurisdiction to hear an action seeking appraisal under the New York statute that required the suit be brought in the New York courts. We conclude, however, that the New York legislature may not divest the district court of diversity jurisdiction. The district court can appraise the shares applying the New York law. In a case repeatedly cited by appellants, the Eighth Circuit held that the venue provision of a New Jersey appraisal statute did not divest a federal court of diversity jurisdiction over an action for appraisal under New Jersey law. *Mullen v. Academy Life Ins. Co.*, 705 F.2d 971, 975 (8th Cir.1983). A federal district court reached the same conclusion with regard to the New York

appraisal statute at issue. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F.Supp. 380, 388 (S.D.N.Y.1981), *aff'd*, 675 F.2d 456 (2d Cir.1982). These cases apply a longstanding Supreme Court rule:

> Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

*Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1871); *accord Duchek v. Jacobi*, 646 F.2d 415 (9th Cir.1981) (rejecting argument that federal court lacked jurisdiction to enforce its judgment where controlling state statute required action to proceed in particular state court).

**\*\*4** The Czajkowskis make substantial allegations that the merger price of $0.75 per share may not have been the "fair value" to which the Czajkowskis were entitled under N.Y.Bus.Corp.Law § 623. While the Czajkowskis owned the stock, it allegedly traded for as much as $12.25 per share. Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law. *See Walter J. Schloss Assocs. v. Arkwin Indus., Inc.*, 455 N.Y.S.2d 844, 852 (N.Y.App.Div.1982) (Mangano, J., dissenting), *rev'd for reasons stated in dissenting opinion*, 460 N.E.2d 1090 (N.Y.1984).

We remand to allow the Czajkowskis leave to amend their complaint to seek appraisal under the New York Statute.

VACATED and REMANDED.

> FN* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

> FN** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3. The parties are familiar with the facts and we will not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)

Page 4

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

repeat them.

FN1. Appraisal is the exclusive remedy for common and preferred voting shares. N.Y.Bus.Corp.Law § 623(k); *In re Harwitz,* 80 N.Y.S.2d 570 (N.Y.Sup.Ct.1948). Because the Czajkowskis' preferred shares were voting shares, their remedy is appraisal.

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.)), Unpublished Disposition

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 5**

Westlaw.

176 F.3d 482 (Table)

Page 1

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.))
**Unpublished Disposition**

(Cite as: 176 F.3d 482, 1999 WL 282472 (9th Cir.(Cal.)))

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
Jerry CZAJKOWSKI; Lonia **Czajkowski**, Plaintiffs-Appellants,
v.
Peter JOVANOVICH; Harcourt Brace Jovanovich, Inc., Defendants-Appellees.
No. 98-55904.
D.C. No. CV-92-00431-RMB.

Submitted April 12, 1999 [FN2].

FN2. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). Accordingly, we deny appellants' request for oral argument.

Decided April 15, 1999.

Appeal from the United States District Court for the Southern District of California Rudi M. Brewster, District Judge, Presiding.

Before BRUNETTI, LEAVY, and THOMAS, Circuit Judges.

MEMORANDUM [FN1]

FN1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

**\*\*1** Jerry Czajkowski and Lonia Czajkowski ("plaintiffs"), former preferred shareholders of Harcourt Brace Jovanovich, Inc. ("HBJ"), appeal pro se the district court's grant of summary judgment for defendants in plaintiffs' diversity action alleging that HBJ breached a liquidation preference clause by failing to redeem plaintiffs' shares of HBJ preferred stock at the purported guaranteed redemption price of $13.50 per share when HBJ merged with General Cinema Corporation in 1991. Plaintiffs also appeal the district court's April 24, 1998 order denying their motion for reconsideration. We dismiss in part, and affirm in part.

We lack jurisdiction to review the district court's February 9, 1998 order granting summary judgment to defendants because plaintiffs did not file their notice of appeal until May 4, 1998, nearly three months after judgment was entered on February 10, 1998. *See* Fed. R.App. P. 4(a)(1)(A); *Atchison, Topeka & Santa Fe Ry. Co. v. California State Bd. of Equalization,* 102 F.3d 425, 427 (9th Cir.1996). Although plaintiffs sought reconsideration of the district court's summary judgment order, they did not file the motion until March 12, 1998, well beyond the ten-day period that would have tolled the time to file their notice of appeal from the summary judgment order. *See* Fed. R.App. P. 4(a)(1)(A). Accordingly, we dismiss this portion of plaintiffs' appeal for lack of appellate jurisdiction. *See California State Bd. of Equalization,* 102 F.3d at 427.

We do, however, have jurisdiction to review the district court's denial of plaintiffs' motion for reconsideration. We conclude that the district court did not abuse its discretion because plaintiffs essentially only sought to relitigate issues that were previously rejected by this court in *Czajkowski v. Jovanovich,* No. 92-55787, 1992 WL 247089, at \*1-4 (9th Cir. June 8, 1994), and plaintiffs have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

176 F.3d 482 (Table)

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 176 F.3d 482, 1999 WL 282472 (9th Cir.(Cal.)))**

failed to demonstrate a sufficient basis for relief under either Fed.R.Civ.P. 59(e) or 60(b). *See Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1441-42 (9th Cir.1991).

We reject plaintiffs' remaining contentions as being without merit.

We deny Appellees' request for judicial notice.

Appellees are entitled to recover their costs on appeal.

DISMISSED in part, and AFFIRMED in part.

•Jerry CZAJKOWSKI, Lonia Czajkowski, et al., Plaintiffs/Appellants, v. PETER JOVANOVICH, INC. and Harcourt Brace Jovanovich, Inc., Defendants/Appellees., 1998 WL 34106949 (Appellate Brief) (C.A.9 October 9, 1998), Defendants/Appellees Harcourt Brace Jovanovich, Inc. and Peter Jovanovich's Answering Brief

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.)), Unpublished Disposition

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JERRY CZAJKOWSKI,                    )
                                     )
                    Plaintiff,       )
                                     )
     v.                              )     No.  07 C 6971
                                     )
REED ELSEVIER, INC., et al.,         )
                                     )
                    Defendants.      )

MEMORANDUM OPINION AND ORDER

Jerry Czajkowski ("Czajkowski") has filed a pro se Complaint against Reed Elsevier, Inc. ("Reed Elsevier") and Does 1-20, purporting to invoke the diversity jurisdiction of this federal court.  Quite apart from the Complaint's noncompliance with fundamental principles of federal pleading (see, e.g, Fed. R. Civ. P. ("Rule") 8(a) and 8(c), with their mandates for brevity and simplicity),[1] this Court's unflagging obligation to look into subject matter jurisdiction in the first instance (see, e.g., Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986) and Cook v. Winfrey, 141 F.3d 322, 325 (7th Cir. 1998)), pursuant to its duty to "police subject matter jurisdiction sua sponte" (Wernsing v. Thompson, 423 F.3d 732, 743 (7th Cir. 2005)), compel the dismissal of the Complaint and this action for lack of subject matter jurisdiction.

Complaint ¶4 speaks in terms of Czajkowski's California residence rather than his state of citizenship, which under our

_____

[1]  That deficiency could of course be corrected, while the matters next dealt with in this memorandum opinion and order are noncurable.

Court of Appeals' directive in Held v. Held, 137 F.3d 998, 1000 (7th Cir. 1998) would call for dismissal. Again that flaw would seem most likely to be curable (because most individuals' state of citizenship coincides with their residence), so that this Court's practice is not to dismiss on that ground alone. But Czajkowski has added to that deficiency by failing to identify both states of Reed Elsevier's corporate citizenship under 28 U.S.C. §1332(c)(1)(see Complaint ¶5). And most significantly, Czajkowski's inclusion of the "Does" defendants, persons or entities of unknown identity and hence unknown citizenship (see Complaint ¶6), establishes conclusively that Czajkowski has not sustained his burden of demonstrating the existence of diversity jurisdiction (see, e.g., John Hancock Mut. Life Ins. Co. v. Central Nat'l Bank in Chicago, 555 F.Supp. 1026 (N.D. Ill. 1983)).

Accordingly both the Complaint and this action are dismissed for lack of subject matter jurisdiction. This dismissal is of course without prejudice to Czajkowski's possible institution of his action in a state court of competent jurisdiction. As suggested earlier, however, no ruling is intended or made here as to the viability or nonviability of Czajkowski's claims or as to the procedural deficiencies reflected in the present pleading.

_____
Milton I. Shadur
Senior United States District Judge

Date:   December 13, 2007

2

K

1  Jerry Czajkowski, Ph.D.,
   Lonia Czajkowski
2  7944 La Jolla Shores Dr.
   San Diego, CA 92037
3  (619) 459-7531
   IN PROPRIA PERSONA
4

5              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF CALIFORNIA
6

7                              CASE NO. 92-0431-B (AJB)

8  JERRY CZAJKOWSKI,                )
   LONIA CZAJKOWSKI,                )    REPLY TO THE OPPOSITION
9                                   )    TO THE MOTION FOR SUMMARY
                  Plaintiffs        )    JUDGEMENT, F.R.C.P. Rule 56(a)
10                                  )
                                    )
11       v.                         )
                                    )
12  PETER JOVANOVICH,               )
    HARCOURT BRACE JOVANOVICH, INC. )    DATE:       OCTOBER 27, 1997
13                                  )    TIME:       10:30 AM
                  Defendants        )    PLACE:      COURTROOM 2
14  _____)    HON. RUDI M. BREWSTER

15

16          Relationship Between Frequently Used Legal Terms:
17    *"Equitable Relief of the Maturity Value of the Preferred Bond-like Stock"*,
            *"Equitable Relief of Specific Performance"*,
18                 and *"Vested Property Rights"*

19       In the 1992 pleadings Plaintiffs in very simple terms were asking the District Court for ***"equitable
20  relief of the maturity value of the preferred bond-like stock"*** according with the terms of the breached **HBJ
    CONTRACT** (p.5/19-20 of the Motion for Summary Judgement, hereinafter MOTION).
21       In legalese Plaintiffs were asking for ***"equitable relief of specific performance"*** of said Contract (see
22  71 **Am.Jur.** 2d 10, and p.6/21-27 of the MOTION), which specifies the contractual obligation of redemption
    of the stock at $13.50 per share at any time or at its June 30, 2003 maturity. In legalese this contractual
23  redemption and value of the preferred bond-like stock (at any time or at its June 30, 2003 maturity) is a
24  ***"vested property right"***, which *"a corporation could not, through action by a majority of its stockholders
    deprive a minority preferred stockholder of this redemption right without his consent."* Weckler v. Valley
25  City 93 F.Supp.451.

26

27

28                                    -1-

# TABLE OF CONTENTS

Page

**Relationship Between Frequently Used Legal Terms:**
*"Equitable Relief of the Maturity Value of the Preferred Bond-like Stock",*
*"Equitable Relief of Specific Performance", and "Vested Property Rights"* . . . . . . . . . . . . 1

<u>ARGUMENTS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     Defendants' Entire Opposition Ignores Plaintiffs' Main Grounds for the Motion for
       Summary Judgement - the Miscarriage of Justice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    Defendants in Addition to Depriving Plaintiffs of Constitutional Protection of Due Process
       and Obligation of Contracts, Deny Plaintiffs Other Constitutional Right of "Equal
       Protection of the Laws". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   The Only "Material Fact(s)" to Plaintiffs' MOTION Are the District Court's Errors Which
       Have Lead to the Miscarriage of Justice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.    District Court's Erred Order of June 15, 1992 Does Not Constitute an "Harmless Error",
       and Justifies Setting Aside the Order Together with Court of Appeals' June 8, 1994
       Memorandum, and Granting the Motion for Summary Judgement. . . . . . . . . . . . . . . . . 4

V.     Typical Preferential Rights Are Extinguishable by the Vote of 2/3 of the Majority of the
       Stockholders, Whereas Vested Property Rights Are Not. . . . . . . . . . . . . . . . . . . . . . . . 5

VI.    Evidence of the Non-Movant Can Not Be Believed. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VII.   Neither District Court in the June 15, 1992 Order Nor the Appellate Court in the June 8,
       1994 Memorandum Had Considered Violation of Plaintiffs Vested Property Rights, and to
       This Fact Neither Did Issue Any Written Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VIII.  Should District Court Initiate an Appraisal Proceeding and Follow Appellate Court's
       Instruction to Consider Plaintiffs' Allegations of Breach of Fiduciary Duty and Fraud, It
       Would Discover Violation of Plaintiffs' Vested Property Rights and Would Have to Declare
       the Whole Proceeding Illegal and Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

IX.    "Specific Performance As Equitable Relief" Issue Was Not Previously Decided By The
       District Court Nor By The Appellate Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

X.     District Court's June 15, 1992 Order and Appellate Court's June 8, 1994 Memorandum
       "Decision(s) Were Clearly Erroneous and Would Work a Manifest Injustice". . . . . . . . . 8

XI.    District Court's May 15, 1995 Order Was Also Erred For The Appellate Court Could Not
       Reject Plaintiffs' Argument of Vested Property Rights by Implication, Because This
       Argument Was Non-Reviewable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

XII.   "Fair Value" of the HBJ Preferred Shares at the Time of the Merger Was Specified by the
       HBJ CONTRACT, i.e., Stock's Redemption Value Was Set to $13.50 per Share at Any Time
       Up To and Inclusive Its Maturity Date of June 30, 2003-2007. Hence Based Also on the
       Terms of HBJ CONTRACT There Are No Legal Basis for Conducting an "Appraisal
       Proceeding" to Determine Stock's "Fair Value" Which Has Been $13.50 per Share. . . . . 9

-2-

XIII.  "Liquidation Preference" Specified in the Corporation's Certificate of Incorporation Is Not a "Vested Property Right". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

XIV.  Appellate Court's June 8, 1994 Memorandum Was Based on Inapposite Authorities, in this Way Also Contributing to the Miscarriage of Justice. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CONCLUSION**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## ARGUMENTS

### I.

### Defendants' Entire Opposition Ignores Plaintiffs' Main Grounds for the Motion for Summary Judgement - the Miscarriage of Justice.

Defendants entire October 10, 1997 Opposition ignores Plaintiffs' arguments for the Motion for Summary Judgement - the Miscarriage of Justice. Instead Defendants' Opposition alleges that Plaintiffs' MOTION does not argue *"absence of genuine issue of material fact"*:

> *"Plaintiffs have failed to argue the absence of a genuine issue of material fact, as required by Rule 56(c.) of the Federal Rules of Civil Procedure."* (Opposition p.5/22-23)

Also on p.1/10-11 Defendants indicate:

> *"... because plaintiffs fail even to argue the absence of a genuine issue of material fact, Plaintiffs' motion should be denied"* (Opposition p.1/10-11).

These statements **are not correct** for Plaintiffs' MOTION is based on Miscarriage of Justice and it shows an *"absence of genuine issue of material fact"*.

Plaintiffs in Argument II on p.10 of the MOTION have shown that an "appraisal proceeding" is unconstitutional, and on the grounds of Miscarriage of Justice (Arguments I-III of the MOTION) Plaintiffs are entitled to the Summary Judgement as a matter of law.

Because an "appraisal proceeding" as to the Plaintiffs' case is illegal and unconstitutional, there is no *"genuine issue of material fact"* on which to go to trial, and per FRCP Rule 56(c.) this fact alone justifies granting the Motion for Summary Judgement.

### II.

### Defendants in Addition to Depriving Plaintiffs of Constitutional Protection of Due Process and Obligation of Contracts, Deny Plaintiffs Other Constitutional Right of "Equal Protection of the Laws".

Nowhere in the Defendants' Opposition to the Motion for Summary Judgement do they address the grounds for the MOTION - the Miscarriage of Justice. By ignoring this issue Defendants BY IMPLICATION

deny Plaintiffs the Constitutional protection of Amendment 14 of *"equal protection of the laws"*:

**U.S. Constitution, Amendment XIV, § 1:** *"... nor shall any State deprive any person of ... property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws.**"*

### III.

### The Only "Material Fact(s)" to Plaintiffs' MOTION Are the District Court's Errors Which Have Lead to the Miscarriage of Justice.

On p.2/20 of the Opposition Defendants state:

*"A material fact is any fact which may affect the outcome of the litigation. Mutual Fund Investors, Inc. v. Putnam Management Co., 553 F.2d 620, 624 (9th Cir. 1977)."* (p.2/20 of the Opposition).

To Plaintiffs' MOTION the only *"material fact(s)"* are the District Court's errors which lead to the complained of Miscarriage of Justice.

District Court's error to recognize in its June 15, 1992 Order Plaintiffs' request of equitable relief of specific performance opened the way to Defendants' violation of Plaintiffs' constitutional rights, such as: **vested property rights, due process, obligation of contracts and equal protection of the laws**. This *"material fact(s)"* constitutes sufficient legal basis for granting the Motion for Summary Judgement.

### IV.

### District Court's Erred Order of June 15, 1992 Does Not Constitute an "Harmless Error", and Justifies Setting Aside the Order Together with Court of Appeals' June 8, 1994 Memorandum, and Granting the Motion for Summary Judgement.

Plaintiffs in the Arguments I-III of their MOTION had shown that District Court's **errors** to consider and rule on Plaintiffs' claim of equitable relief of specific performance (i.e., violation of Plaintiffs' vested property rights) **do not** **constitute an "Harmless Error"** and per Calif. Constitution Art.6 § 13[1] and/or F.R.C.P. Rule 61[2] justify setting aside the June 15, 1992 Order together with Court of Appeals' June 8, 1994

---

[1] **CALIFORNIA CONSTITUTION ART. 6, JUDICIAL, § 13,** *"No judgment shall be set aside, ... in any cause, on the ground of ..., or for any error as to any matter of pleading, or for any error as to any matter of procedure, **unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a <u>miscarriage of justice</u>.**"*

[2] **FEDERAL RULES OF CIVIL PROCEDURE, Rule 61. Harmless Error.** *"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, **unless refusal to take such action appears to the court inconsistent with <u>substantial justice</u>**. The court at every stage of the proceeding must disregard any error or defect*

1   Memorandum and granting the Motion for Summary Judgement.

2

3                                              **V.**

**Typical Preferential Rights Are Extinguishable by the Vote of 2/3 of the Majority of the**
4                              **Stockholders, Whereas Vested Property Rights Are Not.**

5          It is well established by the case law that typical *"shareholders's preferential rights are subject to*
*defeasance"* by a merger or some other mechanism (see Arguments VI and XII, and <u>Rauch v. RCA Corp.</u>,
6   861 F.2d 29, 32 (2nd Cir. 1988)). However the contractual rights of investment securities such as BONDS
7   are **NOT**, for these securities possess vested property rights.

          The Plaintiffs have indicated and shown on many occasions that the HBJ preferred stock was a
8   BOND-LIKE stock possessing vested property rights - the maturity date and value ( see p.8/9 of the
9   MOTION), and as such is protected by the **U.S. Constitution Amendment 14 § 1, Article I § 10**, the U.S.
10  Supreme Court Rulings and other authorities (see p.2 of the MOTION). Therefore Defendants' claims such
11  as:

               *"... in a merger context, Plaintiffs have no vested property rights in their preferred shares ..."*
12             (p.4/27-28 of Opposition )

13  **are false, and contribute to the Miscarriage of Justice.**

14

15                                             **VI.**

16                         **Evidence of the Non-Movant Can Not Be Believed.**

17         On p.3/25-26 of the Opposition Defendants plead:

           *"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in*
18         *his favor."* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). (p.3/25-26 of the Opposition).

19         In response to this Plaintiffs allege that Defendants' evidence **can not be believed and all justifiable**
20  **inferences can not be drawn in their favor**. For example on p.4/24-28 of the Opposition Defendants write:

21         *'The Ninth Circuit has already rejected this argument (that an appraisal proceeding under New*
           *York law is unconstitutional because such a proceeding would destroy "Plaintiffs' vested property*
22         *rights without due process of law"). It held that, in a merger context, Plaintiffs have no vested*
           *property rights in their preferred shares:* "[W]here a merger of corporations is permitted by law,
23         *a shareholder's preferential rights are subject to defeasance..."* (quoting <u>Rauch v. RCA Corp.</u>, 861
           *F.2d 29, 32 (2nd Cir. 1988)' (p.4/27-28 of the Opposition)

24         **The above statement without any shadow of a doubt is one hundred percent (100%) FALSE,**
25  **because:**

26  _____

27  *in the proceeding which does not affect the substantial rights of the parties."*

28                                             -5-

**(1).**  Preferential rights of preferred stock **other than** the **vested property rights** are subject to change by a vote of 2/3 of stockholders (see **GROUNDS** Sections 1- 5 on p.2-3 of MOTION and specifically the case law of Weckler v. Valley City, 93 F.Supp.451, Coombes v. Getz, 285 US 434, 52 S.Ct.435 and Breslav v. New York & Queens Electric Light & Power Co., 291 NYS 932).

**(2).**  Appellate Court nowhere in its June 8, 1994 Memorandum addressed the issue of Plaintiffs' vested property rights, and specifically not via this statement: **"[W]here a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance..."** (quoting *Rauch v. RCA Corp., 861 F.2d 29, 32 (2nd Cir. 1988)* (p.4/27-28 of the Opposition) (for additional discussion see Arguments V, IX, XI, and XIV).

**(3).**  In Rauch v. RCA Corp., id., vested property right **was not** a preferential right of the RCA's preferred stock. There the RCA Corp's preferred stock **did not even have** vested property rights for it did not possess the maturity date, hence it was not vested. (For a definition of "vested property right" please see p.2, 4(b) of the MOTION).

In Rauch v. RCA Corp., id., on p.30 the certificate of incorporation states that RCA's preferred stock may be redeemed only at the company's will:

"*... Preferred Stock at any time outstanding may be redeemed by the Corporation, in whole or in part, at its election...*" Rauch v. RCA Corp., id.

Since in Rauch v. RCA Corp., id., the preferred stock had no maturity date, the stockholders had no vested property rights, and thus this authority is inapplicable to this case.

In contrast, Plaintiffs as the owners of HBJ preferred stock from the day of its acquisition possess vested property rights (because according to the **HBJ CONTRACT:** *"HBJ is required to redeem (preferred stock), on June 30, 2003, ... at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption"*).

Therefore, the only applicable authorities to this case are those where plaintiffs had vested property rights, specifically: Weckler v. Valley City, 93 F.Supp.444, Coombes v. Getz, 285 U.S.434 and Breslav v. New York & Queens Electric Light & Power Co., 291 NYS 932 (see **GROUNDS** Sections 1- 5 on p.2-3 of the MOTION).

## VII.

**Neither District Court in the June 15, 1992 Order Nor the Appellate Court in the June 8, 1994 Memorandum Had Considered Violation of Plaintiffs Vested Property Rights[3], and to This Fact**

---

[3]  ("*specific performance of the HBJ contract as equitable relief*")

**Neither Did Issue Any Written Opinion.**

On p.5/8-9 of the Opposition Defendants falsely claim that:

*"In each case, either this Court or the Ninth Circuit has specifically ruled against Plaintiffs' argument. ("specific performance of the HBJ contract as equitable relief")"* (p.5/8-9 of the Opposition).

A close review of the record done by the Plaintiffs in their MOTION shows that even though Plaintiffs did **"allege equitable relief that would bring them within the narrow exception of § 623(k)"**, the District Court erred and did not rule upon this issue because:

    **(1).**   *"Plaintiffs cite no authority to explain how this claim for money can be viewed as an equitable claim"* (p.4/12-14 June 15, 1992 Order), and p.6/3 of the MOTION.

    **(2).**   *"Walter J. Schloss requires that a plaintiff request equitable relief to state a cause of action."*(p.5/7-8 June 15, 1992 Order), and p.6/5 of MOTION.

    **(3).**   the Court decided that: "YOU (Plaintiffs) HAVE ASKED FOR **LEGAL RELIEF**[4]. YOU HAVEN'T ASKED FOR EQUITABLE RELIEF."(RT 4/9-13), and p.9/22-24 of the MOTION.

Because **THE CLAIM** of **specific performance of the Contract (as equitable relief)** was omitted by the District Court (the Court concluded that Plaintiffs did not request **equitable relief** but a "**legal relief**"[4], RT 4/9-13), and was not adjudicated by the District Court[5], the Court of Appeals could not review **THE CLAIM** of violation by Defendants of Plaintiffs' **vested property rights** (the contractual obligation of June 30, 2003 maturity and redemption of the stock). The Court of Appeals could only vacate the June 15, 1992 Order, allowing Plaintiffs to seek an appraisal in the District Court[6], **and issue an instruction to the District Court:**

*"Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law."* (p.6 of June 8, 1994 Memorandum, Exh. A).

This is a direct consequence of the Court of Appeals Rules, specifically RULE 28-2.5:

**RULE 28-2.5. REVIEWABILITY AND STANDARD OF REVIEW.**
*"As to each issue, appellant shall state where in the record on appeal the issue **was raised and ruled**

---

[4]

"THE COURT: ... YOU HAVE ASKED FOR **LEGAL RELIEF**. YOU HAVEN'T ASKED FOR EQUITABLE RELIEF. AND JUST BY PUTTING A TAG ON IT OR NAME ON IT CALLING IT EQUITABLE RELIEF DOESN'T MAKE IT EQUITABLE RELIEF. YOU CAN'T MAKE A COW INTO A HORSE BY CALLING A COW A HORSE. AND WHAT YOU HAVE DONE HERE IS REALLY **LEGAL RELIEF**. "(RT 4/9-13).

[5]

(because *"Walter J. Schloss requires that a plaintiff request equitable relief to state a cause of action."*, p.5/7-8 June 15, 1992 Order)

[6]

(Instead of *"Appraisal in New York ... "* p.5/1-2 June 15, 1992 Order)

-7-

*on and identify the applicable standard of review".*

According to the Court of Appeals Rules, RULE 28-2.5, the only arguments which can be reviewed by the Appellate Court are those which the District Court ruled on. Therefore any additional issues raised by Plaintiffs on appeal (such as vested property rights) **were deemed moot** by the Court of Appeals.

## VIII.
### Should District Court Initiate an Appraisal Proceeding and Follow Appellate Court's Instruction to Consider Plaintiffs' Allegations of Breach of Fiduciary Duty and Fraud, It Would Discover Violation of Plaintiffs' Vested Property Rights and Would Have to Declare the Whole Proceeding Illegal and Unconstitutional.

The Court of Appeals on p.6 of its June 8, 1994 Memorandum (Exh. A) issued an instruction to the District Court:

*"Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law."* (p.6 of June 8, 1994 Memorandum, Exh. A).

Should District Court initiate an appraisal proceeding and choose to follow the above Appellate Court's instruction to consider in the proceeding Plaintiffs' allegations of breach of fiduciary duty and fraud, then it would discover violation of Plaintiffs' vested property rights, and if the Court finds for the Plaintiffs, it would have to declare the whole proceeding illegal and unconstitutional (because *"Statutory remedy of appraisal of dissenting stockholder's stock ...does not apply where... vested property right is destroyed"* (Breslav v. New York & Queens Electric Light & Power Co., 291 NYS 932).

Granting of the MOTION now, will preclude this scenario from happening, correcting and ending the Miscarriage of Justice without exposing the Plaintiffs to additional Miscarriage of Justice resulting from participation in the unconstitutional appraisal proceeding.

## IX.
### "Specific Performance As Equitable Relief" Issue Was Not Previously Decided By The District Court Nor By The Appellate Court.

On p.5/18 of the Opposition Defendants falsely write:

*"The law of the case precludes this Court from re-examining the **"Specific performance as equitable relief"** issue previously decided not only by this Court but by the Ninth Circuit as well."* (p.5/18 of the Opposition)

As has been shown in the Plaintiffs Motion for Summary Judgement (e.g., p.6/7-13) and in Argument VII., supra, the **issue of "Specific performance as equitable relief" was neglected** and not ruled on by the District Court in 1992, and was barred from review by the Appellate Court by the RULE 28-2.5, REVIEWABILITY AND STANDARD OF REVIEW, and this error of **neglect** constitutes the complained of

1    Miscarriage of Justice.

2                                         **X.**
        **District Court's June 15, 1992 Order and Appellate Court's June 8, 1994 Memorandum**
3              **"Decision(s) Were Clearly Erroneous and Would Work a Manifest Injustice".**

4           On p.4/1-10 of the Opposition Defendants claim that:

5           *"The law of the case doctrine precludes a court from re-examining issues previously decided by the*
         *same court, or a higher appellate court, in the same case ... **unless ... the decision was clearly***
6        ***erroneous and would work a manifest injustice**." Moore v. Jas. H. Matthews & Co., 682 F.2d 830,*
         *834 (9th Cir. 1982) (quoting White v. Murtha, 377 F.2d 428, 431-32 (5th Cir. 1967)).*

7           This statement of the law of the Case Doctrine would be applicable if Plaintiffs' issue of vested

8    property rights was previously decided by the District Court and/or Appellate Court, which, as it has been

9    shown, was **NOT** (see Arguments VI and VII, supra).

10          Since this issue was not decided by the District Court or Appellate Court (see also other Arguments

11   IX and XI), the law of the Case Doctrine has no application, and even if it had, there exists an exception to

12   the Doctrine as presented above, namely the Miscarriage of Justice (**"... unless ... the decision was clearly**

     **erroneous and would work a manifest injustice."** quoting *White v. Murtha, id.*).

13                                        **XI.**
     **District Court's May 15, 1995 Order Was Also Erred For The Appellate Court Could Not Reject**
14   **Plaintiffs' Argument of Vested Property Rights by Implication, Because This Argument Was Non-**
                                      **Reviewable.**
15

16          Defendants on p.5/13-14 of the Opposition quoting District Court's May 15, 1995 Order, argue:

17          *"This Court concluded that, [t]he same argument[7] was before the Appellate Court and ... the*
         *Appellate Court rejected the argument by implication."* (p.5/13-14 of the Opposition).

18          As was shown in Arguments VI, VII and IX, the District Court did not recognize this issue [7] and did

19   not rule on it. Therefore, according to Court of Appeals Rules, RULE 28-2.5, REVIEWABILITY AND

20   STANDARD OF REVIEW, the Appellate Court was barred from reviewing the issue which was not ruled on

21   by the District Court, i.e., there can be no ruling by the reviewing Court (by implication or by any other

     means) on an issue that does not exist in the record or was not ruled on (**RULE 28-2.5.** ... *appellant shall*

22   *state where in the record on appeal the issue **was raised and ruled on**).*

23          This conclusion shows that the District Court's May 15, 1995 Order was erroneous and also

24   constitutes Miscarriage of Justice **as it promulgates 1992 District Court's errors and resulting injustice.**

25                                        **XII.**
         **"Fair Value" of the HBJ Preferred Shares at the Time of the Merger Was Specified by the HBJ**
26

27          [7]   *"specific performance as equitable relief".*

28                                         -9-

CONTRACT [8], i.e., Stock's Redemption Value Was Set to $13.50 per Share at Any Time Up To and Inclusive Its Maturity Date of June 30, 2003-2007. Hence Based Also on the Terms of HBJ CONTRACT There Are No Legal Basis for Conducting an "Appraisal Proceeding" to Determine Stock's "Fair Value" Which Has Been $13.50 per Share.

On p.3/5-6 of the Opposition Defendants write:

> *"There is only one factual issue in this proceeding: what was the fair value of Plaintiffs' preferred shares of HBJ stock at the time of the merger ?"* (p.3/5-6 of the Opposition)

An answer to this question provides the HBJ CONTRACT [8] itself, which states:

> *"**HBJ may**, at its option, redeem shares of HBJ Preferred Stock **in whole at any time, or from time to time in part, at a redemption price equal to the $13.50 per share** ... plus accrued and unpaid dividends, if any, to the date fixed for redemption. **HBJ is required to redeem, on June 30, 2003, ... at the redemption price of $13.50 per share,** plus accrued and unpaid dividends, if any, to the date of redemption".*

Since the *"Fair Value"* of the HBJ preferred shares at the time of the merger (or ***at any time***) was specified by the HBJ CONTRACT (i.e., $13.50 per share), **there is no** *"genuine issue of material fact"* as to the *"Fair Value"* and hence **there are no legal basis** for conducting an *"appraisal proceeding"*. Therefore the Motion for Summary Judgement must be granted.

### XIII.

### "Liquidation Preference" Specified in the Corporation's Certificate of Incorporation Is Not a "Vested Property Right".

The fact that "liquidation preference" specified in the Corporation's Certificate of Incorporation is not a "vested property right" and hence can be extinguished by a merger (or a vote of 2/3 of the majority stockholders) is the case law (see Arguments VI and XIV) and does not need any additional argumentation.

However, as the authorities of <u>Weckler v. Valley City</u>,[9] 93 F.Supp.444, <u>Coombes v. Getz</u>, 285

---

[8]

**HBJ CONTRACT**: *"HBJ may, at its option, redeem shares of HBJ Preferred Stock in whole at any time, or from time to time in part, at a redemption price equal to the $13.50 per share liquidation preference plus accrued and unpaid dividends, if any, to the date fixed for redemption. HBJ is required to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption".* (**pre 11/23/91 merger** HBJ Joint Proxy Statement dated 10-25-91, p.133).

[9]

*"<u>The right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a vested property right</u> of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent."* <u>Weckler v. Valley City</u> 93 F.Supp.451.

-10-

U.S.434 and <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932 show (for full quotations see p.2 of the MOTION), any stock with a **maturity date** is a **bond-like** stock possessing vested property rights which **can not be extinguished by a merger or a vote of 2/3 of the majority stockholders**, and the *"Statutory remedy of appraisal of dissenting stockholder's stock ...**does not apply where**... vested property right is destroyed"* (<u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932).

For these reasons and because HBJ stock was a vested bond-like stock, an appraisal proceeding pending in the District Court will be illegal and unconstitutional and adds to the furtherance of the Miscarriage of Justice (see also Argument II, p.10 of the MOTION).

**XIV.**

**Appellate Court's June 8, 1994 Memorandum Was Based on Inapposite Authorities, in this Way Also Contributing to the Miscarriage of Justice.**

On p.5/3 of the Opposition, Defendants indicated that Appellate Court relied on <u>Rauch v. RCA Corp.</u>, id., (see also Argument VI) in reaching one of its conclusions regarding vested property rights. **In reality this conclusion was <u>NOT</u> about vested property rights BUT about the issue of** *"liquidation preference"* (Exh.A, p.4):

> *"In both <u>Rauch</u> and <u>Rothschild</u>, the courts held that owners of preferred stock were not entitled to the* **liquidation** *...* **preference** *specified in their stock agreements (which was in both cases $100), because the merger of the corporations in which they owned the stock did not constitute the liquidation of the corporations."* (p.4 of June 8, 1994 Memorandum, Exh.A.)

For comparison the *"liquidation preference"* clause of the HBJ CONTRACT [8] states:

> *"In the event of any liquidation, dissolution or winding-up of HBJ, HBJ Preferred Stock has a* **liquidation preference** *of $13.50 (per share), plus any accrued and unpaid dividends to the liquidation date".* (p.134 of HBJ Joint Proxy Statement dated Oct.25, 1991)

The Appellate Court in its June 8, 1994 Memorandum did not notice nor make any distinction between the preferred stockholders who possess vested property rights and those who do not, and the fact that legal rights of preferred stockholders of different companies are not the same. To this effect the authority of <u>Rothschild Int'l Corp. v. Liggett Group</u> 474 A.2d on p.134 informs:

> *"**Preferential rights of a shareholder** are <u>contractual in nature</u> and therefore are governed by <u>express provisions</u> of a company's <u>certificate of incorporation</u>."* <u>Rothschild Int'l Corp. v. Liggett Group</u> 474 A.2d 134.

In the HBJ case the Appellate Court **mistakenly** treated Plaintiffs as stockholders without any vested property rights and based its June 8 Memorandum on many inapposite authorities, such as: <u>Rauch v. RCA Corp.</u>, 861 F.2d 29 and <u>Rothschild Int'l Corp. v. Liggett Group</u>, 474 A.2d 133.

Both of these cases deal with preferred stockholders whose preferred stock <u>was not</u> <u>redeemable</u> at any fixed date (**was not a bond-like stock**), i.e., it <u>had no</u> maturity date, and hence the stockholders <u>had no</u>

vested property rights. Whereas HBJ preferred stock <u>was redeemable</u> on June 30, 2003, i.e., <u>it had a maturity date, and hence Plaintiffs possessed vested property rights</u>.

The authority of <u>Rothschild Int'l Corp. v. Liggett Group</u> on p.136 **clearly** indicates that Liggett's preferred stock **could not be redeemed**:

> *"The certificate (of incorporation) also provided that its 7% Cumulative Preferred stock **could not be redeemed**..."* <u>Rothschild Int'l Corp. v. Liggett Group</u>, id.

and the authority of <u>Rauch v. RCA Corp.</u>, on p.30 similarly states that RCA's preferred stock may be redeemed **only at the company's will**:

> *"... Preferred Stock at any time outstanding may be redeemed by the Corporation, in whole or in part, **at its election**..."* <u>Rauch v. RCA Corp.</u>, id.

In comparison to <u>RCA</u> and <u>Liggett</u>, supra, the HBJ Certificate of Incorporation (the HBJ CONTRACT), demands of HBJ something completely different, namely, **the redemption of its preferred stock on June 30, 2003**. <u>Without this provision and promise Plaintiffs would never had purchased HBJ preferred stock</u>.

> *"<u>**HBJ is required to redeem, on June 30, 2003**</u>, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption".* (p.133 of HBJ Joint Proxy Statement, Oct.25, 1991)

Therefore, Plaintiffs as owners of the HBJ preferred stock from the day of its acquisition possess vested property rights, and the only applicable authorities to this case are those where plaintiffs had vested property rights, specifically, <u>Weckler v. Valley City</u>, 93 F.Supp.444, <u>Coombes v. Getz</u>, 285 U.S.434 and <u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932.

Unfortunately, these authorities the Appellate Court could not review or consider (see Arguments VII, IX and XI). However, in recognition of existence of Plaintiffs' **vested property rights** (*the breach of fiduciary duty and fraud causes of action*), the Appellate Court closed its review with a favorable to the Plaintiffs instruction for the District Court (see also Argument VIII):

> *"Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law."* (p.6 of June 8, 1994 Memorandum, Exh. A).

Appellate Court's reliance on inapposite authorities (dealing exclusively with one of the preferential rights of the preferred stock - its *"liquidation preference"*) proves and shows that the Appellate Court could not concern itself with Plaintiffs' vested property rights which were not adjudicated by the District Court in the June 15, 1992 Order.

In effect, the Appellate Court with its June 8, 1994 Memorandum contributed to the progression of Miscarriage of Justice.

1

## **CONCLUSION**

2

3       For all the reasons stated, Defendants' Opposition has no merit, and Plaintiffs' Motion for Summary
Judgement with its **prayer of equitable relief of specific performance of the HBJ Contract** must be
4     granted.

5

DATED: October *20*, 1997
6

7     Respectfully submitted,

8

9                    _J. Czajkowski,_

                Jerry Czajkowski and Lonia Czajkowski, Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    -13-

1

## CONCLUSION

2

3          For all the reasons stated, Defendants' Opposition has no merit, and Plaintiffs' Motion for Summary
Judgement with its **prayer of equitable relief of specific performance of the HBJ Contract** must be
4     granted.

5

DATED: October 20, 1997
6

7     Respectfully submitted,

8

9

Jerry Czajkowski and Lonia Czajkowski, Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

JUN ⁓ 1994

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| JERRY CZAJKOWSKI; LONIA CZAJKOWSKI, | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| PETER JOVANOVICH; HARCOURT BRACE, JOVANOVICH, INC., | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |

No. 9 255787
D.C. No. CV92-431-JSR(HRM)

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
John S. Rhoades, District Judge, Presiding

Argued and Submitted May 3, 1994
Pasadena, California

Before: BROWNING and FLETCHER, Circuit Judges, and FITZGERALD,** Senior District Judge.

Jerry and Lonia Czajkowski appeal pro se the district court's order dismissing their action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we vacate and remand.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3. The parties are familiar with the facts and we will not repeat them.

** The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

EXH. A

I.

We review de novo the district court's dismissal of the Czajkowskis' action. See Blake v. Dierdorff, 856 F.2d 1365, 1368 (9th Cir. 1988). We accept all material allegations in the complaint as true and resolve all doubts in favor of the plaintiff. See id. "Dismissal is appropriate only if the plaintiff 'can prove no set of facts in support of his claim which would entitle him to relief.'" Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991) (per curiam) (quoting Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986), cert. denied, 479 U.S. 1054 (1987)). When a complaint is dismissed for failure to state a claim, the court should grant the plaintiff leave to amend "'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" Id. (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

A.

There is no dispute that the issues presented to the district court are governed by New York law since Harcourt was a New York corporation. See Rogers v. Guaranty Trust Co., 288 U.S. 123, 130 (1933); Davis & Cox v. Summa Corp., 751 F.2d 1507, 1527 (9th Cir. 1985) (stating that "[c]laims involving the 'internal affairs' of corporations . . . are subject to the laws of the state of incorporation").

Under New York law, "[s]hareholders who do not assent to [a] merger have the right to receive payment for the 'fair value' of their shares. . . . The remedy available to those who have perfected their status as dissenting shareholders . . . is to enforce this right through an appraisal proceeding."[1] Cawley v. SCM Corp., 530 N.E.2d 1264, 1266 (N.Y. 1988); see N.Y. Bus. Corp. Law § 623 (McKinney 1986); Burke v. Jacoby, 981 F.2d 1372, 1380 (2d Cir. 1992), cert. denied, 113 S.Ct. 2338 (1993). Furthermore, under section 623(e), a dissenting shareholder "cease[s] to

---

[1]     Appraisal is the exclusive remedy for common and preferred voting shares. N.Y. Bus. Corp. Law § 623(k); In re Harwitz, 80 N.Y.S. 2d 570 (N.Y. Sup. Ct. 1948). Because the Czajkowskis' preferred shares were voting shares, their remedy is appraisal.

have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under . . . section [623]." N.Y. Bus. Corp. Law § 623(e).

Section 623 also provides:

> The enforcement by a shareholder of his right to receive payment for his shares in the manner provided [in section 623] shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled . . . except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him.

Id. § 623(k). As interpreted by New York courts, section 623(k) makes an appraisal proceeding a dissenting shareholder's exclusive remedy except in a narrow class of cases. See Burke, 981 F.2d at 1380; Cawley, 530 N.E.2d at 1267.

The exception to the general rule requires the plaintiff to bring an "appropriate action" for equitable relief for unlawful or fraudulent corporate action. Cawley, 530 N.E.2d at 1267. Equitable relief must be the primary relief sought. Walter J. Schloss Assocs. v. Arkwin Indus., 460 N.E.2d 1090, 1091 (N.Y. 1984) (adopting dissenting opinion of Mangano, J., at Appellate Division as Court of Appeals opinion). "Money damages are only available, if at all, as ancillary or incidental to such equitable relief." Id.

Here, it is undisputed that the Czajkowskis were dissenting shareholders in the Harcourt Brace Jovanovich, Inc. ("HBJ") merger with General Cinema Corporation ("GCC"). Accordingly, the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding. See, N.Y. Bus. Corp. Law § 623(k). The Czajkowskis' attempt to avoid this result in two ways.

3

First, the Czajkowskis contend that the merger was in fact a liquidation of HBJ and, therefore, that they were entitled to payment of a $13.50 per share liquidation preference. This contention lacks merit.

New York courts have not decided whether a "merger" is the equivalent of a "liquidation" requiring payment of the liquidation preference to preferred shareholders. However, in <u>Rauch v. RCA Corp.</u>, 861 F.2d 29 (2nd Cir. 1988), the Second Circuit decided the issue under Delaware law. In <u>Rauch</u> the plaintiff, who owned preferred shares of RCA, was offered $40 a share pursuant to a merger agreement in which RCA was to be merged with a subsidiary of General Electric. She claimed that the merger constituted a "liquidation or dissolution or winding up of RCA" and that she was therefore entitled to $100 per share - the amount specified as the redemption or liquidation preference value of her preferred shares. The court rejected this argument. Quoting an earlier case, the court held it was

> settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares.

<u>Id.</u> at 32 (quoting <u>Rothschild Int'l Corp. v. Liggett Group</u>, 474 A.2d 133, 136-37 (Del. 1984)). In both <u>Rauch</u> and <u>Rothschild</u>, the courts held that owners of preferred stock were not entitled to the liquidation or redemption preference specified in their stock agreements (which was in both cases $100), because the merger of the corporations in which they owned stock did not constitute the liquidation of the corporations. <u>E.g.</u>, <u>Rothschild</u>, 474 A.2d at 136 ("there was no 'liquidation' of Liggett within the well-defined meaning of that term . . . [because] the reverse cash-out merger of Liggett did not accomplish a 'liquidation' of Liggett's assets."). The <u>Rauch</u> court noted that plaintiff

4

could have sought an appraisal proceeding (Delaware Business Code has a provision similar to N.Y. Bus. Corp. Law § 623), but did not. <u>Rauch</u>, 861 F.2d at 32.

Since the decisions in <u>Rauch</u> and <u>Rothschild</u> appear to turn upon interpretation of the contract term "liquidation" as included in the preferred share agreements, rather than on any specific or unique provision in Delaware law, there is little reason to suspect that New York courts would follow a different course.

Second, the Czajkowskis contend that their action falls within the "appropriate action" exception because they sought equitable relief for fraud. This contention also lacks merit.

To fall within the "appropriate action" exception, "[t]here must be a request for equitable relief which, in fact, must be the primary relief sought." <u>Walter J. Schloss Assocs.</u>, 460 N.E.2d at 1091. Even if equitable claims and claims for damages are brought in the alternative and are equally weighted, the claim is outside the "appropriate action" exception. <u>Staskus v. The Rawlplug Co., Inc.</u>, 1993 WL 212736 (S.D.N.Y. June 11, 1993) (holding appraisal is exclusive remedy where plaintiff sought both appraisal and rescission of merger, and expressed no preference for one or the other). Nor is the plaintiff permitted to merely request damages in another form. <u>Burke</u>, 981 F.2d at 1380. Here, the Czajkowskis' action is in essence a claim that they were not paid enough for their shares, it is a claim for damages, and therefore is foreclosed by <u>Schloss</u> unless it is recast as a claim for appraisal.


B.

The district court held that it lacked jurisdiction to hear an action seeking appraisal under the New York statute that required the suit be brought in the New York courts. We conclude, however,

5

that the New York legislature may not divest the district court of diversity jurisdiction. The district court can appraise the shares applying the New York law. In a case repeatedly cited by appellants, the Eighth Circuit held that the venue provision of a New Jersey appraisal statute did not divest a federal court of diversity jurisdiction over an action for appraisal under New Jersey law. Mullen v. Academy Life Ins. Co., 705 F.2d 971, 975 (8th Cir. 1983). A federal district court reached the same conclusion with regard to the New York appraisal statute at issue. TBK Partners, Ltd. v. Western Union Corp., 517 F.Supp. 380, 388 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982). These cases apply a longstanding Supreme Court rule:

> Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

Railway Co. v. Whitton's Administrator, 80 U.S. (13 Wall.) 270, 286 (1871); accord Duchek v. Jacobi, 646 F.2d 415 (9th Cir. 1981) (rejecting argument that federal court lacked jurisdiction to enforce its judgment where controlling state statute required action to proceed in particular state court).

The Czajkowskis make substantial allegations that the merger price of $0.75 per share may not have been the "fair value" to which the Czajkowskis were entitled under N.Y. Bus. Corp. Law § 623. While the Czajkowskis owned the stock, it allegedly traded for as much as $12.25 per share. Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law. See Walter J. Schloss Assocs. v. Arkwin Indus., Inc., 455 N.Y.S.2d 844, 852 (N.Y. App. Div. 1982) (Mangano, J., dissenting), rev'd for reasons stated in dissenting opinion, 460 N.E.2d 1090 (N.Y. 1984).

6

We remand to allow the Czajkowskis leave to amend their complaint to seek appraisal under the New York Statute.

**VACATED and REMANDED.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

CASE NO. **92-0431-RB(AJB)**

JERRY CZAJKOWSKI,
LONIA CZAJKOWSKI,
           Plaintiffs

     v.

PETER JOVANOVICH,
HARCOURT BRACE JOVANOVICH, INC.
           Defendants

)
)
)
)
)
)
)
)
)
)
)

**PROOF OF SERVICE**

Person(s) Served:

K. W. HOFFMAN, Esq,
VOJISLAV PEJIC,
RICHARD C.ZEIGLER.

Date Served: Oct. 20, 1997

I, the undersigned declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; That I served the above named person(s) the following document(s):

**REPLY TO THE OPPOSITION TO THE MOTION FOR SUMMARY JUDGEMENT, F.R.C.P. Rule 56(a).**

by placing a copy in a separate envelope, with postage fully prepaid, for each address named below and depositing each in the U.S. mail at San Diego, California on  10/20, 1997.

K. W. HOFFMAN, Esq.
LATHAM & WATKINS
701 "B" Street, Suite 2100
SAN DIEGO, CA 92101

VOJISLAV PEJIC
POBOX: 9485
N.HOLLYWOOD
CA 91609

RICHARD C.ZEIGLER
1418 185TH NE
BELLEVUE
WA 98008

Executed on Oct. 20 , 1997, at San Diego, California.

_____
E.Czajkowski

L

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on January 2, 2008.

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

PR 30 31 '90;

State of New York  Department of Taxation and Finance  Corporation Tax
Albany, New York 12227

SECRETARY OF STATE

Date  10/4/94

Name of Corporation:

HARCOURT BRACE JOVANOVICH, INC.

ID# 13-1935377  AA9

Pursuant to provisions of Section    907    of the Business Corporation Law, the State Tax Commissioner
hereby consents to the   Merger
of the above named corporation,  into HARCOURT BRACE & COMPANY (DE) - No ID# - If filed on or
before 1/4/95.

Certificate and fee are attached.

Filed by    CT Corp.

Director, Processing Division
By

**CT-07**

CERTIFICATE OF MERGER

OF

HARCOURT BRACE JOVANOVICH, INC.
and HARCOURT BRACE & COMPANY

INTO

HARCOURT BRACE & COMPANY

Under Section 907 of the Business Corporation Law

We, the undersigned, Eric P. Geller and Robert A. Licht, being respectively the Vice President and Assistant Secretary of Harcourt Brace Jovanovich, Inc. and Harcourt Brace & Company hereby certify:

1. (a)　　The name of each constituent corporation is as follows:

　　　　Harcourt Brace Jovanovich, Inc. and Harcourt Brace & Company.

　　(b)　　The name of the surviving corporation is Harcourt Brace & Company.

2.　　As to each constituent corporation, the designation and number of outstanding shares of each class and the voting rights thereof are as follows:

| Name of Corporation | Number of shares outstanding | Class of shares entitled to vote | Shares entitled to vote as a class |
|---|---|---|---|
| Harcourt Brace Jovanovich, Inc. | 1,000 | Common | 1,000 Common |
| Harcourt Brace & Company | 1,000 | Common | 1,000 Common |

2

RECEIVED
DEPARTMENT OF
TAXATION AND FINANCE
JAN 2 2 1995
CORPORATION TAX
DISSOLUTION

RECEIVED
DEPARTMENT OF
TAXATION AND FINANCE
AUG 3 0 1993
CORPORATION TAX
DISSOLUTION

RECEIVED
DEPARTMENT OF
TAXATION AND FINANCE
SEP 1 3 1994
CORPORATION TAX
DISSOLUTION

3.    The merger was adopted by Harcourt Brace Jovanovich, Inc., the constituent New York domestic corporation, by the unanimous written consent of its sole shareholder.

4.    The merger is permitted by the laws of the jurisdiction of Harcourt Brace & Company, the constituent foreign corporation, and is in compliance therewith.  Harcourt Brace & Company, the constituent foreign corporation, has complied with the applicable provisions of the laws of the State of Delaware under which it is incorporated, and this merger is permitted under such laws.

5.    The surviving corporation is Harcourt Brace & Company, a corporation of the State of Delaware, incorporated on the 23rd day of January, 1993.  Harcourt Brace & Company filed its Application for Authority in New York on January 28, 1993.

6.    The date when the certificate of incorporation of Harcourt Brace Jovanovich, Inc. was filed by the Department of State was the 29th day of July 1919 under the name HARCOURT, BRACE AND HOWE, INC.

7.    Harcourt Brace & Company agrees that it may be served with process in the State of New York in any action or special proceeding for the enforcement of any liability or obligation of any constituent corporation, previously amenable to suit in the State of New York, and for the enforcement under the Business Corporation Law, of the right of shareholders of any constituent domestic corporation to receive payment for their shares against the surviving corporation; and it designates the Secretary of State of New York as its agent upon whom process may be served in the manner set forth in paragraph (b) of section 306 of the Business Corporation Law, in any action or special proceeding.  The post office address to which the Secretary of State shall mail a copy of any process against it served upon him is 27 Boylston

3

Street, Chestnut Hill, Massachusetts 02167. Such post office address shall supersede any prior address designated as the address to which process shall be mailed.

8.    Harcourt Brace & Company agrees that, subject to the provision of section 623 of the Business Corporation Law, it will promptly pay to the shareholders of each constituent New York corporation the amount, if any, to which they shall be entitled under the provisions of the Business Corporation Law, relating to the right of shareholders to receive payment for their shares.

9.    The merger shall be effective upon filing.

IN WITNESS WHEREOF, we have signed this certificate on the __9th__ day of September 199 4 and we affirm the statements contained therein as true under penalties of perjury.


HARCOURT BRACE & COMPANY

By _____        By _____
Robert A. Licht, Assistant Secretary        Eric P. Geller, Vice President


HARCOURT BRACE JOVANOVICH, INC

By _____        By _____
Robert A. Licht, Assistant Secretary        Eric P. Geller, Vice President


4

941012000452

JT-07

CERTIFICATE OF MERGER

OF

HARCOURT BRACE JOVANOVICH, INC.
and HARCOURT BRACE & COMPANY
INTO

HARCOURT BRACE & COMPANY

UNDER SECTION 907 OF THE
BUSINESS CORPORATION LAW

Eric P. Geller, Esq.
General Cinema Corporation
27 Boylston Street
Newton-Chestnut Hill, MA 02167

OCT 12 1994

BH 15

FILED

941012000478