Jerry Czajkowski, Ph.D., in Pro Se
6370 Streamview Dr
San Diego, CA 92115
619-287-2944

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CZAJKOWSKI, Ph.D., an individual, | Case No.: 07 CV 2383 JM (LSP) |
| Plaintiff, | **Opposition To the Motion To Dismiss, and Answering Memorandum of Points and Authorities.** |
| vs. | |
| REED ELSEVIER, INC., a Massachusetts Cor- | Date: February 8, 2008 |
| poration, | Time: 13:30 |
| | Courtroom: 16 |
| Defendant | Honorable Jeffrey T. Miller |

## PREAMBLE

*"It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought."* USA v Northrop Corp, 9th Circuit, No. 96-55349

1.      In *Romano v. Rockwell, Inc.* (1996) 14 Cal.4th 479, the California Supreme Court made it clear that *"a cause of action for breach of contract does not accrue before the time of breach"*. Ignoring the Contract Law, the New York Business Corporation Law (NY BCL) §623(j), §514(a)(b), §906(b)(3) and the United States Constitution Article I, §10, Amendment XIV, §1, (there is no reference to these statutes in the Motion to Dismiss), the Defendant attempts to dismiss Plaintiff's 12/19/07 Complaint for Breach of Contract of the year 2003-07 Mandatory Redemption, based on Plaintiff's hearsay in the previous unrelated 1992-1999 litigation for Appraisal (per NY BCL §623(e)), using an inapplicable doctrine of Claim and Issue Preclusion, as if those two claims and issues of Appraisal and Breach of Contract were identical, and if that fails, based on the theory of six year Statute of Limitations, alleging that it started to run from 1991 and not 2007.

2.      In the 2007 ruling of *Adams v State of CA*, the 9th Circuit applied the opinion of *USA v*

1

*Northrop Corp* (supra), restating, that "*Res Judicata [or claim preclusion] prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding*". As the two diagrams at ¶.5, and subsequent discussions show, in the prior litigation the Plaintiffs had only one ground available, the underperfected Right to a non-mandatory Appraisal (#2), and per *USA* and *Adams*, supra, it doesn't matter what other grounds Plaintiffs might have asserted or were determined to have, for what constitutes Res Judicata is a Yes answer to the question, whether these rights to recovery were available to the Plaintiffs at the prior proceeding and whether they could have been brought.

3.    The discussions that follow will show, that: (1). Plaintiffs did not have available the untimely ground of the year 2003-07 Mandatory Redemption in the prior litigation for Appraisal, because per *Romano*, supra, "*there can be no actual breach of a contract until the time specified therein for performance has arrived*", (2). the Defendant inherited all HBJ debts and liabilities, for HBJ per NY BCL §906(b)(3), could not repudiate any of its debts and liabilities as it had to cede them to the Defendant, and (3). per NY BCL §514(a)(b), §623(j), the Plaintiff has remained a Claimant. In addition, Plaintiff's present action, without participation of his Mother Lonia Czajkowski, who did not live to see her long-term retirement investment come to life, is not time barred, because per *Romano*, supra, "*the statute of limitations does not begin to run until the time set by the contract for performance*".

4.    This Opposition is in memory of Lonia Czajkowski (11/12/1927 – 8/04/2005), and Hon. Judge J.S. Rhoades (3/18/1925-9/03/2007), who on 6/15/1992 was the first to give the Plaintiff and his Mother, some free legal advice - "*If I am wrong, the 9th Circuit can tell me so. You can appeal the Judgment*".

# TABLE OF CONTENTS

PREAMBLE .................................................................................................. I

5. Associated Rights (¶.7), Grounds, Claims, Issues, Transactional Nucleuses and Their Relative Importance at Different Points in Time Running with the 12% Preferred .................................................................................................. 1

7. *COMAPRISON OF STOCKHOLDERS' RIGHTS*
*Rights of HBJ Preferred Stock and GCC Common Stock* ................................... 2

9. Constitutionally Protected *Vested Property Rights* and the *Redemption Rights* ...... 3

10. *"Exclusive Remedy"* of Appraisal Is Not Mandatory when It Affects Preferred Stock which Possesses *Vested Property Rights* .............................................. 3

*Undisclosed (¶¶.13,14) New York Business Corporation Law Sections § (NY BCL§)*... 4
13. §514(a)(b) *"Agreements for purchase by a corporation of its own shares"* ........... 4
14. §906(b)(3) *"Effect of merger or consolidation"* ......................................... 4
15. §623(j) *"Procedure to enforce shareholder's right to receive payment for shares"*.. 4
16. §623(e) *"Procedure to enforce shareholder's right to receive payment for shares"* . 4

17. *"Exclusive Remedy"* of Appraisal per NY BCL §906(b)(3) and §514(a)(b) is Not *"Exclusive",* and Does Not Extinguish Redemption Rights or *Vested Property Rights* . 4

18. *"Agreements for Purchase by a Corporation of Its Own Shares"* per NY BCL §514(a)(b) are Enforceable by the Shareholder and the Corporation, Alike............. 4

20. Per NY BCL §906(b)(3) the Mandatory Transfer of the Corporate Liability Does Not Permit an Implicit or Explicit Claim of Its Repudiation........................ 5

21. In 1998, the District Court Disregarded the 9th Circuit Directive ................... 5

24. Per Two Orders of the 9th Circuit, the Opinions of Two Law Firms of Atkins & Davidson, and Patricia Lewis, and Stanford Prof. P.Pfleiderer: (1) 2003-07 Mandatory Redemption Is a Valid Breach of Contract Claim, (2) There Was No Repudiation of This Contract, and (3) There Can Be No Res Judicata as to This Contract Claim During the Prior Litigation for Appraisal of 1992-1999.............................. 6

33. No "Res Judicata".................................................................................. 9

40. In the 1998 9th Circuit ruling of *USA v Northrop*, No. 96-55349..................... 11

44. In the 2007 9th Circuit ruling of *Adams v. State of California*, No. 04-56880....... 12

48. Statute of Limitation and Anticipatory Repudiation……………………….…..     12

54. Plaintiff's Answers to Selected MOPA Allegations…………………………..…..     15

CONCLUSION………………………………………………………………………...     23

## TABLE OF AUTHORITIES

1996 CA Supreme Court ruling of _Romano v. Rockwell, Inc._ 14 Cal.4th 479…….I,8-     23

1998 9th Circuit ruling of _USA v Northrop Corp_, No. 96-55349………I,6,11,13,16,18-     23

2007 9th Circuit ruling of _Adams v. State of California_, No. 04-56880……….I,12,13,     16

_Weckler v. Valley City_ 93 F.Supp.451, Affirmed, 188 F.2d 367………………………....     3

_Breslav v. New York & Queens Electric Light & Power Co._, 291 NYS 932……….…....     3

_Nivram Corp. v HBJ, Inc._, (1993) 840 F.Supp. 243……………………….…………..     15

## OTHER AUTHORITIES

_United States Constitution Article I §10_ and _Amendment XIV, §1_…………...I,3,4,5,11,     23

_New York Business Corporation Law § (NY BCL §)_…………………………………….     4

§623(j) _"Procedure to enforce shareholder's right to receive payment for shares"_……
……………………………………………..…..I,II,3,4,6,7,11,13,15,16,17,19,23,     24

§514(a)(b) _"Agreements for purchase by a corporation of its own shares"_ …………....
………………………………………….I,II,3,4,5,7,9,10,11,13,15,16,17,19,20,22,23,     24

§906(b)(3) _"Effect of merger or consolidation"_ ………………………………………
………………………………..I,II,2,3,4,5,7,8,9,10,11,13,14,15,16,17,19,20,22,23,     24

§623(e) _"Procedure to enforce shareholder's right to receive payment for shares"_ …..
,…………………………………………………..…….I,1,4,11,13,17,18,     20

§623(g) _"Procedure to enforce shareholder's right to receive payment for shares"_…...     18

**5.    Associated Rights (¶.7), Grounds, Claims, Issues, Transactional Nucleuses and Their Relative Importance at Different Points in Time Running with the 12% Preferred.**

**Rights running with 12% Preferred on Last Day of Trading 11/25/91, HBJ-GCC Merger**

**TRANSACTIONAL NUCLEUSES:**

1.    **No** Right to Liquidation Preference (**LP**) of $13.50/share (unless at the option of HBJ. **LP** paid only in the event of liquidation of HBJ. Merger not a liquidation).

**1-LP** →

2.    **Yes**, Right to optional Appraisal per NY BCL §623(e), usually the last market price is the appraised value ($0.69/share).

**2-Appraisal** →

3.    **No** Right to non-accrued 2003 Mandatory Redemption (**MR**) at $13.50/share per NY BCL §514(a)(b), §906(b)(3), §623(j), **in 1991**.

**3-MR** →

Relative Importance (**RI**) <zero (0) ref. point>

**0 RI** ↑

**Rights running with 12% Preferred at the Mandatory Redemption 6/30/03-6/30/07**

**TRANSACTIONAL NUCLEUSES:**

1.    **No** Right to Liquidation Preference (**LP**) of $13.50/share (unless at the option of Reed, **LP** paid only in the event of liquidation of Reed Elsevier per NY BCL §906(b)(3)).

**1-LP** →

2.    **No** Right to Appraisal, per NY BCL §623(e) (no Merger).

**2-Appr.** →

3.    **Yes**, Right to accrued 2003 Mandatory Redemption (**MR**) at $13.50/share per NY BCL §514(a)(b), §906(b)(3), §623(j), **in 2003-07**.

**3-Mandatory Redemption** →

Relative Importance (**RI**) <zero (0) ref. point>

**0 RI** ↑

1

6.    Defendant in its Memorandum of Points and Authorities (**MOPA**) to the Motion to Dismiss fails to recognize that in 1991 the 12% Preferred was a "creature" with three Arms, one long (the optional Right to Appraisal), and two short ones of zero legal importance (Liquidation Preference, LP, and Mandatory Redemption, MR), as the above two diagrams show at two different points in time (11/25/91 and 6/30/03-6/30/07), and that in 2003 the 12% Preferred was also a "creature" with three Arms, but this time the long Arm is the Right to Mandatory Redemption (#3), and the two short ones of zero legal importance are a Liquidation Preference (#1) and an Appraisal (#2). These Rights, because per NY BCL §906(b)(3) they could not had been repudiated by HBJ, were confirmed shortly before its 1991 merger with GCC, and the requested voluntary exchange of the 12% Preferred into GCC stock (see p.138, Merger Prospectus (Exh.7).

7.    ***COMAPRISON OF STOCKHOLDERS' RIGHTS (Exh.7)***
       ***Rights of HBJ Preferred Stock and GCC Common Stock.***
       ***Dividends***
       ***HBJ.*** *The HBJ Preferred Stock is entitled to 12% cumulative dividend computed on the $13.50 liquidation preference per share payable on the last day of each March, June, September and December of each year that the shares are outstanding. The dividends are payable in either cash or, through the period ending 6/30/93, in additional shares of HBJ Preferred Stock. The HBJ Common Stock is junior to the HBJ Preferred Stock and, so long as any shares of the HBJ Preferred Stock remain outstanding, no dividend, whether in cash, property, or any other form, can be paid on any junior stock unless all current and past dividends on the HBJ Preferred Stock have been paid or declared and funds therefor set aside for payment.*
       ***GCC.*** *The GCC Common Shareholder's rights to dividends are subordinated...*
       ***Redemption***
       ***HBJ.*** *HBJ Preferred Stock may be redeemed, in whole or in part, at the option of the HBJ Board of Directors, at any time or from time to time, at a redemption price of $13.50/share in cash, together with accrued and unpaid dividends to the redemption date. HBJ is required to redeem... on 6/30/03 and on each 6/30 thereafter through 6/30/06, 20% of all the shares of HBJ Preferred Stock then outstanding, and on 6/30/07, to redeem all remaining shares of HBJ Preferred Stock outstanding, in each case, at the redemption price of $13.50/share, plus accrued and unpaid dividends thereon to the date fixed for redemption.*
       ***GCC.*** *There are no provisions for the redemption of the GCC Common Stock.*
       ***Liquidation***
       ***HBJ.*** *In the event of any liquidation, dissolution or winding up, the HBJ Preferred Stock has a liquidation preference of $13.50/share plus any accrued and unpaid dividends to the liquidation date. No distribution can be made to the junior stock in the event of any liquidation, dissolution or winding up, until the holders of all the preferred stock of HBJ, including the HBJ Preferred Stock, have received their liquidation value in full.*
       ***GCC.*** *In the event of dissolution, liquidation or winding up, the GCC Series A Stock is*

*entitled to a liquidation preference of $5/share plus accrued but unpaid dividends.*

8.    Defendant wrongly presents the 12% Preferred at all times (1991-2007) as an identical "creature" with no Arms or different Rights running with it, but an Appraisal (#2), and based on this conclusion and Plaintiff's hearsay, claims Res Judicata, without offering any statute, State or Federal, to support this claim, when in fact the NY BCL §623(j), §514(a)(b), §906(b)(3), and the US Constitution Art. I §10, Amendment XIV, §1, all prohibit claims of Res Judicata (equating Appraisal Right with the Mandatory Redemption Right), in cases where the stock has at least two separate Rights (Arms), and one of them is the Mandatory Redemption possessing *vested property rights*. Many State and Federal case laws prohibit Res Judicata, likewise, infra.

### Constitutionally Protected *Vested Property Rights* and the *Redemption Rights*

9.    Plaintiff possesses *vested property rights* stemming from the acquisition of, and the *redemption rights* of the HBJ 12% Preferred Stock, and these *rights* are protected by the United States Constitution Article I, §10,"*No State shall pass any Law impairing the Obligation of Contracts*", the Amendment XIV, §1, "*nor shall any State deprive any person of property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws*", these *rights* are also protected by the NY BCL: §514(a)(b), §906(b)(3), §623(j), infra.

### "*Exclusive Remedy*" of Appraisal Is Not Mandatory when It Affects Preferred Stock which Possesses *Vested Property Rights*

10.    "*The right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent.*" (*Weckler v. Valley City* 93 F.Supp.451.Affirmed, 188 F.2d 367)

11.    The New York case law of *Breslav v. New York & Queens Electric Light & Power Co.*, *291 NYS 932*, confirms the same (see Complaint, ¶¶.8-12).

12.    Nondisclosure by HBJ of the full scope of the NY BCL during its 1991 merger with GCC, has led to a major deviation from the statutory handling of the attempted voluntary 1991 exchange of one of its debt securities, the 12% Preferred, to a detriment of its dissenting shareholders and their *vested property rights* protected by the NY BCL and the US Constitution. This

attempted exchange was not done in full compliance with the NY BCL §623(j), §514(a)(b),

§906(b)(3), however, because it was a <u>voluntary</u> exchange, <u>no laws were broken</u>.

### Undisclosed (¶¶.13,14) New York Business Corporation Law (NY BCL) Sections

13.     §514(a)(b) *"Agreements for purchase by a corporation of its own shares", "(a) An agreement for the purchase by a corporation of its own shares shall be enforceable by the shareholder and the corporation ... (b) The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, if at the time for performance the corporation can purchase all or part of such shares under section 513."*

14.     §906(b)(3) *"Effect of merger or consolidation", "(b) When such merger or consolidation has been effected: ... (3) The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent entities. No liability or obligation due or to become due, claim or demand for any cause existing against any such constituent entity...shall be released or impaired by such merger or consolidation.*

15.     §623(j) *"Procedure to enforce shareholder's right to receive payment for shares," "No payment shall be made to a dissenting shareholder under this section at a time when the corporation is insolvent or when such payment would make it insolvent. In such event, the dissenting shareholder shall, at his option:... (2) Retain his status as a claimant against the corporation... and if it is not liquidated, retain his right to be paid for his shares, which right the corporation shall be obliged to satisfy when the restrictions of this paragraph do not apply."*

16.     §623(e) *"Procedure to enforce shareholder's right to receive payment for shares", (e) A notice of election may be withdrawn by the shareholder at any time prior to his acceptance in writing of an offer made by the corporation, ...In order to be effective, withdrawal of a notice of election must be accompanied by the return to the corporation of any advance payment made to the shareholder as provided in (g)."*

### *"Exclusive Remedy"* of Appraisal per NY BCL §906(b)(3) and §514(a)(b) is Not *"Exclusive"*, and Does Not Extinguish Redemption Rights or *Vested Property Rights*

17.     *"Exclusive Remedy"* of Appraisal per NY BCL §623(e) can not and does not nullify any contractual obligations such as *vested property rights* protected by the NY BCL §906(b)(3), §514(a)(b), §623(j) and the US Constitution Art.I §10 and Amend.XIV, §1. In 1950 Judge Starr of the US District Court, explained why the *"Exclusive Remedy"* of Appraisal is not *"Exclusive"*, and does not extinguish redemption rights or *vested property rights*, see Complaint at ¶¶.66-69.

### *"Agreements for Purchase by a Corporation of Its Own Shares"* per NY BCL §514(a)(b) are Enforceable by the Shareholder and the Corporation, Alike.

4

18.   The detailed description of the 1987 HBJ's 12% Preferred agreement for purchase of its own shares per §514(a)(b), promised mandatory redemption, "*on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends*" (Complaint, ¶¶.22,23, and ¶.7, supra)

19.   Indeed, the 12% Preferred debt security is a contractual obligation which cannot be impaired without the breach thereof. Plaintiff's right to redemption at the time and in the amount stated by HBJ is a Contract (see 2005 Draft of the Breach of Contract Complaint by Atkins & Davidson, Exh.8). For Defendant to refuse to honor its contractual obligation is an impairment of Plaintiff's contract rights and a deprivation of *vested property rights* protected by the US Constitution Art.I §10, Amend.XIV, §1. Plaintiff's claim is based today on the failure of the Defendant to comply with the NY BCL §514(a)(b) and pay the face value of the 12% Preferred as a liability in 2003-07, which had not accrued at any time during the 1992-99 federal litigation and therefore cannot preclude an action for breach of the redemption contract today.

### Per NY BCL §906(b)(3) the Mandatory Transfer of the Corporate Liability Does Not Permit an Implicit or Explicit Claim of Its Repudiation

20.   According to HBJ, the 12% Preferred was a Debt and Liability becoming due on 6/30/03 thru 6/30/07 (Complaint, Form 10-K, pp.28, 29, Exh.6), and per NY BCL §906(b)(3) "*no liability or obligation due or to become due, ... shall be released or impaired by such merger or consolidation*", neither in 1991 by the merger of HBJ and GCC, nor in 2001 by the merger of Harcourt General and Reed Elsevier, therefore there can be no claim of legal implicit or explicit repudiation of the 2003-07 Mandatory Redemption, in effect of any of those mergers.

### In 1998, the District Court Disregarded the 1994 9th Circuit Directive

21.   Hon. J. Rhoades dismissed Plaintiffs' Third and Fourth Amended Complaints, mainly because Plaintiffs out of procedural misunderstanding on their part did not fully comply with the 9th Circuit 1994 ruling directing them to request only Appraisal. Plaintiffs retained in their Complaint the Breach of Contract and Fraud title, and breach of fiduciary duty allegations per 9th Circuit suggestion, "*Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law*". When on the 5th try the Plaintiffs rid the Complaint of most but not all allegations of fraud, breach of contract and

5

fiduciary duty, Judge Rhoades accepted the 5th Amended Complaint, even though it still was not up to par with the 9th Circuit ruling, then recused himself and transferred the case to the unfamiliar with the case Judge Brewster on 5/20/96.

22.    Plaintiffs' *immaterial* mistake of not completely changing their original Complaint from Breach of Contract of the Liquidation Preference and Fraud, to an Appraisal Request, cannot be deemed now to had been a claim of Breach of Contract of the Mandatory Redemption, and a proof of Res Judicata (see *USA*, supra). Defendant mixes up and equates the two completely different causes of action in order to cover them up with a cloud of Res Judicata smoke, which per *USA* is *"immaterial"* anyway.

23.    By granting Summary Judgment in 1998, District Court disregarded 9th Circuit directive which allowed the Plaintiffs to bring forth their *breach of fiduciary duty and fraud allegations* at an Appraisal, which definitely would have affected the final value of the 12% Preferred, by taking it from the stock market value of $0.69, to the fair value of $13.50, for it was not a stock but a loan, the debt security that happened to be traded on the NY Stock Exchange.

**Per Two Orders of the 9th Circuit, the Opinions of Two Law Firms of Atkins & Davidson, and Patricia Lewis, and Stanford Prof. P.Pfleiderer: (1) 2003-07 Mandatory Redemption Is a Valid Breach of Contract Claim, (2) There Was No Repudiation of This Contract, and (3) There Can Be No Res Judicata as to This Contract Claim During the Prior Litigation for Appraisal of 1992-1999.**

24.    The following opinions of the 9th Circuit Court of Appeals from 1994 and 1999, and of the two separate Law Firms, and of the HBJ's Financial Expert, Stanford Professor Paul Pfleiderer, all support Plaintiff's contention that the mandatory year 2003-07 redemption is a valid Breach of Contract claim and that there can be no claim of Res Judicata because of the prior Federal Litigation for Appraisal in 1992-1999.

25.    In 1994 the 9th Circuit concluded that Plaintiffs' Claim for Damages based on the Liquidation Preference and Fraud allegations was foreclosed in 1992, as it lacked merit, unless it were to be recast as a Claim for Appraisal. (Complaint, p.2,3, Exh.4):

> *Here, it is undisputed that the Czajkowskis were dissenting shareholders in the HBJ merger with GCC. Accordingly, the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding. See NY BCL §623(k). The Czajkowskis attempt to avoid this result in two ways. First, the Czajkowskis contend that the*

*merger was in fact liquidation of HBJ and, therefore, that they were entitled to payment of $13.50/share liquidation preference. This contention lacks merit. Second, the Czajkowskis contend that their action falls within the "appropriate action" exception because they sought equitable relief for fraud. This contention also lacks merit. Here, the Czajkowskis' action is in essence a claim that they were not paid enough for their shares, it is a claim for damages, and therefore is foreclosed by Schloss unless it is recast as a claim for appraisal.*

*"The Czajkowskis make substantial allegations that the merger price of $0.75/share may not have been the "fair value" to which Czajkowskis were entitled under the NY BCL §623 ... Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law.*

*We remand to allow the Czajkowskis leave to amend their complaint to seek appraisal under the New York Statute. VACATED and REMANDED."*

26.    In 1999 the 9th Circuit concluded, alike (p.1, Complaint Exh.5):

*"Plaintiffs", former preferred shareholders of "HBJ", appeal pro se the district court's grant of summary judgment for Defendants in Plaintiffs' diversity action alleging that HBJ breached a liquidation preference clause by failing to redeem Plaintiffs' shares of HBJ preferred stock at the purported guaranteed redemption price of $13.50/share when HBJ merged with GCC in 1991. Plaintiffs also appeal the district court's April 28, 1998 order denying their motion for reconsideration. We dismiss in part, and affirm in part....We lack jurisdiction to review district court's 2/09/98 order granting summary judgment to Defendants because Plaintiffs did not file their notice of appeal until 5/04/98, nearly 3 months after judgment was entered on 2/10/98. ... Accordingly, we dismiss this portion of Plaintiffs' appeal for lack of appellate jurisdiction...We do, however, have jurisdiction to review the district court's denial of Plaintiff's motion for reconsideration. We conclude that the district court did not abuse its discretion because Plaintiffs essentially sought to relitigate issues that were previously rejected by this court in Czajkowski v. Jovanovich, No.92-55787, and Plaintiffs have failed to demonstrate a sufficient basis for relief under either Fed.R.Civ.P. 59(e) or 60(b).*
*We reject Plaintiffs' remaining contentions as being without merit.*
*We deny Appellees' request of judicial notice.*
*DISSMISSED in part, and AFFIRMED in part.*

27.    In 1994, the 9th Circuit Judge Betty B. Fletcher asked Mr.K.Fitzgerald, whether under the NY BCL, Plaintiffs as dissenting shareholders have any additional rights besides an Appraisal. Mr.K.Fitzgerald answered that they have none, in the process withholding from the three Judges panel, as he does now from the District Court, the existence of NY BCL §623(j), §514(a)(b), §906(b)(3), which prohibit repudiation and are exempting from Appraisal all liability and debt securities possessing *vested property rights.*

28.    On 11/04/97 Judge Brewster informed, *"Plaintiffs are advised that the Court is bound by*

*the 9th Circuit's ruling ... and that the Court will not disregard it."* (p.4, l.18, Exh.9). Similarly now, this Court is bound by the 9th Circuit's rulings on the issues that the only Res Judicata is as to <u>Breach of Liquidation Preference Contract</u> (#1), and to the <u>Right of Appraisal</u> (#2), and not as to the Breach of the year 2003-07 Mandatory Redemption (#3), which per *Romano,* supra, it would not be possible to assert in the year 1991, 12 years before it were even to happen, unless repudiation was not barred by the NY BCL §906(b)(3), and there was an <u>actual</u> repudiation, and Plaintiff chose to act on it then, instead of waiting until the time for performance.

29.     In the 7/09/05 <u>Draft</u> of Breach of Contract Complaint by Clark Davidson (Exh.8) and on 7/18/05 (1) and 9/05/05 (2) in a letter to Mr.K.Fitzgerald, Plaintiff's former Counsel Clark Davidson of Atkins & Davidson Law Firm informed, alike (Exhs.10, 11):

> *(1). "In the former case (1992), Mr.Czajkowski was in essence requesting a valuation of the stock; as NY law provides shareholders that right in the event of a merger or other corporate actions. The former case is different than the one now pending. Mr.Czajkowski now seeks full and proper payment based on the contract between HBJ and himself, as he is the holder of a legal debenture, not of stock. The characteristics of the preferred stock that I have been able to discern fall within the parameters of a loan, not of stock, as more fully described below. I attached a former page from a disclosure by HBJ, it appears to me to be from an annual 10K filing. As stated in the document attached, "the 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity". Other documents that I have reviewed set forth that the 12% dividend will accrue, even if not paid; this is equivalent to an interest payment on a loan. Also, the loan amount is callable by the holder of the note as of June 30, 2003 and is considered a mandatory payment on behalf of HBJ, or its predecessor. These characteristics again portray a "loan" not "stock". (2) "...whether or not your perspective on the matter is accurate, I am well aware of the fact that my client made a loan to your client, and your client has failed to ever pay back the value of the loan; and, I would currently believe that your client is financially solvent to make such payment. If you had made this loan, you would also expect to be repaid as my client does. This fact alone is not difficult to grasp. I would still like to review the following documents: 1. the prospectus of the 12% Preferred Stock; 2. the annual 10K from 1990; and, 3. any documents to support any assertion that Mr.Czajkowski was paid for his loan to HBJ or that his shares of preferred stock were fully redeemed by HBJ or a predecessor."*

30.     On 1/11/06 in a Disengagement letter, Clark Davidson informed (Exh.12):

> *"Jerry, it has been a pleasure to work with you and I wish you all the best in your continued pursuits of this wrong against you. As we have discussed, ..., the law has various statutes of limitations that would bar any claims if made past a certain date. Therefore, if you are going to proceed further, I recommend you do so in a timely manner, and that*

*you seek further legal representation, if so desire."*

31.    On 4/02/07 in a letter to Mr.K.Fitzgerald, Plaintiff's next Counsel Patricia Lewis of Lewis Law Firm informed (p.1-2, Exh.13):

> *"Mr.Czajkowski was recently represented by Mr.C.Davidson who submitted a valid argument to you for settlement on the 12% Preferred, confirming that the 'stock' is not a corporate capital stock at all, but is defined by HBJ documents as a loan. Mr. Davidson made two separate requests to you requesting documentation which would presumably confirm his argument that the 12% Preferred was a loan, presently outstanding, made by Mr.Czajkowski to HBJ. Those requests went unheeded, which I reiterate here. In 1998, HBJ's expert, Dr.P.Pfleiderer opined that the redemption clause of the 12% Preferred was not triggered in the 1991 merger because HBJ had not invoked the option to redeem and/or because the 12% Preferred had to be outstanding in 2003, which then was still 12 years away. It is our opinion that Mr.Czajkowski has a valid breach of contract claim against HBJ, whose liabilities were assumed by Harcourt General in the merger of 1991, and which debts were subsequently assumed by Reed Elsevier in the merger of 2001."*

32.    On 4/03/98, HBJ's Financial Expert, P. Pfleiderer, Ph.D. (p.2, Complaint, Exh.3), opined that the 2003-07 Mandatory Redemption clause to purchase back corporation shares was not triggered by the 1991 merger, **which also confirms the fact that HBJ could not and did not repudiate it,** because HBJ had not invoked its option to redeem, and because the 12% Preferred must be outstanding in 2003, and of course, if HBJ convinces all the dissenters to voluntarily surrender at $0.69, then there won't be any 12% Preferred left to redeem in 2003-07.

> *"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have any effect: a). HBJ must invoke its option to redeem the preferred shares, or b). HBJ preferred shares must be outstanding in the year 2003. Because neither of these events took place, this clause has no bearing on my opinion that the price offered to the holders of the preferred stock of HBJ was a fair price".*

### No "Res Judicata"

33.    Therefore, Plaintiffs' 1992 *Liquidation Preference* cause of action is not the same as the present Breach of Contract of the Mandatory year 2003-07 Redemption provision, for in 1991 there could not had been a breach of something that has not occurred yet, set to happen 12-16 years into the future (see *Romano*, supra), and the "*Exclusive Remedy*" of Appraisal per NY BCL §906(b)(3) and §514(a)(b) is not "*Exclusive*", nor mandatory as was shown in the Complaint at ¶.66-74, for it cannot destroy *redemption rights* or *vested property rights* without Plaintiff's consent. The 9th Circuit and the District Court cases in 1994 and in 1999 were decided on the basis

of an *Appraisal Remedy* for stock, and could not have been decided on the basis of Breach of the Redemption Contract, which would not accrue until 2003-07 (see *Romano,* supra).

34.    On p.11 of the MOPA, Defendant lists four factors which the 9th Circuit considers in de-termining, whether claims are identical for claim preclusion (Res Judicata):

> *(1) whether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, (2) whether substantially the same evi-dence is presented in the 2 actions, (3) whether the 2 suits involve infringement of the same right; (4) and whether the 2 suits rise out of the same transactional nucleus of facts.*

35.    **Answer's No to Q.#1.** 12% Preferred as the three Armed "creature" (see the 2 diagrams on p.1) and created by HBJ in 1987 (Complaint Exh.2), the 9th Circuit correctly decided, that in 1991 it only had one live Arm, i.e., a single Right (Arm #2 – Appraisal), for in 1991 there was no liquidation of HBJ which would trigger Arm #1 (Liquidation Preference), and Arm #3 (2003-07 Mandatory Redemption), had not grown (accrued), and thus could not be claimed by the Plain-tiffs nor considered by the 9th Circuit. Also, if HBJ was not prohibited by the NY BCL §514(a)(b), §906(b)(3) from doing so, and had repudiated the Mandatory Redemption Contract, the Plaintiffs would have demanded in 1992, the 2003-07 damages of $7,084,923.58 and not $65,809.60 (actually $1,122,734.31, because of HBJ accounting error, or future-dating the Cer-tificate from about 10/11/90 to 11/21/91, see Tbl.1, Complaint ¶.53). Because the liquidation preference and the mandatory redemption value assigned to the 12% Preferred were the same at $13.50/share (see *Comparison of Stockholders' Rights,* ¶.7, ¶.5), Plaintiffs wrongly believing that an appraisal might be mandatory, used the *"liquidation maturity"* terminology simultaneously, trying to show the Courts that the 12% Preferred is a Debt Security, always valued at $13.50, and that it would be wrong to appraise it at anything else but $13.50, and to ask the Plaintiffs to surrender it at $0.69, when in 2003 they can get the full value of $13.50/share.

36.    **Answer's No to Q.#2.** In the 1992 action only one Arm (evidence) of the 12% Preferred (#1- Liquidation Preference clause of Contract), was presented and considered by the 9th Circuit (see ¶.27), which concluded that there was no liquidation of HBJ and so the Plaintiffs were not entitled to the liquidation preference in 1991. The third Arm of the Mandatory Redemption, as untimely, was not brought nor considered (see ¶¶..25,26).

37.    **Answer's No to Q.#3.** In 1991 Plaintiffs had only one Right given to them by the NY

BCL 623(e) and confirmed by the 9th Circuit in 1994, and reaffirmed in 1999, the Arm #2– an Appraisal. Now in 2003-07 the Plaintiff invokes the third Right, Arm #3 – the Mandatory Redemption, given to him by the 1987 HBJ Certificate of Incorporation and the NY BCL §514(a)(b), §906(b)(3), and protected by the US Constitution Art.I, §10, Amend.XIV, §1.

38.    **Answer's No to Q.#4.** The reason being alike, that, in 1991 the three Arms of the 12% Preferred "creature" were not all active and of the same importance, and what is even more important is that Arm #3 (the 2003-07 Mandatory Redemption - the <u>Transactional Nucleus #3</u>) has not grown or accrued, i.e., in 1991 it was of zero legal importance. Plaintiffs' 1992 suit arose from a different <u>transactional nucleus</u>, stemming from the <u>1991 HBJ-GCC merger</u>, which triggered exclusively Right #2 (Appraisal). In comparison, present suit arose out of the <u>transactional nucleus</u> of the <u>1987 HBJ Certificate of Incorporation</u>, which promised to all who purchased the 12% Preferred, the Mandatory Redemption in 2003-07 at $13.50/share plus all the 12% cumulative dividends by then in arrears. Therefore, the two <u>Transactional Nucleuses</u> or Rights of 1991 and of 2003-07 are not the same, and so there can be no valid claim of Res Judicata as to the Arm #3 being the same as Arm #2, and by the same token having been adjudicated in 1992-1999, because only the <u>unperfected</u> Arm #2, was.

39.    Furthermore, no single criteria of the Doctrine of Res Judicata can void or nullify the U.S. Constitution Art.I, §10, and Amend.XIV, §1, nor the NY BCL §514(a)(b), §906(b)(3), §623(j), all of which protect the Obligation of Contracts and permit Plaintiff filing the Breach of Mandatory Redemption Complaint, which could not have been filed prior to the time of breach and the time for performance. As the above explanations still may not be sufficient, to further elucidate the question of *"Is there or Isn't there a Res Judicata"*, Plaintiff reviews the following two recent rulings issued by the 9th Circuit.

### In the 1998 9th Circuit ruling of <u>USA v Northrop Corp</u>, No. 96-55349

40.    *"Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits".*

**Response**: Due to being untimely per *Romano,* supra, the 2003-07 Mandatory Redemption claim <u>could not have been asserted in 1992</u> and any reference to it was deemed by the 9th Circuit to be

*"without any merit"* (¶25,26, supra).

41.    *"It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought".*

**Response**: The 2003-07 Mandatory Redemption claim could not have been brought in 1992, again, because per *Romano,* supra, of being untimely, and premature.

42.    *"To determine whether (a) claim ... is barred by res judicata, we focus upon "whether the two suits arise out of the same transactional nucleus of fact", though we also consider other factors as necessary. We have applied the doctrine of res judicata "on the ground that the two claims arose out of the same transaction," without reaching other factors cited in Constantini "".*

**Response**: the 1992 transactional nucleus was the 1991 HBJ-GCC merger which triggered Right to Appraisal (#2 Arm of the 12% Preferred). The 2007 Complaint's transactional nucleus is the 1987 HBJ promise of 2003-07 Mandatory Redemption.

43.    *"two events are part of the same transaction if they are related to the same set of facts and could conveniently be tried together. ..., different theories supporting the same claim for relief must be brought in the initial action, because a single "transaction," or nucleus of operative fact, gives rise to only one claim by one person against another".*

**Response**: Again the 1992 Right #2 to Appraisal could not be tried together with the Right #3 of Mandatory Redemption, which would not accrue until 2003-07. Right #2 and Right #3 also stem from different set of facts and transactions, and are not the same claim of relief. The 1992 claim of Appraisal (Arm #2) was a $65,809.60 claim (actually $1,122,734.31, see ¶.35), the 2007 claim of Breach of the Mandatory Redemption (Arm #3), is the $7,084,923.58 claim, and both are based on two different sets of facts, which could not be tried together. Therefore, Plaintiff's 1992 and 2007 actions have two transactional nucleuses, and two different claims (Arm #2 - 1992 Appraisal, and Arm #3 - 2003-07 Mandatory Redemption).

### In the 2007 9th Circuit ruling of *Adams v. State of California*, No. 04-56880

44.    *"In determining whether successive claims are the same, we consider four criteria (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts. "The last of these cri-*

12

*teria is the most important"".*

**Response**: *The last of these criteria (#4) is the most important*, see Answers 1-4, ¶¶.35-38.

45.    *"We use a transaction test to determine whether the two suits share a common nucleus of facts. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together"".*

*" litigant "is not permitted to fragment a single cause of action and to litigate piecemeal the issues which could have been resolved in one action". **Res judicata [or claim preclusion] prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding"".***

**Response**: The ground (Arm #3) of the 2003-07 Mandatory Redemption, was not previously available in 1992, however, per *USA* and *Adams* (supra), it doesn't matter what grounds were asserted in the previous proceeding, what's important the most is the question whether these grounds for recovery were previously available. Definitely, as was shown above, the ground #3, the Right to the year 2003-07 Mandatory Redemption, per *Romano,* supra, was not an available in 1992. The two identical rulings of the 9th Circuit in 1994 and 1999, supra, specifying only Right to Appraisal in 1991, confirm this fact 100% (¶¶.25,26).

46.    *"Plaintiff must bring at one time all claims against a Defendant relating to the same transaction or event".*

**Response:** Plaintiffs in 1992 could not bring the 2007 claim, as the two Rights (#2 and #3 Arms), arose out of different transactional nucleuses, one the 1991 HBJ-GCC merger triggering right to Appraisal per NY BCL 623(e), other, the 1987 Mandatory Redemption Promise to redeem the 12% Preferred in 2003-07 per NY BCL §623(j), §514(a)(b), §906(b)(3).

47.    *"The requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." "The question [before applying res judicata to bar the second suit] is ... whether [Plaintiff] had a fair opportunity to litigate that claim before a competent court prior to bringing it to the court below."*

**Response:** Again because the 2007 claim (Right #3) had not accrued, per *Romano,* supra, the Plaintiffs had no full and fair opportunity to litigate it in 1992.

## Statute of Limitation and Anticipatory Repudiation

48.    In 1991 HBJ merged into Harcourt General (HG), and in 2001 HG merged into Reed El-

13

sevier. Because the 2003 Mandatory Redemption was over a period of 4 years, on an installment

contract, the limitations period does not accrue until the breach of the final payment, or 6/30/07

(see *Romano*), therefore, under the NY 6 year Statute of Limitations, it will not run until 6/29/13.

49.     In the CA Supreme Court case of *Romano v. Rockwell Internat.*, it has been summarized

that *"in the event the plaintiff disregards the repudiation, the statute of limitations does not begin*

*to run until the time set by the contract for performance"*,

> *"A cause of action for breach of contract does not accrue before the time of breach."*...
> *"There can be no actual breach of a contract until the time specified therein for perform-*
> *ance has arrived. Nonetheless, if a party to a contract expressly or by implication repu-*
> *diates the contract before the time for his or her performance has arrived, an anticipa-*
> *tory breach is said to have occurred... The rationale for this rule is that the promisor has*
> *engaged not only to perform under the contract, but also not to repudiate his or her*
> *promise. In the event the promisor repudiates the contract before the time for his or her*
> *performance has arrived, the plaintiff has an election of remedies--he or she may "treat*
> *the repudiation as an anticipatory breach and immediately seek damages for breach of*
> *contract, thereby terminating the contractual relation between the parties, or he [or she]*
> *can treat the repudiation as an empty threat, wait until the time for performance arrives*
> *and exercise his [or her] remedies for actual breach if a breach does in fact occur at*
> *such time."* ... *in the event the plaintiff disregards the repudiation, the statute of limita-*
> *tions does not begin to run until the time set by the contract for performance. "For the*
> *purpose of determining when the period of limitation begins to run, the defendant's non-*
> *performance at the day specified may be regarded as a breach of duty as well as the an-*
> *ticipatory repudiation. The plaintiff should not be penalized for leaving to the defendant*
> *an opportunity to retract his wrongful repudiation; and he would be so penalized if the*
> *statutory period of limitation is held to begin to run against him immediately."*

50.     Per NY BCL §906(b)(3), the merger cannot repudiate neither <u>expressly</u> nor <u>implicitly,</u>

any debt or liability of the NY corporation, which has to be automatically taken over by the sur-

viving corporation. Furthermore, there is no reference in any of the merger prospectus docu-

ments, including the restated merger of 8/24/91, and amended merger of 10/18/91, or in Ander-

sen and Company Notes to financial statements of 6/30/91, that HBJ has made a stated repudia-

tion of its contractual obligation to pay cumulative dividends and redeem the 12% Preferred in

2003-07. To the contrary, in the *Comparison of Stockholders' Rights, Rights of HBJ Preferred*

*Stock and GCC Common Stock,* HBJ openly compared the Rights of the 12% Preferred to the

Rights of the GCC Common Stock, their Dividend, Redemption, and Liquidation Rights, ¶.7,

¶.5, supra, <u>nowhere claiming, even if it legally could, the mandatory repudiation of those Rights.</u>

51.     HBJ's Financial Expert, P.Pfleiderer, Ph.D., confirmed the same absence of repudiation

14

on 4/03/98 (see ¶.32). Had there been a Repudiation of the 2003-07 Mandatory Redemption, there would have been a countless number of Breach of Contract Complaints filed against HBJ in 1991, based on the NY BCL §623(j), §514(a)(b), §906(b)(3). Plaintiff knows of none ever filed. In 1992 there was a Class Action of Preferred Stockholders in the NY District Court based on the alleged violation by HBJ of Securities Exchange Act of 1934, Rule §10b-5. In 1995, HBJ settled with the Class at 100-50 % of the individual losses, in all paying the participants from the $1,417,500 settlement fund, their counsel $493,000, $71,754 in litigation expenses, and Nivram Corp. an incentive award of $5,000. (*Nivram Corp. v HBJ,* Inc., (1993) 840 F.Supp. 243).

52.    <u>Assuming</u> that there was an <u>illegal</u> repudiation (in violation of NY BCL §906(b)(3), §514(a)(b)), and thus an anticipatory breach in 1991, then HBJ's repudiation of its debts and liabilities would be anticipatory to the 2003-07 redemption. Because the actual breach has just occurred in 2003-07, the injured party, per *Romano,* may wait until the time for performance to file his suit, "*he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time.*"

53.    Therefore, the Plaintiff has a valid breach of contract claim against HBJ, whose debts and liabilities per NY BCL §906(b)(3), had to be assumed by the Harcourt General in the merger of 1991, and which debts and liabilities were subsequently assumed by Reed Elsevier in the merger of 2001. And the limitations period, does not accrue until the time when there is an actual breach, which is now, and not an anticipatory breach in 1991.

**Plaintiff's Answers to Selected MOPA Allegations**

54.    On p.13 of the MOPA Defendants fail to mention that Plaintiffs by the 9th Circuit, were only given leave to amend their Complaint with an Appraisal and were directed to drop Breach of Contract of the Liquidation Preference and Fraud, and that at the Appraisal were advised to bring forth their *"breach of fiduciary duty and fraud allegations",* such as the maturity value of $13.50 which might take 12% Preferred's fair value from $0.69 to a higher level of $13.50.

55.    Plaintiffs' mention of the impending year 2003-07 Mandatory Redemption (growing Arm #3, p.1) was with the intent to show that it would be wrong to ask the Plaintiffs to surrender the 12% Preferred at $0.69/share when in 2003-07 HBJ will have to redeem it at $13.50 plus all the

12% cumulative dividends by then in arrears. Plaintiffs could not offer any proof, or claim that in 1991 there was a breach of the year 2003-07 Mandatory Redemption (see 6/15/92 Order, Exh.14), but only an assumption of a breach of the liquidation preference promise, to redeem the stock at liquidation of HBJ at $13.50/share. Any mention of the future Mandatory Redemption was in full compliance with the leave of the 9th Circuit (¶.25), which instructed to bring forth *"various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under NY law"*, something the District Court refused to do via granting Summary Judgment in 1998 (¶.21).

56.      p.1, l.3 *"Plaintiff Jerry Czajkowski, acting in pro per, filed this action more than 15 years after his breach of contract accrued"*. **Answer:** Incorrect, present Breach of Contract of Mandatory Redemption accrued on 6/30/03-6/30/07, which is five months ago, and not 15 years.

57.      p.1, l.5 *"this is the third breach of contract suit"*. **Answer:** Incorrect, this is the first separate, and non-identical Breach of Mandatory Redemption suit the Plaintiff has filed.

58.      p.1, l.7 *"the 9th Circuit,... adjudicated the rights and remedies he now tries to resurrect"*. **Answer:** Incorrect, the 9th Circuit did not adjudicate all the Plaintiffs' rights and remedies, as one of them, Arm #3 (MR) was not available, for per *Romano,* in 1992 it was premature.

59.      p.1, l.8 *"This Court should dismiss his Complaint with prejudice, because the doctrines of res judicata, collateral estoppel and the statute of limitations bar his claim, as a matter of law"*. **Answer:** Incorrect, the doctrines of res judicata, collateral estoppel and the statute of limitations do not bar Plaintiff's claim of Mandatory Redemption in 2007, as a matter of law, supra.

60.      p.1, l.13 *"because under the terms of the merger, his stock was redeemed for $0.69/share in cash, and his rights as a preferred shareholder (to receive a high dividend and redemption at maturity of $13.50/share) were extinguished"*. **Answer:** Incorrect, Plaintiff's stock was never redeemed, as this exchange was voluntary, and Plaintiff's rights (to redemption at maturity) could never be extinguished (see *Comparison of Stockholders' Rights*, ¶.7, ¶.5). These Rights per NY BCL §623(j), §514(a)(b), §906(b)(3), legally could not have been extinguished by the merger.

61.      p.1, l.16 *"As a result, Plaintiff sued HBJ in 1992, alleging (as he does now) breach of contract"*. **Answer:** Incorrect, Plaintiff in 1992 alleged a completely different Breach of Contract (Liquidation Preference), see *Comparison of Stockholders' Rights*, ¶.7, ¶.5.

62.      p.1, l.25 *"As he did in the first lawsuit, Plaintiff realleges that his "vested property rights" in the HBJ stock were wrongfully deprived as a result of the merger"*. **Answer:** Incorrect, Plaintiff made a mistaken assumption that his *"vested property rights"* were destroyed by the merger, but because the stock surrender and exchange were voluntary and Plaintiff did not surrender or exchange, but dissented from the merger, his *"rights"* were not destroyed. In addition per *USA* and *Adams*, it doesn't matter what has been asserted or alleged, instead what matters is

whether these claims could have been brought in the first action. Plaintiffs could not have brought the 2007 Mandatory Redemption action in 1992, because per _Romano_ "_a cause of action for breach of contract does not accrue before the time of breach_".

63.    p.2, l.2 "_Plaintiff's attempt to impose liability on another successor corporation to HBJ, over a decade after his HBJ stock was redeemed and his rights thereunder extinguished, must be rejected_". **Answer:** Incorrect, per NY BCL §906(b)(3), Defendant has inherited HBJ debts and liabilities; Plaintiff's Certificate was never redeemed, and per NY BCL §623(j), §514(a)(b), §906(b)(3), his rights thereunder were not extinguished, hence the Complaint cannot be rejected.

64.    p.2, l.4 "_Plaintiff had one remedy - an appraisal - arising from his ownership of HBJ stock_". **Answer:** Incorrect, per NY BCL 623(e) _in 1991_ Plaintiffs had only one remedy of Appraisal, in 2007 per NY BCL §623(j), §514(a)(b), §906(b)(3), Plaintiff has the second remedy of Mandatory Redemption.

65.    p.2, l.6 "_(Plaintiff) has no remaining rights as a stockholder, and no claims left to pursue_". **Answer:** Incorrect, per NY BCL §623(j), §514(a)(b), §906(b)(3), Plaintiff has one remaining right as a _debt holder_, that of Mandatory Redemption in 2003-07.

66.    p.2, l.8 "_Plaintiff's claim is plainly barred by NY's six-year statute of limitations. Plaintiff's claim accrued in 1991, when HBJ repudiated Plaintiff's purported contractual rights to dividends and a $13.50 redemption price_" and p.2, l.11 "_to the extent that Plaintiff's current breach of contract claim could be viewed as distinct from the claim previously litigated to judgment, Plaintiff was obligated to file suit by 1997. Because he did not, his breach of contract claim, even if considered different from his prior lawsuit, is now time-barred._" **Answer:** Incorrect, per NY BCL §623(j), §514(a)(b), §906(b)(3), merger could not automatically repudiate the 2003-07 Mandatory Redemption, and this claim is not barred by the statute of limitations, which begins to run 6/30/07. HBJ _legally_ could never repudiate contractual rights to dividends and to a $13.50 redemption (see _Comparison of Stockholders' Rights_, ¶.7, ¶.5), and even if it did, illegally, per _Romano,_ this would be anticipatory to the year 2003-07 and not 1991, for "_he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time._"

67.    p.2, l.19 "_The Court may take judicial notice of those pleadings and orders in considering this motion_". **Answer:** Incorrect, per 1999 9th Circuit ruling which denied an almost identical Request of Judicial Notice (except for 4 documents not presented then), this Court being bound by the 9th Circuit ruling should also deny this Request, because most of the pleadings filed by the Plaintiffs were _hearsay_ and "_without merit_", and many other Court documents were in error, like the 11/21/91 Certificate which should list all the 83,165.5 shares Plaintiffs owned on 11/21/91, and not just those 4710 that they bought (Complaint, Table 1, at ¶.53, Exh.1).

68.    p.2, l.2 "_Plaintiff (and his mother, now deceased) purchased 5,083 shares of preferred stock in HBJ between 10/16/89 and 11/28/90. Complaint ¶.53, Exh.1_". **Answer:** Incorrect, as has been shown in the Complaint at ¶.53, the 11/21/91 Certificate is incorrect, for it has been future-dated. It should have listed all the 83,165.5 shares Plaintiffs owned on 11/21/91, and not just those 4710 that they bought. HBJ did not disclose all the dividends in arrears that accrued on

11/25/91, but only 373 as of about 10/11/90 (5083, see Table 1, Complaint at ¶.53).

69.    p.3, l.9 *"Plaintiff perfected his right as a dissenting shareholder by objecting to the terms of the merger, and refusing the cash tendered to him for his preferred stock."* **Answer:** Partially correct, for per NY BCL §623(g) he did perfect his right as a dissenting shareholder by refusing the 100% offer of $3,507.27. In order not to withdraw his election to dissent, however, per NY BCL §623(e), he had to keep the 80% advance or agree to the terms of the merger and return the certificate together with the advance in exchange for $3,507.27. Therefore, the Plaintiffs chose to keep the 80% advance of $2,810.90, as a down payment to their erred $65,809.60 counteroffer, which should have been for $1,122,734.31 (see ¶.35).

70.    p.3, l.15 *"In the 1992 action, Plaintiff alleged breach of contract and fraud, based on al-legation that HBJ breached a contractual obligation to pay him $13.50/share plus unpaid divi-dends".* **Answer:** Partially correct, the 1992 action pertained to the Breach of Arm #1 (see dia-gram at ¶.5 - the liquidation preference clause, and *Comparison of Stockholders' Rights*, ¶.7), which in 1994 and in 1999 the 9th Circuit concluded did not happen, for mergers don't lead to the liquidations of corporations.

71.    p.3,l.19 *"Plaintiff requested that HBJ be "ordered to comply with the terms of the CON-TRACT, and pay Plaintiffs the full liquidation price of the HBJ Preferred Stock of $13.50/share, and unpaid dividends""*, and p.3,l.22 *"Plaintiff then filed an Amended Complaint, which alleged that he was entitled to the "liquidation/maturity value of the HBJ preferred Stock of $13.50, plus unpaid dividends and interest""*. **Answer:** Would be correct, if there was a Liquidation of HBJ, and/or the year 2003 in 1991, however, per *USA*, in 1992 Plaintiffs could have asserted many wrong claims, but *"It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought"*, and the fact is that none of those asserted claims as relating to the 2003-07 Mandatory Redemption could have been brought in 1992, for they were untimely and premature (see *Romano,* supra).

72.    p.5, l.1 *"The 9th Circuit remanded and directed the District Court to permit Plaintiff to recast his complaint as one for appraisal".* **Answer:** Correct, however this contradicts Defen-dant's previous allegations that 9th Circuit adjudicated Mandatory Redemption and found that "forever more" the Plaintiffs' *exclusive remedy* is an Appraisal, when in fact 9th Circuit clearly stated that only in 1991 it is *exclusive*, and that at an Appraisal Plaintiffs' *"breach of fiduciary duty and fraud allegations"* can be taken into consideration in determining the fair value of the 12% Preferred. See the opinion of Judge Starr as to why *Exclusive Remedy* of Appraisal is not "forever more" *Exclusive* (Comp. ¶¶.66-69). However, because there was no Appraisal, Plain-tiffs' *"allegations"* were never taken into consideration (see, ¶¶.21-23).

73.    p.4, l.1 *"He also alleged that HBJ repudiated and irretrievably breached the contractual obligation he was owed to receive $13.50/share plus 12% dividends"* and p.6, l.1 *"The graveman of Plaintiff's complaint was that his preferred shares were being unlawfully divested, since they were being redeemed and extinguished, in exchange for $0.69/share, as a result of the merger".* **Answer:** Incorrect, HBJ never mandatorily divested, redeemed, extinguished, or repudiated its 12% Preferred in 1991, nor its 2003-07 Mandatory Redemption provision. Plaintiffs not knowing



of the existence of the NY BCL §623(j), §514(a)(b), §906(b)(3), mistakenly assumed that the voluntary surrender of the 12% Preferred in 1991 may be interpreted as divestiture, redemption or extinguishment, and that the merger was in effect the liquidation of HBJ, triggering the liquidation preference of $13.50. Plaintiff's <u>hearsay</u>, can not invalidate NY BCL §623(j), §514(a)(b), §906(b)(3), and was deemed to be "*without any merit*" (¶¶.25, 26), and doesn't change the facts of the non-existent divestiture, redemption or extinguishment (see *Comparison of Stockholders' Rights,* ¶.7, ¶.5), and in view of the *USA,* supra, is <u>moot</u>.

74.    p.8, l.27 "*Plaintiff's opportunistic view is misguided, because he has no legal rights against Reed, or anyone else, based on his prior ownership of HBJ preferred stock*". **Answer:** Incorrect, Reed Elsevier per NY BCL §514(a)(b), §906(b)(3), inherited all the <u>debts</u> and <u>liabilities</u> of Harcourt General in 2001, which in turn inherited all debts and liabilities of HBJ in 1991.

75.    p.9, l.4 "*In his renewed effort to sue over the same rights finally adjudicated in 1999, Plaintiff misconstrues the prior orders of this Court and the 9th Circuit, fails to recognize their legal effect, and ignores the fundamental fact that his rights as an HBJ stockholder were extinguished many years ago, as a result of the HBJ/GCC merger, as he himself previously alleged*". **Answer:** Incorrect, Plaintiff is not suing now over the same rights adjudicated in 1999 (Appraisal, <u>versus</u> Mandatory Redemption now). His rights as an HBJ <u>debt</u> holder per NY BCL §514(a)(b), §906(b)(3) could not be extinguished by the merger, and just because by mistake he so assumed, his <u>hearsay</u> does not make it true, nor does it preclude him from filing this Complaint for Breach of the 2003-07 Mandatory Redemption, something he could not do in 1992 due to this claim (per *Romano,* supra), being untimely and premature.

76.    p.9, l.15 "*Plaintiff's Claim is Barred by Claim and Issue Preclusion*". **Answer:** Incorrect, Plaintiff's Claim of Breach of 2003-07 Mandatory Redemption is not barred by Claim and Issue Preclusion (see *USA*, and *Romano* supra, and infra).

77.    p.9, l.23 "*Thus, application of both doctrines precludes parties from "contesting matters that they had a full and fair opportunity to litigate" "*. **Answer:** Correct, however, Plaintiffs <u>had no opportunity to litigate</u> the claim of Mandatory Redemption in 1992, which they could not do, due to it being untimely and premature (see *USA* and *Romano,* supra).

78.    p.10, l.3 "*First, Plaintiff previously litigated the breach of contract claim based on alleged deprivation of his "property rights" in his HBJ preferred shares. Second, the 9th Circuit determined that Plaintiff's sole remedy as an HBJ shareholder was to seek an appraisal of his shares*". **Answer:** Incorrect, per *USA,* Plaintiffs could have asserted many wrong claims, however, "*It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought*", and the fact is that none of those asserted claims as relating to the 2003-07 Mandatory Redemption could have been brought in 1992, for they were untimely and premature.

79.    p.10, l.20 "*The doctrine of claim preclusion bars all grounds for recovery which could have been asserted, whether they were or not*" and p.17, l.2 "*In order for collateral estoppel (issue preclusion) to apply, the issue to be foreclosed in the second litigation must have been litigated and decided in the first case*". **Answer:** Correct, however, Collateral estoppel does not ap-

ply to the 2003-07 Mandatory Redemption, for not all grounds could have been asserted in 1992 (see *Romano*, *"a cause of action for breach of contract does not accrue before the time of breach"*). Per *USA*, supra, Plaintiffs could have asserted many claims, however, *"It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought"*, and the fact is that none of those asserted claims as relating to the Mandatory Redemption could have been brought in 1992, for they were untimely and premature. The timely claim of breach liquidation preference was found to be invalid due to the merger not constituting liquidation, and so what was left before 2003, was only an optional right to Appraisal, which <u>was not perfected</u> due to the Summary Judgment in 1998.

80.    p.11, l.7 *"both lawsuits arise from the same "transactional nucleus of facts": the HBJ-GCC merger's effect on Plaintiff's "vested property rights" to $13.50/share and 12% dividends for his HBJ preferred stock. Therefore, Plaintiff's breach of contract claim is barred by res judicata"*, and p.12, l.7 *"Plaintiff's Breach of Contract Claim is Identical to His Prior Cause of Action"*. **Answer:** Incorrect, the two lawsuits do not arise from the same *"transactional nucleus of facts"* (see ¶.5). The 2003-07 Mandatory Redemption claim is not identical to the prior claim. The 1992 suit arose from the <u>transactional nucleus</u> of the <u>1991 HBJ-GCC merger</u> triggering the Right to Appraisal (see the 1994, 1998 9th Circuit's opinions, ¶¶.25,26, supra), and the <u>nucleus</u> of the present claim arose from the breach of the <u>1987 HBJ promise</u> to redeem in 2003-07 the 12% Preferred at $13.50/share plus all the cumulative 12% dividends by then in arrears.

81.    p.12, l.20 *"Plaintiff characterizes his prior suit as a "liquidation preference cause of action", in an attempt to make it seem different from what he now casts as a "breach of contract of the mandatory redemption provision""*. **Answer:** Incorrect, the Mandatory Redemption claim is not identical to the prior breach of "liquidation preference", which the 9th Circuit invalidated and turned into Appraisal. The 1992 suit arose from the 1991 merger triggering an optional Right to Appraisal, and the 2007 cause of action arose from the breach of the 1987 promise to redeem in 2003-07 at $13.50/share plus all the cumulative 12% dividends by then in arrears.

82.    p.14, l.2 *"his rights as a shareholder, including any rights to the redemption of his stock at maturity, were <u>extinguished</u> as a result of the 1991 HBJ-GCC merger. <u>See</u> NY BCL 623(e) (providing that upon consummation of a merger, a dissenting shareholder "shall cease to have any of the rights of a shareholder except the right to be paid the fair market value of his shares and any other rights under this section.""* and p.14, l.24 *"Plaintiff's claim is fundamentally nonsensical as a factual matter, because he is suing to enforce rights as a shareholder in a corporation that ceased to exist as a result of the merger"*. **Answer:** Incorrect, HBJ has ceased to exist, but per NY BCL §514(a)(b), §906(b)(3), Plaintiff's rights as a <u>debt</u> holder, including the rights to the Mandatory Redemption of his loan at maturity, were not extinguished as a result of any merger. NY BCL §514(a)(b), §906(b)(3), specify that <u>no</u> corporate <u>debt</u> and <u>liability</u> can be extinguished by the merger, and agreements to purchase corporations shares are always valid and can be enforced by the debt holder and the corporation alike.

83.    p.15, l.4 *"Since his own allegations plainly reveal that the alleged breaches accrued before he filed his first lawsuit, Plaintiff is precluded from a second bite at the apple"*. **Answer:** Incorrect, per *USA* in 1992 Plaintiffs could have asserted many claims, however, the fact is that

none of those asserted claims as relating to the Mandatory Redemption could have been brought, for they were untimely and premature (see *Romano,* supra).

84.    p.15, l.9 *"By the same token, he cannot avoid the finality of the judgment in his first lawsuit by characterizing it as one for breach of the "liquidation preference", and this action as one for a breach of the "redemption contract". These labels do not change the fact that both claims stem from the same transactional facts. Those facts are that Plaintiff's preferred shares were extinguished, in exchange for cash of $0.69/share, as a result of the HBJ/GCC merger in 1991".* **Answer:** Incorrect, the finality of the Summary Judgment in the first lawsuit was a voluntary exchange, i.e., "Please surrender your Certificate at $0.69/share for this is what it was worth in 1991". Plaintiff chose not to exchange, to this effect he still holds the 80% advance and the Certificate showing 5083 shares as of ~ 10/11/90 (though future-dated by HBJ to 11/21/91). Whereas, present action is for a Breach of the Mandatory Redemption, i.e., Defendant must redeem the 12% Preferred on terms and conditions HBJ promised from the beginning of debt's creation in 1987, in all $7,084,923.58 as of 6/30/2007.

85.    p.16, l.16 *"Issue Preclusion. Collateral estoppel applies where: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; (3) resolution of the issue in question was a necessary component of the decision; and (4) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication".* **Answer:** Incorrect. Collateral estoppel does not apply to the Plaintiff's Mandatory Redemption, for this issue per *Romano,* could not have been brought, and even though Plaintiffs have asserted many claims *"without any merit"*, per *USA*, *"It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought"*, and the fact is that none of those asserted claims as relating to the Mandatory Redemption could have been brought, for per *Romano,* they were untimely and premature.

86.    p.16, l.26 *"1) The 9th Circuit's ruling that Plaintiff's exclusive remedy was an appraisal would be impaired if Plaintiff could pursue the instant action; 2) The same evidence is required to support both suits; and 3) both actions involve infringement of Plaintiff's right to full renumeration for his "vested property right" in his former HBJ preferred stock".* **Answer:** Incorrect, 9th Circuit's ruling that <u>exclusive remedy in 1991</u> was an Appraisal, would not be impaired if Plaintiff would pursue the instant action, for that ruling stands and he is not trying to relitigate it, for it is true that <u>in 1991</u> *"exclusive remedy"* was an Appraisal. It is also true that in 2007 Plaintiff's *exclusive remedy* is an action for Breach of the Mandatory Redemption. Furthermore, the same evidence is not required to support both suits, i.e., there is no need for evidence of a 1991 merger, or Financial Expert's testimony as to the fair value, for there is no Appraisal Right left, but the evidence of the breach of promise stated in the 1987 HBJ Certificate of Incorporation, to redeem the 12% Preferred in 2003-07. Also, both actions do not involve infringement of Plaintiff's right to full renumeration for his *"vested property right"*, because this *right* would only be 100% vested (accrued) in 2003-07, and because it was not destroyed nor extinguished by the voluntary request to surrender at $0.69/share, nor by a voluntary Appraisal, <u>which was not perfected</u> due to the Summary Judgment.

87.    p.17, l.13 *"The issue necessarily decided by the District Court and the 9th Circuit -*

*Plaintiff's right to compensation arising from his ownership of HBJ preferred stock - is the identical issue presented by this lawsuit".* **Answer:** Incorrect, the issue of Plaintiff's right to compensation was only a single issue in 1992 - right to an optional Appraisal, which is not an identical issue to the one presented by this lawsuit arising from the 2003-07 Breach of the Mandatory Redemption of the 12% Preferred as <u>a debt and a liability</u> of the Defendant. The Mandatory Redemption issue is not optional, <u>it is mandatory</u>, it is a contractual obligation which Defendant must perform, for it is not a Right to Appraisal, but a Right to Redemption according with the terms of the 1987 Contract. This Right to Redemption, per *Romano,* was untimely and premature in 1992, and so could not have been brought, and even though Plaintiffs asserted many claims, per *USA* ,*"It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought".*

88.    p.17, l.17 *"the 9th Circuit necessarily decided that he was not entitled to receive $13.50/share, or 12% dividends, or anything more than $0.69/share for his HBJ stock, under any theory".* **Answer:** Incorrect, the 9th Circuit did not conduct an Appraisal nor did the District Court, and never decided that Plaintiffs were not entitled to receive $13.50, or $0.69/share. What the 9th Circuit decided in 1994 and confirmed in 1999 was that <u>in 1991 exclusive remedy</u> was an Appraisal, and that at the Appraisal Plaintiffs' *breach of fiduciary duty and fraud allegations* can be considered. By granting Summary Judgment, District Court disregarded 9th Circuit directive (¶¶.21-23), which gave Plaintiffs permission to bring forth those *allegations* at the Appraisal, and which would have affected the final "value" of the 12% Preferred, by taking it from the stock "market value" of $0.69, to the "fair value" of $13.50, for the 12% Preferred, ever since its creation in 1987, was never a simple stock, but a Loan - the Debt Security.

89.    p.17, l.23 *"Plaintiff's Breach of Contract Claim is Untimely. In addition to being barred by res judicata and collateral estoppel, Plaintiff's suit is time barred... NY requires that Plaintiffs file breach of contract claims 6 years from the date of accrual".* **Answer:** Incorrect, Plaintiff's 2007 Breach of Mandatory Redemption claim is not untimely. It is not barred by Res Judicata nor by the Collateral Estoppel. Plaintiff's suit is not time barred. NY law requires that Plaintiffs file breach of contract claims six years from the date of accrual, and the accrual has just happened on 6/30/03-07, and on a staggered contract, per *Romano,* the 6 year statute of limitations starts to run since 6/30/07 until 6/29/13.

90.    p.18, l.2 *"Plaintiff's claim accrued in 1991, when HBJ made it clear that no further dividends would be paid, and that no redemption of his preferred shares for $13.50 would ever take place"* and p.18, l.4 *"If Plaintiff had a contract with HBJ, that contract was repudiated in 1991".* **Answer:** Incorrect, Plaintiff's claim accrued in 2007 and not in 1991; HBJ could never declare implicitly or explicitly, that the dividends would not accumulate and be paid, and that no redemption in 2003-07 would ever take place because of the merger (see *Comparison of Stockholders' Rights,* ¶.7, ¶.5). Had HBJ made such a declaration in 1991 it would have been <u>illegal</u> per NY BCL §514(a)(b), §906(b)(3), and Plaintiffs and other dissenters would have sued in 1991 for Breach of Contract of the 2003-07 Mandatory Redemption. In *Romano,* CA Supreme Court (¶.49, supra) made it quite clear that – *"In the event the promisor repudiates the contract before the time for his performance has arrived, the plaintiff has an election of remedies - he may treat the repudiation as an anticipatory breach and immediately seek damages for breach of con-*

*tract..., or he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time... in the event the plaintiff disregards the repudiation, the statute of limitations does not begin to run until the time set by the contract for performance.*

## CONCLUSION

It has been shown that:

1.    Defendant attempts to dismiss Complaint for Breach of Contract of the year 2003-07 Mandatory Redemption, based on Plaintiff's hearsay in the previous unrelated litigation for Appraisal, using an inapplicable doctrine of Res Judicata, and Collateral Estoppel, as if the two claims of Appraisal and Breach of Contract were identical, and if that fails, based on the theory of 6 year Statute of Limitations, alleging that it started to run from 1991 and not 2007.

2.    *"A cause of action for breach of contract does not accrue before the time of breach".*

3.    *"It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." USA v Northrop Corp,* 9th Circuit, No. 96-55349.

4.    In the prior litigation, the Plaintiff had only one ground available, the unperfected Right to a non-mandatory Appraisal, and per *USA,* supra, it doesn't matter what other grounds he might have asserted or were determined to have, for what constitutes Res Judicata is a Yes answer to the question, whether these rights to recovery were available at the prior proceeding and whether they could have been brought.

5.    The 1991 HBJ-GCC merger never repudiated the 2003-07 Mandatory Redemption explicitly nor implicitly, for such a repudiation would have been illegal per NY BCL §514(a)(b), and §906(b)(3) - *"no liability or obligation due or to become due, ... shall be released or impaired by such merger or consolidation".*

6.    In the prior litigation for the unperfected Appraisal, Plaintiff did not have available the untimely ground of the year 2003-07 Mandatory Redemption, because per *Romano,* *"there can be no actual breach of a contract until the time specified therein for performance has arrived".*

7.    Per NY BCL §623(j), §514(a)(b), the Plaintiff has remained a Claimant.

8.    Plaintiff possesses *vested property rights* protected by the US Constitution, Art.I, §10 and Amendment XIV, §1, and the NY BCL §623(j), §514(a)(b), §906(b)(3).

9.    Per NY BCL §906(b)(3), the Defendant has inherited all Debts and Liabilities, for HBJ due to §906(b)(3) could not repudiate legally any of those Debts and Liabilities in 1991.

23

10.    Present action, is not time barred, because per _Romano_ "_the statute of limitations does not begin to run until the time set by the contract for performance_".

11.    The Defendant who is in the process of selling parts of the former HBJ for $4.0 billion, definitely is financially able to redeem all 525,920.0 Plaintiff's shares in arrears per NY BCL §514(a)(b), §906(b)(3), §623(j).


For all the foregoing reasons, Plaintiff respectfully requests the Court that the Defendant's Motion to Dismiss be denied.


Dated this January 25, 2008

_J. Czajkowski_

Jerry Czajkowski, Ph.D., in Pro Se

## EXHIBITS

## TABLE OF CONTENTS

7.    p.138-139 FROM THE 1991 HBJ–GCC MERGER PROSPECTUS ............... 26

8.    7/09/05 DRAFT OF THE BREACH OF CONTRACT COMPLAINT BY
ATKINS & DAVIDSON .......................................................................... 28

9.    11/4/97 ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT, USDC SDC ....................................................................... 33

10.   7/18/05 LETTER OF ATKINS & DAVIDSON TO K.FITZGERALD ............ 38

11.   9/05/05 LETTER OF ATKINS & DAVIDSON TO K.FITZGERALD ............ 40

12.   1/11/06 LETTER OF ATKINS & DAVIDSON TO J.CZAJKOWSKI ............ 42

13.   4/02/07 LETTER OF LEWIS LAW FIRM TO K.FITZGERALD ................... 43

14.   6/15/92 ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, USDC   49

15.   5/03/96 HBJ OFFER TO COMPROMISE, BY K.HOFFMAN ...................... 54

of authorized shares of capital stock from 160,000,000 to 180,000,000 and the total number of authorized shares of GCC Common Stock from 80,000,000 to 100,000,000.

The GCC Certificate of Incorporation provides that the GCC Board of Directors is authorized from time to time to issue preferred stock in one or more series and to determine with respect to each such series (a) the voting power, if any, (b) the dividend rate, (c) the rights in the event of liquidation, dissolution or winding up of the affairs of the corporation and (d) the right, if any, to convert or exchange such shares for any other class of capital stock.

## Rights of HBJ Preferred Stock and GCC Common Stock

### Election of Directors

*HBJ.* The HBJ Bylaws provide that the HBJ Board of Directors will consist of a minimum of three and a maximum of twenty directors. The directors are elected by a vote of the holders of HBJ Common Stock with each share of HBJ Common Stock entitled to one vote. As provided for by the terms of the HBJ Preferred Stock, the shares of HBJ Preferred Stock have no voting power unless and until (a) six quarterly dividends or the equivalent (whether or not consecutive) payable on any series of preferred stock of HBJ shall be in arrears in whole or in part whether or not earned or declared or (b) HBJ shall fail to redeem shares pursuant to any mandatory redemption or sinking fund obligation with respect to any series of preferred stock of HBJ (whether or not prevented from doing so by restrictions contained in the HBJ Certificate of Incorporation or any other agreement or instrument). In either such event, the number of directors is increased by two (or, in certain circumstances, one) and the additional director(s) are elected by the holders of all series of preferred stock of HBJ entitled to vote, including HBJ Preferred Stock, voting as one class. As of September 30, 1991, HBJ quarterly dividends on HBJ Preferred Stock were in arrears for three quarters.

*GCC.* The GCC By-laws provide that GCC's Board of Directors will consist of a minimum of six and a maximum of eighteen directors. The GCC Common Stock is entitled to one vote per share in the election of directors.

### Dividends

*HBJ.* The HBJ Preferred Stock is entitled to a 12% cumulative dividend computed on the $13.50 liquidation preference per share payable on the last day of each March, June, September and December of each year that the shares are outstanding. The dividends are payable in either cash or, through the period ending June 30, 1993, in additional shares of HBJ Preferred Stock. The HBJ Common Stock is junior to the HBJ Preferred Stock and, so long as any shares of the HBJ Preferred Stock remain outstanding, no dividend, whether in cash, property, or any other form, can be paid on any junior stock unless all current and past dividends on the HBJ Preferred Stock have been paid or declared and funds therefor set aside for payment.

*GCC.* The GCC Common Stockholder's rights to dividends are subordinated to the dividend rights of the holders of GCC Series A Stock. GCC Common Stock is entitled to receive such dividends and distributions in cash, stock or property as may be declared thereon by the GCC Board of Directors subject to the fact that for each dividend paid on the GCC Common Stock, a dividend equal to 90% of that amount must be paid on the GCC Class B Stock.

### Redemption

*HBJ.* HBJ Preferred Stock may be redeemed, in whole or in part, at the option of the HBJ Board of Directors, at any time or from time to time, at a redemption price of $13.50 per share in cash, together with accrued and unpaid dividends to the redemption date. HBJ is required to redeem (except to the extent prevented from doing so by restrictions contained in the HBJ Certificate of Incorporation or in any mortgage, indenture, loan agreement or stock purchase agreement (other than any stock purchase agreement relating to parity stock or junior stock) of HBJ in existence) on June 30, 2003 and on each June 30 thereafter through June 30, 2006, 20% of all the shares of HBJ Preferred Stock then outstanding, and on June 30, 2007, to

redeem all remaining shares of HBJ Preferred Stock outstanding, in each case, at the redemption price of $13.50 per share, plus accrued and unpaid dividends thereon to the date fixed for redemption.

*GCC.* There are no provisions for the redemption of the GCC Common Stock.

### Liquidation

*HBJ.* In the event of any liquidation, dissolution or winding up, the HBJ Preferred Stock has a liquidation preference of $13.50 per share plus any accrued and unpaid dividends to the liquidation date. No distribution can be made to the junior stock in the event of any liquidation, dissolution or winding up, until the holders of all the preferred stock of HBJ, including the HBJ Preferred Stock, have received their liquidation value in full.

*GCC.* In the event of a dissolution, liquidation or winding up, the GCC Series A Stock is entitled to a liquidation preference of $5 per share plus any accrued but unpaid dividends. Liquidation proceeds remaining after the satisfaction of such preference will be distributed ratably to the holders of GCC Common Stock, including those persons who become holders of GCC Common Stock by reason of converting their shares of GCC Class B Stock into GCC Common Stock, and the holders of GCC Series A Stock.

## Rights of HBJ Common Stock and GCC Class B Stock

### Election of Directors

*HBJ.* The HBJ Bylaws provide that HBJ's Board of Directors will consist of a minimum of three and a maximum of twenty directors. The directors are elected by a vote of the holders of HBJ Common Stock with each share of HBJ Common Stock entitled to one vote. As described above, the holders of HBJ Preferred Stock do not vote for the election of directors other than in certain circumstances. See "COMPARISON OF STOCKHOLDERS' RIGHTS: CHARTER AND BY-LAWS — Rights of HBJ Preferred Stock and GCC Common Stock — *Election of Directors*."

*GCC.* The GCC By-Laws provide that GCC's Board of Directors will consist of a minimum of six and a maximum of eighteen directors. Each share of GCC Common Stock has one vote per share on all matters and holders of GCC Common Stock are entitled to vote for the election of all directors and all other matters submitted to the stockholders. The GCC Class B Stock is entitled to one vote per share in the election of directors unless 20% of the shares of GCC Common Stock outstanding are beneficially owned by, or if more than 20% of the total voting power attributable to the shares of the GCC Common Stock are voted either directly or by proxy for a person other than those nominated by the GCC Board of Directors by, a person or group of persons acting in concert (unless, in either case, such person or group is also the beneficial owner of a majority of the shares of GCC Class B Stock). If such conditions are met, each share of GCC Class B Stock is entitled to ten votes in the election of directors.

### Dividends

*HBJ.* Subject to the claims of the holders of HBJ Preferred Stock (see "COMPARISON OF STOCKHOLDERS' RIGHTS: CHARTER AND BY-LAWS — Rights of HBJ Preferred Stock and GCC Common Stock — *Dividends*"), the holders of HBJ Common Stock are entitled to receive dividends payable in cash, property or shares of HBJ Common Stock or other stock if and when such dividends are declared by the HBJ Board of Directors.

*GCC.* The right to dividends of holders of GCC Class B Stock is subordinated to the dividend rights of the holders of GCC Series A Stock. Holders of a share of GCC Class B Stock are entitled to dividends and other distributions in the amount of 90% of any such dividend or distribution declared on a share of GCC Common Stock.

**Exhibit 7**

**27**

1  CLARK L. DAVIDSON (State Bar No. 215903)
   SHAUNA L. DURRANT (State Bar No. 228489)
2  **ATKINS & DAVIDSON**
   450 B Street, Suite 1430
3  San Diego, CA 92101
   Telephone: (619) 231-4725
4  Facsimile: (619) 231-4984

5
6  Attorneys for Plaintiff
   JERRY CZAJKOWSKI
7

8              SUPERIOR COURT OF CALIFORNIA

9                  COUNTY OF SAN DIEGO

10

11  JERRY CZAJKOWSKI, an individual,          Case No.:

12                          Plaintiff,        **COMPLAINT FOR DAMAGES:**

13      v.                                    **1) BREACH OF CONTRACT**

14
    REED ELSEVIER, INC., a Massachusetts
15  Corporation, and DOES 1-20, inclusive,
16                          Defendant.        **JURY TRIAL DEMANDED**

17

18

19      Complainant JERRY CZAJKOWSKI ("CZAJKOWSKI") complains against

20  Defendants REED ELSEVIER ("REED") and DOES 1-20 (collectively "DEFENDANTS")

21  as follows:

22                  **JURISDICTION AND VENUE**

23      1.    Proper venue and jurisdiction for this action, pursuant to California Code of

24  Civil Procedure § 410.10, lies with the Superior Court of California, County of San Diego.

25      2.    The majority of Defendant's wrongful and fraudulent acts occurred in the

26  County of San Diego, in the State of California and no federal question is raised or asserted

27  by Plaintiffs.

28  ///

        *Atkins & Davidson*
        *450 B Street, Suite 1430, San Diego, CA 92101*

                          -1-                        Exhibit 8
                       COMPLAINT
                          28

Atkins & Davidson
450 B Street, Suite 1430, San Diego, CA 92101

## THE PARTIES

3.     CZAJKOWSKI has, and at all times mentioned herein, been an individual residing in San Diego County, California.

4.     REED has, and at all times mentioned herein, been a Massachusetts corporation doing business in San Diego County, California.

5.     CZAJKOWSKI does not know the true names or legal capacities of the defendants sued herein as DOES 1-20, inclusive, and therefore sue said defendants by such fictitious names.

6.     CZAJKOWSKI is informed and believes, and thereon allege, that each of the defendants designated herein as DOE is legally responsible in some manner for the matters herein alleged, and is legally responsible in some manner of causing the injuries to CZAJKOWSKI as hereinafter alleged.

7.     CZAJKOWSKI is informed and believe, and based thereon allege, that, at all relevant times herein, DEFENDANTS, and each of them, were the employees, representatives, managing agents and/or authorized agents of the other DEFENDANTS.  In performing the acts alleged herein, DEFENDANTS, and each of them, were acting within the course and scope of their employment, representation and/or agency and with the consent and/or authority of the other DEFENDANTS.  Further, DEFENDANTS, and each of them, at all relevant times herein, ratified and affirmed the acts of the remaining DEFENDANTS.

## GENERAL ALLEGATIONS

8.     CZAJKOWSKI incorporates by reference and realleges paragraphs 1 through 7 as though fully set forth herein.

9.     Between October 1998 and May 1999, CZAJKOWSKI entered into a contract with Harcourt Brach Jovanich ("HBJ").

10.     The terms of the contract were such that CZAJKOWSKI agreed to purchase approximately 5,000 shares of HBJ 12% Preferred Stock.

11.     In return, HBJ agreed to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding

Exhibit 8

and on June 30, 2007, all remaining shares of outstanding HBJ Preferred Sock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption.

    12.    CZAJKOWSKI is informed and believes and based on such information and belief alleges that:

        a.    HBJ was acquired by Harcourt General Inc., who was then acquired by REED.

        b.    Harcourt General Inc. acquired all of the debts, liabilities, and obligations of HJB, including the contract with CZAJKOWSKI.

        c.    REED acquired all of the debts, liabilities and obligations of Harcourt General Inc., including the contract with CZAJKOWSKI.

    13.    As of June 30, 2003, CZAJKOWSKI owned approximately 20,393 shares of 12% Preferred Stock, and was entitled to a payment of approximately $55,060 pursuant to the terms of the contract.

    14.    However, REED did not pay CZAJKOWSKI $55,060 on June 30, 2003.

    15.    On June 30, 2004, CZAJKOWSKI owned approximately 22,952 shares of 12% Preferred Stock, and was entitled to a payment of approximately $61,969 pursuant to the terms of the contract.

    16.    However, REED did not pay CZAJKOWSKI $61,969 on June 30, 2004.

    17.    As CZAJKOWSKI has no intention of selling his share of 12% Preferred Stock, CZAJKOWSKI anticipates being the owner of approximately 25,833 shares of 12% Preferred Stock on June 30, 2005, and is entitled to a payment of $69,748 pursuant to the terms of the contract.

    18.    Based on past performance, CZAJKOWSKI anticipates that REED will not pay CZAJKOWSKI $69,748 on June 30, 2005.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

    19.    CZAJKOWSKI incorporates by reference and realleges paragraphs 1 through

Atkins & Davidson
450 B Street, Suite 1430, San Diego, CA 92101

        **Exhibit 8**

18 as though fully set forth herein.

20.     On or about 1999, CZAJKOWSKI entered into a contract with HBJ, whereas CZAJKOWSKI agreed to purchase approximately 5,000 shares of HBJ 12% Preferred Stock, and HBJ agreed to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007, all remaining shares of outstanding HBJ Preferred Sock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption.

21.     CZAJKOWSKI is informed and believes and based on such information and belief alleges that REED acquired the liability of this contract through its acquisition of Harcourt General Inc., who had acquired HBJ.

22.     CZAJKOWSKI fulfilled his obligation under the contract in that he purchased over 5,000 shares of HBJ 12% Preferred Stock in 1990, and still maintains ownership of these shares today.

23.     On June 30, 2003, CZAJKOWSKI owned approximately 20,393 shares of HBJ 12% Preferred Stock, and was entitled to a payment of $55,060 under the terms of the contract.

24.     REED breached the contract when it did not pay CZAJKOWSKI $55,060 on June 30, 2003.

25.     On June 30, 2004, CZAJKOWSKI owned approximately 22,952 shares of HBJ 12% Preferred Stock, and was entitled to a payment of $61,969.

26.     REED breached the contract when it did not pay CZAJKOWSKI $XXX on June 30, 2004.

27.     As CZAJKOWSKI has no intention of selling his shares of 12% Preferred Stock, CZAJKOWSKI anticipates being the owner of approximately 25,833 shares of 12% Preferred Stock on June 30, 2005, and is entitled to a payment of $69,748 pursuant to the terms of the contract.

28.     Based on past performance, CZAJKOWSKI anticipates that REED will not pay CZAJKOWSKI $69,748 on June 30, 2005.

Atkins & Davidson
450 B Street, Suite 1430, San Diego, CA 92101

29.     As a result of REED'S breaches, CZAJKOWSKI have suffered total damages in an amount $348,740.

## **PRAYER FOR RELIEF**

WHEREFORE, CZAJKOWSKI requests relief as follows:

1.     For compensatory damages;

2.     For prejudgment interest at highest lawful rate;

3.     For costs of suit, including reasonable attorneys' fees pursuant to any applicable law; and

4.     For such other and further relief as the court may deem just and proper.

DATED: _____

ATKINS & DAVIDSON

By: _____*DRAFT*_____

CLARK L. DAVIDSON
Attorney For Plaintiff
JERRY CZAJKOWSKI

Atkins & Davidson
450 B Street, Suite 1430, San Diego, CA 92101

-5-
COMPLAINT
32

Exhibit 8

FILED

NUV – 4 1997

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CZAJKOWSKI, LONIA CZAJKOWSKI,<br><br>                                   Plaintiff,<br><br>   vs.<br><br>PETER JOVANOVICH, HARCOURT BRACE JOVANOVICH,<br><br>                                   Defendant. | CASE NO. Civ. 92-0431-B (AJB)<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

On September 29, 1997, Plaintiffs filed a motion for summary judgment in the above-captioned matter. After reviewing the moving and responding papers, the Court hereby DENIES Plaintiffs' motion for summary judgment.

## I. BACKGROUND

Plaintiffs are former preferred shareholders of Harcourt Brace Jovanovich, Inc. (HBJ), a New York corporation. In January 1991, HBJ entered into a merger agreement with General Cinema Corporation. On November 1, 1992, Plaintiffs filed a written objection to the merger. On December 9, 1991, HBJ bought Plaintiffs' 5,083 shares of preferred stock for $2,810.90.

On February 25, 1992, Plaintiffs filed a pro se lawsuit in the Superior Court of the State of California, claiming that the defendants owe them $68,620.50 plus unpaid dividends and interest, the difference between the price at which HBJ purchased their shares and the $13.50 per share price to which Plaintiffs claim they were entitled based on the proxy statement they received from HBJ.

ENTERED ON 11/5/97

- 1 -

92cv431

**Exhibit 9**

33

1   Defendants removed the action from state court to the United States District Court for the Southern

2   District of California on March 25, 1992 under 28 U.S.C. §§ 1441. Shortly thereafter, Defendants

3   moved to dismiss pursuant to Fed. R. Civ. P. 9(b), 12(b)(6) and 12(e) of the Federal Rules of Civil

4   Procedure, which motion the Court granted without leave to amend.

5        Plaintiffs appealed the dismissal to the United States Court of Appeals for the Ninth Circuit.

6   The Ninth Circuit reversed and remanded, granting Plaintiffs leave to amend their complaint. The

7   Ninth Circuit held that New York law governed the case, and under New York law, plaintiffs'

8   exclusive remedy was an appraisal proceeding under N.Y. Bus. Corp. Law § 623(h). Czajkowski, et

9   al. v. Jovanovich, et al., No. 92-55787, Mem. Op. at 2-3 (9th Cir. June 8, 1994). In the District

10  Court and on appeal, Plaintiffs had argued that they were eligible for an "appraisal-equitable relief"

11  proceeding pursuant to N.Y. Bus. Corp. Law § 623(k). However, the Ninth Circuit held that

12  Plaintiffs had no equitable claims that would entitle them to relief under § 623(k). The Ninth Circuit

13  determined that, "[plaintiffs'] action is in essence a claim that they were not paid enough for their

14  shares, it is a claim for damages, and therefore is foreclosed unless it is recast as a claim for

15  appraisal." Czajkowski.

16       Pursuant to the Ninth Circuit's ruling, this Court granted plaintiffs leave to file a Fifth

17  Amended Complaint. In that complaint, plaintiffs requested that this Court appraise plaintiffs'

18  preferred shares in accordance with N.Y. Bus. Corp. Law § 623(h)(4). On June 26, 1997, this Court

19  granted Defendants' motion to join two dissenting shareholders for purposes of a § 623(h)(4)

20  appraisal. Plaintiffs have now moved for summary judgment on their Fifth Amended Complaint.

21                                **II. DISCUSSION**

22  **A. Standard of law for summary judgment**

23       On a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the

24  moving party must first establish that there is "no genuine issue of material fact and that the moving

25  party is entitled to judgment as a matter of law." British Airways Board v. Boeing Co., 585 F.2d

26  946, 951 (9th Cir. 1978). Summary judgment must be granted if the party responding to the motion

27  fails "to make a sufficient showing on an essential element of her case with respect to which she has

28  the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the moving

**Exhibit 9**

34

1  party has the initial burden of demonstrating that summary judgment is proper, that burden may be
2  discharged by pointing out to the court an absence of facts to support the nonmoving party's case. Id.
3  at 325. The moving party is not required to produce evidence showing the absence of a genuine issue
4  of material fact on such issues, nor must the moving party support its motion with evidence negating
5  the nonmoving party's claim. United Steelworkers of America, et. al. v. Phelps Dodge, et. al., 865
6  F.2d 1539, 1542 (9th Cir. 1989), cert. denied, 493 U.S. 809 (1989).

7       The burden then shifts to the nonmoving party to show that summary judgment is not
8  appropriate. Celotex, 477 U.S. at 324. To make such a showing, the nonmoving party must go
9  beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Id.
10 Such evidence need not be in a form admissible at trial to avoid summary judgment. Id. When
11 considering whether summary judgment is appropriate, the Court should draw all reasonable
12 inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257
13 (1986). The Court should then ask whether evidence has been presented which would allow a
14 reasonable jury to find for the non-moving party. Id. at 249-52. If the Court finds that no reasonable
15 fact-finder could, considering the evidence presented by the non-moving party and the inferences
16 therefrom, find in favor of that party, summary judgment is warranted.

17 **B. Plaintiffs do not request relief that this Court can grant.**

18      Instead of making arguments regarding appraisal under § 623(h)(4), Plaintiffs continue to
19 claim that they are entitled to relief under § 623(k). On appeal, the Ninth Circuit held that Plaintiffs
20 were not entitled to relief under § 623(k) because they had not alleged equitable claims that would
21 bring them within the scope of that statute. The Ninth Circuit concluded that Plaintiffs' only remedy
22 was appraisal under § 623(h). Plaintiffs claim that the Ninth Circuit ruling stemmed from an allegedly
23 erroneous order by the District Court stating that Plaintiffs had failed to allege the necessary equitable
24 claims to qualify for relief under § 623(k). Plaintiffs argue that they asked for "equitable relief of the
25 maturity value of the preferred bond-like stock," and "equitable relief of the merger," which, they
26 claim, means that they asked for specific performance of the HBJ Joint Proxy Statement, which they
27 believed to be a binding contract. Thus, they argue, the Court of Appeals' ruling that they did not
28 allege equitable relief constitutes a "miscarriage of justice." Because of this, Plaintiffs are asking the

- 3 -

92cv431

Exhibit 9

35

1   Court to disregard the Ninth Circuit's ruling on this issue.

2          When an issue in a case has already been decided by the same court or a higher appellate

3   court, the court may not re-examine that issue because the previous rulings constitute the "law of the

4   case." Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 834 (9th Cir. 1982). The law of the case

5   must be followed in all later proceedings at the trial level and on subsequent appeal "unless the

6   evidence on a subsequent trial was substantially different, controlling authority has since made a

7   contrary decision of law applicable to such issues, or the decision was clearly erroneous and would

8   work a manifest injustice." Id.

9          The evidence that Plaintiffs cite in support of their summary judgment motion is the same

10   evidence that they used in support of their § 623(k) claim in the District Court and on appeal. The

11   controlling New York Court of Appeals case relied upon by the Ninth Circuit in reaching its

12   conclusion, Walter J. Schloss Assocs. v. Arkwin Indus., 460 N.E.2d 1090 (N.Y. 1984) has not been

13   overruled, nor has § 623(k) been amended, since the Ninth Circuit's ruling. Finally, the Ninth

14   Circuit's decision in this case is only reviewable by the United States Supreme Court. After hearing

15   Plaintiffs' arguments on the issue of whether they were alleging an equitable claim, the Ninth Circuit,

16   on the basis of the evidence, found Plaintiffs' claim to be a claim for money damages, which is a legal,

17   not an equitable, claim. This finding was not clearly erroneous and thus does not work a manifest

18   injustice. Plaintiffs are advised that the Court is bound by the Ninth Circuit's ruling on the equitable

19   relief issue and that the Court will not disregard it.

20   **C. Plaintiffs have not shown an absence of material facts to support Defendants' case.**

21          Pursuant to the Ninth Circuit's decision, Plaintiffs' only available remedy is an appraisal

22   proceeding under § 623(h)(4). That section deals with the right of dissenting shareholders in a

23   corporate merger to receive payment for their shares. It states that "if the court finds that any

24   dissenting shareholder is so entitled, it shall proceed to fix the value of the shares, which, for purposes

25   of this section, shall be the fair value as of the close of business on the day prior to the shareholders'

26   authorization date." The statute lists the various factors that courts must consider in determining the

27   value of the shares.

28          To qualify for summary judgment under § 623(h)(4), Plaintiffs must demonstrate an absence

- 4 -

92cv431

**Exhibit 9**

1   of material facts in support of Defendants' contention that Plaintiffs have received the fair value of

2   their shares.  They have not attempted to do this in their motion.  For this reason, Plaintiffs' motion

3   for summary judgment is DENIED.

9       IT IS SO ORDERED.

11   DATED:     NOV  4 1997

12                UNITED STATES DISTRICT JUDGE

14   cc:    All Parties
         Magistrate Judge

- 5 -

92cv431

**Exhibit 9**

37

# ATKINS & DAVIDSON

Clark L. Davidson
Attorney & CPA
Direct: 619.255-4730
cdavidson@atkinsdavidson.com

July 18, 2005

**VIA ELECTRONIC & U.S. MAIL ONLY**

Kenneth Fitzgerald
Latham & Watkins
600 W Broadway, #1800
San Diego, CA 92101
Fax: 619-696-7419

*Re: Jery Czajkowski (HBJ/Reed Elsevier)*

Dear Mr. Fitzgerald:

I have corresponded with Mr. Bayer over the last few months regarding the formerly issued 12% Preferred Stock by Harcourt Brace Jovanich. Until further notice, I intend to correspond directly with you on this matter; and, I have notified Mr. Bayer of such, as well.

I have enclosed a copy of the Memorandum that I have from the Ninth Circuit. I understood in your letter that the Ninth Circuit upheld the District Court's former ruling in Mr. Czajkowski's case; however, the copy I have does not. The court vacated and remanded the case to the District Court. If there is another copy, please send to me for review.

In the former case, Mr. Czajkowski was in essence requesting a valuation of the stock; as New York law provides shareholders that right in the event of a merger or other corporate actions. The former case is different than the one now pending.

Mr. Czajkowski now seeks full and proper payment based on the contract between HBJ and himself, as he is the holder of a legal debenture, not of stock. The

– 2 –                                                      July 18, 2005

characteristics of the preferred stock that I have been able to discern fall within the parameters of a loan, not of stock, as more fully described below.

I attached a former page from a disclosure by HBJ, it appears to me to be from an annual 10K filing. As stated in the document attached, "[t]he 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity." (Emphasis added.) Other documents that I have reviewed set forth that the 12% dividend will accrue, even if not paid; this is equivalent to an interest payment on a loan. Also, the loan amount is callable by the holder of the note as of June 30, 2003 and is considered a mandatory payment on behalf of HBJ, or its predecessor. These characteristics again portray a "loan" not "stock."

I requested a number of documents from Mr. Bayer that would demonstrate that your client fully and properly paid my Mr. Czajkowski; I will re-request these documents through you. The requested documents are all discoverable; however, if you prefer to only provide the documents through formal discovery, you leave me no option but to file the lawsuit.

I would like to review the following documents:

1.    The prospectus for the 12% Preferred Stock;

2.    The annual 10K from 1990; and,

3.    Any documents to support any assertion that Mr. Czajokowski was paid for his loan to HBJ or that his shares of preferred stock were fully redeemed by HBJ or a predecessor.

If I conclude that I need to review more documents, I will let you know as the need arises.

I look forward to hearing back from you at your earliest convenience.


Very Truly Yours,

Clark L. Davidson

Exhibit 10

39

9/05/05

# ATKINS & DAVIDSON

Clark L. Davidson
Attorney & CPA
Direct: 619.255.4730
cdavidson@atkinsdavidson.com

September 5, 2005

**VIA ELECTRONIC ONLY**

Kenneth Fitzgerald
Latham & Watkins
600 W Broadway, #1800
San Diego, CA 92101
Email: KENNETH.FITZGERALD@LW.com

*Re:  Jery Czajkowski (HBJ/Reed Elsevier)*

Dear Mr. Fitzgerald:

I apologize in my delay to respond to your last letter. Clearly, we are not of the same perspective at this time; as I see a new cause of action in this matter, not yet raised before.  Further, your incessant condescension is not furthering this matter for either of our clients.

Whether or not your perspective on the matter is accurate, I am well aware of the fact that my client made a loan to your client, and your client has failed to ever pay back the value of the loan; and, I would currently believe that your client is financially solvent to make such payment.  If you had made this loan, you would also expect to be repaid as my client does.  This fact alone is not difficult to grasp.

I would still like to review the following documents:

1.    The prospectus for the 12% Preferred Stock; ·

2.    The annual 10K from 1990; and,

**Exhibit 11**

40

– 2 –                                              September 5, 2005

    3.     Any documents to support any assertion that Mr. Czajokowski was paid for his loan to HBJ or that his shares of preferred stock were fully redeemed by HBJ or a predecessor.

    I look forward to hearing back from you, and the opportunity to review these documents, at your earliest convenience.

Very Truly Yours,

Clark L. Davidson

**Exhibit 11**

**41**

*1/11/06*

# ATKINS & DAVIDSON

Clark L. Davidson
Attorney & CPA
Direct: 619.255.4730
cdavidson@atkinsdavidson.com

January 11, 2006

**VIA PERSONAL DELIVERY**

Jerry Czajkowski
6370 Streamview Drive
San Diego, California 92115

> ### Re:  *Disengagement of Atkins & Davidson, APC*

Dear Jerry:

This letter will serve to confirm for your records and ours that our firm no longer represents you in the matter against Harcourt Brace Jovanich, presently Reed Elsevier.

Jerry, it has been a pleasure to work with you and I wish you all the best in your continued pursuits of this wrong against you. As we have discussed, and you are aware from your own research, the law has various statutes of limitations that would bar any claims if made past a certain date. Therefore, if you are going to proceed further, I recommend you do so in a timely manner, and that you seek further legal representation, if you so desire.

I am sorry that I was unable to find a resolution for you; and, I hope that you will contact me in the future if you think I can be of further service to you. Lastly, I want to confirm in writing that you do not owe my firm any fees or costs for work previously performed. Good luck and take care.

Very Truly Yours,

Clark L. Davidson

# LEWIS LAW FIRM

PATRICIA ANN LEWIS
ATTORNEY AT LAW

1202 KETTNER BOULEVARD, SUITE 6100
SAN DIEGO, CALIFORNIA 92101-3312
TELEPHONE: (619) 225-0747
FACSIMILE: (619) 255-2452
WWW.LAWFIRMPAL.COM
PALEWIS@LAWFIRMPAL.COM

April 2, 2007

## CONTENTS PROTECTED BY
## CALIFORNIA EVIDENCE CODE §§1152, 1154

### VIA US MAIL & FACSIMILE

Kenneth M. Fitzgerald, Esq.
Latham & Watkins, LLP
600 West Broadway, Suite 1800
San Diego, California   92101-3375
FACSIMILE:   **(619) 696-7419**

*Czajkowski v. Harcourt Brace Jovanovich, Inc.*
*formerly known as Harcourt General, Inc.,*
*now known as Reed Elsevier, Inc.*

Dear Mr. Fitzgerald:

Be advised I represent Mr. Jerry Czajkowski regarding his claim for damages resulting from the breach of agreements made by Harcourt Brace Jovanovich, Inc. (HBJ) for failure to redeem debentures issued by HBJ, also referred to as the 12% Preferred.

You have participated in prior litigation with Mr. Czajkowski, who was acting with his mother in *propria persona*, and have extensive knowledge of the former claims. I understand that you still represent HBJ through Reed Elsevier, Inc. and that William Bayer, is your direct contact with the company.   We ask that you please forward this demand for damages to Mr. Bayer and your clients for their serious consideration.

Mr. Czajkowski was recently represented by Mr. Clark Davidson who submitted a valid argument to you for settlement on the 12% Preferred, confirming that the 'stock' is not corporate capital stock at all, but is defined by HBJ documents as a loan.

Mr. Davidson made two separate requests to you requesting documentation which would presumably confirm his argument that the 12% Preferred was a loan, presently outstanding, made by Mr. Czajkowski to HBJ.   Those requests went unheeded, which I reiterate here.

**Exhibit 13**

43

Latham & Watkins, LLP                                                    Page Two
Re:    *Czajkowski v. Harcourt Brace Jovanovich, Inc.*                   April 2, 2007
       *formerly known as Harcourt General, Inc.*
       *now known as Reed Elsevier, Inc.*

In 1998, HBJ's expert, Mr. Paul Pfleiderer opined that the redemption clause of the 12% Preferred was not triggered in the 1991 merger because HBJ had not invoked the option to redeem and/or because the 12% Preferred had to be outstanding in 2003, which then was still 12 years away.

It is our opinion that Mr. Czajkowski has a valid breach of contract claim against HBJ, whose liabilities were assumed by Harcourt General in the merger of 1991, and which debts were subsequently assumed by Reed Elsevier in that merger of 2001.

In making an assessment of the validity of Mr. Czajkowski's claims, the following is submitted for your client's review.

### 12% Preferred Issued in 1987

In 1987 HBJ was faced with a takeover by British Printing and Communication Corporation which was offering $44 per share common to HBJ shareholders.

To avoid the takeover, in May 1987, HBJ's Board of Directors adopted a recapitalization plan ("1987 Recapitalization"), consisting of payment of special dividends to majority shareholders consisting of $40 cash and issuance of free 12% Preferred notes to those shareholders. (*See,* Arthur Andersen "Notes," p. F-13).

The 1987 Recapitalization was given to common stockholders and convertible debenture holders, and financed by loans and sales of stock. (*See,* "Notes," p. F-13). The 12% preferred stock closed on the New York Stock Exchange at $10.88 per share on its first day of issuance and reached $12.25 per share in 1989.

In May 1987, HBJ repurchased some of its common stock and convertible debentures, and in 1988 converted (via redemption) all the preferred stocks it sold to institutional investors into bonds and debentures, excluding from redemption the 12% Preferred in the process. (*See,* "Notes," p. F-13).

**Exhibit 13**
44

Latham & Watkins, LLP                                    Page Three
Re:   *Czajkowski v. Harcourt Brace Jovanovich, Inc.*          April 2, 2007
      *formerly known as Harcourt General, Inc.*
      *now known as Reed Elsevier, Inc.*

## The Merger with General Cinema Corporation

As a result of HBJ's self-induced and highly leveraged financial position, HBJ entered into a merger agreement with General Cinema Corporation (GCC) in 1991 (*See,* "Notes," p. F-14).

## 12% Preferred Characterized as a Liability

The following excerpts from the audit done by Arthur Andersen & Company in 1991 identify and clarify the characterization of the 12% Preferred, as being truly a liability to HBJ.

The 12% Preferred is a debt with mandatory redemption provision, possessing a redemption face value of $13.50 per share, with a mandatory maturity date, redeemable in full, beginning 06/30/03 in level increments over 5 years  (*See,* "Notes," p. F-21).

When issued, the 12% Preferred was recorded at market value (*See,* "Notes," p. F-21).

Quarterly dividends were authorized to be paid in shares of more 12% Preferred, when declared.  (*See,* "Notes," p. F-21).

Unpaid dividends were authorized to accumulate on the 12% Preferred. (*See,* "Notes," p. F-21).

12% Preferred is classified outside of shareholders' equity. (*See,* "Notes," p. F-22).

Redeemable Preferred is shown as a liability on financial statements (*See,* "Notes," p. F-5).

Thus, it is very clear that the issuance of the 12% Preferred, initially used to thwart the takeover by British Printing and Communications, were actually loans, key instruments in long term debt financing, the effect of which was to put the holders of 12% Preferred in the position of secured lenders.

**Exhibit 13**

**45**

Latham & Watkins, LLP                                          Page Four
Re:   *Czajkowski v. Harcourt Brace Jovanovich, Inc.*          April 2, 2007
      *formerly known as Harcourt General, Inc.*
      *now known as Reed Elsevier, Inc.*

## Ownership of 12% Preferred

Jerry and Lonia Czajkowski purchased various shares of 12% Preferred from HBJ between 10/09/89 and 05/10/90, upon which accrued dividends resulted in the total ownership of 5,083 shares.

On 11/01/91, Jerry and Lonia Czajkowski, submitted a Notice of Election to Dissent to HBJ's 1991 merger with GCC, demanding payment for their shares.

Thereafter, HBJ issued a Dissenter Stock Certificate to Jerry Czajkowski, showing his ownership of 5,083 shares of 12% Preferred Stock, the original certificate of which is in his possession, a copy of which is attached for your reference.

On 11/21/91, HBJ issued payment to the Czajkowskis of $2,810.90 as a partial offer to pay for shares of merger dissenters. The transmittal by HBJ was accompanied by advice that acceptance of the payment did not waive any dissenters' rights and directed the Czajkowskis to refer to the 10/25/91 Joint Proxy Prospectus ("Merger Prospectus").

The Czajkowskis rejected the offer in correspondence to HBJ on 12/20/91, bringing to HBJ's attention that the Merger Prospectus stated that the 12% Preferred required payment in full to the Czajkowskis upon liquidation, dissolution or winding up of HBJ. In reliance on the provisos of the Merger Prospectus, the Czajkowskis made a counteroffer to HBJ for the balance of the face value of $13.50 per share, minus the prepayment, in the amount of $65,809.60.

## Federal Litigation

HBJ did not respond to Mr. Czajkowski's reasonable 1991 counter offer to settle for $13.50 per share, which, by the way, excluded any computations for the accrued dividends. What followed was lengthy and protracted litigation in the Southern District of California's federal court, in which you played a pivotal role defending HBJ.

Your correspondence with Mr. Davidson opined that the federal lawsuit, filed by Mr. Czajkowski *in propria persona,* extinguished his rights to any recovery from HBJ. However, as Mr. Davidson points out, that litigation was resolved as an action for *appraisal* of the 12% Preferred.

**Exhibit 13**

46

Latham & Watkins, LLP                                                    Page Five
Re:    *Czajkowski v. Harcourt Brace Jovanovich, Inc.*                   April 2, 2007
       *formerly known as Harcourt General, Inc.*
       *now known as Reed Elsevier, Inc.*

     Mr. Czajkowski's claim today is based on the failure of HBJ to pay the face value of the 12% Preferred as a liability which had not accrued at any time during the federal litigation and, cannot, therefore, preclude an action for breach of contract today.

### Corporate Liability

     In *Pittelman v. Pearce*, the court held that debenture holders are creditors whose remedies are limited to actions for breach of the indenture agreement. *Pittelman v. Pearce* (1992) 6.Cal.App.4th 1436, 1446-1447.

     In *Fox v. MGM Grand,* the appellate court affirmed dismissal on the basis that the debenture holder had not suffered damage at the time of filing suit, i.e., the loan had not ripened to maturity for payment. *Fox v. MGM Grand Hotels, Inc.* (1982) 137 Cal.App.3d 524, 525, rehearing denied.

     A surviving corporation in a merger succeeds to all the rights and property of the disappearing corporation and is subject to all of its debts and liabilities just the same as if those debts were originally incurred by the surviving corporation. *Maudlin v. Pacific Decision Sciences Corporation* (2006) 137 Cal.App.4th 1001, 1016.

     Here, the 1991 merger provided that HBJ will continue as the Surviving Corporation, hence, liability for its debts would continue under the newly formed Harcourt General, Inc.

     And the 1991 merger prospectus provided that upon winding up of HBJ, the 12% Preferred would have a liquidation preference plus accrued and unpaid dividends, mandating payment in full (*See*, Merger Prospectus, p. 134).

     As well, the 2001 merger with Reed Elsevier provided that Harcourt General will become a subsidiary of Reed Elsevier which will assume Harcourt's debts.

     In summary, then, Mr. Czajkowski's remedy as a note holder is for breach of contract, only when he has incurred damages as a result of a breach of that agreement. Here, the mandatory redemption of the 12% Preferred Stock was to begin at maturity on 06/30/03. There has been no redemption payment made to Mr. Czajkowski either by HBJ, Harcourt General, Inc., or Reed Elsevier, Inc.

**Exhibit 13**

47

Latham & Watkins, LLP

Re:  *Czajkowski v. Harcourt Brace Jovanovich, Inc.*
     *formerly known as Harcourt General, Inc.*
     *now known as Reed Elsevier, Inc.*

Page Six
April 2, 2007

### Damages

As of June 30, 2007, Mr. Czajkowski's contract damages are estimated to accrue, with compounded interest and dividends, to $482,800, less the advance of $2,810, leaving an amount owed to Mr. Czajkowski of approximately $480,000.   This damages amount is a good faith settlement demand.

You must be aware that Mr. Czajkowski is in earnest regarding his redemptive rights and anticipates HBJ will not readily succumb.  I urge you to provide evidence to support your client's denials, as the documents and information in our possession warrant pursuit of a breach of contract claim based upon our review of the facts, the law and the evidence.   Absent your response showing us where our analysis is flawed, as previously requested twice by Mr. Davidson, we presume there is no fact contrary to our understanding and, therefore, the basis for filing a complaint against your client would be well founded.  Upon that premise, there is reasonable cause and a good faith belief that there is a justifiable controversy under the facts and law.

Your response is anticipated within 10 days from the date of this demand.  As we are on the cusp of the statute of limitations, litigation must be pursued should your client not wish to entertain our demand.  In that event, please advise whether you are authorized to accept service of process for Reed Elsevier, Inc.

Sincerely,

LEWIS LAW FIRM

Patricia Lewis

PAL:tgs
cc:   Mr. Jerry Czajkowski

**Exhibit 13**

48

1
2
3
4
5
6
7
8



```
___ FILED      ___ LODGED
___ RECEIVED  ___ ENTERED

      JUN 1 5 1992

    CLERK, U.S. DISTRICT COURT
  SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY
```

9           UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11  JERRY CZAJKOWSKI, LONIA      )   CIVIL NO. 92-431-R(M)
    CZAJKOWSKI,                  )
12              Plaintiffs,      )
                                 )   ORDER GRANTING DEFENDANTS'
13          v.                   )   MOTION TO DISMISS AND DENYING
                                 )   PLAINTIFFS' MOTION TO STRIKE
14  PETER JOVANOVICH and HARCOURT)   LODGMENT OF FOREIGN AUTHORITIES
    BRACE JOVANOVICH, INC.,      )   IN SUPPORT OF DEFENDANTS'
15                               )   MOTION TO DISMISS
                Defendants.      )
16  _____)

17

18  <u>Background</u>

19      Plaintiffs are two former preferred shareholders of

20  Harcourt Brace Jovanovich, Inc. ("HBJ") who purchased their

21  preferred securities beginning in October 1989.  In January

22  1991, HBJ, a New York corporation,  entered into a merger

23  agreement with General Cinema Corporation ("GCC").  On

24  October 25, 1991, the shareholders of HBJ were furnished

25  with a Joint Proxy Statement, which set forth the details

26  of the proposed merger.  Prior to the completion of the HBJ

27  shareholder vote, on November 1, 1992, the plaintiffs filed

28                          1

Exhibit 14
49

a written objection to the merger with HBJ.  On December 9, 1991, HBJ paid the plaintiffs $2,810.90 for their 5,083 shares of preferred stock.

On February 25, 1992, plaintiffs filed a lawsuit in the Superior Court of the State of California, claiming that the defendants owe them $68,620.50 plus unpaid dividends and interest.  Defendants removed this action from state court under 28 U.S.C. section 1441(a) on March 25, 1992.  Defendants have moved to dismiss plaintiffs' claim based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Discussion

In reviewing a motion to dismiss, a court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  NL Industries, Inc. v. Kaplan 792 F.2d 896, 898 (9th Cir. 1986).  For the purpose of this order, the facts of plaintiffs' amended complaint, filed April 27, 1992, are accepted as true.

This action is governed by New York law.  The rights, obligations and liabilities of shareholders are governed by the laws of the state of incorporation.  Rogers v. Guaranty Trust Co., 288 U.S. 123 (1933).  Under New York law, an appraisal proceeding is the common remedy for a shareholder who dissents from a merger and does not accept the corporation's determination of the fair value of the

2

Exhibit 14
50

shareholder's stock.  The New York Business Corporation Act

provides, "Upon consummation of the corporate action, the

shareholder shall cease to have any of the rights of a

shareholder except the right to be paid the fair value of

his shares and any other rights under this section."  N.Y.

Bus. Corp. Law § 623(e).  The fair value shall be

determined in a special proceeding by the court in the

judicial district in which the office of the corporation is

located.  Id. at (h).  HBJ is a New York corporation, so

the determination would take place in that state.

An exception to the appraisal proceeding remedy permits

a shareholder to bring an "appropriate action" if the

merger is "unlawful or fraudulent as to him."  Id. at (k).

An "appropriate action" is one seeking equitable

relief.  Walter J. Schloss Associates v. Arkin Indus.,

Inc., 61 N.Y.2d 700, 702 (1984).

Plaintiffs admit that they are not asking for the

equitable remedy of rescission.

> "In this case the Plaintiff..., based on their
> interpretation of statutes and the theory of the
> breach of contract and fraud, can not request
> rescission of the 'bona fide' merger between HBJ
> and GCC, as equitable relief ....  Instead they are
> pleading for the liquidation and/or maturity value
> of the preferred bond-like stock as equitable
> relief, in light of breach of contract, fiduciary
> duty and fraud, all of which fall under the
> exclusivity rule of sub[division] (k) of Sec[tion]
> 623."

Plaintiffs' opposition to defendants' motion to dismiss at

8.

3

Exhibit 14

51

Plaintiffs contend that the claims asserted in the first amended complaint may be considered "equitable" in nature.  The plaintiffs allege that "[t]he Court may find that the 'equitable relief' in this case is the liquidation/maturity value of the HBJ Pref. Stock of $13.50."  Plaintiffs' Amended complaint at 2.

Plaintiffs cannot avoid an appraisal proceeding merely by describing their claims as ones for equitable relief. Plaintiffs have stated the quintessential claim at law, a demand for monetary damages.  See Breed v. Barton, 54 N.Y.2d 82, 87 (1981).  Plaintiffs cite no authority to explain how this claim for money can be viewed as an equitable claim.

Plaintiffs' claim is precisely the type that the New York Court of Appeals has held was not a request for equitable relief.  Walter J. Schloss Associates v. Arkin Indus. Inc., 61 N.Y.2d 700, 702 (1984).  In Walter v. Schloss, the plaintiff was a minority stockholder who objected to a merger on the ground that the corporation's offer of fair value for his shares was inadequate.  After dropping claims for recision and an accounting, the plaintiff's complaint sought monetary damages only.  The court held that "there was a fatal absence of any primary request for equitable relief in the complaint, and that, therefore, the action was barred by the rule of exclusivity set forth in subdivision (k) of section 623."  Id. at 702-

4

Exhibit 14

52

02.  Appraisal in New York is plaintiffs' exclusive remedy in this case as well.

Plaintiffs' attempt to distinguish <u>Walter J. Schloss</u> as a case that required an accounting, as opposed to the case at bar, which plaintiffs allege needs no accounting, misunderstands the holding of the case.  <u>Walter J. Schloss</u> requires that a plaintiff request equitable relief to state of cause of action.  <u>Id</u>. at 702.

Defendants' motion to dismiss is granted.  Plaintiffs' motion to strike lodgment of foreign authorities in support of defendants' motion to dismiss is denied.

IT IS SO ORDERED.

Date: 6/15/92

_____
JOHN S. RHOADES, SR.
UNITED STATES DISTRICT
JUDGE

Copies to:

Jerry Czajkowski
Lonia Czajkowski
7944 La Jolla Shores Dr.
San Diego, CA  92037

Robert B. Clark
Luce, Forward, Hamilton & Scripps
600 West Broadway, Suite 2600
San Diego, CA  92101-3391

Copies
Furnished
In Ct.
CMG

5

**Exhibit 14**
53

# LATHAM & WATKINS

### ATTORNEYS AT LAW

701 "B" STREET, SUITE 2100

SAN DIEGO, CALIFORNIA 92101-8197

TELEPHONE (619) 236-1234

FAX (619) 696-7419

TLX 590778

ELN 62793276

PAUL R. WATKINS (1899-1973)
DANA LATHAM (1898-1974)

May 3, 1996

**CHICAGO OFFICE**
SEARS TOWER, SUITE 5800
CHICAGO, ILLINOIS 60606
TELEPHONE (312) 876-7700
FAX (312) 993-9767

**LONDON OFFICE**
ONE ANGEL COURT
LONDON EC2R 7HJ ENGLAND
TELEPHONE + 44-71-374 4444
FAX + 44-71-374 4460

**LOS ANGELES OFFICE**
633 WEST FIFTH STREET, SUITE 4000
LOS ANGELES, CALIFORNIA 90071-2007
TELEPHONE (213) 485-1234
FAX (213) 891-8763

**MOSCOW OFFICE**
113/1 LENINSKY PROSPECT, SUITE C200
MOSCOW 117198 RUSSIA
TELEPHONE + 7-503 956-5555
FAX + 7-503 956-5556

**NEW YORK OFFICE**
885 THIRD AVENUE, SUITE 1000
NEW YORK, NEW YORK 10022-4802
TELEPHONE (212) 906-1200
FAX (212) 751-4864

**ORANGE COUNTY OFFICE**
650 TOWN CENTER DRIVE, SUITE 2000
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 540-1235
FAX (714) 755-8290

**SAN FRANCISCO OFFICE**
505 MONTGOMERY STREET, SUITE 1900
SAN FRANCISCO, CALIFORNIA 94111-2562
TELEPHONE (415) 391-0600
FAX (415) 395-8095

**WASHINGTON, D.C. OFFICE**
1001 PENNSYLVANIA AVE., N.W., SUITE 1300
WASHINGTON, D.C. 20004-2505
TELEPHONE (202) 637-2200
FAX (202) 637-2201

<u>VIA HAND DELIVERY</u>

<u>CONFIDENTIAL -- OFFER TO COMPROMISE</u>

Jerry Czajkowski, Ph.D.
7944 La Jolla Shores Drive
La Jolla, CA  92037

Dear Dr. Czajkowski:

       I am writing this letter in an attempt to persuade you
to agree to a settlement of this litigation.  On behalf of the
defendants and Harcourt General Corporation, I have made several
unsuccessful attempts in the past to settle this case with you.
Most recently, on March 4, 1996, I urged you to agree to a
reasonable settlement of this dispute before Magistrate Judge
Battaglia at the Early Neutral Evaluation Conference.
Specifically, I offered $10,000 to settle the matter.  Your
response was to demand $120,000.

       Having been unsuccessful in obtaining your agreement to
a reasonable settlement, I write now to place you on notice that,
if Harcourt General is forced to defend this meritless, wasteful,
and unnecessary litigation, Harcourt General intends to seek
reimbursement of all costs and attorneys' fees which it is
entitled to under the law.

       Preliminarily, I urge you to seek legal advice.  Your
assertions in this lawsuit are uninformed, ill-advised, and
ignore governing law and the pertinent facts.  Legal advice from
a qualified attorney might assist you in understanding several
fundamental concepts which I do not believe you grasp at the
current time.

       First, as the Ninth Circuit has held, you are entitled
to one remedy only as a dissenting shareholder from a duly
approved merger -- an appraisal proceeding to fix the fair value
of your shares at the time of the merger.  Such an appraisal

t:\kfitzger\hbj\czajkowski.lt3

**Exhibit 15**

LATHAM & WATKINS

Jerry Czajkowski, Ph.D.
May 3, 1996
Page 2

proceeding, if conducted, will inevitably result in the
conclusion that your shares of preferred stock in the then debt-
ridden and near bankrupt Harcourt Brace Jovanovich, Inc. were
worth the amount offered to you at the time of the merger, or
less.  Thus, you have nothing to gain by prosecuting such a
proceeding.  You do, however, have much to lose.

          Under New York Business Corporations Law § 623(h)(7),
the court may, in its discretion, assess all or any part of the
costs, expenses and attorneys' fees incurred by defendants if the
court finds that your refusal to accept Harcourt General's offer
was arbitrary, vexatious, or otherwise not in good faith.  We
believe that your continued refusal to accept the offer of
Harcourt General Corporation for your preferred shares of
Harcourt Brace Jovanovich, Inc. is arbitrary, vexatious, and not
in good faith.  This conclusion is supported by the following
facts.

          You have repeatedly contended that your shares of
preferred stock are like a bond, and should have been redeemed in
full like the bonds issued by Harcourt Brace Jovanovich, Inc.
This is simply wrong.  A bond is very different from a share of
preferred stock.  You purchased your stock subject to the risks
normally attendant to such an investment.  One of those risks is
that the company will not be able to meet its debt obligations,
pay dividends, or have sufficient cash to redeem its preferred
stock.  Another risk is that the company will merge with another
entity.  Another risk is that the company may file for
bankruptcy.  These risks and others cause the purchase of stock
to carry no guarantees such as the one you are attempting to
enforce in this suit.

          Second, you have repeatedly asserted that your HBJ
preferred shares were required to be redeemed at their
$13.50/share redemption liquidation value upon the merger of HBJ
and General Cinema Corporation.  That assertion is plainly wrong.
The Ninth Circuit has held that no redemption right was triggered
by that merger, because the merger was not a liquidation.
Therefore, you have no legal entitlement to the $13.50 per share
liquidation price for your preferred stock.

          Third, you are claiming that your HBJ preferred shares
were worth more than the price offered to you at the time of the
merger.  This is simply not so.  At the time of the merger, HBJ
was in serious trouble.  It was heavily burdened with debt, its
stock price was tumbling as the requirements for servicing that
debt grew more onerous, and it was on the brink of bankruptcy

t:\kfitzger\hbj\czajkowski.lt3

**Exhibit 15**

55

LATHAM & WATKINS

Jerry Czajkowski, Ph.D.
May 3, 1996
Page 3

before the merger was consummated.  At the time of that merger, you were offered the chance to redeem your HBJ shares for Harcourt General shares at a ratio of .0395 Harcourt General shares per share of HBJ preferred.  At that time, Harcourt General stock was worth approximately $13.00 per share.  Thus, had you accepted the Harcourt General corporate offer, you would have received stock worth approximately $2,600.  Because Harcourt General stock has appreciated, and now trades at approximately $43.50 per share, the 200 shares in Harcourt General stock (which you may still claim) are worth approximately $8,700 today.

Alternatively, you were offered a net share price of 69¢ per share for your HBJ shares.  At the time, had you accepted this offer, you would have received $3,507.27.

In order to recover in an appraisal proceeding, you would have the burden of proving that your HBJ shares were worth more than 69¢ per share at the time of the merger.  You will not be able to make this showing.

The best measure of the fair value of stock is its trading price on the open market.  <u>Leighton v. AT&T Co.</u>, 397 F. Supp. 133, 136 (S.D.N.Y. 1975).  At the time of the merger, your shares were trading for approximately 69¢ per share.  Given the financial crisis facing the company, its preferred stock may have been worth less.  HBJ had an enormous load of debt at the time. It was unable to pay dividends on its preferred stock.  The New York Stock Exchange had threatened to remove it from the trading list because the company's earnings and share price were so low. Its revenues were diminishing, it had insufficient assets to satisfy bondholders and preferred shareholders, and it was facing a possible bankruptcy.  Had the company filed bankruptcy proceedings, the preferred shareholders would have received pennies per share, or less.  In sum, the evidence will demonstrate that 69¢ per share reflected or exceeded the fair value of your shares at the time of the merger.

Nevertheless, defendants wish to avoid the unnecessary expense of continued litigation.  Therefore, defendants offer to settle this case for $15,000.

This settlement offer exceeds anything you could realistically and reasonably hope to gain by continuing to pursue this litigation.  My clients are unwilling to incur additional attorneys' fees and expenses to litigate a case which should be resolved without further delay.  If they are forced to incur such expenses, they will seek to recover them from you to the full

t:\kfitzger\hbj\czajkowski.lt3

**Exhibit 15**

56

LATHAM & WATKINS

Jerry Czajkowski, Ph.D.
May 3, 1996
Page 4


extent permitted by law.  In light of the above, I urge you to
accept the offer contained herein and agree to dismiss the
pending litigation with prejudice.

       Should you wish to discuss this matter, I encourage you
to call me.

                         Very truly yours,

                         *Kyle W. Hoffman*

                         Kyle W. Hoffman
                         of LATHAM & WATKINS


cc:  Kathi Hartman
     Kenneth M. Fitzgerald

Jerry Czajkowski, Ph.D., in Pro Se
6370 Streamview Dr
San Diego, CA 92115
619-287-2944

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CZAJKOWSKI, Ph.D., an individual, | Case No.: 07 CV 2383 JM (LSP) |
| Plaintiff, | |
| vs. | **Declaration of Service** |
| REED ELSEVIER, INC., a Massachusetts | |
| Corporation, | Honorable Jeffrey T. Miller |
| Defendant | |

I am a resident of the State of California, over the age of 18 years, and not a party to the within action. On January 25, 2008, I served the within document(s):

**Opposition To the Motion To Dismiss, and Answering Memorandum of Points and Authorities.**
**Opposition to the Judicial Notice Request**

**By regular mail** (C.C.P. § 1013(a)): I caused the above document(s) to be deposited in the US mail in San Diego, with postage thereon fully prepaid addressed to the party listed below.

K.Fitzgerald, Esq
Latham & Watkins LLP
600 West Broadway, Suite 1800
San Diego, CA 92101-3375

Executed on 25th of January, 2008

_____
M.Czajkowski