Jerry Czajkowski, Ph.D., in Pro Se
6370 Streamview Dr
San Diego, CA 92115
619-287-2944

FILED

08 FEB 22 PM 2: 34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

CP                    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CZAJKOWSKI, Ph.D., an individual, | Case No.: 07 CV 2383 JM (LSP) |
| Plaintiff, | |
| vs. | **Opposition to the Motion for Sanctions Against Vexatious Litigant** |
| REED ELSEVIER, INC., a Massachusetts Corporation, | Date: March 7, 2008<br>Time: 13:30<br>Courtroom: 16 |
| Defendant | Honorable Jeffrey T. Miller |

## **PREAMBLE**

This Opposition to the *Motion for Sanctions Against Vexatious Litigant (MSAV)* is based on the *Civil Rule 83.4* and the NY case law of *Rehberger v. MRW Group*, (Exh.26). Defendant's *Motion for Sanctions* is in violation of *Local Rule 83.4*, but foremost, contradicts the New York case law of *Rehberger v. MRW Group*, id.

### *Civil Rule 83.4 Professionalism*

*a. **Code of Conduct.** The United States District Court for the Southern District of California is committed to the highest standards of professionalism and expects those standards to be observed by lawyers who practice before it...*
*1. **Conduct to Follow.** An attorney in practice before this court shall:*
*   *a. Be courteous and civil in all communications, oral and written, and in all proceedings conduct herself/himself with dignity and respect.*
*2. **Conduct to Avoid.** An attorney in practice before this court shall not:*
*   *a. Disparage the intelligence, ethics, morals, integrity or behavior of opposing parties or counsel unless such characteristics are at issue.*
*   *c. Knowingly participate in litigation or any other proceeding that is without merit or is designed to harass or drain the financial resources of the opposing party.*
*   *f. Seek sanctions against or the disqualification of any other attorney for any improper purpose.*

1

## TABLE OF CONTENTS

PREAMBLE ...................................................................... I

BREACH OF STOCK REDEMPTION AGREEMENT PER NY BCL §514(a)(b) *Rehberger, v. MRW Group, Inc.* No. 05CV0210. June 28, 2005 ........... 1

*"In this case, the issue (right to "buy-out" in 2003-07) was not raised in the previous litigation, nor could it have been litigated in the previous proceeding for the reasons mentioned above (as it was premature). The ("buy-out") issue could not have been litigated at the time the state court action was pending and therefore should not be barred. Thus, Defendant's Motion to Dismiss pursuant to 12(b)(6) must be denied." Rehberger v. MRW Group* ................................. 3

In 1992, 1994 and 1998 in the District Court and on Appeal, the Record Shows that Four Issues Were Addressed and Resolved ...................................... 4

Primary Issue That Was Litigated ............................................. 4

Issues That Remain to be Litigated ............................................ 5

Defendant's Actions Show Poor Judgment and Professionalism ..................... 5

Per NY BCL §514(a)(b) Plaintiff Seeks Specific Performance of the 1987 HBJ Contract ..................................................................... 7

The NY BCL §623(e) Is Not an "Exclusive Remedy" per §514(a)(b) and §906(b)(3) ................................................................... 8

CONTRACTS – FEDERAL AND STATE CASE LAW ............................... 10

Plaintiff's 5th Amended Complaint of 12/26/95 for Appraisal Did Not Relate Back to the Original Complaint of 02/24/92 for Breach of Contract Because the Condition Precedent Has Not Been Met ...................................... 12

RELATION BACK OF AMENDMENTS - NEW YORK CASE LAW ............. 14

CONCLUSION ................................................................. 15

# TABLE OF AUTHORITIES

## CONTRACTS – FEDERAL AND STATE CASE LAW

*Rehberger, v. MRW Group*, No.05CV0210. 6/28/05 USDC NY, WL 1544806 ......... 10
*U.S. v. Trusty Capital, Inc.*, S.D.N.Y.,2007. No. 06-CV-8170 ........................... 10
*§ 514. Agreements for purchase by a corporation of its own shares*. McKinney's
Consolidated Laws of New York, Article 5. Corporate Finance ..................... 10
*Welch Foods, Inc. v. Wilson*, 716 N.Y.S.2d 243 ........................................... 10
*Chambers v. Chambers*, 471 N.Y.S.2d 958 ................................................ 10
*Black v. Of Kitchen Things II*, 467 N.Y.S.2d 167 ........................................ 10
*Bochino v. Palmer*, 203 NYS.2d 301 ....................................................... 10
*Matter of Colonial Trust Co.*, 67 N.Y.S.2d 534 .......................................... 10
*McKee v. McKee*, 39 N.Y.S.2d 859 .......................................................... 10
*Hanfeld v. A. Broido, Inc.*, 3 N.Y.S.2d 463 ............................................... 10
*Sliosberg v. New York Life Ins. Co.*, 216 N.Y.S. 215 ................................... 11
*Powers v. Shepard*, 1 Abb.Pr.N.S. 129 .................................................... 11
*In re Bicoastal Corp.*, 600 A.2d 343 ....................................................... 11
*Ericksen v. Winnebago Industries, Inc.*, 342 F.Supp. 1190 ......................... 11
*Allstate Ins. Co. v. Oxford Finance Companies*, 275 F.Supp. 54 ................... 11
*Breslav v. NY & Queens Electric Light & Power Co.*, 7 N.E.2d 708 ................ 11
*Borst v. East Coast Shipyards*, 105 N.Y.S.2d 228 ...................................... 11
*Bartfield v. RMTS Associates, LLC*, 726 N.Y.S.2d 618 ................................ 12

## RELATION BACK OF AMENDMENTS - NEW YORK CASE LAW

*Morales, v. Fail Safe, Inc.*, 95 L 14595 ................................................... 13
*Hyacinthe v. Edwards*, 781 N.Y.S.2d 771 ................................................ 14
*McKinney's CPLR 203*........................................................................... 14
*Harding v. Harris*, 622 N.Y.S.2d 631 ..................................................... 14
*Brickman v. Town of Oyster Bay*, 203 N.Y.S.2d 490 ................................... 14
*Brenner v. City of New York*, 172 N.Y.S.2d 312 ........................................ 14
*Transpacific S.S. Co. v. Marine Office of America*, 163 N.Y.S.2d 171 ............. 15
*Talley v. Lamb*, 100 N.Y.S.2d 112 ......................................................... 15
*Lewis v. Wilson & Co.*, 87 N.Y.S.2d 372 .................................................. 15
*Dobbs v. Pearl*, 118 N.Y.S. 485 ............................................................ 15

**BREACH OF STOCK REDEMPTION AGREEMENT PER NY BCL §514(a)(b)**
*Rehberger, v. MRW Group, Inc.* No. 05CV0210. June 28, 2005 (Exh.26)
**United States District Court, E.D. New York. 2005 WL 1544806**

*1 On January 14, 2005, Plaintiff Frederick Rehberger ("Plaintiff" or "Rehberger"), filed a Complaint alleging (1) Plaintiff has subject matter jurisdiction under 28 U.S.C. § 1332; (2) Plaintiff is entitled to judgment declaring that the sums of money formerly paid by Defendant MRW Group, Inc. ("Defendant" or "MRW Group") to Travelers Group are available as surplus which are required to be paid to the Plaintiff in performance of and in accordance with the Stock Redemption Agreement; (3) Plaintiff is entitled to judgment declaring that the MRW Group must pay to Plaintiff, on a monthly basis, at least the sum of money it heretofore paid to Travelers Group on a monthly basis retroactively from September 1, 2004, until such time as Plaintiff has been paid the sum of $1,796,750.00, plus interest from November 8, 2001; (4) Defendant should be directed to specifically perform the Stock Redemption Agreement; and (5) Plaintiff is entitled to any further relief this Court may seem just and proper, plus all allowable costs and fees of this action. Pending before this Court is Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

...in June 1987, the Plaintiff, as well as the other shareholders, entered into a Stock Redemption Agreement, which set forth the rights, duties, and obligations of the shareholders in the MRW Group. Under Article IV of the Stock Redemption Agreement, after a stock holder reaches the age of sixty he can require the other stockholders and/or the corporation itself to "buy-out" his shares of stock for the value stated in Article VI. Article VI of the Stock Redemption Agreement stipulates the controlling value of the outstanding shares of common stock in the MRW Group to be $7,000,000.00 unless all of the stockholders agree to a new value in writing. In November 1999, Plaintiff notified the MRW Group in writing that he had reached the age of sixty and he wanted to sell his shares--25.668% of the shares of common stock of the MRW Group--pursuant to Article IV of the Stock Redemption Agreement.

On November 8, 2001, Justice Elizabeth H. Emerson granted summary judgment against the MRW Group finding (1) the Plaintiff could enforce the Stock Redemption Agreement; (2) the $7,000,000 value stated therein was controlling; and (3) the dollar value of Plaintiff's share of 25.668% of the MRW Group is $1,796,760. In addition, Justice Emerson held that in accordance with Sections 513 and 514 of the New York Business Corporation Law any payments to the Plaintiff from the MRW Group are limited to years in which a surplus is available. Subsequently, on June 17, 2002, the Appellate Division, Second Department affirmed Justice Emerson's ruling and remitted the matter for entry of the Judgment declaring the value of the outstanding shares of common stock of the MRW Group to be $7,000,000.

*2 Plaintiff alleges that the Defendant has not complied with the state court's judgment because it has not made any payments to the Plaintiff even though it has a surplus. This surplus as defined by Sections 102 and 513 of the Business Corporation Law, is alleged to currently exist as a result of the Defendant completing monthly payments owed to Travelers Group.

*3 In this case, the state court has already addressed certain issues involving the alleged injury to the Plaintiff including his right to payment under certain circumstances. Nonetheless, the Plaintiff has raised issues that have yet to be decided. The state court declared the Plaintiff was only entitled to payment under certain circumstances. Those circumstances include whether a surplus exists. Whether or not the Defendant has a surplus, and therefore becomes obligated to "buy-out" the Plaintiff, is a controversy that was not determined by the state court. Although, presumably, the Plaintiff could have brought this action in state court, the Plaintiff can still bring this case in Federal court through diversity of citizenship jurisdiction. 28 U.S.C. § 1332.

A. Standard Governing Rule 12(b)(6)

A district court should not grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." ... When applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the Plaintiff, as well as accept these factual allegations as true. ... Moreover, the court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ...

*4 The Defendant alleges the Plaintiff has failed to set forth a claim upon which relief can be granted because of the preclusive effects of the doctrines of res judicata and collateral estoppel. Specifically, the state court's decision addressed the Plaintiff's claim and therefore he should be barred by commencing a second litigation in Federal Court.

In the instances when "there is a final state court judgment, a federal court looks to that state's rules of res judicata to determine the preclusive effect." ... In New York, "under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." ... This rule is applied "not only to claims actually litigated but also to claims that could have been raised in the prior litigation." The Defendant alleges that the instant claim should have been brought in the state court action. Despite the Defendant's contention, the instant claim could not have been brought in the earlier state court action. The MRW Group's obligation to Travelers Group was paid in full in August 2004, at which time the surplus monies in question became available. However, the State Court decision was rendered in November 2001. Consequently, a declaratory judgment action as to the availability of this specific surplus could not have been asserted in the prior state proceeding. Furthermore, the preclusive effect of the prior state court declaratory judgment action "is limited to the subject of the declaratory relief sought." ...

Collateral estoppel or issue preclusion exists "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated by the same parties in a future lawsuit." ...Collateral estoppel is only permissible as to a given issue when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." ... In this case, the issue was not raised in the previous litigation, nor could it have been litigated in the previous proceeding for the reasons mentioned above. The issue could not have

*been litigated at the time the state court action was pending and therefore should not be barred.*

*\*5 Thus, Defendant's Motion to Dismiss pursuant to 12(b)(6) must be denied.*

*CONCLUSION. For the foregoing reasons, Defendant's motions to dismiss are DENIED pursuant to Rule 12 of the Federal Rules of Civil Procedure. SO ORDERED*

*"In this case, the issue* **(right to "buy-out" in 2003-07)** *was not raised in the previous litigation, nor could it have been litigated in the previous proceeding for the reasons mentioned above* **(as it was premature).** *The ("buy-out") issue could not have been litigated at the time the state court action was pending and therefore should not be barred. Thus, Defendant's Motion to Dismiss pursuant to 12(b)(6) must be denied." Rehberger v. MRW Group, id.*

1.      In Plaintiff's case, Defendant wrongly asserts that *"The issue necessarily decided by the District court and the Ninth Circuit – plaintiff's right to compensation arising from his ownership of HBJ preferred stock – is the identical issue presented by this lawsuit... The record reveals that the two complaints "clearly arise from the same transactional nucleus of facts"* (p.11, ll.16-20, 1/29/08 MOPA).

2.      These allegations are incorrect, for the record reveals to the contrary, that there were two different transactional nucleuses of facts leading to an appraisal and to the *mandatory redemption,* see ¶.5, 1/25/08 Opposition. Namely, the first transaction, the 1991 HBJ-GCC merger triggering right to appraisal, subject to the *condition precedent* of the 80 day statute of limitations (incidentally, this appraisal was barred, for the Plaintiffs' 5th Amended Complaint did not relate back to the original complaint), and leading to the primary issue of whether the 1991 $0.69/share offer was *"fair"* or *"unfair".* The second transactional nucleus, the 1987 HBJ promise codified in its amended Certificate of Incorporation, of the year 2003-07 *mandatory redemption* per NY BCL §514(a)(b), has led to the right of the *mandatory redemption* and to the new issue of whether the Defendant *"becomes obligated to buy-out the Plaintiff"* and redeem the 12% Preferred as promised at maturity in 2003-07. In conclusion, quoting *Rehberger,* supra, *"In this case, the issue* (right to *"buy-out"* in 2003-07) *was not raised in the previous litigation, nor could it have been litigated in the previous proceeding for the reasons mentioned above* (as it was premature). *The ("buy-out") issue could not have been litigated at the time the state court action was pending and therefore should not be barred. Thus, Defendant's Motion to Dismiss pursuant to 12(b)(6) must be denied." Rehberger v. MRW Group, Inc,* Exh.26

3

### In 1992, 1994 and 1998 in the District Court and on Appeal, the Record Shows that Four Issues Were Addressed and Resolved

(1) *"Accordingly, the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding."* (this conclusion was in error, for the <u>condition precedent</u>, 80 days to file and state an appraisal claim, was not met by the Plaintiffs).

(2) *"First, the Czajkowskis contend that the merger was in fact liquidation of HBJ and, therefore, that they were entitled to payment of $13.50/share liquidation preference. This contention lacks merit.";* and then in 1998, *"in Plaintiffs' diversity action alleging that HBJ breached a liquidation preference clause by failing to redeem Plaintiffs' shares of HBJ preferred stock at the purported guaranteed redemption price of $13.50/share when HBJ merged with GCC in 1991".*

(3) *"Second, the Czajkowskis contend that their action falls within the "appropriate action" exception because they sought equitable relief for fraud. This contention also lacks merit."*

(4) and that in 1991 the $0.69/share HBJ offer for the 12% Preferred was *"fair", "my opinion that the price offered to the holders of the preferred stock of HBJ, $0.69125 per share, <u>was a fair price"</u>* (Exh.3, p.29, l.12, 12/19/07 Complaint)

### Primary Issue That Was Litigated

3.     The main issue litigated up to the 2/09/98 Summary Judgment, was the question whether the 1991 $0.69/share offer was *"fair"* or *"unfair"*. See Defendant's RJN, Exh.A, p.5 stating,

> *"The only evidence before the court is an expert opinion from Defendants' witness that <u>the price was fair</u>. Given the opportunity to take discovery or designate expert witnesses has passed, it does not appear the Plaintiffs will produce anything other than their own opinions that the price was unfair",* and
> *"my opinion that the price offered to the holders of the preferred stock of HBJ, $0.69125 per share, <u>was a fair price;</u>"* (Exh.3, p.29, l.12, 12/19/07 Complaint)

4.     Under the NY BCL §623(h)(8), if there was an appraisal proceeding, the Defendant after the surrender of the Certificate and return of the $2,810.90 (80%) offer would have to issue a 100% payment of $3,507.27. Therefore, based on the 1998 $0.69/share *"fairness"* finding, in effect of the barred appraisal, it can be concluded that the Defendant (since there was no Certificate surrender nor the 100% payment ever made), unsuccessfully tried to cancel the future (2003-07) $7,084,923.58 debt in 1991 and then again in 1998 for $2,810.90. Therefore application of the doctrines of Res Judicata or Collateral Estoppel definitely would permit the Defendant to be unjustly enriched at the expense of the Plaintiff (see also ¶¶.32-34, 2/22/08, MPFO).

4

## Issues That Remain to be Litigated

**1. Can the Unperfected Right to Appraisal (Whether or Not It is Barred by the 80 day Statute of Limitations), Extinguish Contract Rights Protected by the US Constitution Article I, §10, and Amendment XIV, §1 ?**

**2. Whether or Not in 2003-2007 the Defendant Had a Surplus, and Therefore Was Obligated to "Buy-Out" the Plaintiff Per NY BCL §514(a)(b) and §906(b)(3) ?**

## Defendant's Actions Show Poor Judgment and Professionalism

5.      Foremost, Defendant failed to obtain an approval from the United States Government before making of public record, Government's Cold War covert operations behind the Iron Curtain in Warsaw, Poland, in which Plaintiff's parents Lonia and W.Czajkowski participated, and the Plaintiff who with his brother, via E.J. Piszek of Philadelphia, acted as messengers for the President of the United States, Richard M. Nixon (Motion for Sanctions MOPA, p.3, ll.26-28). The former National Security Advisor, H. Kissinger, in his memoirs called those operations *"the Warsaw Channel"* (Declaration,.Exh.B, p.7). Because of similar ongoing operations around the world, obtaining such a permission would show sound judgment on part of the Defendant.

6.      In 1991, HBJ informed that there where 48 dissenting shareholders holding 820,675 12% Preferred shares. In 1992 Defendant intentionally did not invoke the 80 day statute of limitations as to the only viable for 80 days 1991 claim of appraisal, and dismiss Plaintiffs' Complaint for *failure to state a claim upon which relief can be granted*. Defendant chose to continue that meritless litigation for many reasons. However, one thing is known that if Defendant convinced all the 48 dissenters to voluntarily surrender their 12% Preferred at $0.69/share and forego all the dividend shares in arrears, he would come to save close to $1.1 billion in 2007.

7.      In 1998, Defendant's Counsel Mr.K. Fitzgerald thanks to this meritless 1994-1999 appraisal litigation, and the joinder of Mr.Richard C. Zeigler (holding 10,000 12% Preferred shares) and Mr.Vojislav Pejic (16,000 shares), and subsequent confidential settlements with the two, leading to the voluntary dismissal of their claims, Mr.K. Fitzgerald had saved the Defendant at least $36 million (based on a rough estimate of $7,000,000 per 5,000 shares). These savings offset very well the litigation expenses that the HBJ incurred in the prior 1994-1999 proceeding for the <u>unperfected</u> and <u>barred</u> by the 80 day statute of limitations, Appraisal.

5

8.    On 7/20/05 Mr.K. Fitzgerald warned Plaintiff's counsel Mr.Clark Davidson- *"Should he renew his vexatious efforts, my client will hold him, and all those assisting him, fully responsible"*, despite this threat in his 9/05/05 reply, Mr. Davidson did not scare, but asked Mr.K. Fitzgerald to provide proof that Plaintiff's shares were ever fully redeemed. Mr.K. Fitzgerald never provided such a proof. (Exh.11, Opposition, 1/25/08)

9.    Mr. Davidson well aware of Mr.K. Fitzgerald's allegations to be without any merit, on 1/11/06 in a disengagement letter did not advise the Plaintiff not to pursue this contract action any further, but to seek additional legal representation, or as previously, to do it in propria persona (Exh.12, id.).

10.    On 6/23/06 having more time on his hands, and after finding an additional cause of action, Mr. Davidson wanted to continue to represent the Plaintiff against the Defendant on a full contingency basis (see proposed Engagement Offer letters, Exhs.19, 21, id). At the time Plaintiff chose to seek a second opinion after being informed that Mr.K. Fitzgerald's threat of sanctions if motioned and granted, in effect, will affect the Plaintiff, as well.

11.    Plaintiff's next counsel Ms.Patricia Lewis of Lewis Law Firm also was not distressed by Mr.K. Fitzgerald's *"vicious commentary"* of 4/11/07, and by his meritless threats and accusations. In response she wrote on 4/23/07 a Settlement Demand and a detailed response letter (Exh.17, id.). After Plaintiff's prior counsel Mr.Clark Davidson expressed continued interest in representing the Plaintiff, as on 6/12/06, also on a full contingency basis (see Engagement Offer, Exh.21, id.), the Plaintiff fearing the solo practitioners limited resources in taking on the largest publishing firm in the world and alike the Law Firm of Latham & Watkins, chose to return to the three lawyer team of Atkins & Davidson.

12.    After some deliberation, the Plaintiff decided to find a New York Class Action Law Firm, but because of too small an initial erred claim of $479,926.24, the big firms were not interested. When Defendant gave public notice that the sale of Harcourt Education Division will complete sooner than expected (mid December 2007), Plaintiff decided to stop looking for representation and to file in pro per, on neutral grounds in the Illinois US District Court, in Chicago, where the Defendant conducts business, as well.

13.    On 12/13/07 Plaintiff filed his Breach of *Mandatory Redemption* action in Chicago, and on the same date the sale of former HBJ Division was completed. However, his complaint due to the lack of subject matter jurisdiction, was dismissed without prejudice also on 12/13/07. On

12/19/07 Plaintiff stunned by this venue mistake, quickly refiled the Complaint in the Southern District Court of CA, in the process correcting the accounting mistake he had made, because of the HBJ accounting error or "future-dating" of the Certificate from about 10/11/90 to 11/21/91. This error was quite substantial, as it changed the damages sought from $479,926.24 to $7,084,923.58.

14.    As it turned out, the Plaintiff was correct to continue in propria persona, for on about 12/14/07 when he performed a full accounting of all his 12% Preferred's purchases, declared and undeclared (in arrears) cumulative 12% dividends, he discovered that on 11/25/91, the last day of trading and finalization of the HBJ-GCC merger, he owned 78,455.5 shares in arrears, and had bought net 4,710 shares, for a total of 83,165.50 shares, and on 6/30/07 the final day of the prom-ised *mandatory redemption*, together with all the 12% cumulative dividends in arrears, he owned 525,920.0 shares worth $7,084,923.58.

**Per NY BCL §514(a)(b) Plaintiff Seeks Specific Performance of the 1987 HBJ Contract**

15.    Plaintiff in 2005-2006 was represented by the Law Firm of Balboa Law and its three at-torneys Mr. Mr.Clark Davidson, Mr. Todd Atkins, and Ms. Shauna Durrant, presently known as Atkins & Davidson. In 2006-2007, the Plaintiff was represented by Ms. Patricia Lewis of Lewis Law Firm. In all, these four Counsel despite the history of the former 1994-1999 unperfected and barred by the 80 day statute of limitations litigation for appraisal, and Defendant's bullying in form of threats of sanctions and malicious prosecution, did not waver from their stance on the common law Breach of Contract claim of Plaintiff's right to the 2003-07 *Mandatory Redemp-tion*. This conclusion is supported by two Offers of Engagement of Atkins & Davidson (supra), and 4/23/07 response and Demand letter of Ms.Lewis (Exhs.17, 19, 21, 2/06/08, Additional Points and Authorities).

16.    In his Motion for Sanctions, Defendant misinforms that because he "educated" Plaintiff's counsel and Plaintiff proceeds now in propria persona, the Plaintiff's 12/19/07 Breach of Con-tract action must be frivolous and without any merit, and barred by Res Judicata, Collateral Es-toppel, and 6 year Statute of Limitations. In the process, Defendant neglects to point out that in this case, Plaintiff's two claims (past and present) are not subject to Res Judicata and the two is-sues (past and present) also are not subject to Collateral Estoppel, for they are non-identical.

7

Namely, in 1994, in error, Plaintiffs were given leave to ask for an Appraisal, stemming from the transactional nucleus #2 - the 1991 HBJ-GCC merger, and in 2007 Plaintiff has accrued the right to the *mandatory redemption* given to him by the 1987 HBJ Certificate of Incorporatation - the transactional nucleus #3 (see ¶.5, p.1 1/25/08 Opposition). Therefore, the <u>issues</u> and the <u>claim</u> of *mandatory redemption* arose from the transactional nucleus #3, and the <u>issues</u> and the <u>claim</u> of the <u>barred</u> Appraisal, arose from the transactional nucleus #2, and so the two, Appraisal and *Mandatory Redemption* issues/claims, because originating from two different transactional nu-- cleuses are not the same, and therefore are not barred by Res Judicata nor by Collateral Estoppel (see the arguments in the 2/22/08 Opposition to the *Motion for Pre-Filing Order Against Vexatious Litigant (MPFO)*, based on the *Restatement of Judgments* and <u>*Rehberger v. MRW Group,*</u> Exh.26). Defendant's attempt to clump these two non-identical transactional nucleuses #2 and #3, under the single transactional nucleus term of *"the right to compensation"*, is not correct, for the issue of the 1987 promise to 2003-07 *mandatory redemption* at $13.50/share, is not identical to the issue of the voluntary 1991 offer per NY BCL §623, to exchange at the "appraised" *"fair value"* of $0.69/share.

### <u>The NY BCL §623(e) Is Not an *"Exclusive Remedy"* per §514(a)(b) and §906(b)(3)</u>

17.   In 1992 Plaintiffs filed a Breach of *liquidation preference* Contract action under the common law in the CA Superior Court, Defendants transferred the case to the Federal Court under the diversity jurisdiction. Later on in 1994 under the legal advice of the Defendants, the Plaintiffs case was transformed into an appraisal by the 9th Circuit under the NY statute of the BCL §623. In 1994 the 9th Circuit concluded that *" the district court correctly determined that the Czajkowskis' exclusive remedy* (in 1991) *was an appraisal proceeding",* but not after 2/27/92, for the <u>*condition precedent*</u> of 80 days to file and state an appraisal claim per NY BCL §623(h)(1)(2), was not met in time. In 2007 Plaintiff brought a non-identical Breach of Contract of the *Mandatory Redemption* action in the District Court, this time raising the Federal Question under the US Constitution Art. I, §10, Amend.XIV, §1, Obligations of Contracts, asking, Can a NY appraisal statute §623, deprive him of his contract rights and at the same time of *vested property rights*, when the NY BCL §514(a)(b), §906(b)(3), forbid such a deprivation ? and especially when the 9th Circuit's 1994 Opinion that *"the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding"* must have referred to the year

8

1991 and not 2007, because in 1992 the right to appraisal was already barred by the NY BCL §623(h)(1)(2) ?

18.    According to the *Restatement (Second) of Judgments §26* and *§28*, Plaintiff can bring an action in Federal Court, which raises such a Federal Question (see the 2/22/08 Opposition to the Motion for Pre-Filing Order Against Vexatious Litigant, based on the Restatement of Judgments and *Rehberger v. MRW Group,* Exh.26).

19.    Per *Restatement (Second) of Judgments*, because Plaintiff's 1992 and 2007 claims, and 1992 and 2007 issues were different, his second action for specific performance of the contract is not precluded because of the first action for appraisal, which, as the Plaintiff has now discovered, was barred by the 80 day statute of limitations, and the primary single issue adjudicated thereby was not the Plaintiff's *"right to compensation"*, but the *"fair value"* of the 12% Preferred in 1991 (supra, p.4, Issue 4). Plaintiff never had any express *right to compensation*, but (1) in 1991 for 80 days, a voluntary right to Appraisal; (2) in case of liquidation of HBJ, the right to $13.50/share *liquidation preference,* and (3) in 2003-07 the right to *mandatory redemption* also at $13.50/share (see ¶.5, 1/25/08 Opposition). Had there been an HBJ bankruptcy in 1991 instead of a merger, Plaintiff's rights to appraisal, *liquidation preference*, and *mandatory redemption*, all might had vanished. Since any compensation was always secondary, and in effect of these three rights, Defendant's claim that it was the primary right is simply an oversimplification, and a wrong one at that.

20.    Therefore before 2/27/92, there were three issues to be asserted, but only one was viable - the right to appraisal and not to compensation (the *mandatory redemption* as untimely and premature could not have been brought, *liquidation preference* was not triggered by the merger, and an appraisal right was there only for 80 days, starting 12/09/91-2/27/92).

21.    In effect of the 1994-1999 Federal Litigation for an issue of appraisal, collateral estoppel applies and bars the relitigation of this issue of appraisal, and not the issue of the right to *mandatory redemption*. However, since the Plaintiff on 02/27/92 lost the right to appraisal, and never asked for it in his original 2/25/92 Complaint for Breach of Contract, and on 6/08/94 long after the statute of limitations had expired, there could have been no "relation back", this would seem to make the whole issue of appraisal, moot.

## CONTRACTS – FEDERAL AND STATE CASE LAW

22.    *§ 514. Agreements for purchase by a corporation of its own shares.* Comment: This section follows no particular statutory model, but is designed to remove doubts cast by certain cases in New York and other jurisdictions having similar corporation laws upon the validity and enforceability of a corporation's contracts for the reacquisition of its own shares. McKinney's Consolidated Laws of New York, Article 5. Corporate Finance

23.    *(1) Mandatory redemption of preferred securities.* Preferred Securities purchased by SBA on or after November 21, 1989 shall be redeemed by the issuer not later than fifteen years from the date of issuance, at a price not less than the par value, plus any unpaid dividends accrued to the redemption date.(2) It is unquestionable that Defendant has violated federal rules and regulations issued under the authority of SBA. For example, Defendant has violated the rule that any preferred securities purchased by SBA be redeemed within fifteen years of their issuance. See 13 C.F.R. § 107.205(b)(3)(ii) (1991). Here, the Preferred Stock was issued on February 12, 1991. Thus, to abide by SBA rules, the Preferred Stock had to be redeemed by February 12, 2006. U.S. v. Trusty Capital, Inc., S.D.N.Y.,2007. No. 06-CV-8170

24.    *Contract Clause of the United States Constitution prohibits a State from passing any law impairing the obligation of contracts.* U.S.C.A. Const. Art. 1, § 10, cl. 1. Welch Foods, Inc. v. Wilson, 716 N.Y.S.2d 243

25.    *Subsequent laws which in their operation amount to denial of rights accruing by a prior contract are obnoxious to constitutional objection.* U.S.C.A. Const. Art. 1, § 10, cl. 1. Chambers v. Chambers, 471 N.Y.S.2d 958

26.    *It is basic to our system of government that impairment of contract is a violation of Constitution.* U.S.C.A. Const. Art. 1, § 10, cl. 1. Black v. Of Kitchen Things II, 467 N.Y.S.2d 167

27.    *No action on the part of a State or subdivision thereof may impair the obligation of a specific contract.* U.S.C.A. Const. art. 1, § 10; Const. art. 1, § 15. Bochino v. Palmer, 203 NYS.2d 301

28.    *The constitutional guaranty of contract does not extend beyond insurance that contracting party will receive full cash value of his contract right.* U.S.C.A. Const. art. 1, § 10. Matter of Colonial Trust Co., 67 N.Y.S.2d 534

29.    *If a contract when made was valid by the laws of the state, as such laws were then expounded by all the departments of the state government and administered in the courts of justice of the state, the validity and obligation of the contract may not be impaired by any subsequent act of the legislature of the state, or by any decision of the courts of the state, altering the construction of the statute.* McKee v. McKee, 39 N.Y.S.2d 859

30.    *Any law which in its operation amounts to a denial or obstruction of rights accruing by contract is unconstitutional.* Hanfeld v. A. Broido, Inc., 3 N.Y.S.2d 463

31.    *Provision of Const.U.S. art. 1, § 10, cl. 1, prohibiting states from impairing obligation of contracts, is mandatory direction, which Legislature may not ignore.* Sliosberg v. New York Life Ins. Co., *216 N.Y.S. 215*

32.    *Under our system of government, the moral, religious, and economic interests of society are beyond the sphere of legislative action. The exercise, by the Legislature, of a control over the terms of contracts, was never contemplated by the framers of the political constitution, and is nugatory.* Powers v. Shepard, *1 Abb.Pr.N.S. 129*

33.    *A creditor sought to exercise its right to elect a majority of the board of directors of its debtor when the debtor failed to redeem the junior preferred stock held by the creditor by the mandatory redemption date. The Court of Chancery issued order finding that creditor was entitled to elect and had validly elected three directors and denied the motions of holder of debtor's stock and two minority directors of debtor to intervene. On consolidated appeal, the Supreme Court, Christie, C.J., held that: (1) debtor obligated itself to satisfy substantial junior note and to redeem junior preferred stock prior to mandatory redemption date or else creditor would be permitted to exercise its right to elect majority of directors of debtor's board; (2) nonredemption provision in debtor's certificate of incorporation was not invalid preference under Delaware law; and (3) creditor was not barred from exercising its election right under the certificate of incorporation because an injunction issued by Federal District Court allegedly temporarily suspended debtor's duty to meet its contractual obligations.* In re Bicoastal Corp., *600 A.2d 343*

34.    *Redemption provision contained on stock certificates constituted a contractual agreement between corporation and shareholder.* Ericksen v. Winnebago Industries, Inc., *342 F.Supp. 1190*

35.    *Contract between preferred stockholder and corporation required the latter to pay to the stockholder, even after redemption of the shares themselves, accrued cumulative dividends.* Allstate Ins. Co. v. Oxford Finance Companies, *275 F.Supp. 54*

36.    *Complaint in action by minority holder of preferred and common stock to enjoin corporation and company owning majority of stock from reclassifying and changing preferred stock which was not subject to redemption or retirement, so as to render it subject to redemption and retirement at $105 a share, and thereby coerce minority stockholders to relinquish preferred stock for consideration far below its actual and reasonable value held to state cause of action. Stock Corporation Law, §§ 36, 85.* Breslav v. New York & Queens Electric Light & Power Co., *7 N.E.2d 708 N.Y.,1937*

37.    *(1) Although option to redeem certain stocks contained in corporate charter has been exercised by corporation in such manner as to become binding and enforceable contract incapable of unilateral rescission or cancellation, enforcement of such contract will not be granted if it requires redemption of stock in violation of law. (2) Where action is brought to enforce contract for redemption by corporation of its stock, burden is on corporation to establish presence of statutory impediment to redemption. In action by holder of preferred stock against corporation to recover redemption price of stock together with accumulated dividends, evidence established that assets of defendant corporation were understated and that its liabilities were overstated and*

*that surplus existed which was available for redemption of outstanding preferred stock. Borst v. East Coast Shipyards,* 105 N.Y.S.2d 228

38.    *Following plaintiff's resignation from corporation, corporation's failure to repurchase plaintiff's equity interest constituted breach of contract, where plain language of such contract established that corporation was obligated to repurchase plaintiff's equity interest upon the termination of his relationship with corporation, regardless of the reason for the termination and regardless of whether any of his purchase price had been paid. Bartfield v. RMTS Associates, LLC,* 726 N.Y.S.2d 618

### Plaintiff's 5th Amended Complaint of 12/26/95 for Appraisal Did Not Relate Back to the Original Complaint of 02/24/92 for Breach of Contract Because the *Condition Precedent* Has Not Been Met

39.    Plaintiffs 1994-1999 Federal Litigation for appraisal was barred by the NY BCL §623(h)(1)(2) 80 day statute of limitations, because the time to request an appraisal expired on 02/27/92, and although two years later on 6/08/94 Plaintiff received the unasked for leave to amend, the appraisal amendment per FRCP Rule 15(c)(1)(2) did not relate back to the original complaint of 02/24/92. In their original complaint Plaintiffs never gave notice that they would ever ask for appraisal, and they did not, by specifically demanding the $13.50/share *liquidation preference* of the 12% Preferred based on the theory that the 11/25/91 HBJ-GCC merger was in fact a liquidation of HBJ. Plaintiffs avoided invoking the right to appraisal, for they were well informed by HBJ and the NY BCL §623(h), that the last market price of the 12% Preferred usually is deemed to be the *"fair value"*. Instead, on p.2, l.7 of the 2/24/92 Breach of Contract and Fraud Complaint (Exh.27), Plaintiffs asked for the *"full value"* of $13.50 due to the breach of the *liquidation preference* promise. In short the 1994-1999 litigation for appraisal was illegal as it was barred by both the FRCP Rule 15(c)(1)(2) and NY BCL §623(h)(1)(2). See Plaintiff's 2/01/08 Reply for additional information, and the supporting case law, infra.

40.    The concept of *"relation back"*, with its requirements is thoroughly explained by the case law from the state of Illinois *Morales, v. Fail Safe, Inc.,* 95 L 14595, and in summary by the following New York cases, infra.

41.    *Morales, v. Fail Safe, Inc* makes it clear that in order for relation back to be applicable the original complaint must give notice of the claim the future amendment may raise, as well as the statutory basis (*"condition precedent"*) for any future claim has to be asserted in the original complaint.

*"First, the court found that count II of the Third Amended Complaint could not relate back to plaintiff's First Amended Complaint under section 2-616 of the Code of Civil Procedure... because the dramshop action against Fail Safe was not filed within one year of March 26, 1995, the date of the alleged occurrence. Second, the court determined that plaintiff's First Amended Complaint did not contain sufficient information to put Fail Safe on notice of a dramshop claim sufficient to allow relation back under section 2-616.*

*We begin our analysis by reviewing the Dramshop Act which states that "each action hereunder shall be barred unless commenced within one year next after the cause of action accrued." 235 ILCS 5/6-21 (West 1996). Illinois courts have routinely held that the dramshop cause of action is sui generis and purely a creature of statute. The one year proviso of the Dramshop Act is not a statute of limitations, it is a <u>condition precedent</u> to the right of recovery which must be observed by all plaintiffs in order to bring themselves within the coverage of the Act. ·*

*In Thompson, this court determined that the 1949 amendment to the Dramshop Act made the timely filing of an action under the Act a necessary element of the dramshop cause of action. "The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability".*

*Thus, the right to bring a cause of action under the Dramshop Act only arises if the action is brought within one year of the date the cause of action accrued. Here, because plaintiff failed to bring his claim within one year of the date the alleged occurrence, his right to pursue a dramshop claim was extinguished.*

*Plaintiff urges that we rely upon the fact that he brought two complaints within a year of the March 26, 1995 occurrence. The original complaint was filed on October 6, 1995 and the First Amended Complaint was filed on March 18, 1996. Although <u>neither of these complaints invoked the Dramshop Act</u>, plaintiff argues that both these pleadings conveyed information to Fail Safe, and/or its agents and officers, essential to preparing a dramshop defense. Plaintiff asserts that both these pleadings contained a "core" of material facts "substantially identical" to the ultimate dramshop claim on which he now relies. This is sufficient, plaintiff claims, for him to assert that his Third Amended Complaint, which was filed October 16, 1997, related back to the timely-filed versions of his complaint under the terms of section 2-616 of the Code of Civil Procedure. Section 2-616 Amendments of the Code reads in relevant part as follows:*

> *(d) A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (5) <u>it appears from the original and amended pleadings that the cause of action asserted in the amended pleading</u> grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery <u>when the condition precedent has in fact been performed</u>,.... For the purpose of preserving the cause of action under those condi-*

13

*tions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended."*

*Although the language of section 2-616(d) states that the plaintiff need not allege that he has met all the conditions precedent in the original complaint, the relation-back statute requires that "<u>the condition precedent</u>" (in this case the filing of a dramshop action), have "in fact been performed." Here, because plaintiff did not commence his cause of action within one year, and because this is a <u>condition precedent</u> to liability under the Dramshop Act, plaintiff's Third Amended Complaint was properly dismissed. In the present case, neither of the complaints filed within a year of the occurrence alleged dramshop liability. Accordingly, plaintiff's complaint was properly dismissed.*

42.    By analogy to the instant case, Plaintiffs' original 2/25/92 complaint filed just 2 days before the 80 day statute of limitations were to expire, did not give a *"fair notice",* that in two years the Plaintiffs may amended the complaint with an appraisal request per NY BCL §623, and thus failed to relate back, alike, because in the original complaint the *"condition precedent"* (in this case the appraisal request), has not *"in fact been performed."*

43.    Therefore Plaintiffs' 5th Amended Complaint of 12/26/95, despite the good intention of the 9th Circuit's erred leave, was barred by the NY BCL §623(h)(1)(2), as it could not relate back to the original complaint.

## RELATION BACK OF AMENDMENTS - NEW YORK CASE LAW

44.    *The pleadings may not be amended to state a new or changed cause of action if the time to file such an action has run. <u>Hyacinthe v. Edwards,</u> 781 N.Y.S.2d 771*

45.    *Statute providing for method of computing periods of limitation is not a tolling or extension provision but defines point at which claim is interposed; thus, application for leave to serve late notice of claim made after statute of limitations has expired remains untimely. <u>McKinney's CPLR 203.</u>*

46.    *Amendment to complaint to include for the first time allegations of negligence against city did not relate back to complaint for purposes of determining timeliness of the cause of action because complaint gave no notice to city of the occurrence to be proved. <u>Harding v. Harris,</u> 622 N.Y.S.2d 631*

47.    *If, after statute of limitations has run, independent acts are alleged in amendment to complaint, the amendment is barred by statute of limitations. County Law, § 52; General Municipal Law, § 50-i. <u>Brickman v. Town of Oyster Bay,</u> 203 N.Y.S.2d 490*

48.    *If an amendment introduces a completely new cause of action its allowance would be equivalent to commencement of a new suit, but if the amendment merely amplifies what was al-*

*leged in support of the cause of action already asserted, it relates back to the commencement of the action and is not affected by intervening lapse of time, and such principle applies to quasi-judicial disciplinary proceedings within the police department.* Brenner v. City of New York, 172 N.Y.S.2d 312

49.    *The assertion of a claim constituting a new and distinct cause of action from that originally alleged, dates from the pleading and not from the commencement of the action.* Transpacific S.S. Co. v. Marine Office of America, 163 N.Y.S.2d 171

50.    *While change which merely expands or amplifies what is already asserted relates back to commencement of action or proceedings in which it is made, bringing into action or proceeding of something which was not previously in it is, as to thing brought in, commencement of new action or proceeding, and not true amendment and does not relate back to any point of time prior to time thing is brought in.* Talley v. Lamb, 100 N.Y.S.2d 112

51.    *The general test in determining whether statute of limitations is good defense to amended complaint is whether amendment substitutes entirely new obligation or liability.* Lewis v. Wilson & Co., 87 N.Y.S.2d 372

52.    *A new cause of action cannot be injected into an existing action by amendment where such new cause of action is barred by limitations, so as to preclude a plea of the statute.* Dobbs v. Pearl, 118 N.Y.S. 485

## **CONCLUSION**

For all the foregoing reasons, based on the *Civil Rule 83.4*, and *Rehberger v. MRW Group*, Exh.26, Plaintiff respectfully requests the Court that the Defendant's *Motion for Sanctions Against Vexatious Litigant* be denied, as well as the Motion to Dismiss, and per FRCP Rule 11 (c)(1)(A) *"if warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion"*, that Plaintiff be awarded the reasonable expenses incurred in opposing the motion.

Dated this 22 February 2008

*J. Czajkowski*

Jerry Czajkowski, Ph.D., in Pro Se

15

1

## TABLE OF EXHIBITS

2

26. *Rehberger, v. MRW Group, Inc.* No. 05CV0210. June 28, 2005 .................    17

27. 2/25/1992 BREACH OF CONTRACT AND FRAUD COMPLAINT .........    21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1544806 (E.D.N.Y.)
(Cite as: 2005 WL 1544806 (E.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Frederick REHBERGER, Plaintiff,
v.
MRW GROUP, INC. Defendant.
No. 05CV0210(JS)(ARL).

June 28, 2005.

Matthew Dollinger, Dollinger, Gonski & Gorman, Carle Place, New York, for Plaintiff.

Michael Jude Januzzi, Huntington, New York, for Defendant.

## MEMORANDUM & ORDER

SEYBERT, J.

*1 On January 14, 2005, Plaintiff Frederick Rehberger ("Plaintiff" or "Rehberger"), filed a Complaint alleging (1) Plaintiff has subject matter jurisdiction under 28 U.S.C. § 1332; (2) Plaintiff is entitled to judgment declaring that the sums of money formerly paid by Defendant MRW Group, Inc. ("Defendant" or "MRW Group") to Travelers Group are available as surplus which are required to be paid to the Plaintiff in performance of and in accordance with the Stock Redemption Agreement; (3) Plaintiff is entitled to judgment declaring that the MRW Group must pay to Plaintiff, on a monthly basis, at least the sum of money it heretofore paid to Travelers Group on a monthly basis retroactively from September 1, 2004, until such time as Plaintiff has been paid the sum of $1,796,750.00, plus interest from November 8, 2001; (4) Defendant should be directed to specifically perform the Stock Redemption Agreement; and (5) Plaintiff is entitled to any further relief this Court may seem just and proper, plus all allowable costs and fees of this action. Pending before this Court is Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

In January 1987, the Mills-Muller-Wood Corporation and Richtberg & Rehberger, Inc. merged into a new corporation based in Huntington, New York called the MRW Group, Inc. Compl. ¶ 5; Mem. of Law in Support of Def. Mot. to Dismiss p. 1. Shortly thereafter, in June 1987, the Plaintiff, as well as the other shareholders, entered into a Stock Redemption Agreement, which set forth the rights, duties, and obligations of the shareholders in the MRW Group. Compl. ¶ 7. Under Article IV of the Stock Redemption Agreement, after a stock holder reaches the age of sixty he can require the other stockholders and/or the corporation itself to "buy-out" his shares of stock for the value stated in Article VI. Id. at ¶ 9. Article VI of the Stock Redemption Agreement stipulates the controlling value of the outstanding shares of common stock in the MRW Group to be $7,000,000.00 unless all of the stockholders agree to a new value in writing. Id. at ¶ ¶ 10, 11. In November 1999, Plaintiff notified the MRW Group in writing that he had reached the age of sixty and he wanted to sell his shares--25.668% of the shares of common stock of the MRW Group-- pursuant to Article IV of the Stock Redemption Agreement. Rehberger v. Richtberg, No. 15318-00 (N.Y.Sup.Ct. May 3, 2001); Compl. at ¶ ¶ 8, 13.

After payment of the requisite sum was refused by Defendant, Plaintiff commenced an action in the Supreme Court of the State of New York, County of Suffolk against Defendant. Id. at ¶ ¶ 14, 15. In the state court action, the Plaintiff sought a declaratory judgment establishing the value of the all of the outstanding shares of common stock of the MRW Group at $7,000,000. Id. at ¶ 16; Mem. of Law in Opposition to Def. Mot. to Dismiss p. 2. On November 8, 2001, Justice Elizabeth H. Emerson granted summary judgment against the MRW Group finding (1) the Plaintiff could enforce the Stock Redemption Agreement; (2) the $7,000,000 value stated therein was controlling; and (3) the dollar value of Plaintiff's share of 25 .668% of the MRW Group is $1,796,760. Compl. ¶ 27. In addition, Justice Emerson held that in accordance with Sections 513 and 514 of the New York Business

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.                **Exhibit 26**

Corporation Law, any payments to the Plaintiff from the MRW Group are limited to years in which a surplus is available. *Id.* Subsequently, on June 17, 2002, the Appellate Division, Second Department affirmed Justice Emerson's ruling and remitted the matter for entry of the Judgment declaring the value of the outstanding shares of common stock of the MRW Group to be $7,000,000. *Id.* at ¶ 28.

**\*2** Plaintiff alleges that the Defendant has not complied with the state court's judgment because it has not made any payments to the Plaintiff even though it has a surplus. *Id.* at ¶¶ 31, 42. This surplus as defined by Sections 102 and 513 of the Business Corporation Law, is alleged to currently exist as a result of the Defendant completing monthly payments owed to Travelers Group. *Id.* at ¶¶ 37, 42. These monthly payments were a result of a debt to Travelers Group for funds used by the MRW Group to acquire treasury stock, a covenant not to compete, and to pay deferred compensation. *Id.* at ¶ 33. The MRW Group secured this obligation to Travelers Group through its assets. *Id.* at 34. Plaintiff seeks judgment: (1) declaring that the sums of money formerly paid by the MRW Group to Travelers Group are available as surplus which are required to be paid to the Plaintiff in performance of and in accordance with the Stock Redemption Agreement; (2) declaring that the MRW Group must pay to the Plaintiff, on a monthly basis, at least the sum of money it heretofore paid to Travelers Group on a monthly basis retroactively from September 1, 2004, until such time as Plaintiff has been paid the sum of $1,796,750, plus interest from November 8, 2001; and (3) directing that the MRW Group specifically perform the Stock Redemption Agreement. *Id.* at ¶ 42.

*DISCUSSION*

I. *Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure*

A. *Standard Governing Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113, (2d Cir.2000). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004). Furthermore, dismissal is only

appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Id.* "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists." *Luckett v. Bure,* 290 F.3d 493, 496-97 (2d Cir.2002).

B. *Analysis*

The Defendant contends this action should be dismissed because the Plaintiff has failed to allege a controversy that this Court can redress. Mem. of Law in Support of Def. Mot. to Dismiss p. 5. In order for a court to exercise subject matter jurisdiction, there must be an actual case or controversy pursuant to Article III of the Constitution. *Vermont Right to Life Comm., Inc. v. Sorrell,* 221 F.3d 376, 381-82 (2d Cir.2000). For there to be a case or controversy, "a dispute must exist between two parties having adverse legal interests." *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.,* 24 F.3d 427, 431 (2d Cir.1994).

**\*3** In this case, the state court has already addressed certain issues involving the alleged injury to the Plaintiff including his right to payment under certain circumstances. Compl. ¶ 27. Nonetheless, the Plaintiff has raised issues that have yet to be decided. The state court declared the Plaintiff was only entitled to payment under certain circumstances. Those circumstances include whether a surplus exists. Whether or not the Defendant has a surplus, and therefore becomes obligated to "buy-out" the Plaintiff, is a controversy that was not determined by the state court. Although, presumably, the Plaintiff could have brought this action in state court, the Plaintiff can still bring this case in Federal court through diversity of citizenship jurisdiction. *See* 28 U.S.C. § 1332.

For a diversity case to be within this Court's judicial power there need only be a controversy between the parties. *Spindel v. Spindel,* 283 F.Supp. 797, 801 (E.D.N.Y.1968). The Plaintiff still must set forth the existence of a controversy even though they are seeking declaratory relief. *See S. Jackson & Son, Inc.,* 24 F.3d 427, 431 (2d Cir.1994). "The existence of an actual controversy in the constitutional sense is of course necessary to sustain jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201." *Muller v. Olin Mathieson Chem. Corp.,* 404 F.2d 501, 504 (2d Cir.1968). The Plaintiff has offered sufficient pleadings to demonstrate the existence of a

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**Exhibit 26**

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 1544806 (E.D.N.Y.)
(Cite as: 2005 WL 1544806 (E.D.N.Y.))

controversy that this Court has subject matter jurisdiction under diversity jurisdiction. The parties dispute whether the cessation of the Defendant's payments to Travelers Group is evidence of a surplus, setting forth a justiciable controversy.

Finally, the Defendant alleges that Article 52 of the New York Civil Practice Law and Rules gives the state court continuing jurisdiction over these matters. As a result, the Defendant alleges, there is no controversy for this Court to address. However, Article 52 of the CPLR applies to the "enforcement of money judgments," whereas the state court did not issue a money judgment.

Thus, Defendant's Motion to Dismiss pursuant to 12(b)(1) must be denied.

II. *Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure*

A. *Standard Governing Rule 12(b)(6)*

A district court should not grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Sec. Investor Prot. Corp. v. BDO Seidman*, 222 F.3d 63, 69 (2d Cir.2000) (quoting *Jaghory v. New York State Dep't of Educ*., 131 F.3d 326, 329 (2d Cir.1997)). When applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the Plaintiff, as well as accept those factual allegations as true. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Moreover, the court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984)).

B. *Analysis*

*4 The Defendant alleges the Plaintiff has failed to set forth a claim upon which relief can be granted because of the preclusive effects of the doctrines of res judicata and collateral estoppel. Mem. of Law in Support of Def. Mot. to Dismiss p. 1. Specifically, the state court's decision addressed the Plaintiff's claim and therefore he should be barred by commencing a second litigation in Federal Court.

Mem. of Law in Support of Def. Mot. to Dismiss p. 6.

In the instances when "there is a final state court judgment, a federal court looks to that state's rules of res judicata to determine the preclusive effect." *Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir.2003). In New York, "under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 4 N.Y.3d 260, 269 (2005). This rule is applied "not only to claims actually litigated but also to claims that could have been raised in the prior litigation." *Id.* The Defendant alleges that the instant claim should have been brought in the state court action. Despite the Defendant's contention, the instant claim could not have been brought in the earlier state court action. The MRW Group's obligation to Travelers Group was paid in full in August 2004, at which time the surplus monies in question became available. Compl. at ¶ 37. However, the State Court decision was rendered in November 2001. Compl. at ¶ 30. Consequently, a declaratory judgment action as to the availability of this specific surplus could not have been asserted in the prior state proceeding. Furthermore, the preclusive effect of the prior state court declaratory judgment action "is limited to the subject of the declaratory relief sought." *Jefferson Towers, Inc. v. Pub. Serv. Mut.*, 195 A.D.2d 311, 313 (1st Dep't 1993); *see also Harborside Refrigerated Services, Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir.1992).

Collateral estoppel or issue preclusion exists "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated by the same parties in a future lawsuit." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir.1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994)). Collateral estoppel is only permissible as to a given issue when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bear, Stearns & Co., Inc., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, No. 04-CV-3632, 2005 WL 1231616, at *3 (2d Cir. May 25, 2005). In this case, the issue was not raised in the previous litigation, nor could it have been litigated in the previous proceeding for the reasons mentioned above. The

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    **Exhibit 26**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1544806 (E.D.N.Y.)
**(Cite as: 2005 WL 1544806 (E.D.N.Y.))**

issue could not have been litigated at the time the state court action was pending and therefore should not be barred.

**\*5** Thus, Defendant's Motion to Dismiss pursuant to 12(b)(6) must be denied.

*CONCLUSION*

For the foregoing reasons, Defendant's motions to dismiss are DENIED pursuant to <u>Rule 12 of the Federal Rules of Civil Procedure</u>.
   SO ORDERED

Not Reported in F.Supp.2d, 2005 WL 1544806 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**Exhibit 26**

1
2  Jerry Czajkowski
   Lonia Czajkowski
3  7944 La Jolla Shores Dr.
   San Diego, CA 92037
4  (619) 459-2077
   IN PROPRIA PERSONA

C O P Y
KENNETH E. MARTONE
Clerk of the Superior Court

FEB 2 5 1992

By: T. CASTILLO, Deputy
BUSINESS

5
6          SUPERIOR COURT OF THE STATE OF CALIFORNIA
                 FOR THE COUNTY OF SAN DIEGO
7
8  JERRY CZAJKOWSKI,                    )
   LONIA CZAJKOWSKI,                    )
9                                       )    CASE NO:    648907
              Plaintiffs               )
10                                      )
       v.                               )
11                                      )
   PETER JOVANOVICH,                    )    CIVIL COMPLAINT FOR
12 HARCOURT BRACE JOVANOVICH, INC.      )    BREACH OF CONTRACT
   DOES 1 TO 50, A CORPORATION          )    AND FRAUD
13                                      )
              Defendants               )
   _____)

14
15
16                   JURISDICTION AND VENUE
17      Harcourt Brace Jovanovich Inc. (HBJ) is a New York corporation
18 with headquarters in California, Florida, Texas, Pennsylvania and
19 New York. It is also transacting business in the San Diego County.
20 Plaintiffs allege  that the Defendants owe them a total sum of
21 $73,357.80, and since Dec.9th,1991, $733.57 per month in interest.

22                    STATEMENT OF FACTS
23      Peter Jovanovich is the President and Chief Executive Officer
24 of the HBJ, now a subsidiary of the General Cinema Corporation
25 (GCC) of Chestnut Hill, Massachusetts.
26      Accordingly with the New York Business Corporation Law, Sec.
27                              1
28

Exhibit 27
21

623, Plaintiffs opposed the merger between GCC and HBJ, to wit:

> " A shareholder intending to enforce his right under a section
> of this chapter to receive payment for his shares if the
> proposed corporate action referred to therein is taken shall
> file with the corporation... written objection to the action.
> The objection shall include a notice of his election to
> dissent..."

and in accordance with Sec.910 of said N.Y. Bus. Corp. Law the

Plaintiffs are entitled to demand from the Defendants a full value

for their 5,083 shares of the HBJ Preferred stock. Section 910

states:

> " A shareholder of the domestic corporation shall, subject to
> and by complying with section 623... have the right to receive
> payment of the fair value of his shares and the other rights
> and benefits provided by such section..."

<u>NATURE OF THE CASE</u>

Beginning October 1989 the Plaintiffs purchased HBJ Preferred

securities with explicit HBJ's assurances of their good return (12%

per year dividend paid in additional shares), special preference in

relation to other HBJ's securities, and their overall safety

guaranteed by the HBJ's "Certificate of Incorporation"

("CONTRACT").

The Plaintiffs own 5,083 shares of the HBJ Preferred stock,

which according to the CONTRACT has a liquidation preference of

$13.50 per share, a total value of $68,620.50 plus unpaid dividends

since Jan.1st,1991.

On Dec.9th,1991, by registered mail, HBJ advanced to the

Plaintiffs $2,810.90 for their 5,083 shares, and since then HBJ

refuses to pay the remaining $65,809.60 plus unpaid dividends as

the CONTRACT provides. The CONTRACT states that the holders of the

2

Exhibit 27

22

HBJ's Preferred stock are entitled to receive:

" per-share dividends at the annual rate of 12% computed on the $13.50 liquidation prefernce per share of the HBJ Preferred Stock."

Furthermore, the Plaintiffs have purchased the HBJ Preferred Stock based on the HBJ's contractual promise of its preference and safety in case of the HBJ liquidation, dissolution or winding-up. The same CONTRACT also says:

" In the event of any liquidation, dissolution or winding-up of HBJ, HBJ Preferred Stock has a liquidation preference of $13.50 (per share), plus any accrued and unpaid dividends to the liquidation date. No distribution can be made to the holders of HBJ Common Stock upon any liquidation until the holders of Preferred Stock of HBJ have received their liquidation preference in full."

In complete violation of the CONTRACT and other stockholders rights, on Jan.14th, 1991, HBJ went into "Original Merger Agreement" with the GCC, and offered equally without any preference, to its common and preferred stockholders $1.30 per share. On Aug.24th, 1991, in result of a "Revised Merger Agreement", HBJ offered mere 75 cents per share, again without giving any preference or special consideration to the preferred stockholders.

In its "Joint Proxy Statement" of Oct.25th, 1991 (p.51), HBJ bluntly declares:

" The HBJ Board considered that the Revised (Merger) Proposal and the transaction contemplated thereby did not entitle the holders of HBJ Preferred Stock to payment of $13.50 per share liquidation preference, which amount is payable according to the terms of the HBJ Preferred Stock in the event of liquidation, dissolution, or winding up of the affairs of HBJ.

INFORMATION ON FINANCIAL OPERATIONS OF THE DEFENDANTS

3

**Exhibit 27**

23

The assesed value of the HBJ Preferred Stock of 75 cents can be subject to scrutiny in light of the following facts:

I.   As recently as 1987, HBJ sold to the public 4.8 million shares of Common Stock at $10.25 per share (gross $49.3 million); 40,000 shares of Exchangeable Preferred Stock at $2,100.00 per share (gross $84 million); 10 million shares of Common Stock at $9.88 per share (gross $99 million); and $1.257 billion of other HBJ securities.

II.  In 1988 HBJ sold to the public 10.5 million shares of Common Stock at $9.50 per share (gross $100 million), and other securities for $400 million.

III. On Nov.30th,1991, HBJ completed sale of its theme parks (e.g., "Sea World"), and related land holdings for $1.1 billion.

Combined (I through III), it makes a grand total of $3.089 billion.

IV.  40.5 million shares of HBJ Preferred Stock were issued on July 27th, 1987, with an aggregate liquidation preference of $546.7 million. On June 30th, 1991, there were 60.7 million shares of the HBJ Preferred Stock outstanding with an aggregate liquidation preference of $869.7 million.

V.   HBJ has total assets of $3.336 billion (as of June 30th, 1990), and an annual revenues of $1.412 billion (year ended Dec. 30th, 1990).

SUMMARY: In effect of the "Revised Merger Agreement" with the GCC, HBJ has devalued its Preferred Stock 94.4%, thus saving itself $824.1 million at the expense of its Preferred Investors.

## REQUEST FOR JUDGEMENT

Because the Plaintiffs as dissenting stockholders accordingly with the N.Y. Business Corporation Law, Sections 623 and 911, supra, were opposed to the "Merger Agreements", and to the fraudulent "75 cent" offer, they are requesting the Honorable Court that the Defendants be ordered to comply with the terms of the CONTRACT, and pay Plaintiffs in full the liquidation price of

4

**Exhibit 27**

24

the HBJ Preferred Stock of $13.50 per share, and unpaid dividends. This amounts to $68,620.50 minus an HBJ advance of $2,810.90, or $65,809.60, plus unpaid dividends since Jan.1st, 1991 until Dec.9th 1991, at 12% per year equal to $7,548.25, which makes a Grand Total of $73,357.80. In addition, since Dec.9th, 1991 until the end of this litigation, 12% interest on the outstanding Grand Total of $73,357.80, or $733.57 per month, and be awarded costs of this suit.

Date: _Feb/25/1992_

_Jerry Czajkowski_
Plaintiff, Jerry Czajkowski

_Lonia Czajkowski_
Plaintiff, Lonia Czajkowski

5

**Exhibit 27**

**25**

Jerry Czajkowski, Ph.D., in Pro Se
6370 Streamview Dr
San Diego, CA 92115
619-287-2944

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CZAJKOWSKI, Ph.D., an individual, | Case No.: 07 CV 2383 JM (LSP) |
| Plaintiff, | |
| vs. | **Declaration of Service** |
| REED ELSEVIER, INC., a Massachusetts | |
| Corporation, | Honorable Jeffrey T. Miller |
| Defendant | |

I am a resident of the State of California, over the age of 18 years, and not a party to the within action. On February 22, 2008, I served the within document(s):

**Opposition to the Motion for Pre-Filing Order Against Vexatious Litigant;**

**Opposition to the Motion for Sanctions Against Vexatious Litigant**

**By regular mail** (C.C.P. § 1013(a)): I caused the above document(s) to be deposited in the US mail in San Diego, with postage thereon fully prepaid addressed to the party listed below.

    K.Fitzgerald, Esq
    Latham & Watkins LLP
    600 West Broadway, Suite 1800
    San Diego, CA 92101-3375

Executed on February 22, 2008

M.Czajkowski